## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E.I. du PONT de NEMOURS and COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-699 (KAJ) |
| LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

### LUMBERMENS MUTUAL CASUALTY COMPANY'S
### OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
### COUNTS III, IV, V, VI AND VII OF DUPONT'S COMPLAINT

OF COUNSEL:

Michael M. Eidelman
Randall M. Lending
Jeffery M. Heftman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street Suite 2600
Chicago, IL  60601-1003


Dated:  January 9, 2006

David B. Stratton (DE No. 960)
M. Duncan Grant (DE No. 2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

Attorneys for Defendant
Lumbermens Mutual Casualty Company

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE CASE AND NATURE OF THE PROCEEDING ..................... 1

II.   SUMMARY OF ARGUMENT ............................................................................... 1

III.  STATEMENT OF FACTS .................................................................................. 3

IV.   STANDARD OF REVIEW .................................................................................. 5

V.    ARGUMENT ........................................................................................................ 6

   A.  DuPont Fails to State a Claim for Unjust Enrichment (Count III) ........................ 6

   B.  DuPont's Equitable Fraud Claim Is Legally and Factually Insufficient
       (Count IV) ................................................................................................. 7

   C.  DuPont Fails to State a Claim for Equitable Estoppel (Count V) ........................ 13

   D.  DuPont Fails to State a Claim for Breach of Contract (Count VI) ..................... 15

   E.  DuPont Fails to State a Claim for Reformation (Count VII) .............................. 17

VI.   CONCLUSION .................................................................................................... 20

CHICAGO/#1457605.3

TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

Ala, Inc. v. Ccair, Inc.,
    29 F.3d 855 n.8 (3d Cir. 1994).............................................................................. 16

Auth Sausage Co., Inc. v. Dutch Oven II, Inc.,
    No. 1989-86, 2001 WL 209817 at *3 (Del. Super. Ct. Jan. 16, 2001) ..................... 20

Campos v. Campos,
    342 Ill. App. 3d 1053, 796 N.E.2d 1101 (1st Dist. 2003)....................................... 14

Collins v. Burke,
    A2d 999 (Del. 1980) ............................................................................................ 18

Consol. Fisheries Co. v. Consol. Solubles Co.,
    112 A.2d 30 (Del. 1955) ........................................................................................ 9

Crown-Simplimatic Inc.,
    299 B.R. 319 (Bankr. D. Del. 2003) ....................................................................... 6

F.H. Prince & Co., Inc. v. Towers Financial Corp.,
    275 Ill. App. 3d 792, 656 N.E.2d 142 (1st Dist. 1995).......................................... 7

Fleer Corp. v. Topps Chewing Gum, Inc.,
    539 A.2d 1060 (Del. 1988) ..................................................................................... 6

Genencor Int'l Inc. v. Novo Nordisk A/S,
    766 A.2d 8 (Del. 2000) .................................................................................... 14, 15

Geschke v. Air Force Assoc.,
    425 F.3d 337 (7th Cir. 2005) .................................................................................. 9

Goodman v. Board of Trustees,
    498 F. Supp. 1329 (N.D. Ill. 1980) .................................................................. 16, 17

Gracelawn Memorial Park, Inc. v. Eastern Memorial Consultants, Inc.,
    291 A.2d 276 (Del. 1972) ..................................................................................... 19

Great Lakes Chemical Corp. v. Pharmacia Corp.,
    788 A.2d 544 (Del. Ch. 2001)...................................................................... 9, 10, 11

Hallowell v. State Farm Mut. Auto. Ins. Co.,
    443 A.2d 925 (Del. 1982) ..................................................................................... 12

Hartigan v. E & E Hauling,
    153 Ill. 2d 473, 607 N.E.2d 165 (1992) .................................................................. 7

Hob Tea Room v. Miller,
    89 A.2d 851 (Del. 1952) ....................................................................................... 19

Iotex Communications, Inc. v. Defries,
    No. 15817, 1998 WL 914265 at *5-6 (Del. Ch. Dec. 21, 1998)........................... 8, 9

Jefferson Chemical Co. v. Mobay Chemical Co.,
    253 A.2d 512 (Del. Ch. 1969)...................................................................... 18, 19, 20

Klaxon Co. v. Stentor Elect. Mfg. Co.,
    313 U.S. 487 (1941)............................................................................................... 5

La Throp v. Bell Federal Savings & Loan Assoc.,
    68 Ill. 2d 375, 370 N.E.2d 188 (1977) ................................................................... 7

## TABLE OF AUTHORITIES
### (continued)

Page

Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.,
854 A.2d 121 (Del Ch. 2004)........................................................................ 8, 9, 10, 11

Parks v. Kownacki,
193 Ill.2d 164, 737 N.E.2d 287 (Ill. 2000) ........................................................ 14

Pell v. E.I. DuPont De Nemours & Co.,
348 F.Supp. 2d 306 (D.Del. 2004)................................................................... 14, 15

People ex rel. Peters v. Murphy-Knight et al.,
248 Ill. App. 3d 382, 618 N.E. 2d 459 (1st Dist. 1993)....................................... 9

Phillips Petroleum Co. v. Shutts,
472 U.S. 797 n.20 (1985)................................................................................ 6

Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.,
42 F. Supp.2d 423 (D. Del. 1999)................................................................... 5, 6

Satellite Financial Planning Corp. v. First Nat. Bank,
633 F. Supp. 386 (D.Del.1986)....................................................................... 5

Schivarelli v. Chicago Transit Authority,
823 N.E.2d 93 (Ill. App. Ct. 2005) ................................................................ 18

Scott-Douglas Corp. v. Greyhound Corp.,
304 A.2d 309 (Del. Super. Ct. 1973) ............................................................. 14

SHC, Inc.,
329 B.R. 438 (Bankr. D. Del. 2005) .............................................................. 16

Sprout v. Ellenberg Capital Corp.,
No. 95C-05-025, 1997 WL 716901, at *7 ....................................................... 9

Tenneco Automotive Operating Co. v. Visteon Corp.,
375 F.Supp. 2d 375 (D.Del. 2005)................................................................. 14, 15

Toner v. Allstate,
821 F.Supp. 276 (D.Del. 1993)...................................................................... 9

U.S. Office Prod. Co. Sec. Lit., 251 F. Supp.2d 77 (D.D.C. 2003) ....................... 6

Waggoner v. Laster,
581 A.2d 1127 (Del. 1990) ...................................................................... 13, 14, 15

Wal-Mart Stores, Inc. v. AIG Life Insur. Co.,
872 A.2d 611 (Del. Ch. 2005)........................................................................ 8

Wilson v. American Insur. Co.,
209 A.2d 902 (Del. 1965)............................................................................... 14

## STATUTES

215 ILCS 5/136................................................................................................ 10
215 ILCS 5/53.................................................................................................. 17
215 ILCS 5/54.................................................................................................. 12
Fed. R. Civ. P. 10(c) ........................................................................................ 5, 16
Fed. R. Civ. P. 12(b)(6).................................................................................... 5
Fed. R. Civ. P. 9(b) .......................................................................................... 5, 8, 18

## I.    STATEMENT OF THE CASE AND NATURE OF THE PROCEEDING

On September 1, 2005, DuPont E.I. du Pont de Nemours and Company ("DuPont") filed a seven Count Complaint in the Court of Chancery of the State of Delaware In and For New Castle County.   On September 26, 2005, Lumbermens caused this case to be removed to the United States District Court for the District of Delaware.   On January 9, 2006, Lumbermens filed an answer to the Complaint as to Counts I (Preliminary and Permanent Injunction) and II (Declaratory Judgment), and filed the instant motion to dismiss Counts III (Unjust Enrichment), IV (Equitable Fraud), V (Equitable Estoppel), VI (Breach of Contract) and VII (Reformation). This is Lumbermens' Opening Brief in support of its Motion to Dismiss

## II.    SUMMARY OF ARGUMENT

1.    DuPont's Complaint seeks declaratory, injunctive and monetary relief relating to a workers' compensation policy DuPont purchased from Lumbermens for the 2002-2003 policy year.  Lumbermens' instant motion seeks the dismissal of Counts III through VII.

2.    In Count III, DuPont alleges that Lumbermens has been unjustly enriched by its failure to credit DuPont with a dividend which would reduce the premium owed Lumbermens. Lumbermens seeks dismissal of Count III on the grounds that since DuPont alleges the existence of a valid contract defining the parties' rights and obligations, equitable relief such as unjust enrichment is not a viable cause of action.

3.    In Count IV, DuPont alleges that Lumbermens engaged in equitable fraud by making certain alleged misstatements or omissions upon which it intended DuPont to rely to its detriment.   Lumbermens seeks dismissal of Count IV on the grounds that (1) DuPont fails to plead fraud with particularity; (2) DuPont's allegations of misrepresentations refer to statements (a) made years before DuPont signed the subject insurance contract and which relate to a period which is not at issue and (b) made subsequent to DuPont's execution of the insurance contract

and therefore cannot constitute statements upon which DuPont could have relied; and (3) the alleged misstatements as to what might happen in the future are not fraudulent as a matter of law.

4.  In Count V, DuPont requests that Lumbermens be equitably estopped in its attempt to assess the full premium amount owed Lumbermens. Lumbermens seeks dismissal of Count V on the grounds that: (1) DuPont has failed to plead with particularity the existence of any fraudulent misrepresentations or omissions by Lumbermens; (2) it has failed to establish that it reasonably relied on any such alleged misrepresentations; (3) DuPont has failed to show that it changed its position to its detriment in reliance upon any alleged misrepresentations; and (4) under Delaware law, equitable estoppel is an inappropriate remedy where a party, such as DuPont here, seek a declaration of its rights under an agreement.

5.  In Count VI, DuPont alleges a claim for breach of contract arising from Lumbermens' failure to declare and issue a dividend in DuPont's favor, which would reduce the amount of DuPont's premium owed to Lumbermens. Lumbermens seeks dismissal of Count VI on the grounds that the insurance contract DuPont attached to the Complaint plainly provides that the declaration and issuance of a dividend lies solely within the discretion of Lumbermens. As DuPont's receipt of a dividend was purely discretionary and was neither promised nor guaranteed, DuPont cannot claim to have any right to the issuance of a dividend, and therefore fails to identify any breach of the insurance contract.

6.  At Count VII, DuPont seeks to reform the insurance contract to require Lumbermens to declare a dividend, contending that a mutual mistake by the parties resulted in a contract that failed to reflect the parties' true understanding. Lumbermens seeks dismissal of Count VII because DuPont: (1) fails to identify a mutual mistake with particularity, and (2) fails

to identify the terms of an alleged oral understanding that differ from the unambiguous language of the contract.

## III.    STATEMENT OF FACTS

DuPont seeks declaratory, injunctive and monetary relief related to a workers' compensation policy it purchased from Lumbermens for the 2002 to 2003 policy year. (Compl. ¶ 1.) DuPont contends that Lumbermens, in violation of the insurance contract, has improperly withheld a "dividend" set-off and sought to recover that sum from DuPont. (Compl. ¶¶ 34-37.)

DuPont began purchasing insurance, including workers' compensation coverage, from Lumbermens in 1971. (Compl. ¶ 10.) Lumbermens, at the close of each policy year, would tender to DuPont an insurance proposal concerning insurance coverage for the subsequent year. (Compl. ¶ 16.) On October 31, 2002, DuPont signed the final and accepted insurance proposal with Lumbermens for workers' compensation coverage for the 2002-2003 policy year. (Compl. ¶ 75, Ex. 1, p. 14.)

The insurance policy for the 2002-2003 policy year required DuPont to make initial fixed payments in the form of a basic premium based upon a projected payroll level, to reimburse Lumbermens for paid losses up the $1 million deductible level, and to provide security in the form of letters of credit and surety bonds. (Compl. ¶¶ 21, 29, 35-36.) Following the end of the policy term, Lumbermens performed an audit of the premium amount, to determine the actual payroll level and to account for prior premium payments by DuPont. (Compl. ¶ 28.) In essence, the audited subject premium seeks to identify the difference between initial estimated premium paid by DuPont with the actual premium owed Lumbermens. (Id.)

DuPont contends that it has been improperly denied a dividend credit in the amount of $4,532,579 (Compl. ¶ 37.) The crux of DuPont's Complaint is that it is contractually entitled to receive this dividend from Lumbermens -- thereby negating any obligation to pay the full audited

subject premium.  While DuPont claims a right to its receipt of a dividend credit, the contract it attaches to the Complaint, and which controls over the inconsistent allegations of the Complaint, plainly provides otherwise.  (Compl. Ex. 1 at p. 12.)

The insurance policy provides that:

> Recognizing that *dividends cannot be promised or guaranteed and noting that dividends are declared at the sole discretion of the Company's Board of Directors*, this quotation constitutes no more than an agreement to recommend the proposed formula, after the expiration of the term to which the dividend declarations shall be applicable to the Board of Directors for consideration and action.
>
> Accordingly, at any given dividend determination, the Board of Directors may or may not adopt the proposed formula and may subject such formula to change as their authority allows.  *All dividends are recallable.*
>
> Any dividend which is payable hereunder may be held by the Company as collateral against any amount owed the Company under this proposal or any other proposal accepted by E.I. DUPONT DE NEMOURS & CO., INC.  The Company in its sole discretion may offset any such dividend against the amount owed the Company by E.I. DUPONT DE NEMOURS & CO., INC.
>
> For the record, the Board of Directors has never failed to declare the full dividend under the terms and conditions of the Large Risk Contributory Dividend Plan.

(Compl. at Ex. 1, p. 12 (emphasis added).)

As the insurance policy at issue makes clear, the declaration and issuance of a dividend by Lumbermens' Board of Directors was solely within its discretion.  (Id.) The plain language of the contract precludes DuPont from asserting any right to receive a dividend set-off to its obligation on premiums owed Lumbermens.

## IV.    STANDARD OF REVIEW

### A.    Standard Under Fed. R. Civ. P. 12(b)(6) and 9(b)

Dismissal is proper under Rule 12(b)(6) when a party can prove no set of facts in support of a claim that would entitle it to recovery.  See Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc., 42 F. Supp.2d 423, 437-38 (D. Del. 1999).  While the allegations in a pleading and the reasonable inferences therefrom are accepted as true for purposes of a motion to dismiss, bald assertions, unsupported legal conclusions and inconsistent statements are not.  Id.  Additionally, courts may consider the contents of documents attached to or centrally relied upon in the complaint.  See Fed. R. Civ. P. 10(c).

Federal Rule of Civil Procedure 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Third Circuit requires that a party must provide the date, place or time of allegedly fraudulent conduct, or provide sufficient detail to inject "precision and some measure of substantiation into their allegations of fraud."  See Satellite Financial Planning Corp. v. First Nat. Bank, 633 F. Supp. 386, 402 (D.Del.1986) (dismissing fraud claims for failure to comply with Rule 9(b)).

### B.    Choice of Law

The insurance policy attached as Exhibit 1 to the Complaint does not identify the applicable state law to govern interpretation of the contract, or the substantive law to be applied to disputes between the parties.  DuPont is a Delaware corporation and Lumbermens is an Illinois corporation.  (Compl. ¶¶ 8-9.)  A federal court will apply the conflict of law analysis of the state in which it sits.  See Klaxon Co. v. Stentor Elect. Mfg. Co., 313 U.S. 487, 496 (1941) (Delaware district court to apply Delaware conflict of law rules).

However, no conflict of law analysis is warranted, insofar as both Illinois' and Delaware's substantive law as to the causes of action asserted by DuPont do not materially

differ.  <u>See, e.g., Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 839 n.20 (1985) ('[F]alse

conflict' really means 'no conflict of laws.' If the laws of both states relevant to the set of facts

are the same, or would produce the same decision in the lawsuit, there is no real conflict between

them.") (internal citation omitted).  Under either Delaware or Illinois law, DuPont's causes of

action fail to state a claim and should be dismissed.

**V.    ARGUMENT**

**A.    DuPont Fails to State a Claim for Unjust Enrichment (Count III)**

Count III of DuPont's Complaint seeks to invoke the equitable remedy of unjust

enrichment to recoup a benefit allegedly retained by Lumbermens.  (Compl. ¶¶ 94-97.)  At the

same time, however, DuPont alleges the existence of a valid contract between DuPont and

Lumbermens.  (Compl. Count VI, ¶¶ 9-10, 109-118.)  Indeed, DuPont seeks relief under breach

of contract and reformation theories, both of which allege the existence of a contract between the

parties.  (Compl. ¶¶ 109-118.)  Having pled the existence of a contract, DuPont's quasi-

contractual theory of unjust enrichment must fail as a matter of law.

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the

retention of money or property of another against the fundamental principles of justice or equity

and good conscience." <u>Resource Ventures, Inc. v. Resources Management Int'l Inc.</u>, 42 F.

Supp.2d 423, 439 (D. Del. 1999) <u>quoting Fleer Corp. v. Topps Chewing Gum, Inc.</u>, 539 A.2d

1060, 1062 (Del. 1988).  "[W]hen a contract exists, a plaintiff may not pursue an unjust

enrichment theory of recovery." <u>In re U.S. Office Prod. Co. Sec. Lit.</u>, 251 F. Supp.2d 77, 94

(D.D.C. 2003) (applying Delaware law); <u>see also In re Crown-Simplimatic Inc.</u>, 299 B.R. 319,

327 (Bankr. D. Del. 2003) ("Because a binding contract exists that adequately addresses each

party's rights and duties, [plaintiff] cannot recover under the quasi-contractual theory of unjust enrichment.").[1]

DuPont does not allege that its contract with Lumbermens is either invalid or inadequate to remedy its alleged damages. To the contrary, DuPont seeks relief upon this very contract. DuPont cannot seek relief under a contract which it alleges is both binding and controlling as to the parties' respective rights and obligations, while at the same time seek equitable relief as if no contract governed the parties' dealings. Accordingly, DuPont's claim for unjust enrichment at Count III fails, and should be dismissed with prejudice.

### B.    DuPont's Equitable Fraud Claim Is Legally and Factually Insufficient (Count IV)

Count IV of DuPont's Complaint alleges that Lumbermens made false statements to DuPont relating to its financial condition; that Lumbermens concealed its true financial condition to DuPont; that Lumbermens made allegedly fraudulent statements and assurances that the insurance program with DuPont would continue to work in the future as it had in past years (i.e. because Lumbermens had always paid dividends in the past it would do so in the future); and that Lumbermens failed to disclose that the declaration of dividends was related to its overall financial performance (Compl. ¶ 99(a) – (f).) DuPont further alleges that it relied on these allegedly fraudulent statements to its detriment. (Compl. ¶¶ 100 – 102.) As shown below, the alleged misrepresentations and omissions are not actionable and fall woefully short of the

---

[1] The application of Illinois law leads to the same conclusion. See Hartigan v. E & E Hauling, 153 Ill. 2d 473, 498, 607 N.E.2d 165, 177 (1992) quoting La Throp v. Bell Federal Savings & Loan Assoc., 68 Ill. 2d 375, 391, 370 N.E.2d 188, 195 (1977) ("Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'"); see also F.H. Prince & Co., Inc. v. Towers Financial Corp., 275 Ill. App. 3d 792, 804, 656 N.E.2d 142, 151 (1st Dist. 1995) ("Since the doctrine of unjust enrichment presents an implied or quasi-contract claim, where there is a specific contract which governs the relationship of the parties, the doctrine has no application").

heightened pleading requirement for fraud. Further, DuPont cannot show that it reasonably relied upon such alleged statements or omissions. Count IV should therefore be dismissed.

To state a claim for equitable fraud under Delaware law, a plaintiff must satisfy all the elements of common law fraud – (1) a false representation, usually one of fact, made by the defendant; (2) the defendant had knowledge or belief that the representation was false, or made the representation with requisite indifference to the truth; (3) the defendant had the intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted or did not act in justifiable reliance on the representation; and (5) the plaintiff suffered damages as a result of such reliance – with the exception that the plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly. Wal-Mart Stores, Inc. v. AIG Life Insur. Co., 872 A.2d 611, 628 (Del. Ch. 2005). However, equitable fraud can only be applied in those cases in which one of the two fundamental sources of equity jurisdiction exists: (1) an equitable right founded upon a special relationship over which equity takes jurisdiction, or (2) where equity affords a special remedy (e.g. rescission or cancellation). Id. at 628-29 (citations omitted).

Equitable fraud claims must be pled with particularity. Fed. R. Civ. P. 9(b); see also Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc., 854 A.2d 121, 144 (Del Ch. 2004) (dismissing two fraud claims against defendants for failure to plead with particularity); Iotex Communications, Inc. v. Defries, No. 15817, 1998 WL 914265  at *5-6 (Del. Ch. Dec. 21, 1998)[2]. To meet the particularity requirement, the complaint must specify the time, place, and contents of the alleged misrepresentations, the facts misrepresented, the identity of the person making the misrepresentation, and what he obtained thereby. Metro Communication Corp., 854 A.2d at 144; see also Sprout v. Ellenberg Capital Corp., No. 95C-05-025, 1997 WL

_____

[2] True and correct copies of all unpublished opinions cited herein are attached as Group Exhibit A.

716901, at *7 (dismissing common-law fraud claim for failure to plead with particularity); Iotex Communications, 1998 WL 914265 at *5-6.  Expressions of opinion cannot give rise to actionable fraud, nor can predictions about the future or expressions of opinion as to probable future events.  Great Lakes Chemical Corp. v. Pharmacia Corp., 788 A.2d 544, 554 (Del. Ch. 2001); see also Consol. Fisheries Co. v. Consol. Solubles Co., 112 A.2d 30, 37 (Del. 1955).[3]

All of DuPont's fraud allegations in paragraph 99 of the Complaint fail to state a claim. In paragraph 99(a), DuPont alleges that Lumbermens represented in a December 16, 2002 advertisement in *Business Insurance* that "you'll always have the integrity of our reputation for financial stability and strength."  This statement, however, is not actionable as fraud because it is an opinion regarding the future.  Great Lakes Chemical Corp., supra, 788 A.2d at 554; see also Toner v. Allstate, 821 F.Supp. 276, 281 (D.Del. 1993) (holding that expressions of opinion as to future events cannot be deemed fraud or misrepresentations).  In any event, DuPont could not have possibly relied on this advertisement in deciding to renew its coverage with Lumbermens because DuPont signed the final and accepted insurance policy at issue on October 31, 2002, a month and a half before this advertisement was published.  (See Compl. ¶ 75; Ex. 1 at p. 14.) Further, this advertisement ran at the very end of the instant policy term—from January 1, 2002 to January 1, 2003—thereby precluding DuPont from having relied upon it in obtaining coverage.

The second allegation in paragraph 99(a) states that certain correspondence sent to DuPont dated September 11, 2000 touted Lumbermens' "tremendous growth and success in the

---

[3] The application of Illinois law would not change the analysis:  the five elements of a cause of action for fraud under Illinois law are the same, as is the requirement to plead with particularity, and the rule that opinions and statements regarding future events are not actionable.  People ex rel. Peters v. Murphy-Knight et al., 248 Ill. App. 3d 382, 387, 618 N.E. 2d 459, 463 (1st Dist. 1993) (affirming grant of motion to dismiss fraud action); see also Geschke v. Air Force Assoc., 425 F.3d 337, 345 (7th Cir. 2005) (applying Illinois law).

past year." A general statement about Lumbermens' growth and success during 1999 is an opinion that is not actionable as fraud. See Great Lakes Chemical Corp. v. Pharmacia Corp., 788 A.2d at 554. Further, DuPont could not possibly reasonably rely upon such a statement concerning 1999 when it renewed coverage three years later for 2002. Moreover, DuPont admits in its Complaint that the pre-2000 policy years are "not at issue in this lawsuit, as there is no current, substantial, known disagreement between Kemper and DuPont relating to the pre-2000 policy years." (Compl. ¶ 19.) Also, by failing to mention who at Lumbermens allegedly sent this correspondence to DuPont, DuPont fails to meet its burden of pleading with particularity. See Metro Communication Corp., 854 A.2d at 144.

In paragraph 99(b), DuPont alleges that Lumbermens concealed its financial condition, "including its failure to disclose its true financial condition to DuPont in December, 2002[.]" DuPont could not have relied upon alleged concealments "made" in December 2002 because it signed the final acceptance of the 2002-03 policy on October 31, 2002. Moreover, as shown in the A.M. Best report attached as Exhibit 3 of the Complaint, Lumbermens' financial strength was downgraded from a rating of A to A- on May 7, 2002, well before DuPont signed its acceptance. DuPont, accordingly, knew or should have known about this downgrade months prior to signing the renewal for the 2002 policy period in October, 2002. Further, the true financial status of Lumbermens was known or available to DuPont as summaries of Lumbermens' annual financial statement filed with the Illinois Division of Insurance, Department of Financial and Professional Regulation, are publicly available. See 215 ILCS 5/136. Accordingly, DuPont cannot claim that it was deceived or unaware of Lumbermans' financial condition when it renewed its policy with Lumbermens in October 2002. In any event, DuPont has failed to plead paragraph 99(b) with the required particularity (i.e., the time, place,

and contents of the alleged misrepresentations, the facts misrepresented, the identity of the person making the misrepresentation, and what he obtained thereby).    See Metro Communication, 854 A.2d at 144.

In paragraph 99(c), DuPont makes a conclusory allegation that Lumbermens defrauded DuPont by its "[s]tatements and assurances that DuPont's Insurance Program would continue to work as in past years[.]"   This allegation utterly fails to satisfy the legal requirement that allegations of fraud be pled with particularity (i.e. who made these statements and assurances, when were these statements and assurances made, to whom were these statements and assurances made).   In any event, such statements do not constitute fraud as a matter of law as they involve opinions regarding future events.   See Great Lakes Chemical Corp. v. Pharmacia Corp., 788 A.2d at 554.   A simple reading of the express terms of the policy makes clear that dividends are not guaranteed even though they have been declared historically.    Thus, DuPont could not possibly reasonably rely upon such a statement.

In paragraph 99(d), DuPont makes a conclusory allegation that Lumbermens defrauded DuPont by its "[S]tatements, explanations and assurances relating to how the Insurance Program would work."   DuPont again fails to plead with requisite particularity (i.e. who made these statements, when these statements were made, to whom the statements were made and what was allegedly represented).   Furthermore, any alleged misstatement about how the policy worked could not be reasonably relied upon given that the insurance policy clearly set forth how the program worked and that dividends were not guaranteed.

In paragraph 99(e), the allegation that Lumbermens "represented that it had always paid or credited dividends on the LDRP's in the past" is not alleged by DuPont to be false, nor has DuPont alleged that Lumbermens has a duty to state that past performance is not necessarily

indicative of future performance.  Moreover, DuPont could not reasonably conclude that just because dividends had been paid in the past, they would be guaranteed to be paid in the future. Any alleged statements about dividends is governed by the express policy terms which unequivocally stated that "dividends cannot be promised or guaranteed." (Compl. Ex. 1 at p 12.) In any event, this allegation is woefully deficient in that it fails to plead who made this representation, when this representation was made and to whom it was made.

In paragraph 99(f), DuPont's allegation that Lumbermens "failed to disclose that its declaration of dividends was tied to [Lumbermens'] overall financial performance" refers to the policy terms and is controlled by the policy, which expressly states that "dividends are declared at the sole discretion of [Lumbermens'] board of Directors[.]" (Compl. Ex. 1 at p. 12.)  DuPont cannot allege a failure to disclose simply because it failed to read the insurance policy. Hallowell v. State Farm Mut. Auto. Ins. Co., 443 A.2d 925, 928 (Del. 1982) ("[W]e have consistently held that an insured has a duty to read his insurance policy and he is bound by the provisions thereof if they are clear and unequivocal.")  Moreover, Section 54 of the Illinois Insurance Code states that "[t]he board of directors or trustees of any company subject to the provisions of this article doing the kind or kinds of insurance business described in Class 1 of section 4 *may* declare dividends to its members."  215 ILCS 5/54 (emphasis added).  Thus, DuPont cannot reasonably rely upon any alleged failure by Lumbermans to disclose.  Nor has it alleged that Lumbermens has a duty to do so.

In sum, as shown above, the statements as alleged are not fraudulent as a matter of law and in any event fail to allege fraud with the required particularity.  Moreover, DuPont cannot show that it reasonably relied upon any of the alleged statements.  Thus, Count IV should be dismissed.

**C.**     **DuPont Fails to State a Claim for Equitable Estoppel (Count V)**

Count V of DuPont's Complaint alleges that DuPont lacked knowledge about Lumbermens' financial condition (Compl. ¶ 104); Lumbermens knew that its financial condition was deteriorating (Compl. ¶ 105); Lumbermens' conduct and representations led DuPont to believe that it would be required only to pay the basic premium and fees, reimburse the escrow acCount for paid losses, and provide adequate collateral (Compl. ¶ 106); the conduct and representations of Lumbermens were intended to and did induce reliance on the part of DuPont (Compl. ¶ 107); and DuPont suffered a prejudicial change in position as a result of the conduct and representations of Lumbermens (Compl. ¶ 108).

Count V fails to state a claim because, as shown above in detail in Count IV, DuPont has failed to plead with particularity the existence of any fraudulent misrepresentations or omissions by Lumbermens, and it has failed to establish that it reasonably relied on any such alleged misrepresentations.  Moreover, DuPont has failed to show that it changed its position to its detriment in reliance upon any alleged misrepresentations, as it merely renewed an insurance program that had been in existence for over thirty years (See Compl. ¶ 10.)  Finally, as shown below, under Delaware law, equitable estoppel is an inappropriate remedy where a party seeks a declaration of its rights under an agreement.  Therefore, Count V should be dismissed.

The doctrine of equitable estoppel may be invoked "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change its position to his detriment."  Waggoner v. Laster, 581 A.2d 1127, 1136 (Del. 1990).  The party seeking to establish estoppel must show that it (1) lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (2) relied on the conduct of the party against whom estoppel is claimed; and (3) suffered a prejudicial change of position as a result of its reliance.  Id. at 1136 (citing Wilson v. American Insur. Co., 209 A.2d 902, 903-04 (Del. 1965)).

The statements, conduct, or silence of the party against whom estoppel is being sought must be misleading. Tenneco Automotive Operating Co. v. Visteon Corp., 375 F.Supp. 2d 375, 383 (D.Del. 2005). See also Scott-Douglas Corp. v. Greyhound Corp., 304 A.2d 309, 318 (Del. Super. Ct. 1973) (applying Michigan law) ("[f]raud, actual or constructive, is the essential and central element in estoppel."). The party seeking estoppel must adduce evidence to demonstrate that its reliance on the alleged misrepresentations was reasonable. Pell v. E.I. DuPont De Nemours & Co., 348 F.Supp. 2d 306, 313 (D.Del. 2004). Equitable estoppel is not a remedy for enforcing a bargained-for contract right supported by consideration. Genencor Int'l Inc. v. Novo Nordisk A/S, 766 A.2d 8, 12 (Del. 2000) (holding that suits seeking a declaration of rights under contract are not appropriate for equitable estoppel).[4]

In Count V, DuPont fails to specify the "conduct and representations" of Lumbermens in any way, and fails even to allege that the conduct and representations are fraudulent or misleading. As paragraph 103 of Count V incorporates all previous paragraphs of the Complaint, DuPont presumably intends to rely on its conclusory allegations of fraud in Count IV. As previously shown, DuPont has failed to plead fraud with particularity or to demonstrate that its reliance upon any alleged misstatement was reasonable. Because DuPont has failed to establish the existence of actionable misrepresentations by Lumbermens, see

---

[4] The law of equitable estoppel in Illinois is similar to that of Delaware. To establish equitable estoppel in Illinois, a party must demonstrate that: (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that the representations are untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were acted upon; (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally; (5) the party claiming estoppel reasonably relied upon the representations in good faith and to their detriment; and (6) the party claiming estoppel has been prejudiced by his reliance on the representations. Parks v. Kownacki, 193 Ill.2d 164, 180, 737 N.E.2d 287, 296 (Ill. 2000) (holding that plaintiff failed to sufficiently allege elements of equitable estoppel). See also Campos v. Campos, 342 Ill. App. 3d 1053, 1066, 796 N.E.2d 1101, 1112 (1st Dist. 2003) (same). As with Delaware law, application of Illinois law would thus mandate the dismissal of Count V.

Tenneco Automotive Operating Co., 375 F.Supp. 2d at 375, or to demonstrate reasonable reliance on its part, see Pell v. E.I. DuPont De Nemours & Co., 348 F.Supp. 2d at 313, Count V should be dismissed.

Moreover, Delaware law requires that a party seeking equitable estoppel must change its position in reliance upon the alleged misrepresentation to its detriment. Waggoner v. Laster, 581 A.2d at 1136. As noted above, Lumbermens' alleged "conduct and representations" induced no change in DuPont's position. DuPont merely renewed insurance coverage that it had been purchasing from Lumbermens since 1971. (Compl. ¶ 10.) Finally, to the extent that DuPont is using this action to seek a declaration of its rights under the insurance policy (Count II, declaratory judgment, and Count VII, reformation), equitable estoppel is an inappropriate remedy. Genencor, 766 A.2d at 12. For all of these reasons, Count V should be dismissed.

### D.      DuPont Fails to State a Claim for Breach of Contract (Count VI)

DuPont's claim for breach of contract at Count VI alleges that Lumbermens agreed to credit dividends to DuPont and that Lumbermens breached its contractual obligation to do so by "disallowing" a dividend credit. (Compl. ¶¶ 109 – 113.) DuPont further alleges two additional bases for its breach of contract claim, arising from the "disallowance" of the dividend. DuPont contends that after crediting the disallowed dividend in its favor, Lumbermens owes DuPont $119,111.00, and that because DuPont did not receive a dividend credit of $4,532,579, the amount of security held by Lumbermens, to secure DuPont's unpaid obligations to Lumbermens, is in excess of what Lumbermens is entitled to hold. (Id.) DuPont's self-serving interpretation of the contract between it and Lumbermens is contradicted by the express terms of the contract attached as Exhibit 1.

Federal Rule of Civil Procedure 10(c) provides, in part, that: "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P.

10(c) (West 2005).  Moreover, where a factual discrepancy between the pleading and the exhibit

exists, the exhibit controls.  See Ala, Inc. v. Ccair, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994); In re

SHC, Inc., 329 B.R. 438, 442 (Bankr. D. Del. 2005).[5]  Here, while DuPont's Complaint avers

that Lumbermens was contractually obligated to declare and issue a dividend, and that DuPont

had a contractually vested right in the receipt or credit of that dividend, the Insurance Program

provides otherwise.  (Compl. ¶¶ 109 – 113.)

> As to the dividend, the  insurance policy provides in relevant part that:

>> Recognizing that *dividends cannot be promised or guaranteed* and noting that dividends are declared at the *sole discretion of [Lumbermens'] Board of Directors*, this quotation constitutes no more than agreement to recommend the proposed formula, after the expiration of the term to which the dividend declaration shall be applicable to the Board of Directors for consideration and action.

>> Accordingly, at any given dividend determination, the Board of Directors may or may not adopt the proposed formula or may subject such formula to a change as their authority allows. *All dividends are recallable.*

> (Compl. at Ex. 1,  p. 12) (emphasis added.)

Contrary to DuPont's allegations, the contract provides that Lumbermens makes no

guarantees that a dividend to DuPont will be issued.  Rather, whether a dividend will be issued

lies within the sole discretion of the Lumbermens' Board.  Id.; see also 215 ILCS 5/53 ("The

board of director or trustees of any company subject to the provisions of this article doing the

kind or kinds of insurance business described in Class 1 of section 4 *may* declare dividends to its

members.") (emphasis added).  DuPont claims a contractual right to a dividend which was

---

[5] See also Goodman v. Board of Trustees, 498 F. Supp. 1329, 1337 (N.D. Ill. 1980) ("Where … the plaintiff's cause of action arises out of a contract which has been attached as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate.").

neither "promised [n]or guaranteed." (Compl. at Ex. 1, p. 12.) Because the purported breach of contract – Lumbermens' failure to declare and issue a dividend to DuPont's benefit – was purely within the discretion of Lumbermens under the contract, DuPont has no right to such a dividend and cannot state a cause of action for breach of contract.

Similarly, the two other alleged grounds for DuPont's breach of contract claim are merely derivative of their first. To the extent that DuPont fails to state a claim for breach of contract regarding the dividend, then its other alleged bases for its breach of contract claim must also fail. Had a dividend been declared, DuPont argues, Lumbermens would have owed DuPont $119,111.00. (Compl. ¶ 112.) Further, DuPont alleges that because it does not owe Lumbermens $4,532,579, Lumbermens is holding excess collateral. (Compl. ¶ 113.) Both of these arguments fail, insofar as they depend upon DuPont having a right to the declaration and receipt of a dividend. Clearly, DuPont can claim no such right, and its claim for breach of contract fails.

### E.    DuPont Fails to State a Claim for Reformation (Count VII)

Notwithstanding the unambiguous language of the contract at issue, DuPont asserts that reformation is warranted as a result of some mutual mistake of the parties. (Comp. ¶¶ 114-18.) DuPont's assertion is unaccompanied by any particularized statements that support its claim or would rebut the unambiguous language in the contract setting forth that the declaration and issuance of dividends by Lumbermens rests solely within its discretion.

Both Delaware and Illinois law recognize that properly pled allegations of mutual mistake may serve as a basis for reformation. See Jefferson Chemical Co. v. Mobay Chemical Co., 253 A.2d 512, 516 (Del. Ch. 1969) ("Implicit in the term of 'reformation' in law is the need for a change in the written instrument. It is made so that the agreement as reformed will reflect the true intent of the parties. Consequently, unless the court finds that the parties are charged

with having orally agreed on particular material terms, there is no contract to be reformed, regardless of defendant's conduct and plaintiff's mistake."); Schivarelli v. Chicago Transit Authority, 823 N.E.2d 93, 100 (Ill. App. Ct. 2005) ("To state a cause of action for reformation of a contract, the plaintiff must assert (1) the existence and substance of an agreement between the parties and the identity of the parties to the agreement; (2) that the parties agreed to reduce their agreement to writing; (3) the substance of the agreement; (4) that a variance exists between the parties' original agreement and the writing; and (5) mutual mistake or some other basis for reformation.").  However, DuPont fails to adequately allege a claim for reformation.

DuPont asserts in a conclusory manner that the parties' mutual intent was that DuPont would not be required to pay the balance of the premium – the difference between the initial estimates subject premium and the final audited subject premium – without receiving credit for dividend.  (Compl. ¶ 118.)  DuPont's allegations of mutual mistake fail to state a claim upon which relief can be based.

When seeking reformation based upon mutual mistake, a plaintiff must show the material terms of a contract as executed fail to reflect both parties' true intent.  See Collins v. Burke, A2d 999, 1002 (Del. 1980).  Allegations of mutual mistake must be pled with sufficient particularity. See Fed R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity."); Gracelawn Memorial Park, Inc. v. Eastern Memorial Consultants, Inc., 291 A.2d 276, 276 (Del. 1972) (extending Rule 9(b) particularity requirements to allegations of mutual mistake underlying claim for reformation); Jefferson Chem. Co., Inc. v. Mobay Chem. Co., 253 A.2d 512, 516 (Del. Ch. 1969) (dismissing reformation claim for failure to plead with particularity).

Here, DuPont alleges no facts in support of its claim for reformation of the unambiguous insurance contract at issue. Rather, DuPont asserts only that it was never the intent of the parties that it would be obligated to pay the full difference between the full audited subject premium without receiving credit through a dividend. (Compl. ¶ 118.) DuPont fails to identify, much less with the requisite particularity, any purported oral agreement between DuPont and Lumbermens wherein the parties allegedly agreed to a insurance program that varied materially from the contract reduced to writing.

For a court to reform a written instrument, a plaintiff must identify the specific terms agreed upon orally, but which failed to manifest themselves in the written agreement. See Hob Tea Room v. Miller, 89 A.2d 851, 856-57 (Del. 1952) ("Unless there was a clear understanding with which the formal contract conflicts, there is, of course, no comparative standard upon which to base a reformation, and the contract as executed must stand."). DuPont does not identify, as it must, any such alleged oral agreement, including such an agreement was reached, the persons reaching such an agreement, or the terms of such an agreement. Rather than identify, with particularity, what the parties allegedly agreed upon, DuPont merely alleges what was not agreed upon. (Compl. ¶ 117.) More is required to state a claim for reformation. See id. ("All we know is that the plaintiff made a mistake. But in a good faith transaction her mistake alone constitutes no basis for reformation.").

DuPont does not identify any alleged oral understanding different from the unambiguous contract between the parties. The contract unambiguously provides: "[r]ecognizing that dividends cannot be promised or guaranteed and noting that dividends are declared at the sole discretion of the Company's Board of Directors, this quotation constitutes no more than an agreement to recommend the proposed formula, after the expiration of the term to which the

-19-

dividend declarations shall be applicable to the Board of Directors for consideration and action." See Compl. at Ex. 1, p. 12; see also Auth Sausage Co., Inc. v. Dutch Oven II, Inc., No. 1989-86, 2001 WL 209817 at *3 (Del. Super. Ct. Jan. 16, 2001) (holding that where a contract is not ambiguous on its face, reformation is not appropriate, and the court "will enforce the document according to the terms set forth within its "four corners").

While DuPont's Complaint is replete with references to its insurance brokers' objections to Lumbermens' attempt to collect upon monies due and owing, DuPont fails to provide any details of an alleged oral agreement that differed from the terms of the insurance program. Absent such particular facts establishing a mutual mistake, DuPont's reformation claim must fail. See Jefferson Chemical, 253 A.2d at 516.

## VI.    CONCLUSION

For the foregoing reasons, Lumbermens Mutual Casualty Company respectfully requests that the Court dismiss Counts III, IV, V, VI and VII of DuPont's Complaint.

Respectfully submitted,

OF COUNSEL:

Michael M. Eidelman
Randall M. Lending
Jeffery M. Heftman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street Suite 2600
Chicago, IL 60601-1003


Dated: January 9, 2006

/s/ M. Duncan Grant
David B. Stratton (DE No. 960)
M. Duncan Grant (DE No. 2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

Attorneys for Defendant
Lumbermens Mutual Casualty Company

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2006, I electronically filed the foregoing
Lumbermens Mutual Casualty Company's Opening Brief in Support of its Motion to Dismiss
Counts III, IV, V, VI and VII of Du Pont's Complaint using CM/ECF which will send
notification of such filing to the following:

> John E. James, Esq.
> Richard L.  Horwitz, Esq.
> Potter, Anderson & Corroon
> Hercules Plaza
> 1313 N. Market Street
> Wilmington, DE  19801

and upon the following counsel by first class mail, postage prepaid:
> Christopher C. French, Esq.
> Kirkpatrick & Lockhart Nicholson Graham, LLP
> Henry W. Oliver Building
> 535 Smithfield Street
> Pittsburgh, PA  15222-2312

/s/ M. Duncan Grant
M. Duncan Grant (DE No. 2994)