# Westlaw.

Not Reported in A.2d                                                                    Page 1

Not Reported in A.2d, 2001 WL 209817 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

C
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
AUTH SAUSAGE CO., Inc.
v.
DUTCH OVEN II, INC. & Kail
No. 1-19-078.

Jan. 16, 2001.

Dear Counsel:

SLIGHTS, J.
*1 This is the Court's decision on defendant, William K. Kail's, motion to vacate tentative judgment pursuant to 10 *Del. C.* § 2306. The parties agreed during the presentation of the motion that a judgment by confession and a writ of execution should be issued against defendant, Dutch Oven II, Inc. ("Dutch Oven"), in the principal amount of $18,640.07, plus $2,236.81 in accrued interest and $4,660.02 in attorney's fees. Accordingly, the Prothonotary is directed to enter judgment in favor of the plaintiff and against defendant, Dutch Oven II, Inc., in the amount of $25,536.90. An appropriate writ of execution shall issue as well.

Plaintiff also seeks a judgment by confession against defendant, William K. Kail ("Kail"), a fifty percent owner of Dutch Oven, based upon a Personal Guarantee signed by Kail. [FN1] Specifically, plaintiff alleges that Kail signed the Personal Guarantee in his individual capacity at the same time he bound the corporation to a Credit Agreement with plaintiff in a representative capacity, as president of Dutch Oven. The Personal Guarantee appears at the bottom of the form Credit Agreement. Kail signed both the Credit Agreement and the Personal Guarantee as: "William K. Kail, President." Kail's signature on the Personal Guarantee was witnessed by a sales representative for the plaintiff. Soon thereafter, the plaintiff's comptroller (and president), Dennis Marchitelli (" Marchitelli"), noted his authorization of the Credit Agreement by executing the document at the designated location on the form.

> FN1. Pursuant to Superior Court Civil Rule 58.1, a consent hearing was held at which time Kail agreed that he waived notice and hearing but objected to the entry of a final judgment by confession. A second hearing was held thereafter during which the Court received testimony and evidence regarding Kail's objections.

The plaintiff alleges that Kail's signature on the Personal Guarantee evidences his intention to be liable personally to plaintiff in the event the corporate defendant defaulted on its obligations. Kail alleges that his signature on the Personal Guarantee evidences his intention to obligate only the corporate defendant as clearly indicated by the fact that he signed both the Credit Agreement and the Personal Guarantee in a representative capacity.

The testimony reveals that plaintiff, through Marchitelli, requested Kail to execute a new Personal Guarantee when Dutch Oven began to fall behind on its payment obligations. Specifically, Marchitelli requested that Kail sign the Personal Guarantee without reference to his capacity as president of Dutch Oven. Kail refused to sign a new Personal Guarantee, indicating that he had no intention of becoming personally liable on Dutch Oven's debts.

Plaintiff bears the burden of proving that defendant waived his rights to notice and a hearing by executing the Personal Guarantee. *Pellaton v. Bank of New York,* Del.Supr., 592 A.2d 473, 476 (1991); Del.Super. Civ. R. 58.1(a)(5). If plaintiff carries its burden to prove waiver of notice and hearing, the burden of proof then transfers to the defendant to raise defenses in accordance with 10 *Del. C.* § 2306(j) at a subsequent hearing. *Barclays American*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                      Page 2

Not Reported in A.2d, 2001 WL 209817 (Del.Super.)
(Cite as: Not Reported in A.2d)

*Business Credit, Inc. v. Otterstrom*, 673 F.Supp. 128, 134 (D.Del.1987)(debtor bears the burden of proving defenses by a preponderance of the evidence). Because the parties have agreed that Kail waived notice and hearing, judgment was entered against Kail in open court. The Court's decision here addresses Kail's substantive objections to the Personal Guarantee. As stated, he bears the burden of proving these defenses by a preponderance of the evidence.[FN2]

> FN2. The Court is satisfied that Kail did not have knowledge of his defense at the time he executed the Personal Guarantee since he did not learn that plaintiff would take the position that he had signed the document in his personal capacity until these proceedings began. *See* 10 *Del. C.* § 2306(j).

*2 The Court finds that Kail did not execute the document in his individual capacity. The Credit Agreement and Personal Guarantee are form contracts generated by the plaintiff. Kail's signature on the Personal Guarantee clearly reflects that he signed the document in a representative capacity. While not directly on point, the Uniform Commercial Code is instructive here. Specifically, 6 *Del. C.* § 3-402(b)(1) provides that:
[W]hen an individual signs a negotiable instrument unambiguously in a representative capacity, the individual shall not be liable on the document.

The Court is satisfied that Kail's signature on the Personal Guarantee unambiguously reveals that he signed the document in his capacity as president of Dutch Oven, not in an individual capacity. Indeed, his signature on the Personal Guarantee is identical to his signature on the Credit Agreement, an obligation which clearly runs from Dutch Oven (and Dutch Oven only) to the plaintiff. Moreover, it is reasonable under the circumstances for Kail to have believed at the time he executed the Personal Guarantee that he was committing the corporation to guarantee the debts of the restaurant it operates, Dutch Oven Restaurant. "Dutch Oven Restaurant", not Dutch Oven II, Inc., is listed as the "customer" in the Credit Agreement. The "customer" is not identified in the Personal Guarantee; the form contract was left blank where the customer was to be identified. Kail reasonably viewed "Dutch Oven Restaurant" as the customer and the corporation as the guarantor for the purposes of the Personal Guarantee. While this arrangement may seem counter intuitive to a sophisticated businessperson, the Court finds that Kail was not sophisticated in the ways of business, particularly with respect to the workings of personal guarantees.

The Court's ruling is further supported by the fact that a sales representative of the plaintiff personally witnessed Kail's signature to the Personal Guarantee. To the extent the plaintiff was insisting upon a personal guarantee from Kail, its representative should have advised Kail that his signature on the Personal Guarantee in a representative capacity was unacceptable. It is clear, however, that neither the sales representative nor Marchitelli (who later approved the document) expressed any concern with respect to the form of Kail's signature on the Personal Guarantee at or near the time the document was executed. Rather, it was only after the corporate defendant became delinquent on its account that Marchitelli questioned Kail's signature. Marchitelli's concern regarding the clarity and consequences of his document came too late.

Finally, the Court is not satisfied that a reformation of the Personal Guarantee is appropriate. "When an agreement is formally reduced to writing and stands unrescinded, the contracting parties will be held to its terms unless through mutual mistake, stenographic negligence, or mistake of one party together with fraud, overreaching or inequitable conduct on the part of the other contracting party, the agreement fails to express the contract actually made." *Demetriades v. Kledarus,* Del. Ch., 121 A.2d 293, 295 (1956). None of the criteria for reformation are satisfied here.

*3 Based on the foregoing, the Court finds that the Personal Guarantee is not ambiguous. Accordingly, the Court will enforce the document according to the terms set forth within its "four corners." *See, Pellaton,* 592 A.2d at 478 ("if [an] instrument is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 3

Not Reported in A.2d, 2001 WL 209817 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

clear and unambiguous on its face, neither this Court nor the trial court may consider parol evidence 'to interpret it or search for the parties' intent[ions]" ') (citations omitted); *Scott v. Land Lords, Inc.,* Del.Supr., No. 34, 1992, 1992 Del. LEXIS 349, Moore, J., at *9 (Sept. 22, 1992)(ORDER)(absent ambiguity "the parties' understanding is that which is contained within the four corners of the Agreement"). Kail's motion to vacate tentative judgment, therefore, is GRANTED.

IT IS SO ORDERED.

Del.Super.,2001.
Auth Sausage Co. v. Dutch Oven II, Inc.
Not Reported in A.2d, 2001 WL 209817 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.