**Westlaw.**

Not Reported in A.2d

Page 1

Not Reported in A.2d, 1997 WL 716901 (Del.Super.)
(Cite as: Not Reported in A.2d)

C
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Robert SPROUT and John Schmuck, Plaintiffs,
v.
ELLENBURG CAPITAL CORPORATION, d/b/a "Ell-Cap Rehoboth Communities, Inc."
and Christoff A.G. Tulou, in his capacity as Secretary of the Department of Natural Resources & Environmental Control, State of Delaware, and Camelot Mobile Home Park, Inc., and W.J. Chappy Lehman
and Frederick Warwick, in his capacity as Investigative Supervisor, State Division of Consumer Affairs., Defendants.
No. Civ.A. 95C-05-025.

Aug. 26, 1997.

Gerry Gray, Georgetown, DE, for plaintiff.
Michael Malkiewicz, Barros, McNamara, Scanlon, Malkiewicz & Taylor, P.A., Dover, DE, for defendant, Ellenburg Capital Corporation.
Jeanne L. Langdon, Department of Natural Resources and Environmental Control, Dover, DE, for defendant, Christoff A.G. Tulou, in his capacity as Secretary of the Department of Natural Resources & Environmental Control and Frederick Warwick, in his capacity as Investigative Supervisor, State Division of Consumer Affairs.

MEMORANDUM OPINION

GRAVES, J.
*1 Robert Sprout and John Schmuck ("Plaintiffs") filed this action against Defendants Ellenburg Capital Corporation, d/b/a Ell-Cap Rehoboth Communities, Inc. ("Ellenburg"), Camelot Mobile Home Park, Inc. ("Camelot"), W.J. Chappy Lehman ("Lehman"), principal owner and operator of Camelot, Christoff A.G. Tulou ("Tulou"), in his official capacity as Secretary of the Department of Natural Resources & Environmental Control ("DNREC"), and Frederick Warwick ("Warwick"), in his official capacity as Investigative Supervisor for the State Division of Consumer Affairs ("Division"), stating claims resulting from episodes related to septic discharges into their mobile home. At this time, Defendants Tulou and Warwick (also referred to collectively as "the State") and Ellenburg have moved to dismiss Plaintiffs' claims pursuant to Super.Ct.Civ.R. 12(b)(6). The issues have been briefed and this constitutes my decision herein.

PROCEDURAL AND FACTUAL HISTORY

On or about July 18, 1990, Plaintiffs purchased a mobile home and subsequently leased a lot from Camelot and Lehman in the Camelot Mobile Home Park ("the park") in Rehoboth, Delaware. After loving into their home, Plaintiffs noticed a repugnant odor emanating from under their master bedroom, and upon investigating, discovered problems with their septic system. Plaintiffs allege that Lehman and Camelot knew about these problems at the time of purchase and concealed the fact that a septic drainage field ran beneath their home. However, this Court dismissed Defendants Camelot and Lehman because the statute of limitations barred Plaintiffs' claims against them.

In April, 1992, Lehman and Camelot sold the park to Ellenburg. At that time, Camelot and Ellenburg attempted to fix the defective septic system. However, a backhoe was parked on the existing drainage field and part of the field collapsed, thus exacerbating the septic problems in Plaintiffs' home. In an attempt to remedy the situation, Ellenburg contracted with Leon Burton & Son, Inc. ("Leon") to install a new septic system on Plaintiffs' lot. However, Leon incorrectly attached the final couplings, thereby causing additional raw sewerage to accumulate beneath Plaintiffs' home.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                              Page 2

Not Reported in A.2d, 1997 WL 716901 (Del.Super.)
(Cite as: Not Reported in A.2d)

After Ellenburg installed the proper couplings, Plaintiffs continued to complain about foul odors coming into their home. Plaintiffs claim that because the original septic system for the two adjacent lots continued to run directly beneath Plaintiffs' master bedroom, the offensive smell never abated. Plaintiffs assert that Ellenburg began harassing them after they complained about the septic problems to DNREC and the Division by attempting to evict them, by sending maintenance personnel into their home without notice for non-emergency repairs, and by accusing them of violating certain set-back requirements after giving them permission to install a carport and driveway.

In April, 1994, Ellenburg instituted an action for back rent and possession of the lot in the Justice of the Peace Court No. 17 ("J.P.Court"). Plaintiffs elected not to file a counterclaim at that time in reliance on 10 *Del.C.* § 9536. [FN1]

> FN1. At the time Ellenburg sued Plaintiffs in J.P. Court in 1994, 10 *Del.C.* § 9536 stated in pertinent part:
> (a) In every action before a justice of the peace, within his jurisdiction, the defendant, if he has against the plaintiff any account, demand, or cause of action, cognizable before a justice of the peace, shall bring it forward and plead it as a setoff; and the justice shall enter on his docket the nature and amount of such counterclaim. Any defendant, neglecting to do so, shall, if the action against him be prosecuted to judgment, lose such account, demand, or cause of action, and be forever barred from recovering it.
> (b) If the defendant has any account, demand or cause of action, against the plaintiff, exceeding $5,000, the defendant may bring it forward and plead it as a setoff as specified in subsection (a) of this section, or not, at the defendant's pleasure, and shall not, by neglecting so to plead it, lose such cause of action.
> Subsequently, 10 *Del.C.* § 9536(b) was amended on January 15, 1995, to increase the monetary threshold to $15,000.

*2 At the hearing before the J.P magistrate, Ellenburg claimed that Plaintiffs wrongfully withheld rent, failed to correct an encroachment on an adjacent lot, and failed to reduce the height of a shed. The J.P Court granted Ellenburg back rent, but denied Ellenburg possession of the lot. Additionally, the J.P. magistrate refused to rule on the alleged encroachment and height violations because of a lack of evidence. Plaintiffs never appealed the magistrate's decision.

With respect to Plaintiffs' complaint against Tulou, plaintiffs claim that DNREC responded late on many occasions to calls for assistance, and that DNREC merely told them to put lime in their soil after testing it and finding unhealthy levels of contaminants. Plaintiffs argue that DNREC knew the lot contained unhealthy levels of contaminants but failed to take appropriate remedial measures to protect the public's health, safety, and welfare.
With respect to Plaintiffs' complaint against Warwick, Plaintiffs contend that when they requested the Division to enforce the Mobile Home Lots and Leases Act, the Division lost their complaint after a lengthy delay and then failed to take any further action.

On October 13, 1995, Plaintiffs filed an amended complaint in this Court seeking the following relief: (1) rent abatement; (2) damages against Ellenburg for retaliatory eviction, failure to disclose material defects on the lot, consumer fraud, and negligence; (3) damages against the State for gross or wanton negligence; and, (4) damages against Leon for negligence for incorrectly installing the new septic system. However, Plaintiffs never served any of the defendants with the amended complaint.
Although I do not consider this amended complaint relevant to this motion since it never has been served, I do examine Count VIII thereof for the sake of judicial economy.

On August 23, 1995, the State filed a motion to dismiss and the Court ordered the parties to brief the motion. After briefing, the Court permitted Plaintiffs to conduct discovery on the issue of whether the State had insurance to cover Plaintiffs' claim. Although the Court initially set the discovery deadline for May 31, 1996, Plaintiffs

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                       Page 3
Not Reported in A.2d, 1997 WL 716901 (Del.Super.)
(Cite as: Not Reported in A.2d)

later were given until August 1, 1996 to complete discovery. Subsequently, Plaintiffs informed the Court that they would not conduct discovery until the Court ruled on the State's motion to dismiss. At this time, therefore, the only evidence before the Court on the issue of State insurance is an affidavit submitted by Debra Lawhead, Insurance Coverage Officer for the State, swearing that there is no insurance to cover Plaintiffs' claim. The affidavit, moreover, renders the State's motion to dismiss a motion for summary judgment. Super.Ct.Civ.R. 12(b).

As noted earlier, this Court dismissed Lehman and Camelot from this action. In addition, the parties agree that Count III against Ellenburg has been resolved.

On October 23, 1995, Ellenburg filed a motion to dismiss and the parties subsequently entered into a briefing schedule. However, Ellenburg failed to file its reply brief until April 17, 1997, which caused this matter to languish in the meantime.

*3 Currently, Plaintiffs have the following claims against the State and Ellenburg:
1) In Count VI, Plaintiffs have sued Tulou in his official capacity as Secretary of DNREC for gross and wanton negligence;
2) In Count VII, Plaintiffs have sued Warwick in his official capacity as Investigative Supervisor for the Division for gross and wanton negligence;
3) In Counts I, II, IV, V, and VIII, Plaintiffs have sued Ellenburg for rent abatement, retaliatory eviction, consumer fraud pursuant to 6 Del.C. § 2513, common law fraud, and negligence.

Accordingly, at this time the Court considers the State's motion for summary judgment and Ellenburg's motion to dismiss.

STANDARD OF REVIEW

When the Court considers a motion to dismiss for failure to state a claim pursuant to Super.Ct.Civ.R. 12(b)(6), the Court accepts all well-pleaded allegations as set forth in the complaint as true and determines whether the plaintiff could recover under "any reasonably conceivable set of circumstances susceptible to proof under the complaint." *Silence v. Funk*, Del.Supr., 396 A.2d 967 (1978). However, if a defendant supplements the pleadings with an affidavit, the Court will treat a motion to dismiss as a motion for summary judgment. *Shultz v. Delaware Trust Co.*, Del.Super., 360 A.2d 576 (1976). As noted earlier, the State has submitted an affidavit for the Court's consideration. Consequently, the Court will treat the State's motion to dismiss as one for summary judgment pursuant to Super.Ct.Civ.R. 56.

When considering a motion for summary judgment, the Court will view the record in a light most favorable to the non-moving party. *Alabi v. DHL Airways, Inc.*, Del.Super., 583 A.2d 1358 (1990).
The moving party bears the burden of showing that there are no genuine issues of material fact so that he is entitled to judgment as a matter of law. *Moore v. Sizemore*, Del.Supr., 405 A.2d 679 (1979). To overcome the moving party's motion, the opposing party must allege specific facts demonstrating a genuine issue of material fact. *E.K. Geyser v. Blue Rock Shopping Center, Inc.*, Del.Super., 229 A.2d 499 (1967). If the non-moving party fails to controvert the movant's affidavits or otherwise supplement the record with an affidavit of his own, then the motion for summary judgment should be granted. *Nix v. Sawyer*, Del.Super., 466 A.2d 407 (1983).

DISCUSSION

I. State's Motion for Summary Judgment

In its motion for summary judgment, the State presents one issue for the Court's consideration: whether Plaintiffs' claim is barred by sovereign immunity. The essence of the State's argument is that if there is no insurance to cover Plaintiffs' claim, nor any other independent waiver of immunity under the State Tort Claims Act ("the Act"), [FN2] then the inquiry ends and summary judgment must be granted in the State's favor. In response, Plaintiffs argue that summary judgment is improper because factual questions exist is to whether

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 4
Not Reported in A.2d, 1997 WL 716901 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Defendants Tulou and Warwick engaged in ministerial acts and committed gross negligence, and whether the State independently waived its sovereign immunity by providing DNREC and the Division with the statutory power to sue and be sued. additionally, Plaintiffs argue that they should be given the opportunity to conduct discovery to determine whether the State has insurance to cover their claim. The parties' arguments are evaluated below.

> FN2. 10 *Del.C.* § 4001-04.

*4 Article I, § 9 of Delaware's Constitution of 1897 provides hat the only way the State's sovereign immunity may be waived is by act of the General Assembly. *Shellhorn v. Hill,* Del.Supr., 187 A.2d 71, 74-75 (1962). Therefore, unless Plaintiffs can identify some means by which the State has waived DNREC's and the Division's sovereign immunity, Plaintiffs' suit must fail. *Doe v. Cates,* Del.Supr., 499 A.2d 1175, 1176-77 (1985).

While the State is considered to have presumptively waived its sovereign immunity under 18 *Del.C.* § 6511 [FN3] for any risk or loss covered by the State's insurance coverage program, if there is no insurance to protect the State against a particular wrongful act, then the State retains its sovereign immunity. *Turnbull v. Fink,* Del.Supr., 668 A.2d 1370, 1376 (1995); *Pipkin v. Department of Highways and Transp.,* Del.Super., 316 A.2d 236, 239 (1974). In this case, the State has submitted an affidavit from Debra Lawhead stating that there is no insurance applicable to Plaintiffs' claim. In spite of this, Plaintiffs claim that Tulou and Warwick are liable under 10 *Del.C.* § 4001 for committing gross acts of negligence in the performance of their ministerial duties.

> FN3. 18 *Del.C.* § 6511 states in pertinent part:
> The defense of sovereign immunity is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.

Under 10 *Del.C.* § 4001, [FN4] the Legislature provided State agencies and employees with sovereign immunity for acts done in good faith, without gross or wanton negligence, and arising out of and in connection with their official duties involving the exercise of discretion. Conversely, public employees may be liable for ministerial acts performed in a grossly negligent or bad faith manner. However, even if public employees perform their duties in bad faith or with gross negligence, Plaintiffs' suit is barred by sovereign immunity if the State does not possess insurance to cover Plaintiffs' claim. *Doe v. Cates,* Del.Supr., 499 A.2d 1175, 1176-77 1985).

> FN4. 10 *Del.C.* § 4001 states in pertinent part:
> Except as otherwise provided by the Constitutions or laws of the United States or of the State ... no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee ... in any civil suit ... where the following elements are present:
> (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer ...;
> (2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and
> (3) The act or omission complained of was done without gross or wanton negligence ... .

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00699-SLR-MPT   Document 38-4   Filed 01/10/2006   Page 5 of 9

Not Reported in A.2d                                                                          Page 5
Not Reported in A.2d, 1997 WL 716901 (Del.Super.)
(Cite as: Not Reported in A.2d)

In *Doe,* the Supreme Court held that 10 *Del.C.* § 4001 serves to *limit* the State's liability where it has, by some means independent of § 4001, waived immunity." *Doe,* 499 A.2d at 1181 (emphasis added). In other words, the Court determined that § 4001 did not provide a cause of action against officials who performed their duties with gross negligence or in bad faith if there was no insurance to cover the claim. Id. The Court determined that any other interpretation of § 4001 would have the unintended effect of waiving immunity even in cases where no insurance coverage had been provided under the Insurance Act of 18 *Del.C.* ch. 65." *Id.*

In this case, Debra Lawhead has submitted an affidavit explaining that there is no insurance to cover Plaintiffs' claim, and Plaintiffs have failed to allege any specific facts to the contrary. Instead, Plaintiffs' argue that they should be entitled to conduct discovery on the issue of State insurance to determine if they can find evidence to dispute Ms. Lawhead's affidavit. Super.Ct.Civ.R. 12(b). However, on April 16, 1996, I authorized Plaintiffs to conduct discovery on this issue, and Plaintiffs chose not to conduct discovery until the Court ruled on the State's motion to dismiss. At this time, therefore, I will not delay the proceedings any further to allow further discovery, and thus, I find no merit to this argument. Accordingly, because there is no genuine issue of material fact on this issue, I find that the State has not waived its sovereign immunity pursuant to 18 *Del.C.* § 6511, where there is no insurance to cover Plaintiffs' claim.

*5 Alternatively, Plaintiffs attempt to show that the State has waived DNREC's and the Division's sovereign immunity by providing them with the " statutory power to sue or be sued." *Sandt v. Delaware Solid Waste Auth.,* Del.Super., 640 A.2d 1030 (1994); *Masten v. State,* Del.Super., 626 A.2d 838 (1991) (citing *Department of Community Affairs and Econ. Dev. v. M. Davis & Sons, Inc.,* Del.Supr., 412 A.2d 939 (1980) (hereinafter *"Davis* "). Plaintiffs contend that DNREC has the power to sue under 7 *Del.C.* § 6005, and the power to be sued under 7 *Del.C.* § 6009. Additionally, Plaintiffs contend that the Division has the power to sue and be sued under 29 *Del.C.* § 8824. However, in spite of Plaintiffs' contentions, the Court finds that neither DNREC nor the division have the power "to sue or be sued", as that phrase is used in *Sandt* and *Davis, supra.*

In *Sandt,* a pedestrian sued the Delaware Solid Waste Agency ("DSWA") after being struck by a DSWA vehicle. In finding that the state had waived DSWA's sovereign immunity, the Court noted that the "General Assembly clearly provided in 7 *Del.C.* § 6406(a)(5) that the DSWA has the power to '[s]ue and be sued' ". *Sandt,* 640 A.2d at 1035. Similarly, in *Davis* a corporation brought a mechanics' lien action against the Department of Community Affairs and Economic Development (" DCAED"). The Court found that DCEAD waived its sovereign immunity pursuant to 6 *Del.C.* § 7003(c)(1), which stated:
The Department may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes including ... the rights and powers described below:
(1) To sue and be sued, implead and be impleaded, complain and defend in all courts.

In contrast to the clear statutory language analyzed by the court in *Sandt* and *Davis,* in this case there is no statutory language which specifically empowers DNREC or the Division to sue or be sued. 7 *Del.C.* § 6005 merely provides DNREC with the authority to take enforcement actions for violations of 7 *Del.C.,* Chapter 60, while 7 *Del.C.* § 6009 simply permits an aggrieved party to appeal a decision of the Environmental Appeals Board ("Board") to Superior Court. As the State points out, the Board is not being "sued" when a claimant appeals one of its decisions any more than this Court is being "sued " when an appeal is taken to the Supreme Court.

Likewise, Plaintiffs' argument that the Division has the power to sue or be sued also fails because 29 *Del.C.* § 8824 simply provides the Consumer Affairs Board with authority to hear appeals from the Division's decisions. There is simply no other basis independent of 10 *Del.C.* § 4001 by which the State has waived DNREC's or the Division's sovereign immunity. *Doe, supra.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                     Page 6
Not Reported in A.2d, 1997 WL 716901 (Del.Super.)
(Cite as: Not Reported in A.2d)

Thus, in light of the foregoing, and considering the facts in the light most favorable to Plaintiffs, I find that the State has not waived its sovereign immunity either by providing insurance to cover Plaintiffs' claim or by providing DNREC or the Division with the authority "to sue or be sued". See *Sandt* and *Davis, supra.* Accordingly, I grant the State summary judgment on Plaintiffs' complaint against Tulou and Warwick by finding that their claims are barred by sovereign immunity.

## II. Ellenburg's Motion to Dismiss

*6 In its motion to dismiss, Ellenburg first argues that Plaintiffs' claims for rent abatement and retaliatory eviction under Counts I and II are barred by the principle of collateral estoppel because these issues were litigated previously in J.P. Court. In response, Plaintiffs assert that 10 *Del.C.* § 9536 presently allows them to bring their counterclaims in a separate civil suit in this Court. The parties arguments are evaluated below.

The doctrine of collateral estoppel, or issue preclusion, bars a party from relitigating a factual issue previously litigated in a prior case. *Columbia Cas. Co. v. Playtex FP, Inc.,* Del.Supr., 584 A.2d 1214 (1991). For collateral estoppel to apply, the issue must have been actually raised, fully litigated, and identical to the issue concluded in the earlier action, the issue must have been material and relevant to the disposition of the prior action, and the determination of the issue in the prior action must have been necessary and essential to the resulting judgment. *Elder v. El Di, Inc.,* Del.Super., C.A. No. 96C-09-007, Graves, J. (April 24, 1997) at 12-13. Where a question of fact essential to the judgment is litigated and determined by a valid and final judgment, the determination is conclusive. *Id.* at 1216 (citing *Tyndall v. Tyndall,* Del.Supr., 238 A.2d 343 (1968)). Notably, final judgments rendered in a J.P. Court are conclusive in this Court. *Desmond v. Lucks,* Del.Super., C.A. No. 87C-AP-20, Steele, J. (August 19, 1988).

In its decision below, the J.P. magistrate considered Ellenburg's claims for back rent and possession of Plaintiffs' lot. After hearing testimony, the magistrate determined that Plaintiffs owed Ellenburg $3,298.00 in back rent, but refused to evict plaintiffs or grant Ellenburg possession of the leased lot. Plaintiffs now claim a cause of action for rent abatement and retaliatory harassment in their complaint by arguing that 10 *Del.C.* § 9536 permits them to litigate these issues in this Court.

While Plaintiffs are correct in stating that 10 *Del.C.* § 9536 permits them to assert their counterclaims over $5,000 in a separate proceeding, Plaintiffs are incorrect in construing § 9536 to mean that they may bring previously litigated issues before this Court. Although Plaintiffs cite *Walker v. Fala,* Del.Super., C.A. No. 1122, Christie, J. (February 25, 1977) and *Bomba's Restaurant & Cocktail Lounge, Inc. v. Lord De La Warr Hotel, Inc.,* Del.Supr., 389 A.2d 766 (1978) (hereinafter "*Bomba*") to support their position, neither case holds that collateral estoppel is inapplicable by operation of 10 *Del.C.* § 9536.

In *Walker,* a commercial tenant received a default judgment in J.P. Court on a summary possession hearing and then filed a counterclaim in Superior Court. Because none of the tenant's counterclaims in Superior Court were previously before the J.P. magistrate, the Court held that the tenant could bring his counterclaims separately even if the counterclaim was an absolute defense in the summary possession suit below. The Court in *Walker* never mentioned 10 *Del.C.* § 9536. Similarly, in *Bomba* the Court merely held that a plaintiff had the right to litigate matters other than the right to possession in another court of competent jurisdiction. Nothing in *Bomba* could be construed to mean that a plaintiff may relitigate issues previously decided below.

*7 In this case, the J.P. Court denied Ellenburg's claim for possession and instead awarded back rent. Thus, the magistrate's final judgment on the issue of rent abatement is conclusive in this Court. *Desmond, supra.* However, the J.P. magistrate never considered Plaintiffs' retaliatory harassment claim under 25 *Del.C.* § 7018(b) [FN5] because Plaintiffs withheld the claim pursuant to 10 *Del.C.* § 9536. While the magistrate refused to evict Plaintiffs and determined that the parties presented

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                     Page 7

Not Reported in A.2d, 1997 WL 716901 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

a good faith dispute on the eviction issue, the magistrate never addressed Plaintiffs' claim that Ellenburg sent maintenance personnel into their home for non-emergency repairs and accused them for violating certain setback requirements after giving them permission to install a carport and driveway. Accordingly, because the J.P. magistrate never considered the claim, and because this Court is unable to determine whether the claim exceeds the $5,000 threshold under 10 *Del.C.* § 9536(b), I decline to dismiss Plaintiffs' claim against Ellenburg for retaliatory harassment at this time. Thus, I find that only Plaintiffs' claim for rent abatement is barred by collateral estoppel.

> FN5. 25 *Del.C.* § 7018(b) states:
> (b) Harassment of a tenant in the form of interruption of services, invasions of privacy or similar means in retaliation for any of the above actions shall constitute grounds for a civil suit in damages by the tenant against the landlord.

Ellenburg next argues, without citing any authority, that plaintiffs' claim under the Consumer Fraud Act ("the Act") is not ripe for adjudication in this Court because Plaintiffs failed to exhaust their administrative remedies. Alternatively, Ellenburg contends that the Act is inapplicable to leased mobile home lots. As an initial matter, I dismiss Plaintiffs' claim under the Act with respect to the allegation that Ellenburg induced them to purchase the mobile home because I find that Ellenburg had no involvement with the sale of Plaintiffs' mobile home.

With respect to Ellenburg's claim that Plaintiffs first must exhaust their administrative remedies before pursuing a claim under the Act in this Court, it is well-settled in Delaware that the Act permits a private cause of action for damages predicated upon 6 *Del.C.* § 2513(a). [FN6] *Young v. Joyce,* Del.Supr., 351 A.2d 857 (1975). In *Joyce,* the Supreme Court found that although the Act did not specifically create a private remedy, "sound logic and reason dictate that the consumer ought to be able to enforce the same claim in his own right." *Id.* at 859. Accordingly, the Court held that a consumer could assert a private cause of action under 6 *Del.C.* § 2513 without having to proceed first through the Attorney General. *Id.* Therefore, I find no merit to Ellenburg's argument that Plaintiffs' claim is not ripe for adjudication.

> FN6. 6 *Del.C.* § 2513(a) states in pertinent part:
> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

Ellenburg alternatively argues that the Act does not apply to "leased" mobile home lots because the term "sale" in 6 *Del.C.* § 2513 does not include leased real property. The Act defines "sale" as " any sale, offer for sale, or attempt to sell any merchandise for cash or on credit." 6 *Del.C.* § 2511(4). The Act defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services". 6 *Del.C.* § 2511(2).

*8 While the Act is liberally construed to protect the consumer, *Young, supra,* there are no Delaware cases which hold that the term "sale" includes leased real property, and the Court will not rewrite the plain language of 6 *Del.C.* § 2511(2) to provide plaintiffs a cause of action under the Act. Accordingly, I dismiss plaintiffs' claim under the Act because I find that the leased mobile home lot does not constitute a sale under 6 *Del.C.* § 2511 (4).

Finally, Ellenburg contends that because Plaintiffs failed to plead fraud and negligence with particularity, their claims should be dismissed pursuant to Super.Ct.Civ.R. 9(b). [FN7] Under Rule 9(b), in order to plead fraud sufficiently, Plaintiffs must specify the time, place, and contents of the false representations, as well as the identity of the person making the representations. *Nutt v. A.C. &*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 8
Not Reported in A.2d, 1997 WL 716901 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

S., Inc., Del.Super., 466 A.2d 18, 23 (1983). Additionally, in order to plead negligence sufficiently, Plaintiffs must specify that duty, if any, was breached, who breached it, what act or failure to act breached the duty, and the party upon whom the act was performed. Myer v. Dyer, Del.Super., 542 A.2d 802, 805 (1987). The purpose of the particularity requirement is to enable the defendant to prepare a defense to the charges.

> FN7. Super.Ct.Civ.R. 9(b) states in pertinent part:
> **Fraud, Negligence, Mistake, Condition of Mind.** In all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity.

In this case, Plaintiffs' complaint for common-law fraud rely alleges that "Defendants' actions constitute common-law fraud in the State of Delaware." The pleading here is wholly insufficient to make a claim for fraud under Rule 9(b) in that it fails to provide the dates of the alleged misrepresentations, the contents of the alleged misrepresentations, and the identity of the persons making the alleged misrepresentations. Nutt, 466 A.2d at 23. Similarly, Plaintiffs' complaint is insufficient to make a claim for negligence because it merely alleges that Ellenburg's acts constitute "reckless or intentionally negligent conduct". Plaintiffs fail to specify Ellenburg's duty, who breached it, and the acts and omissions which constitute the alleged breach. Myer, 542 A.2d at 805. Therefore, because I find that Plaintiffs failed to plead the circumstances of the alleged fraud and negligence with particularity, I grant Ellenburg's motion to dismiss with respect to Plaintiffs' common-law fraud and negligence claims.

CONCLUSION

Based on the foregoing, I grant the State summary judgment on Counts VI and VII of Plaintiffs' complaint for gross and wanton negligence because I find Plaintiffs' claims barred by sovereign immunity. Additionally, I grant Ellenburg's motion to dismiss Count I for rent abatement because the J.P. magistrate previously issued a final judgment on that issue, and thus, it is barred by collateral estoppel. I grant Ellenburg's motion to dismiss Count IV for statutory fraud because I find that the Act does not apply to leased real property. Finally, I grant Ellenburg's motion to dismiss Counts V and VIII of Plaintiffs' complaint for common law fraud and negligence because Plaintiffs failed to plead their allegations with particularity. At this time, then, Plaintiffs' only outstanding claim is Count II of their complaint for retaliatory harassment against Ellenburg. Again, I note that the amended complaint has been allowed, but has not been served.

*9 IT IS SO ORDERED.

Del.Super.,1997.
Sprout v. Ellenburg Capital Corp.
Not Reported in A.2d, 1997 WL 716901 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.