**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

E.I. du PONT de NEMOURS and            )
COMPANY,                                )
                                        )
            Plaintiff,                   )
                                        )
      v.                                 )        C.A. No. 05-699 (KAJ)
                                        )
LUMBERMENS MUTUAL CASUALTY              )
COMPANY,                                )
                                        )
            Defendant.                   )

**LUMBERMENS MUTUAL CASUALTY COMPANY'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**COUNTS III, IV, V, VI AND VII OF DUPONT'S COMPLAINT**


OF COUNSEL:                           David B. Stratton (DE No. 960)
                                      M. Duncan Grant (DE No. 2994)
Michael M. Eidelman                   PEPPER HAMILTON LLP
Randall M. Lending                    Hercules Plaza, Suite 5100
Jeffery M. Heftman                    1313 N. Market Street
Vedder, Price, Kaufman & Kammholz, P.C.   P.O. Box 1709
222 North LaSalle Street Suite 2600   Wilmington, DE   19899-1709
Chicago, IL  60601-1003               (302) 777-6500

                                      Attorneys for Defendant
Dated: February 27, 2006              Lumbermens Mutual Casualty Company

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 3

    A.    DuPont May Not Plead in the Alternative When It Knows There Is a Valid
           Contract Between the Parties (Count III) .................................................... 3

    B.    DuPont's Equitable Fraud Allegations Fail to Meet the Rule 9(b) Pleading
           Standard of the Third Circuit and This Court or to State a Claim
           (Count IV) ................................................................................................... 5

    C.    DuPont's Allegations Fail to State a Claim for Equitable Estoppel, Which
           Is an Inappropriate Remedy for Enforcing Contractual Rights (Count V) .......... 11

    D.    DuPont Fails To State a Claim for Breach of Contract (Count VI) .................... 14

    E.    DuPont's Allegations Fail to Meet the Rule 9(b) Pleading Standard for
           Reformation of a Contract or to State a Claim (Count VII) ............................... 17

III.  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

Adkins v. DuPont,
  Civ. A. No. 95-315-SLR, 1995 WL 704779 (D. Del. Nov. 21, 1995)................................. 7, 8, 9

Ala, Inc. v. Ccair, Inc.,
  29 F.3d 855 (3d Cir. 1994)........................................................................................ 14

Am. Int'l Adjustment Co. v. Galvin,
  86 F.3d 1455 (7th Cir. 1996) ..................................................................................... 3

Bell Atlantic Meridian Systems v. Octel Comm. Corp.,
  No. Civ. A 14348, 1995 WL 707916 (Del. Ch. Nov. 28, 1995)........................................ 15, 16

Brug v. The Enstar Group, Inc.,
  755 F. Supp. 1247 (D. Del. 1991)................................................................................. 9

California Public Employees' Retirement System v. Chubb Corp.,
  394 F.3d 126 (3d Cir. 2004)........................................................................................ 6

Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.,
  794 A.2d 1141 (Del. 2002) ......................................................................................... 19

Chudzik v. City of Wilmington,
  809 F. Supp. 1142 (D. Del. 1992)............................................................. 11, 12, 13

Cleveland v. Policy Mgmt. Sys. Corp.,
  526 U.S. 795 (1999)................................................................................................... 5

Colvoresses v. W.S. Wasserman Co.,
  190 A. 607 (Del. 1937) ...................................................................................... 11, 12

Craftmatic Sec. Litig.,
  890 F.2d 682 (3d Cir. 1989)........................................................................................ 8

FDIC v. Bathgate,
  27 F.3d 850 (3d Cir. 1994)........................................................................................ 7

Fox v. Rodel, Inc.,
  No. 98-531-SLR, 1999 U.S. Dist. LEXIS 15502 (D. Del. 1999) ............................... 4

Genencor Int'l, Inc. v. Novo Nordisk A/S,
  766 A.2d 8 (Del. 2000) ................................................................................ 11, 13, 14

Gracelawn Mem. Park v. Eastern Mem. Consultants, Inc.,
  280 A.2d 745 (Del. Ch. 1971)................................................................................. 18, 19

Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago,
  837 F. Supp. 892 (N.D. Ill. 1993) ............................................................................... 3

Hessler, Inc. v. Ellis,
  167 A.2d 848 (Del. Ch. 1961)................................................................................. 18, 19

Hob Tea Room, Inc. v. Miller,
  89 A.2d 851 (Del. Supr. 1952)................................................................................ 18, 19

Honeycutt v. Kendall,
  549 F. Supp. 802 (D. Del. 1982)................................................................................. 8

IKO Monroe, Inc. v. Royal & Sun Alliance Ins. Co. of Canada,
  No. Civ. A. 00-834 GMS, 2001 WL 1568674 (D. Del. Dec. 7, 2001) ................. 17, 18

Indep. Enter. Inc. v. Pittsburgh Water & Sewer Auth.,
  103 F.3d 1165 (3d Cir. 1997)..................................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

Page

Jefferson Chem. Co. v. Mobay Chem. Co.,
    253 A.2d 512 (Del. Ch. 9)........................................................................................................ 19
Klein v. Gen'l Nutrition Cos.,
    186 F.3d 338 (3d Cir. 1999)...................................................................................................... 7
Liafail, Inc. v. Learning 2000, Inc.,
    Nos. C.A.01-599 GMS, C.A.01-678 GMS, 2002 WL 31667861
    (D. Del. Nov. 25, 2002) ........................................................................................................ 6, 7
Lum v. Bank of America,
    361 F.3d 217 (3d Cir. 2004)...................................................................................................... 7
Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.,
    42 F. Supp. 2d 423 (D. Del. 1999)............................................................................................ 3
Satellite Financial Planning Corp. v. First Nat. Bank,
    633 F. Supp. 386 (D. Del. 1986)............................................................................................... 6
ScanSource, Inc. v. Datavision-Prologix, Inc.,
    No. Civ. A. 04-CV-4271, 2005 WL 974933 (E.D. Pa. April 26, 2005) .............................. 9, 10
Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.,
    No. Civ. A 05-245-JJF, 2006 WL 214206 (D. Del. Jan. 26, 2006) ........................................... 3
Seville Indus. Machine Corp. v. Southmost Mach. Corp.,
    742 F.2d 786 (3d Cir. 1984)................................................................................................... 6, 7
Shapiro v. UJB Financial Corp.,
    964 F.2d 272 (3d Cir. 1992)...................................................................................................... 8
Trump Casino Sec. Lit.,
    7 F.3d 357 (3d Cir. 1993) ........................................................................................................ 11
U.S. Office Prod. Co. Sec. Lit.,
    251 F. Supp. 2d 77 (D.D.C. 2003) ............................................................................................ 3
Vision Metals,
    311 B.R. 692 (Bankr. D. Del. 2004) ................................................................................... 11, 12
Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,
    872 A.2d 611 (Del. Ch. 2005).................................................................................................... 3
Williamson v. New Castle Cty.,
    No. Civ. A. 19019-NC, 2002 WL 453926 (Del. Ch. March 13, 2002) .................................... 12

## RULES

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1285 .................... 3
Fed. R. Civ. P. 12(b)(6)................................................................................................... 5, 11, 18
Fed. R. Civ. P. 12(e)................................................................................................................. 18
Fed. R. Civ. P. 8(e)(2) ............................................................................................................... 1
Fed. R. Civ. P. 9(b).................................................................................................................... 1

## I.    <u>INTRODUCTION</u>

In its attempt to save Counts III through VII of its Verified Complaint ("Complaint"), E.I. DuPont de Nemours and Company ("DuPont") repeatedly relies upon two key mischaracterizations: (1) that the Third Circuit's "lenient" interpretation of FED. R. CIV. P. 9(b) permits DuPont to plead fraud and mistake with general and conclusory allegations rather than heightened particularity; and (2) that FED. R .CIV. P. 8(e)(2) allows DuPont to plead in the alternative where it has failed to show or even allege that it is legitimately in doubt about the existence of the contract between the parties that controls this dispute.  As shown below, each of DuPont's arguments in its Answering Brief (D.I. 46) fails and Lumbermens Mutual Casualty Company ("Lumbermens") is accordingly entitled to the dismissal of Counts III – VII of the Complaint (D.I. 1).  In sum:

- DuPont alleges that it is permitted by Rule 8(e)(2) to plead Count III, its claim for unjust enrichment, in the alternative.  Not so.  A pleader may assert contradictory statements of fact in a pleading only when legitimately in doubt about the fact in question, and there is no doubt here that there is a valid insurance contract between the parties.  It is well-settled by both federal and state courts that an unjust enrichment claim may not be made in the presence of a valid contract between the parties.  DuPont's reliance upon the general Rule that a party may plead in the alternative does not apply in this case, where an express contract clearly governs the relationship between Lumbermens and DuPont, and Count III should be dismissed.

- DuPont incorrectly argues that the Third Circuit's approach to Rule 9(b)'s requirement to plead fraud and mistake with particularity is so lenient that it amounts to little, if anything, more than the regular Rule 8 notice pleading standard.  This position not only flies in the face of Third Circuit precedent, but it is contrary to what DuPont has argued to this Court in a previous case.  DuPont also alleges in its Answering Brief that it has adequately pleaded all of

the elements of equitable fraud including justifiable reliance, and that Lumbermens made a material omission by allegedly failing to explain to DuPont the law that would apply to the contract between the parties if Lumbermens were to experience financial difficulties. Both positions are without merit, and Count IV should be dismissed.

- Contrary to DuPont's assertion that the regular Rule 8 notice-pleading standard applies to claims for equitable estoppel, federal courts in Delaware are consistent with Delaware state courts in requiring a nexus between the words and actions of the party against whom equitable estoppel is being asserted and the detrimental reliance thereupon of the pleader. Once again DuPont's general and conclusory allegations fall far short of meeting this standard. DuPont also fails to explain how it changed its position to its detriment. Finally, DuPont fails to counter that it is inappropriate for it to seek equitable estoppel as a remedy for enforcing a bargained-for contract right supported by consideration. For all of these reasons, Count V should be dismissed.

- DuPont contends that Lumbermens has breached the Insurance Program by its failure to declare and issue a dividend. The Insurance Program attached to the Complaint unambiguously provides that the declaration and issuance of a dividend are purely within Lumbermens' discretion, such that DuPont cannot allege to have a vested right in the dividend. Count VI should therefore be dismissed.

- In order to state a claim for reformation of the contract between the parties due to mutual mistake, DuPont must plead its allegations with particularity under Rule 9(b). Under Delaware law, DuPont must allege that there was an oral agreement between the parties, a specific prior understanding that differed materially from the written terms of the agreement. As Dupont merely alleges the parties' intent, and never alleges any *specific prior agreement or*

*understanding* that is materially different from the written agreement, it fails to state a claim for reformation and Count VII should be dismissed.

## II.    ARGUMENT

### A.    DuPont May Not Plead in the Alternative When It Knows There Is a Valid Contract Between the Parties (Count III)

DuPont incorrectly asserts in its Answering Brief that Rule 8(e)(2) permits it to plead alternative or inconsistent claims in this matter despite its knowledge that there is a valid contract between the parties. Not so. It is well-settled that where there is no doubt as to whether a contract exists, a claimant may not state a claim for unjust enrichment. See Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 439-40 (D. Del. 1999) (dismissing unjust enrichment claim where contract exists between parties because unjust enrichment is quasi-contractual theory of recovery to remedy absence of formal contract). See also In re U.S. Office Prod. Co. Sec. Lit., 251 F. Supp. 2d 77, 94 (D.D.C. 2003) (using Delaware law) (dismissing unjust enrichment claim where an express contract exists between the parties); Sea Star Line, LLC v. Emerald Equip. Leasing, Inc., No. Civ. A 05-245-JJF, 2006 WL 214206 at *6 (D. Del. Jan. 26, 2006) (slip op.) (dismissing quantum meruit claim where plaintiff pleaded existence of contract) (Ex. A hereto); Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 872 A.2d 611, 620 (Del. Ch. 2005) (dismissing unjust enrichment claim where complaint demonstrated existence of contract).

Under Rule 8(e)(2), a plaintiff may only assert contradictory statements of fact when legitimately in doubt about the facts in question. Am. Int'l Adjustment Co. v. Galvin, 86 F.3d 1455, 1461 (7th Cir. 1996). See also Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago, 837 F. Supp. 892, 894 (N.D. Ill. 1993) (dismissing arguments pleaded in alternative when plaintiffs were not in doubt as to facts in question as inappropriate application of Rule 8 (e)(2)); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1285 ("[a]

party therefore should not set forth inconsistent, or alternative, or hypothetical statements in the pleadings unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses"). These federal cases make clear that if there is no doubt regarding the existence of a contract, it is inappropriate under Rule 8 (e)(2) to plead a quasi-contractual claim in the alternative.

DuPont may not plead a quasi-contractual claim such as unjust enrichment in the alternative because its Complaint acknowledges that there is a valid contract between the parties. (See Compl. ¶¶ 1, 2, 5-7, 10-11, 13-36, 38-39, 43-44, 58-61, 74-75, 90-93, 99(c)(d)(f), 100-102, 104-08, 110-13, 115-18, Ex. 1.) Indeed, the Introduction to DuPont's Complaint concludes by stating that "through this lawsuit, DuPont asks the Court to declare DuPont's rights and obligations *under the Insurance Program* and to enjoin any collection efforts by [Lumbermens] until those rights have been determined". (Compl. ¶ 7.) (emphasis added.) The gravamen of the Complaint relates to a workers' compensation policy DuPont purchased from Lumbermens for the 2002-03 policy year (Compl. ¶ 1) -- a contract under whose terms DuPont continues to reimburse Lumbermens periodically for losses paid by Lumbermens within DuPont's deductible, as contemplated by the contract's terms (Compl. ¶ 22), and a contract which is one of a series of agreements between the parties which began in 1971, "*including workers' compensation, automobile liability and general liability insurance policies[.]*" (Compl. ¶ 10.) (emphasis added.) Indeed, Count VI of the Complaint seeks relief upon this very contract (Compl. ¶¶ 109-13), and Count VII admits the contract's existence in seeking its reformation. (Compl. ¶¶ 114-18.) DuPont does not and cannot have a legitimate doubt as to the existence of the contract at issue. Therefore, Count III should be dismissed.

The case cited by DuPont, Fox v. Rodel, Inc., No. 98-531-SLR, 1999 U.S. Dist. LEXIS 15502 at *32-33 (D. Del. 1999) (Ex. B hereto), does not compel a different conclusion.

As stated above, a party may plead an unjust enrichment claim in the alternative when it is *legitimately in doubt* as to whether a valid contract exists.  In Fox, the Court allowed the plaintiff to pursue her promissory estoppel claims where it was unclear whether the correspondence at issue comprised valid and enforceable contracts.  Id. at *33.  No such uncertainty exists about the contract at issue in this case.[1]  Thus, Count III should be dismissed.

### B.   DuPont's Equitable Fraud Allegations Fail to Meet the Rule 9(b) Pleading Standard of the Third Circuit and This Court or to State a Claim (Count IV)

In its Answering Brief, DuPont (1) mischaracterizes Lumbermens' Brief In Support of Its Motion to Dismiss ("Def. Op. Br.") (D.I. 37) as citing an incorrect state law standard for pleading fraud with particularity, (2) mischaracterizes the case law of the Third Circuit and this Court by asserting that their approach to Rule 9(b) is so lenient that it is sufficient to put a defendant on notice of the general types of misrepresentations at issue, and (3) mischaracterizes its own deficient allegations in Count IV of its Complaint as sufficient to meet the Rule 9(b) and Rule 12(b)(6) requirements.  (Ans. Br. at 16-22.)  DuPont's assertions are without merit.  DuPont's failure to meet the threshold pleading requirements of Rule 9(b) and its failure to state a claim under Rule 12(b)(6) each support dismissal of Count IV.  See California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126, 156 (3d Cir. 2004) (affirming dismissal of fraud action for failure to plead with sufficient particularity and failure to state claim).

In its Brief, Lumbermens accurately established the Rule 9(b) standard as articulated by this Court:

---

[1] Nor do Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805 (1999), or Indep. Enter. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1175 (3d Cir. 1997), cited by DuPont to support the general Rule that a party may plead in the alternative, support its position.  Neither of these cases involves the pleading of an unjust enrichment claim in the face of an express written contract.

> The Third Circuit requires that a party must provide the date, place or time of allegedly fraudulent conduct, or provide sufficient detail to inject "precision and some measure of substantiation into their allegations of fraud." See Satellite Financial Planning Corp. v. First Nat. Bank, 633 F. Supp. 386, 402 (D. Del. 1986) (dismissing fraud claims for failure to comply with Rule 9(b)).

(Def. Op. Br. at 5.)  *In addition to this standard*, Lumbermens cited Delaware and Illinois cases holding that to plead with sufficient particularity, complaints asserting fraud claims must contain the "who, what, when, and how" pertaining to the allegations.  (Def. Op. Br. at 9-10.)  Such cases are consistent with recent Third Circuit and District of Delaware cases clarifying the Rule 9(b) particularity requirement.

In California Public Employees' Retirement System, the Third Circuit recently affirmed the district court's dismissal of a fraud claim for failing to meet the Rule 9(b) particularity standard, stating that "the District Court determined that Plaintiffs failed to plead their fraud claims in accordance with the mandates of Rule 9(b) . . . *Specifically, Plaintiffs neglected to plead with particularity the "who, what, when, and how" of each statement alleged to be false as required by Rule 9(b)*[.]"  394 F.3d at 163 (emphasis added).  Similarly, in Liafail, Inc. v. Learning 2000, Inc., Nos. C.A.01-599 GMS, C.A.01-678 GMS, 2002 WL 31667861 at *4 (D. Del. Nov. 25, 2002) (Ex. C hereto), this Court held:

> When pleading fraud, "the circumstances constituting fraud . . . shall be stated with particularity."  "*This means the who, what, when, where, and how:* the first paragraph of any newspaper story."  Liafail's fraudulent inducement claim falls far short of meeting this standard because *it fails to identify, with the required specificity, when, by whom, to whom, and under what circumstances, the alleged false statements were made* which induced Liafail to enter into the APA.

Id. at *4 (internal citations omitted) (emphasis added.)

In its Answering Brief, DuPont cites Seville Indus. Machine Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), as indicative of a more "lenient" approach within

this Circuit to the application of Rule 9(b).  (Ans. Br. at 20-21.)  To the contrary, Seville holds

that within this Circuit, a party must provide the date, place or time of allegedly fraudulent

conduct, or provide sufficient detail to inject "precision and some measure of substantiation into

their allegations of fraud."  742 F.2d at 791.  The Third Circuit has interpreted "precision and

some measure of substantiation" by routinely affirming the dismissal of claims that fail to answer

the basic "wh- questions" for failing to pass muster under Rule 9(b).  See, e.g., Klein v. Gen'l

Nutrition Cos., 186 F.3d 338, 345 (3d Cir. 1999) ("Fed. R. Civ. P. 9(b) requires, *at a minimum*,

that the plaintiff identify the speaker of allegedly fraudulent statements") (affirming dismissal

with prejudice of fraud claim that failed to attribute allegedly fraudulent statement to any specific

member of GNC management) (emphasis added).  See also FDIC v. Bathgate, 27 F.3d 850, 876

(3d Cir. 1994) (affirming district court order denying leave to amend complaint that failed to

indicate who speakers of allegedly fraudulent representations were, or who received

information); Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004) (Plaintiffs must allege

who made misrepresentation to whom and content of misrepresentation).

It is disingenuous for DuPont to now cite Seville as indicative of a "lenient" Third

Circuit approach to the requirements of Rule 9(b), when DuPont used that very case to argue

precisely the opposite in Adkins v. DuPont, Civ. A. No. 95-315-SLR, 1995 WL 704779 at *6 (D.

Del. Nov. 21, 1995) (Ex. D hereto).  In Adkins, DuPont sought to dismiss a plaintiff's complaint,

arguing that the plaintiffs had failed to meet the Rule 9(b) particularity standard articulated in

Seville.  The Court agreed with DuPont's assertion that "*[a]t a minimum*, *Plaintiffs should be

required to identify who among them is alleged to have received false information, from whom,

and when the information was received.*"  Id. at *6 (holding that plaintiffs failed to satisfy

Rule 9(b) requirements) (emphasis added).  The same should be required of DuPont here.

As shown in detail in Lumbermens' Brief in Support of Its Motion to Dismiss, Paragraphs 99 (a)-(f) of Count IV *all* fail to allege fraud with the required particularity (i.e., who made the allegedly fraudulent statements and assurances, when they were made, and to whom they were made).  (Def. Op. Br. at 11-15.).  Nor do Complaint Paragraphs 2, 11-14, 21, 23, or 26, which DuPont cited in its Answering Brief (Ans. Br. at 21), or *any other* paragraphs in the Complaint, plead fraud with the required particularity.

DuPont acknowledges the insufficiency of its allegations in Footnote 9 of its Answering Brief, where DuPont alleges that the "specific details (e.g., who said what to whom) of the communications regarding the Insurance Program" occurred between Marsh, a third-party insurance broker, and Lumbermens, such that DuPont should be granted "additional leeway in pleading" prior to discovery.  (Ans. Br. at 22.) (citing for support In re Craftmatic Sec. Litig., 890 F.2d 682, 645 (3d Cir. 1989).)  Not true.  This argument fails because under Delaware law, insurance brokers such as Marsh represent the *insured*, not the insurer.  Honeycutt v. Kendall, 549 F. Supp. 802, 805 (D. Del. 1982) ("The Delaware Code defines a broker as one who acts on behalf of an insured and solicits, negotiates, or procures insurance for the insured, absent an express authorization to perform other duties.")  DuPont admits as much in the Complaint ("DuPont registered numerous objections to the calculations *through its insurance broker, Marsh USA, Inc*. ("Marsh").) (Compl. ¶ 46.) (emphasis added.)  Thus, facts within the knowledge of its agent Marsh are certainly within the knowledge of DuPont.

The plaintiff in Adkins v. DuPont made the same plea for leeway that DuPont attempts to make here.  In Adkins, DuPont replied by quoting Shapiro v. UJB Financial Corp., 964 F.2d 272, 285 (3d Cir. 1992), in which the Third Circuit held:

> To avoid dismissal in these circumstances, *a complaint must delineate at least the nature and scope of plaintiffs' efforts to obtain, before filing a complaint, the information needed to plead with particularity.*  This requirement is intended to ensure that

> plaintiffs thoroughly investigate all possible sources of information, including but not limited to all publicly available relevant information, before filing a complaint.

1995 WL 704779 at *7 (emphasis added).  Like the plaintiff in Adkins, DuPont has failed to delineate in its Complaint (or its Answering Brief) the nature and scope of its efforts to obtain, before filing its Complaint, the information needed to plead with particularity.  Because of DuPont's failure to meet the threshold requirement of pleading fraud with particularity, Count IV should be dismissed.

As shown in Lumbermens' Brief in Support of Its Motion to Dismiss, DuPont's fraud claim in Count IV should also be dismissed for failure to state a claim because the allegations are not actionable as a matter of law.  Not only are some of the allegations non-actionable opinions about the future, but DuPont wholly failed to demonstrate that it justifiably relied upon *any* of the alleged misstatements or omissions to its detriment.  DuPont's Answering Brief asserts that whether a statement is an opinion about the future is a fact question, but it says nothing about its failure to demonstrate *any* reliance at all – much less justifiable reliance – upon any alleged misstatements or omissions by Lumbermens.  (Ans. Br. at 18.)

Allegations of justifiable reliance upon misstatements or omissions must be pleaded with particularity.  See Brug v. The Enstar Group, Inc., 755 F. Supp. 1247, 1254 (D. Del. 1991) (holding that plaintiffs failed to adequately allege reliance on alleged misstatements and omissions where plaintiffs' fraud counts included only three generalized statements that suggest reliance).  See also ScanSource, Inc. v. Datavision-Prologix, Inc., No. Civ. A. 04-CV-4271, 2005 WL 974933 at *2-3 (E.D. Pa. April 26, 2005) (Ex. E hereto):

> *the clear weight of authority requires that the detrimental reliance element of a fraud claim be pleaded with particularity under Rule 9(b)* . . . Plaintiff's Verified Complaint alleges that Defendants made false representations of fact on March 31, 2004, when they misrepresented the value of Datavision's accounts receivable and inventory. ScanSource also alleges that it "believed

and justifiably relied upon' these asserted misrepresentations made by Defendants. *However, Plaintiff offers no details whatsoever about the contours of this asserted justifiable reliance and it avers nothing regarding the decisions that it made as a result of Defendants' asserted misrepresentations . . . To survive a 9(b) motion, plaintiff must show that [it] acted upon the fraud or misrepresentation complained of.* Because Plaintiff does not plead justifiable reliance with the particularity required by Rule 9(b), we are compelled to dismiss the Count III fraud claim[.]

Id. at *2-3 (internal citations omitted) (emphasis added.).

As Lumbermens showed in its Brief in Support of Its Motion to Dismiss, DuPont *could not* have justifiably relied upon advertisements or alleged concealments of its true financial condition published or made two months after it signed the contract at issue. (See Compl. ¶ 99(a),(b); Def. Op. Br. at 11-13.) Nor could it possibly have relied upon statements about Lumbermens' financial condition made three years before the contract at issue and before the time period that DuPont concedes is relevant to this lawsuit. (See Compl. ¶ 99(a); Def. Op. Br.at 12.) Nor could DuPont have relied upon alleged statements or omissions that contradict clear express policy language that dividends are not guaranteed. (See Compl. ¶ 99(c),(d),(e), and (f); Def. Op. Br. at 13-15.) And as for its assertion in its Answering Brief that Lumbermens made a material misrepresentation by allegedly failing to explain to DuPont the law that would apply to the contract between the parties if Lumbermens were to experience financial difficulties (Ans. Br. at 22), DuPont has not alleged – nor can it establish – that one party to an arms' length negotiated commercial transaction (i.e., Lumbermens) has a duty to explain the legal ramifications of the transaction to the other sophisticated party (i.e., DuPont).

In sum, other than in conclusory language, DuPont has offered nothing about the contours of its alleged reliance, or the alleged decisions that it made as a result of any alleged misrepresentations or omissions by Lumbermens. DuPont alleges merely that it renewed a policy that it had been renewing for more than 30 years. (Compl. ¶ 10.) This falls far short of

the specificity required to establish justifiable reliance under Rule 9(b).  A court cannot assume

that an allegation is true for purposes of a motion to dismiss under Rule 12(b)(6) when it is

insufficiently specific to satisfy Rule 9(b).  In re Trump Casino Sec. Lit., 7 F.3d 357, 374 n.19

(3d Cir. 1993) (affirming dismissal of fraud claims for failure to state claims).  Thus, Count IV

should also be dismissed under Rule 12(b)(6) for failure to state a claim.

C.     **DuPont's Allegations Fail to State a Claim for Equitable Estoppel, Which Is
an Inappropriate Remedy for Enforcing Contractual Rights (Count V)**

DuPont's failure to state a claim for equitable estoppel and its improper attempt to

use equitable estoppel as a remedy for enforcing its contractual rights each support the dismissal

of Count V.  See Chudzik v. City of Wilmington, 809 F. Supp. 1142, 1154 (D. Del. 1992)

(granting defendants' motion to dismiss equitable estoppel claim where plaintiffs' conclusory

allegations failed to state claim); see also Genencor Int'l, Inc. v. Novo Nordisk A/S, 766 A.2d 8,

12 (Del. 2000) (holding that suits seeking a declaration of rights under contract are not

appropriate for equitable estoppel).

In its Answering Brief, DuPont asserts that it need do nothing more than to put

Lumbermens on notice of its claim for equitable estoppel, and DuPont believes that the

conclusory reference to Lumbermens' "conduct and representations" in Paragraph 106 of its

Complaint is sufficient for that purpose.  (Ans. Br. at 23-24.)  Not so.  As equitable estoppel is

an extraordinary form of relief, the pleading standard requires more than conclusory allegations.

A party seeking equitable estoppel must establish (1) a material

misrepresentation; (2) reasonable detrimental reliance; and (3) extraordinary circumstances.  In

re Vision Metals, 311 B.R. 692, 700 (Bankr. D. Del. 2004).  Under Delaware law, each element

of equitable estoppel must be pleaded with "particularity and precision."  Colvoresses v. W.S.

Wasserman Co., 190 A. 607, 615 (Del. 1937) (affirming dismissal of equitable estoppel claim).[2]

Consistent with the extraordinary nature of the relief sought and the particularity requirement of

Delaware state law, this Court requires a party seeking equitable estoppel to provide more than

conclusory allegations.  Indeed, the movant must show a nexus between the words or actions of

the party to be estopped and the detrimental reliance thereupon of the movant.  See Chudzik v.

City of Wilmington, 809 F. Supp. at 1154.

In Chudzik, the plaintiffs alleged that communications between themselves and a

police captain regarding the complaint hearing board were the key "conduct" that lulled the

plaintiffs into inaction in bringing their lawsuit within the two-year statute of limitations.  Id. at

1154.  In rejecting the equitable estoppel claim and granting the defendants' motion to dismiss,

the Court stated:

> [p]ut simply, Plaintiffs can point *to no words or actions by these
> Defendants* that induced the Plaintiffs to forego bringing suit
> within the proper time.  Absent this nexus, the Plaintiffs cannot
> rightfully claim that they were lulled into inaction in bringing suit
> by the Defendants' affirmative conduct . . . none of these facts,
> even when viewed together, demonstrate *how* Plaintiffs were lulled
> into not bringing this suit in a timely fashion.  At no point do
> Plaintiffs allege . . . a claim that Captain Alfree ever represented to
> the Plaintiffs that the Internal Affairs proceeding would afford
> them the opportunity to recover damages, the likes of which they
> were seeking in this action.

Id. at 1154, 1154 n. 31 (emphasis in original).  See also In re Vision Metals, Inc., 311 B.R. at 700

(holding debtor failed to allege material misrepresentation or extraordinary circumstances and

dismissing claim seeking equitable estoppel).

---

[2] DuPont concedes as much in its Answering Brief through its reliance on Williamson v. New Castle Cty., No. Civ. A. 19019-NC, 2002 WL 453926 at *4 (Del. Ch. March 13, 2002) (Ex. F hereto) (stating that party asserting equitable estoppel "must allege facts with sufficient specificity to indicate a defendant affirmatively acted to mislead and induce that party from bringing suit in order to allege the existence of an estoppel.") (Ans. Br. at 23.)

So too here.  In Count V of its Complaint, DuPont fails to specify the "conduct and representations" of Lumbermens in any way, or to demonstrate reasonable reliance on its part.  In the Answering Brief, DuPont asserts that its allegations in Paragraph 106 (conduct and representations) and Paragraphs 107-08 (reliance and change of position to its detriment) are sufficient.  (Ans. Br. at 24.)  But Paragraphs 106-08 of the Complaint say *nothing* about what Lumbermens' alleged conduct was and what its alleged representations were; who from Lumbermens provided the alleged conduct and made the alleged representations and to whom; how the alleged conduct and representations caused DuPont to change its position in reliance upon the alleged conduct and representations; how that reliance was reasonable; and even whether the unspecified representations were *mis*representations in the first place.  (Compl. ¶¶ 106-08.)  These conclusory allegations cannot put Lumbermens on notice of its claim when Lumbermens is left to guess about the conduct and representations to which DuPont is referring.  Nor did DuPont explain in the Answering Brief how its renewal of its policy with Lumbermens for the thirty-second consecutive year in any way constituted a *change* of position.  As Chudzik shows, the mere conclusory statement of the elements of a claim without any specificity or support is not sufficient to state a claim for equitable estoppel.  Count V should therefore be dismissed.

A separate and independent reason exists for dismissing Count V – that it is improper for a party to attempt to use equitable estoppel as a remedy for enforcing its contractual rights.  Genencor Int'l, Inc. v. Novo Nordisk A/S, 766 A.2d at 12.  The Supreme Court of Delaware held in Genencor that the estoppel remedy Genencor was seeking in the case was not – and could not be – equitable estoppel, because like promissory estoppel, equitable estoppel has no place as a remedy where a party seeks enforcement of a bargained-for contract right.  Id. at

12.[3]  And as shown above in Section A (supra at 3-5), DuPont is not entitled to plead these contractual and non-contractual claims in the alternative where it is not legitimately in doubt about the existence of the contract between the parties.  (See Compl. Ex. 1 (attaching contract).) Thus, Count V should be dismissed for this additional reason.

### D.     DuPont Fails To State a Claim for Breach of Contract (Count VI)

In Count VI, DuPont claims a contractual right to the declaration and issuance of a dividend in its favor.  (Compl. ¶¶ 109-113).  Indeed, the sole basis for DuPont's breach of contract claim stems from its mistaken belief that the declaration and issuance of a dividend are contractually guaranteed.  (Compl. ¶ 110) (alleging that Lumbermens "agreed in the Insurance Proposal and/or Insurance Program to credit certain 'dividends' to DuPont.").

In its response, DuPont does not, nor can it, dispute that an attached exhibit to a complaint – here, the insurance contract (See Compl. Ex. 1) – controls over inconsistent factual averments.  See Ala, Inc. v. Ccair, Inc., 29 F.3d 855, 859, n.8 (3d Cir. 1994).  Nor can DuPont dispute that the insurance contract conspicuously and unambiguously provides that the declaration and issuance of a dividend is *purely discretionary*:

> Recognizing that dividends cannot be promised or guaranteed and noting that dividends are declared at the sole discretion of the Company's Board of Directors, this quotation constitutes no more than an agreement to recommend the proposed formula, after the expiration of the term to which the dividend declarations shall be applicable to the Board of Directors for consideration and action.
>
> Accordingly, at any given dividend determination, the Board of Directors may or may not adopt the proposed formula or may subject such formula to change as their authority allows.  All dividends are recallable.

---

[3] DuPont's attempt to distinguish Genencor is unavailing.  (Ans. Br. at 25-26.)  DuPont quotes the court's conclusion that the remedy sought in the case was not equitable estoppel, but fails to explain why.  In Genencor, the court determined the estoppel remedy sought *could not be* equitable estoppel because equitable estoppel may not be sought in an action which seeks enforcement of a bargained-for contract right.  766 A.2d at 12.

(Compl. at Ex. 1, p. 12.)

While failing to assert any claim of contractual ambiguity in its Complaint, DuPont now asserts that the contract is inherently ambiguous as to the meaning of the term "dividend." (Ans. Br. at 27.) DuPont's attempt simply misses the mark. *Assuming arguendo* that the definition of a dividend within the insurance contract is ambiguous, DuPont's clear lack of any contractual right to the declaration and issuance of a dividend is not ambiguous. The contract is not susceptible to two different meanings as to the only issue in dispute: are dividends contractually guaranteed or wholly within the discretion of Lumbermens? See Bell Atlantic Meridian Systems v. Octel Comm. Corp., No. Civ. A 14348, 1995 WL 707916 at * 6 n.6 (Del. Ch. Nov. 28, 1995) (Ex. G hereto). Having sufficiently narrowed the issues in dispute in its Complaint to whether the failure to issue and declare a dividend constitutes a breach of contract, DuPont's attempt to create an ambiguity as to the definition of a dividend is unavailing. (See Comp. ¶¶ 109-113.)

DuPont's Complaint does not identify any alleged ambiguity. Rather, DuPont describes the contract in an exhaustive manner and the alleged amount, to the dollar, of the dividend in dispute. (See Compl. ¶¶ 10-54, 58-61.) The alleged ambiguity did not impede DuPont from calculating the dividend amount in dispute, or the amount of money allegedly owed DuPont were the dividend to have, as it asserts, properly been credited to its benefit. Only in the face of Lumbermens' motion to dismiss does DuPont now argue that the meaning of "dividend" is ambiguous. The argument is no more than a legal red herring, attempting to create an ambiguity where none exists.

DuPont searches the Insurance Program for other examples of what it deems ambiguous policy language without any regard to why the alleged ambiguity is relevant to the dispute. For example, DuPont alleges that an inherent ambiguity exists in a "Warranty

Agreement." (<u>See</u> Ans. Br. at 29.) The Complaint does not allege a breach of this warranty, nor does DuPont offer any grounds for why this matter is either relevant or in dispute. <u>See</u> <u>Bell Atlantic Meridian Systems v. Octel Comm. Corp.</u>, 1995 WL 707916 at *6 ("Under the objective approach, the court must first determine whether the contractual language *in dispute* is ambiguous.") (emphasis added.) DuPont's own examples of purported ambiguities as to matters not in dispute are merely attempts to shift the Court's focus from inquiry into whether DuPont can claim a contractual right to the issuance and declaration of a dividend.

DuPont's reliance on <u>Bell Atlantic Meridian Systems v. Octel Comm. Corp.</u>, 1995 WL 707916 at *1, is without merit. (Ans. Br. at 27.) In <u>Bell Atlantic</u>, the contract at issue called for Octel, upon the contract's termination or expiration, to provide Bell Atlantic with a "new system". <u>Id</u>. at *1. While the parties did not dispute the obligation to provide a "new system", the meaning of the term was deemed ambiguous. <u>Id</u>. at *7.  In contrast, the sole issue here is whether the issuance and declaration of a dividend is guaranteed under the contract.

In its Complaint, DuPont identifies the dividend, the formula used to determine the dividend amount, and the amount in controversy without any impairment due to an alleged ambiguity. (<u>See</u> Compl. ¶5) (Lumbermens "has acknowledged that DuPont's 'dividend' under the applicable accounting formula reveals that instead of DuPont owing [Lumbermens] millions, [Lumbermens] owes DuPont $119,111.00."); (Compl. ¶¶ 26-27) (identifying the dividend formula); (Compl. ¶ 37) (asserting that Lumbermens "currently owes DuPont a 'Disallowed Dividend Due Insured' of $4,532,579."). The sole inquiry the Court need undertake is whether the contract is ambiguous as to whether DuPont can claim a contractual right to the declaration and issuance of a dividend.  The plain language of the Insurance Program, which controls over the Complaint's inconsistent allegations, is unambiguous and makes clear that the declaration and issuance of a dividend is purely discretionary.  DuPont cannot claim that the denial of a

dividend was a breach of the very contract that expressly states that the declaration and payment

of a dividend is discretionary and not guaranteed. Accordingly, Count VI should be dismissed.

E.    **DuPont's Allegations Fail to Meet the Rule 9(b) Pleading Standard for Reformation of a Contract or to State a Claim (Count VII)**

In Count VII, DuPont seeks reformation of the contract between the parties due to

mutual mistake. (Compl. ¶ 115). Under the plain language of Rule 9(b), DuPont must plead its

allegations of mutual mistake with sufficient particularity ("In all averments of fraud or mistake,

the circumstances constituting fraud or mistake must be stated with particularity.") FED. R. CIV.

P. 9(b). In its Answering Brief, DuPont concedes that it must allege mutual mistake with

sufficient particularity under Rule 9(b) (Ans. Br. at 30), but then it claims that under the

authority of IKO Monroe, Inc. v. Royal & Sun Alliance Ins. Co. of Canada, No. Civ. A. 00-834

GMS, 2001 WL 1568674 (D. Del. Dec. 7, 2001) (Ex. H hereto), a mere allegation of mutual

mistake is sufficient to meet its pleading burden. (Ans. Br. at 31.). DuPont's misreading of IKO

Monroe would completely eliminate the heightened pleading requirement of Rule 9(b).

In IKO Monroe, which DuPont mischaracterizes as "directly on point" (Ans. Br.

at 30), plaintiff IKO made a motion for a more definite statement under FED. R. CIV. P. 12(e), Id.

at *7, whereas in this matter Lumbermens moves to dismiss the reformation count of DuPont's

Complaint pursuant to Rules 9(b) and 12(b)(6). (Def. Op. Br. at 5.) In IKO Monroe, the Court

denied the plaintiff's motion for a more definite statement under Rule 12(e) because courts have

interpreted the language in that Rule so that the motion should only be granted where the

pleading is unintelligible, and the Court determined that the pleading at issue was intelligible.

2001 WL 1568674 at *7. The Court went on to add that to the extent that the motion for a more

definite statement rested on a contention that the non-movant had not pleaded mistake with

sufficient particularity under Rule 9(b), that argument must also fail. Id. As it is unclear whether

the motion for a more definite statement under Rule 12(e) rested *at all* on Rule 9(b), this

statement is arguably dicta.  Furthermore, as the allegations at issue in <u>IKO Monroe</u> stated that

the parties agreed to a contract that excluded coverage for certain terms, yet the written

instrument included coverage for said terms, <u>Id.</u> at *8, the allegations in <u>IKO Monroe</u> are

factually different from the allegations here, where DuPont has failed to allege *any sort of*

*agreement* preceding the contract.

      DuPont's assertion that for a movant to state a claim for reformation due to

mutual mistake under Delaware law, it is *not* necessary to allege that an oral agreement was

reached that differs from the written agreement (Ans. Br. at 32-33), flies in the face of well-

established Delaware case law.  In <u>Gracelawn Mem. Park v. Eastern Mem. Consultants, Inc.</u>, 280

A.2d 745, 748 (Del. Ch. 1971), the court held that:

> in order to establish a right to reformation of a contract, *it must be*
> *demonstrated that the parties to the contract in question had orally*
> *agreed to contractual terms at variance with those set down in*
> *writing* inasmuch as a court may not make a new contract for the
> parties[.]

<u>Id.</u> at 748 (emphasis added) (dismissing reformation claim where there were no allegations of

oral agreement and allegations were insufficiently particular).  <u>See</u> <u>also</u> <u>Jefferson Chem. Co. v.</u>

<u>Mobay Chem. Co.</u>, 253 A.2d 512, 516 (Del. Ch. 9) (same); <u>Hessler, Inc. v. Ellis</u>, 167 A.2d 848,

850 (Del. Ch. 1961) (same).

      Nor are the cases cited by DuPont in its Answering Brief, <u>Cerberus Int'l, Ltd. v.</u>

<u>Apollo Mgmt., L.P.</u>, 794 A.2d 1141, 1151-52 (Del. 2002), and <u>Hob Tea Room, Inc. v. Miller</u>, 89

A.2d 851, 857 (Del. Supr. 1952), in disagreement with this standard.  <u>Cerberus Int'l</u> states that

"the plaintiff must show by clear and convincing evidence that the parties came to a *specific*

*prior understanding* that differed materially from the written agreement[.]"  794 A.2d at 1151-52

(citing <u>Hob Tea Room, Inc. v. Miller</u>'s language regarding a "clear understanding with which the

formal contract conflicts") (emphasis added.)  The language that <u>Cerberus Int'l</u> quotes from <u>Hob</u>

<u>Tea Room</u> regarding a "clear understanding" predates the later and more specific holdings from the Chancery Court cases that the "clear understanding" refers to an oral agreement.  <u>See</u>, <u>e.g.</u>, <u>Graceland Mem. Park</u>, 280 A.2d at  748; <u>Jefferson Chem. Co.</u>, 253 A.2d at 516; <u>Hessler, Inc.</u>, 167 A.2d at 850.  At any rate, the general and conclusory language DuPont uses in Paragraph 115 of its Complaint refers only to the parties' mutual intentions, and fails to even allege an oral agreement, or the parties' working to arrive at a "specific prior understanding."  (Ans. Br. at 31; Compl. ¶ 115.)  Absent such particular facts establishing a mutual mistake, Count VII of DuPont's Complaint fails to state a claim upon which relief may be granted, and it should be dismissed.  <u>See</u> <u>Jefferson Chem. Co. v. Mobay Chem Co.</u>, 253 A.2d at 516; <u>Hessler, Inc. v. Ellis</u>, 167 A.2d at 850.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Lumbermens Mutual Casualty Company respectfully requests that the Court dismiss Counts III, IV, V, VI and VII of DuPont's Complaint.

Respectfully submitted,

OF COUNSEL:

Michael M. Eidelman
Randall M. Lending
Jeffery M. Heftman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street Suite 2600
Chicago, IL  60601-1003

/s/ M. Duncan Grant
David B. Stratton (DE No. 960)
M. Duncan Grant (DE No. 2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

Attorneys for Defendant
Dated:  February 27, 2006
Lumbermens Mutual Casualty Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2006, I electronically filed the foregoing Lumbermens Mutual Casualty Company's Reply Brief in Support of its Motion to Dismiss Counts III, IV, V, VI and VII of Du Pont's Complaint using CM/ECF which will send notification of such filing to the following:

> John E. James, Esq.
> Richard L. Horwitz, Esq.
> Potter, Anderson & Corroon
> Hercules Plaza, Suite 5100
> 1313 N. Market Street
> Wilmington, DE 19801

and upon the following counsel by first class mail, postage prepaid:

> Christopher C. French, Esq.
> Kirkpatrick & Lockhart Nicholson Graham, LLP
> Henry W. Oliver Building
> 535 Smithfield Street
> Pittsburgh, PA 15222-2312

> /s/ M. Duncan Grant
> M. Duncan Grant (DE No. 2994)