EXHIBIT "E"

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 974933 (E.D.Pa.)
(Cite as: 2005 WL 974933 (E.D.Pa.))

Page 1

C
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
SCANSOURCE, INC.
v.
DATAVISION--PROLOGIX, INC., et al.
No. Civ.A. 04-CV-4271.

April 26, 2005.

Carl W. Hittinger, Philadelphia, PA, for Scansource, Inc.

Michele D. Hangley, Philadelphia, PA, for Datavision--Prologix, Inc., et al.

*MEMORANDUM & ORDER*

SURRICK, J.

*1 Presently before the Court are the Motions to Dismiss Plaintiff's Complaint of Defendant Paul J. Speese ("Speese") (Doc. No. 7) and Defendant Edward Barr ("Barr") (Doc. No. 8). For the following reasons, Defendants' Motions will be granted.

I. BACKGROUND

Plaintiff ScanSource, Inc. ("ScanSource") is a South Carolina corporation that distributes various specialty technologies, including automatic data capture and point-of-sale products. (Verified Compl. ¶¶ 6-7.) Defendant Datavision-Prologix, Inc. ("Datavision") is a Pennsylvania corporation that resold various ScanSource products. (*Id.* ¶¶ 12-13.) Defendant Speese was the President and Chief Executive Officer of Defendant Datavision. (*Id.* ¶ 15.) Defendant Barr was Datavision's Chief Financial Officer. (*Id.* ¶ 16.)

In February, 1995, ScanSource extended a line of credit to Datavision. (*Id.* ¶ 19.) During the summer of 2001, Datavision requested an increase of this credit line to $2,000,000. (*Id.* ¶ 20.) In exchange for the additional credit, Datavision entered into a Security Agreement ("Agreement") with ScanSource. (*Id.* ¶ 21.) Under the terms of this Agreement, Datavision agreed to: (1) provide ScanSource with audited financial statements within 120 days of the end of each fiscal year; (2) provide ScanSource with unaudited, quarterly financial statements within thirty (30) days of the end of each fiscal quarter; (3) provide ScanSource with a copy of the borrower base certificate that it sends to its primary lender, as well as appropriate accounts receivable and inventory data, on a monthly basis; and (4) maintain a tangible net worth of either at least $2,000,000 or the amount owed to ScanSource, whichever is greater. (*Id.* ¶ 22.)

Plaintiff alleges that Datavision did not comply with the terms of the Agreement and that Defendants made misrepresentations to ScanSource. Specifically, Plaintiff ScanSource avers that the Defendants misrepresented the value of their accounts receivable and inventory. (*Id.* ¶¶ 91-92, 98-99.) In March, 2004, Datavision reported in its Borrower's Certificate that it had a collateral base of $9,672,907 in accounts receivable and $8,093,793.41 of inventory. (*Id.* ¶ 40.) This certificate was signed by Defendant Speese (*id.* ¶ 42, Ex. D), and was provided to ScanSource on or about April 5, 2004. (*Id.* 43, Ex. D.) ScanSource avers that it "believed and justifiably relied upon these representations." (*Id.* ¶ 95.)

ScanSource filed the instant Complaint on September 9, 2004. (Doc. No. 1.) The Complaint contains four counts: Count I alleges breach of contract against Defendant Datavision only (Verified Compl. ¶¶ 74-82); Count II alleges breach of the implied covenant of good faith and fair dealing against Defendant Datavision only (*id.* ¶¶ 83-89); Count III alleges fraud against all Defendants (*id.* ¶¶ 90-96); and Count IV alleges negligent misrepresentation against all Defendants (*id.* ¶¶ 97-102). On December 13, 2004, ScanSource requested an entry of default against Datavision. (Doc. No. 13.) The default was entered by the Clerk the same day. Default judgment against Datavision in the amount of $1,480,932.34 was entered by the Court on March 2, 2005. (Doc. No. 16).

*2 In their Motions to Dismiss, Defendants Speese and Barr seek dismissal of Count III charging them with fraud and Count IV charging them with negligent misrepresentation.

II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, we must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 974933 (E.D.Pa.)
(Cite as: 2005 WL 974933 (E.D.Pa.))

Page 2

favorable to the non-moving party." *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The court may dismiss a complaint only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' *H. J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). When considering a motion to dismiss, we need not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir.1997)).

III. LEGAL ANALYSIS

A. Count III--Plaintiff's Fraud Claim

To plead a cause of action for fraud under Pennsylvania law, a plaintiff must show: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to its truth or falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. [FN1] *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (Pa.1994) (citing W. Page Keeton, Prosser & Keeton on Torts § 105 (5th ed.1984); Restatement (Second) of Torts § 525 (1977)).

> FN1. In a diversity case such as this one, a district court must determine which state's substantive law will govern. To make this determination, we must apply the conflict of law rules of the forum state. *Kirschbaum v. WRGSB Assocs.,* 243 F.3d 145, 150 (3d Cir.2001). Pennsylvania's choice of law analysis incorporates elements of both the "government interest" and "significant relationship" tests. *Id.* at 151. Either Pennsylvania or South Carolina law applies to Plaintiff's fraud claim. The elements of fraud in Pennsylvania and South Carolina are very similar. *Compare Gibbs,* 647 A.2d at 889, with *Cheney Bros. v. Batesville Casket Co., Inc.,* 47 F.3d 111, 114-15 (4th Cir.1995), and *Florentine Corp., Inc. v. PEDA I, Inc.* 287 S.C. 382, 339 S.E.2d 112, 114 (S.C.1985). Both states require justifiable reliance, which is what is at issue here. Under the circumstances, we will "presume that the law of the forum state shall apply." *Financial Software Sys., Inc. v. First Union Nat'l Bank,* Civ. A. No. 99-CV-623, 1999 U.S. Dist. LEXIS 19479, at *8 (E.D. Pa. Dec. 16, 1999); *see also Air Prods. & Chemicals, Inc. v. Eaton Metal Prods. Co.,* 272 F.Supp.2d 482, 490 n. 9 (E.D.Pa.2003); *Gallup, Inc. v. Talentpoint, Inc.,* Civ. A. No. 00-5523, 2001 U.S. Dist. LEXIS 18560, at *25 n. 3 (E.D.Pa. Nov. 15, 2001).

Defendants contend that Plaintiff has not pled fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Greater particularity in pleading is required whenever fraud is averred. Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The purpose of Rule 9(b) is " 'to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.,* 361 F.3d 217, 223-24 (3d Cir.2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984)).

Plaintiff argues that "**Rule 9(b)** does not require that the detrimental reliance element of a fraud claim be **pleaded** with **particularity**." (Doc. No. 14 at 12.) Plaintiff cites *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.,* 39 F.Supp.2d 517, 534 (M.D.Pa.1999), and asserts that the issue of justifiable reliance should be decided by a jury, and that it is not readily susceptible of disposition through a motion to dismiss. (Doc. No. 14 at 15). *Williams Controls* is inapposite. In *Williams Controls,* the Court did not deal with or discuss the pleading requirements of **Rule 9(b)** as they relate to justifiable reliance. Moreover, the clear weight of authority requires that the detrimental reliance element of a fraud claim be pleaded with particularity under **Rule 9(b)**. *Gutman v. Howard Savings Bank,* 748 F.Supp. 254, 257 (D.N.J.1990); *see also Learning Works, Inc. v. Learning Annex, Inc.,* 830 F.2d 541, 546 (4th Cir.1987) (stating "reliance must be **pleaded** with **particularity**" and **dismissing fraud** claim for failure to **plead** reliance with **particularity**); *Bank of Am. v. Lemgruber,* No. 02 Civ. 1041, 2005 U.S. Dist. LEXIS 61, at *77 (S.D.N.Y. Jan. 5, 2005) ("[J]ustifiable reliance must be **pleaded** with **particularity** pursuant to Federal Rule of Civil Procedure 9(b)."); *Amzak Corp. v. Reliant Energy, Inc.,* No. 03 C 0877, 2004 U.S. Dist. LEXIS 16514, at *16-17 (N.D.Ill. Aug. 19, 2004) ("To sufficiently

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 974933 (E.D.Pa.)
(Cite as: 2005 WL 974933 (E.D.Pa.))

Page 3

plead reliance, plaintiffs would have to link one or more of the alleged misrepresentations with a specific act of reliance.").

*3 In support of its fraud claim, Plaintiff's Verified Complaint alleges that Defendants made false representations of fact on March 31, 2004, when they misrepresented the value of Datavision's accounts receivable and inventory. (Verified Compl. ¶ ¶ 91-92.) ScanSource also alleges that it "believed and justifiably relied upon" these asserted misrepresentations made by Defendants. (*Id.* ¶ 95.) However, Plaintiff offers no details whatsoever about the contours of this asserted justifiable reliance and it avers nothing regarding the decisions that it made as a result of Defendants' asserted misrepresentations. The Verified Complaint never avers that ScanSource took or declined to take action in reliance on Defendants' asserted misrepresentations, nor is there any suggestion in the Verified Complaint that any reliance on the part of ScanSource was justifiable. In Plaintiff's Response to Defendants' Motions to Dismiss, Plaintiff argues that "[d]iscovery will show that following the fraudulent misrepresentations of Datavision, Speese and Barr, ScanSource continued to extend substantial additional credit to Datavision in reliance thereon." (Doc. No. 14 at 15.) Given this unequivocal statement, Plaintiff presumably could have either included this assertion in its Verified Complaint or sought to amend it in an attempt to satisfy the pleading requirements of Rule 9(b). It did not.

"To survive a 9(b) motion, plaintiff must show that [it] acted upon the fraud or misrepresentation complained of." *Gutman,* 748 F.Supp. at 258. Because Plaintiff does not **plead** justifiable reliance with the **particularity** required by Rule 9(b), we are compelled to **dismiss** the Count III **fraud** claim against Defendants Speese and Barr.

B. Count IV--Plaintiff's Negligent Misrepresentation Claim

Defendants argue that Count IV alleging negligent misrepresentation should be dismissed under the economic loss doctrine. Pennsylvania courts exhibit "a 'lack of hospitality to tort liability for purely economic loss." ' [FN2] *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 680 (3d Cir.2002) (quoting *Aloe Coal Co. v. Clark Equip. Co.,* 816 F.2d 110, 119 (3d Cir.1987)). As a result, Pennsylvania courts have fashioned the economic loss doctrine, which " 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." ' *Id.* at 671 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir.1995)); *see also Brunson Communications, Inc. v. Arbitron, Inc.,* 266 F.Supp.2d 377, 383 (E.D.Pa.2003) ("[A] plaintiff cannot recover on a negligence theory for purely economic damages.") (citing *David Pflumm Paving & Excavating, Inc. v. Found. Servs. Co.,* 816 A.2d 1164, 1168 (Pa.Super.Ct.2003)).

> FN2. South Carolina law also recognizes that the economic loss rule applies "in a commercial transaction governed by a contract where the alleged loss is purely economic and the cause of action is for mere negligent misrepresentation...." *Bishop Logging Co. v. John Deere Industrial Equip. Co.,* 317 S.C. 520, 455 S.E.2d 183, 189 (S.C.Ct.App.1995) (citing *S.C. Elec. & Gas Co. v. Westinghouse Elec. Co.,* 826 F.Supp. 1549 (D.S.C.1993)); *see also Laidlaw Envtl. Servs. v. Honeywell, Inc.,* 966 F.Supp. 1401, 1414-15 (D.S.C.1996). Since Pennsylvania and South Carolina both recognize the applicability of the economic loss doctrine, we will apply the law of Pennsylvania.

The economic loss doctrine applies to a plaintiff's negligent misrepresentation claim. *I & S Assocs. Trust v. LaSalle Nat'l Bank,* Civ. A. No. 99-4956, 2001 U.S. Dist. LEXIS 15225, at *9-10 (E.D.Pa. Sept. 27, 2001) (citing *N. Am. Roofing & Sheet Metal Co., Inc. v. Bldg. & Constr. Trades Council of Phila. & Vicinity,* Civ. A. No. 99-2050, 2000 U.S. Dist. LEXIS 2040 (E.D.Pa. Feb.29, 2000)). In its Verified Complaint, Plaintiff alleges that Defendants made misrepresentations about certain financial data in breach of Datavision's Agreement with ScanSource regarding a line of credit for the sale of various specialty technologies. (Verified Compl. ¶ ¶ 98-99 (asserting that all Defendants negligently misrepresented the value of Datavision's accounts receivable and inventory).) This negligent misrepresentation claim seeks purely economic damages: (1) compensatory and consequential damages; (2) punitive damages; and (3) pre-judgment and post-judgment interest. [FN3] (Verified Compl. at 17.) Thus, absent an applicable exception to the economic loss doctrine, Plaintiff is barred from pursuing its negligent misrepresentation claim against Defendants Speese and Barr. *See I & S Assocs. Trust,* 2001 U.S. Dist. LEXIS 15225, at *9 (concluding that "the economic loss doctrine bars a plaintiff from bringing a negligence action solely for economic losses absent physical injury or property damage") (citing *Ellenbogen v. PNC Bank,* 731 A.2d 175, 188

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 4
Not Reported in F.Supp.2d, 2005 WL 974933 (E.D.Pa.)
(Cite as: 2005 WL 974933 (E.D.Pa.))

(Pa.Super.Ct.1999)).

> FN3. The averments in this count arise from some of the same asserted misrepresentations which form the basis of Plaintiff's breach of contract claim. (Verified Compl. ¶ 77 (Defendant Datavision breached its contract with Plaintiff, in part, when it "misrepresented the amount of both its inventory and its accounts receivable....").) In Plaintiff's breach of contract claim against Defendant Datavision, it also seeks similar economic damages: (1) compensatory and consequential damages; and (2) pre-judgment and post-judgment interest. (Id. at 13.)

*4 Under two narrow exceptions, a plaintiff may recover purely economic loss which resulted from a defendant's misrepresentation when: (1) the misrepresentation is intentionally false; or (2) the defendant is " 'in the business of supplying information for the guidance of others.' " *N. Am. Roofing & Sheet Metal Co., Inc.,* 2000 U.S. Dist. LEXIS 2040, at *27 (quoting *Palco Linings, Inc. v. Pavex, Inc.,* 755 F.Supp. 1269, 1274 (M.D.Pa.1990)). The first exception deals with intentionally false misrepresentations and obviously has no application to the negligent misrepresentation alleged in Count IV. The second exception "is rigidly applied and narrowly construed to except only claims which explicitly involve suppliers of information for guidance of others in business transactions...." *Palco Linings, Inc.,* 755 F.Supp. at 1274; *see also id.* (explaining that exception only applies "to those *in the business* of selling information on which its customers rely upon in taking additional action" such as attorneys, surveyors, and inspectors of goods); *S.C. Elec. & Gas Co. v. Westinghouse Elec. Co.,* 826 F.Supp. 1549, 1557 (D.S.C.1993) ("Most courts which have rejected the economic loss rule in negligent misrepresentation cases have limited recovery to a misrepresentation in giving information by someone hired to advise.").

The second exception also does not apply to Plaintiff ScanSource's negligent misrepresentation claim against Defendants Speese and Barr. Defendant Datavision is not in the business of supplying information for the assistance of others. (Id. ¶¶ 11-13.) Rather, Datavision distributes automatic data capture and point-of-sale products, as well as other peripheral technologies. (Id. ¶ 11.) Because Datavision is not in the business of providing information for the guidance of others, its corporate officers cannot engage in conduct that falls within this second exception to the economic loss doctrine. *See LaSalle Bank Nat'l Assoc. v. Epstein,* No. 99 C 7820, 2001 U.S. Dist. LEXIS 12016, at *30-31 (N.D.Ill. Aug. 15, 2001). Plaintiff may not pursue the negligent misrepresentation claim against Defendants Speese and Barr.

An appropriate Order follows.

### ORDER
AND NOW, this 26th day of April, 2005, upon consideration of the Motions to Dismiss Plaintiff's Complaint of Defendants Paul J. Speese and Edward Barr, and all papers submitted in support thereof and in opposition thereto, it is ORDERED as follows:
  1. Defendant Paul J. Speese's Motion to Dismiss (Doc. No. 7) is GRANTED; and
  2. Defendant Edward Barr's Motion to Dismiss (Doc. No. 8) is GRANTED.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2005 WL 974933 (E.D.Pa.)

END OF DOCUMENT

EXHIBIT "F"

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 453926 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 1

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
George H. WILLIAMSON, et al. Plaintiffs,
v.
NEW CASTLE COUNTY, a political subdivision of the State of Delaware; County Council of New Castle County; Thomas P. Gordon, County Executive of New Castle County; Christopher A. Coons, County Council President, County Council of New Castle County; and Richard L. Abbott, J. Robert Woods, Robert S. Weiner, Penrose Hollins, Karen Venesky and J. Christopher Roberts, Council Members, County Council of New Castle County Defendants.
No. Civ.A. 19019-NC.

Submitted Dec. 20, 2001.
Decided March 13, 2002.

Current and former employees of county brought action against county and its representatives, challenging validity of ordinance which established contributory funded pension program that excluded prior employment time for county employees who were military veterans and former federal employees. County and representatives filed motion to dismiss. The Court of Chancery, New Castle County, Jacobs, Vice Chancellor, held that: (1) state pension statutes did not prohibit county's creation of pension plan that disqualified former federal employees from crediting their previous employment time, but (2) employees' allegations were sufficient to support claim that county was equitably estopped from raising statute of limitations or laches defense to employees' § 1983 claim.

Motion granted in part and denied in part.

West Headnotes

[1] Counties 104 €→69.2

104 Counties
　　104III Officers and Agents
　　　　104k68 Compensation
　　　　　　104k69.2 k. Pensions. Most Cited Cases
Pension statute providing that, upon county's establishment of contributory funded pension, all employees who elected to participate in the program were entitled to "the benefits for which they qualif[ied]" did not prohibit county from establishing contributory funded pension program that excluded prior employment time for county employees who were military veterans or former federal government employees; statute did not entitle county employees to all pension benefits, but only to those benefits for which they qualified. 9 Del.C. § 3101.

[2] Counties 104 €→69.2

104 Counties
　　104III Officers and Agents
　　　　104k68 Compensation
　　　　　　104k69.2 k. Pensions. Most Cited Cases
Conclusory and unsupported allegation of current and former county employees that county failed to adopt an alternate pension program, for those county employees who elected not to participate in contributory funded pension program authorized by statute, was insufficient to state claim that county violated statute requiring establishment of alternate program; employees did not address fact that county had created an alternate pension plan that appeared on its face to satisfy statute, and they did not state how alleged failure to adopt alternate plan related to or supported their request for relief. 9 Del.C. § 3102.

[3] Counties 104 €→69.2

104 Counties
　　104III Officers and Agents
　　　　104k68 Compensation
　　　　　　104k69.2 k. Pensions. Most Cited Cases
County could legally adopt an alternate pension plan that disqualified former federal employees from crediting their previous employment time. 9 Del.C. § 3102.

[4] Pretrial Procedure 307A €→681

307A Pretrial Procedure
　　307AIII Dismissal
　　　　307AIII(B) Involuntary Dismissal
　　　　　　307AIII(B)6 Proceedings and Effect
　　　　　　　　307Ak681 k. Matters Considered in General. Most Cited Cases
In deciding defendants' motion to dismiss complaint for failure to state a claim, Court of Chancery would not consider claim which plaintiffs failed to plead in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 453926 (Del.Ch.)
(Cite as: Not Reported in A.2d)

Page 2

their complaint, but instead raised for the first time in their brief opposing defendants' motion to dismiss. Chancery Court Rule 12(b)(6).

**[5] Estoppel** 156 ⚷62.3

156 Estoppel
   156III Equitable Estoppel
      156III(A) Nature and Essentials in General
         156k62 Estoppel Against Public, Government, or Public Officers
            156k62.3 k. Counties and Subdivisions Thereof. Most Cited Cases

Allegations of current and former county employees that, after county enacted ordinance establishing contributory funded pension program, county told employees that the program's exclusion of prior employment time for county employees who were military veterans or former federal employees was a mistake that would be addressed and corrected, and that county waited until after two-year limitations period had expired to inform employees that it would not change the exclusion, supported claim that county was equitably estopped from raising statute of limitations or laches defense to employees' § 1983 claim challenging validity of ordinance which established the pension program. 42 U.S.C.A. § 1983; 10 Del.C. § 8119.

John Bialecki, of Bialecki & Bragg, P.C., Wilmington, Delaware; for Plaintiffs.
Scott G. Wilcox, of New Castle County Department of Law, New Castle, Delaware; for Defendants.

*MEMORANDUM OPINION*

JACOBS, Vice Chancellor.

*1 Under challenge in this action is the validity of New Castle County Ordinance 97-114 Substitute No. 1, adopted on October 21, 1997 (the "Ordinance"). The Ordinance established a contributory funded pension program for current and former employees of New Castle County. The plaintiffs, who are current and former New Castle County employees, brought this action against the County and its representatives (collectively, the "County") [FN1] for a declaration that the Ordinance is invalid, and also for an injunction that would require the County to permit the plaintiffs to participate in the pension program retroactively.

> FN1. In addition to New Castle County, the named defendants are the County Council of New Castle County; Thomas P. Gordon, County Executive of New Castle County; Christopher A. Coons, County Council President; and Richard L. Abbott, J. Robert Woods, Robert S. Weiner, Penrose Hollins, Karen Venezky and J. Christopher Roberts, Members of the County Council of New Castle County.

The County has moved to dismiss the complaint in its entirety. As discussed below, the motion will be granted with respect to the plaintiffs' Delaware statutory claims, and will be denied with respect to their Federal Civil Rights Act claim brought under 42 U.S.C.A. § 1983.

I. FACTUAL BACKGROUND

The facts recited below are derived from the well-pled allegations of the complaint. [FN2] On October 21, 1997 the County adopted the Ordinance that established the pension program. The Ordinance gave New Castle County employees until October 21, 1998 to elect to purchase pension time they had earned from their former employment with a governmental entity other than the federal government (the "buy-in provision"). The purchased pension time could then be credited to the employee's New Castle County pension eligibility.

> FN2. *Weinberger v. UOP, Inc.,* 409 A.2d 1262, 1263-64 (Del.Ch.1979).

Immediately after the Ordinance was adopted, several New Castle County employees who were United States military veterans protested the exclusion from the pension program of their time they had previously served in the military. In response, the County's representatives told the plaintiffs that the exclusion of the veterans' military time from the pension program was a mistake that would be corrected. The plaintiffs allege they relied on those representations and that as a result, they did not bring this action to enforce their rights until after the two-year statute of limitations period had expired.

On March 6, 2000, the County formally notified the plaintiffs that it would not initiate legislation to amend the pension program to include prior employment time for County employees who were military veterans and former federal governmental employees.

This lawsuit followed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## II. THE CLAIMS AND ISSUES

The complaint alleges three grounds for relief. First, the plaintiffs claim (in Counts I and IV) that the pension program violated the statutory guidelines prescribed by 9 *Del. C.* § § 3101 and 3102 for creating a County pension plan.[FN3] The plaintiffs allege that Section 3101 required that any pension plan created thereunder must permit any and all County employees to participate in the plan. Because former federal employees are not allowed to credit their prior federal government employment time towards the pension plan (but former state employees are allowed to credit their prior state employment time), the plan violates the statutory requirement that all employees be allowed to participate. The plaintiffs further claim that the County violated Section 3102 by failing to create an alternate pension plan as that statute required. For the reasons next discussed herein, I conclude that Counts I and IV do not state cognizable claims and must therefore be dismissed.

> FN3. Those provisions were subsequently repealed on July 13, 1998 by 71 Del. Laws, ch. 401, § 90, but were in force at the time of the events complained of here.

*2 Second, the plaintiffs claim (in Count II) that the pension program violates 29 *Del. C.* § § 5551-5595, which enacted a pension plan that Delaware counties and municipalities may use for their employees (the "State pension plan"). The County contends that it is not subject to Sections 5551-5595 because it elected not to participate in the State pension plan. Because the plaintiffs have made no serious effort to support this claim or to respond to the County's pro-dismissal arguments in their brief, that claim will be dismissed as well.

Third, and finally, the plaintiffs argue (in Count III) that the pension program violates the Federal Civil Rights Statute, 42 U.S.C.A. § 1983. With respect to that claim, the only issue presented on this motion is whether the claim is barred by the statute of limitations or the doctrine of laches. The County argues that the claim is time-barred because the applicable period of limitations is two years, and the defendants waited four years to bring this action. In response, the plaintiffs contend that the County is equitably estopped from raising this defense because during the period in which the suit could be timely brought, the County misled the plaintiffs into believing that their exclusion from the pension program was a mistake that would be rectified in future legislation. I find for the purposes of this motion, that the complaint states a cognizable claim that the County is equitably estopped from raising a statute of limitations or laches defense.

The bases for these rulings are next addressed.

## III. ANALYSIS

### A. Does the Pension Program Violate 9 *Del. C.* § § 3101 and 3102?

[1] The plaintiffs first claim that the adoption of the Ordinance violated 9 *Del. C.* § § 3101 and 3102 because it "established a contributory funded pension program which by its own terms did not permit any existing employee of New Castle County to participate, but instead discriminated against certain classes of employees (veterans and military employees)."[FN4] Count IV further alleges that because the Ordinance violated those statutes, the County's enactment of the Ordinance was arbitrary and capricious.

> FN4. Complaint ¶ 25 (emphasis omitted from original).

These claims rest upon the proposition that all State employees must, by law, be deemed eligible for every available benefit under any pension plan that is created under Section 3101. A plain reading of Section 3101, however, shows otherwise. Section 3101 provides that:

Upon the establishment of a contributory funded pension program, and existing employee of New Castle County who elects to participate in said program and all employees hired after the effective date of said program who are covered by said program *shall be entitled to the benefits for which they qualify under this chapter.*[FN5]

> FN5. 9 *Del. C.* § 3101 (emphasis added).

The quoted language makes it plain that County employees will be entitled *not to all* pension benefits, but only to the benefits *for which they qualify* under the County pension program. In this case, the County determined that for a New Castle County employee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 4
Not Reported in A.2d, 2002 WL 453926 (Del.Ch.)
(Cite as: Not Reported in A.2d)

to be eligible to credit employment service with a former employer (under the buy-in provision), that previous employer must have been a state or any political subdivision thereof. Thus, contrary to the plaintiffs' position, former employees of the federal government, including the armed forces, do not "qualify" for that particular benefit within the meaning of Section 3101, [FN6] and nothing in that statute prohibits that exclusion.

> FN6. Pl. Ans. Br. at Ex. B.

*3 [2] [3] The plaintiffs also claim (apparently in the alternative) that the County failed to enact "an alternate pension plan for employees who did not elect or could not participate in the plan adopted by the Ordinance" as required by 9 Del. C. § 3102. [FN7] In response, the County argues that it satisfied the requirements of that Section when it created an alternate pension plan in 1971. [FN8] The County's argument that the alternate pension plan complies with Section 3102 appears on its face to be a reasonable interpretation of the statute and the alternate pension plan. In their answering brief, however, the plaintiffs make no reasoned effort to show otherwise. They simply reassert their conclusory allegation that "[t]he county also failed to adopt an alternate contributory funded pension program pursuant to § 3102." [FN9] The plaintiffs do not (i) address the existence of the alternate pension plan that was specifically created to satisfy Section 3102 and that (at least facially) complies with the statute or (ii) state, in their complaint or brief, how the alleged failure to adopt an alternate pension plan relates to or supports their request for declaratory and injunctive relief. That omission is also fatal because the plaintiffs' conclusory allegation fails to confront the fact that the County could legally adopt a Section 3102 pension plan that also disqualifies former federal employees from crediting their previous employment time. [FN10] In short, the Section 3102 claim fails for lack of specificity and legal support.

> FN7. Complaint ¶ 26. Section 3102 states that "New Castle County shall, by ordinance enacted prior to September 23, 1971, provide a pension plan for existing employees of New Castle County who do not elect to participate in the pension program authorized by § 3101 of this title."
>
> FN8. Def. Op. Br. at 7; see New Castle County C. §§ 26.04.200-209, formerly §§ 26-636-646 (New Castle County Alternate Pension Plan, adopted pursuant to 9 Del. C. § 3102).
>
> FN9. Pl. Ans. Br. at 8.
>
> FN10. 9 Del. C. § 3102 only requires a pension plan created under that Section to "provide the benefits heretofore provided under former Chapter 17 of Title 9." Chapter 17 does not allow former federal employees to credit their previous employment towards their New Castle County Pension Plan.

Accordingly, the plaintiffs' first claim, based on 9 Del. C. §§ 3101 and 3102, is not legally cognizable and will be dismissed. Because Count IV derives its force from Count I, that Count must be dismissed as well. [FN11]

> FN11. Count IV alleges that the County's actions were arbitrary and capricious because the Ordinance was not adopted in compliance with Sections 3101 and 3102. Thus, the validity of Count IV depends on the legal validity of Count I.

B. Does the Pension Program Violate 29 Del. C. §§ 5551-5595?

Count II of the complaint alleges, in its entirety, that "[t]he ordinance adopted by the Council was in conflict with the provisions of 29 Del. C. §§ 5551 et seq [.] regarding County and Municipal Pension Plans." [FN12] The County argues that Count II must be dismissed because (i) the State pension plan only applies to counties and municipalities that elect to participate in the specific plan created by that statute, [FN13] and (ii) New Castle County elected to create its own pension plan under 9 Del. C. §§ 3101 and 3102, and therefore Sections 5551-5595 do not apply to the County's current pension scheme.

> FN12. Complaint ¶ 27.
>
> FN13. See 29 Del. C. § 5555 (providing that "[a]ny county or municipality ... may elect to participate in the State Employees' Pension Fund.").

[4] The plaintiffs do not seriously contest the County's position. They simply argue that they need to take discovery to determine "if and why the

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 453926 (Del.Ch.)
(Cite as: Not Reported in A.2d)

Page 5

County Council Attorney failed to approve the Ordinance, and what effect this gives to the validity of the Ordinance." [FN14] That argument-that the Ordinance may have been invalidly enacted because it was not approved by the County attorney-is a new claim, not pled in the complaint, that appears for the first time in the plaintiffs' brief. For that reason, that claim will not be considered for purposes of this motion. [FN15] Because the plaintiffs have not responded in any meaningful way to the County's pro-dismissal arguments, Count II must be dismissed for failure to state a claim upon which relief can be granted. [FN16]

FN14. Pl. Ans. Br. at 8.

FN15. Haber v. Bell, 465 A.2d 353, 357 (Del.Ch.1983).

FN16. Del. Ch. R. 12(b)(6); Friedman v. Alcatel Alsthom, 752 A.2d 544, 549 (Del.Ch.1999).

C. Is the Claim Brought Under 42 U.S.C.A. § 1983 Barred by Laches?

*4 Lastly, the plaintiffs allege in Count III of their complaint that the Ordinance violates 42 U.S.C.A. § 1983. [FN17] The only issue presented on this motion is whether that claim is time-barred by reason of the applicable statute of limitations or the equitable defense of laches. [FN18]

FN17. 42 U.S.C.A. § 1983 provides that any person who under the color of state law "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity."

FN18. Because the plaintiffs are seeking equitable relief (an injunction and a declaratory judgment), the statute of limitations period will not (technically speaking) automatically bar the action, because most actions in equity are time-barred by application of the equitable doctrine of laches. Atlantis Plastics Corp. v. Sammons, 558 A.2d 1062, 1064 (Del.Ch.1989). The essential elements of laches are: "(i) plaintiff must have knowledge of the claim and (ii) there must be prejudice to the defendant arising from an unreasonable delay by the plaintiff in bringing the claim." Fike v. Ruger, 752 A.2d 112, 113 (Del.2000). Although a statute of limitations is often not binding on a court of equity, absent circumstances that would clearly make the application of that rule inequitable and unjust, the analogous statute of limitations is given great weight in deciding whether a claim is barred by laches. Adams v. Jankouskas, 452 A.2d 148, 157 (Del.1982); The Scott Fetzer Co. v. Douglas Components Corp., 1994 WL 148282 at *3 (Del.Ch.).

[5] The facts pertinent to that issue are as follows: (i) the Ordinance was approved by the County Executive on October 21, 1997 and (ii) the plaintiffs filed their complaint on November 13, 2001, over four years thereafter, and over two years after the applicable statute of limitations had expired. [FN19] As a result, the County argues, the plaintiffs' claim is time-barred. In response, the plaintiffs contend that the County is equitably estopped from raising the statute of limitations and laches defenses.

FN19. The United States Supreme Court has held that a court in a § 1983 action must apply the applicable statute of limitations for a personal injury claim under the forum state's law. Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); see also Marker v. Talley, 502 A.2d 972, 975 (Del.Super.Ct.1985) (applying a two-year statute of limitations set forth in 10 Del. C. § 8119 to a claim brought under 42 U.S.C.A. § 1983). In Delaware, the statute of limitations for a personal injury claim is two years. 10 Del. C. § 8119. Although that two-year period is not technically binding on this Court of Equity, in this particular case the statutory period of time will be used, by analogy, to decide (for purposes of the laches defense) whether the plaintiffs' action was timely brought.

In appropriate circumstances the doctrine of equitable estoppel will operate to toll the running of the statute of limitations. Specifically, a claim will not be time-barred if the defendant " 'took active steps to prevent the plaintiff from suing, as by promising ... not to plead the statute of limitations pending settlement talks or by concealing evidence from the plaintiff that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                    Page 6
Not Reported in A.2d, 2002 WL 453926 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

he needed in order to determine that he had a claim." [FN20] Thus, the County could be estopped from asserting the limitations (or laches) defense in this case if the County engaged in misleading conduct upon which the plaintiffs detrimentally relied by not filing their suit within the limitations period. [FN21] But, a party asserting an estoppel defense "must allege facts with sufficient specificity to indicate a defendant affirmatively acted to mislead and induce that party from bringing suit in order to allege the existence of an estoppel." [FN22]

> FN20. *Van de Walle v. Salomon Bros., Inc.,* 733 A.2d 312, 316 n. 11 (Del.Ch.1998), aff'd, 734 A.2d 160 (Del.1999) (quoting *Singletary v. Continental Ill. Nat'l Bank,* 9 F.3d 1236, 1241 (7th Cir.1993)).
>
> FN21. *First Fed. Sav. & Loan Ass'n v. Nationwide Mut. Fire Ins. Co.,* 460 A.2d 543, 545 (Del.1983). Although *First Federal* involved tolling of a contractual 12-month suit limitation provision in an insurance policy, I see no reason why the same estoppel concepts would not apply in these circumstances. *See, e.g.,* 51 Am.Jur.2d Limitation of Actions § 383 (2000) ("[E]stoppel tolls the statute of limitations if the party asserting the statute of limitations engages in misconduct that fraudulently or inequitably causes the plaintiff to miss the filing deadline, the plaintiff relies on the defendant's misrepresentation, the conduct occurs before the statute of limitations expires, and the plaintiff exercises due diligence in bringing the action.") (footnotes omitted). "Although 'equitable estoppel' is sometimes used interchangeably with 'fraudulent concealment,' the latter is, strictly, a subset of the former, since neither fraud nor concealment is required for equitable estoppel, only conduct or representations by the defendant that prevent the plaintiff from suing before the statute of limitations has run." *Van de Walle,* 733 A.2d at 314 n. 4 (quotations and citations omitted).
>
> FN22. *Ensminger v. Merrit Marine Constr., Inc.,* 597 A.2d 854, 855 (Del.Super.Ct.1988).

According to the complaint, immediately after the enactment of the Ordinance the plaintiffs began discussing with the County's representative the denial of pension benefits to veterans. The plaintiffs were told by the County that the exclusion of the veterans from the plan was not intentional, but rather was a "mistake [that] would be addressed and corrected" by amending the Ordinance to allow veterans and former federal government employees to avail themselves of the benefit being afforded to other County employees. [FN23] Not until after the two-year statute of limitations period had expired did the County inform the plaintiffs that it would not rectify what it had earlier told them was a mistake that would be corrected. The plaintiffs also allege that in pursuing their grievance with the County, they were diligent throughout the statutory period.

> FN23. Complaint ¶ 14.

I conclude that the § 1983 claim (Count III) survives the County's dismissal motion, because the plaintiffs have pled facts that support a claim of estoppel. [FN24]

> FN24. That conclusion, however, only advances this claim to the next stage. In any determination on the merits, to avoid dismissal of their § 1983 claim on time-bar grounds the plaintiffs will need to present evidence that the County specifically represented to the plaintiffs that the omission of their prior military service was a mistake that would be corrected, that that representation was made continuously during the two-year statute of limitations period and that it was reasonable for the plaintiffs to rely on those representations. The case law holds that a mere offer by the defendant to remedy a plaintiff's injury (thus, causing the plaintiff to forego filing suit until the injury is cured) will not toll the statute of limitations unless that offer persisted throughout the statutory period. In short, a plaintiff must show that he or she reasonably believed, because of representations by a defendant, that there was no reason to bring suit, and the plaintiff became aware of the need to bring suit only after it was too late. *Ontario Hydro v. Zallea Sys. Inc.,* 569 F.Supp. 1261, 1272 (D.Del.1983) (citing *DiBiase v. A & D, Inc.,* 351 A.2d 865 (Del.Super.Ct.1976) (no estoppel claim); *State Farm Mut. Auto. Ins. Co. v. Budd,* 185 Neb. 343, 175 N.W.2d 621 (Neb.1970) (estoppel claim)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 453926 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 7

IV. CONCLUSION

For the reasons discussed, the County's motion to dismiss Counts I, II and IV of the complaint is granted, and its motion to dismiss Count III is denied. Counts V (requesting declaratory judgment) and VI (requesting injunctive relief) are dismissed to the extent that the relief requested therein is based on Counts I, II and IV. Counsel shall submit an appropriate form of implementing order.

Del.Ch.,2002.
Williamson v. New Castle County
Not Reported in A.2d, 2002 WL 453926 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.