# SCHEDULE "A"

## DEFINITIONS AND INSTRUCTIONS

1. "Plaintiff," "DuPont," "You," or "Your" shall mean E. I. du Pont de Nemours and Company, and any of its employees, representatives, and agents.

2. "Lumbermens" or "Kemper" shall mean Defendant Lumbermens Mutual Casualty Company and its employees, representatives and agents.

3. "Marsh" means Marsh USA, Inc., and its employees, representatives and agents.

4. "Person" means a natural person, firm, proprietorship, association, partnership, corporation, and every other type of organization or entity.

5. The "Complaint" refers to the Verified Complaint DuPont filed in this matter against Lumbermens.

6. "Document" shall have the same meaning as set forth in Federal Rule of Civil Procedure 34 and any accompanying notes to those Rules, and shall include any writing, graphic matter or other tangible thing, whether printed, recorded, produced by any process, or written or produced by hand, including, but not limited to contracts, agreements, correspondence, checks, bank statements, ledgers, wire transfers, money orders, account statements, drawings, invoices, letters, reports, other written communications, manuals, policies, telegrams, memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, spreadsheets, work papers, photographs, tape recordings, video tapes, computer hard drives or other storage media, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any way different from the original now in your

possession, custody or control, or the possession, custody or control of your counsel, consultants, agents, employees and/or other persons acting on your behalf.

7. "Insurance Program" means the insurance products Lumbermens sold DuPont, for the policy years 2000 to the present including but not limited to the Workers' Compensation Large Risk Contributory Dividend Plan as described in Paragraphs 10-23 of the DuPont's Complaint.

8. "Insurance Proposal" means the insurance policy submitted by Lumbermens, and accepted by DuPont for workers' compensation coverage for 2002-2003 policy year, and as further described in DuPont's Complaint.

9. As used herein, "control" means actual possession, constructive possession, beneficial ownership, power and/or ability to obtain any document.

10. The phrases "referring to," "relating to" "reflecting" or "regarding" mean having any connection, association or concern with or any relevance, relation, pertinence, or applicability to or any implication for bearing on the subject matter.

11. In construing these topics for inquiry:

(a) the singular form of a word includes the plural form and vice versa;

(b) "and" and "or" are to be construed either disjunctively or conjunctively as is necessary to bring within the scope of each request any matter, information, or document that might otherwise be construed as outside its scope; and

(c) each topic for inquiry should be construed independently and not by reference to any other topic for inquiry for purposes of limitation.

## **TOPICS FOR INQUIRY**

1. DuPont's responses to the interrogatories, document requests, and requests for admission propounded by Lumbermens in this action.

2. DuPont's search for, and production of, documents in response to the document requests propounded by Lumbermens in this action.

3. DuPont's negotiation and acceptance of the Insurance Program for the Policy Year 2002-03.

4. DuPont's understanding of the terms of the Insurance Proposal as it relates to the declaration by Lumbermens of a divided.

5. DuPont's understanding of the financial condition of Lumbermens: (a) during the negotiation of the Insurance Proposal; (b) at the time DuPont executed the Insurance Proposal; and (c) subsequent to DuPont's execution of the Insurance Proposal up to the time DuPont was advised that Lumbermens did not declare a dividend for the 2002/2003 Policy Year.

6. The basis for DuPont's assertion that the nature of the coverage provided under the Insurance Program changed in the year 2000 and subsequent years.

7. DuPont's understanding of the risks Lumbermens assumed under the Insurance Program for the Policy Year 2002-03.

8. The reason DuPont elected to obtain insurance coverage from Lumbermens under the Insurance Proposal rather than electing to be entirely self-insured.

9. The basis for DuPont's assertion that Lumbermens' payment of a dividend to DuPont under the Insurance Proposal is not discretionary.

10. The basis for DuPont's assertion that Lumbermens made false statements, explanations, or assurances with regard to how the Insurance Program would function.

11. The basis for DuPont's assertion that Lumbermens made false statements, explanations, or assurances with regard to Lumbermens' financial condition.

12. The basis for DuPont's assertion that it has suffered a prejudicial change in condition as a consequence of Lumbermens' alleged conduct.

13. The basis for DuPont's assertion that "it was never the intent of the parties that DuPont would be required to pay the full audit premium without credit for the 'dividend.'"

14. The basis for DuPont's assertion that Lumbermens has threatened to draw down or present a claim against the security provided by DuPont relating to the Insurance Program.

15. The basis for DuPont's assertion that Lumbermens owes DuPont money for the January 1, 2002-03 program year and any other damages DuPont seeks from Lumbermens in this action.

16. The basis for DuPont's assertion that it is "self-insured" or mostly self-insured.

17. DuPont's decision to cancel the Insurance Program on March 1, 2003 and secure replacement coverage.