# EXHIBIT 1

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E.I. du PONT de NEMOURS and COMPANY, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | C.A. No. 05-699 (KAJ) |
| LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) | |

### EXPERT REPORT OF ROBERT N. HUGHES

TO THE HONORABLE COURT:

I, Robert N. Hughes, offer the following report containing a statement of my opinions and the bases and reasons therefor, the data or other information considered in forming the opinions, my qualifications, including a list of all publications authored by me within the preceding ten years, and the compensation I am to be paid. I have also attached, as Exhibit "C", a list of all of the documents I reviewed and considered in the preparation of this report.

#### Qualifications

My full name is Robert Neal Hughes. I received a Bachelor of Business Administration degree, cum laude, from Southern Methodist University with a major in Insurance. I have worked in the insurance industry full time since 1960 as a licensed agent and consultant. Since 1978 I have been the principal of Robert Hughes Associates, Inc., an insurance consulting firm. I am a consultant in matters involving insurance coverage. My background and qualifications are set out in more detail in the attached curriculum vitae (Exhibit "A"), which is true and correct and includes a list of all of the publications authored by me. I have attached as Exhibit "B" a list of all of the testimony I have given either by deposition or at trial for the past four years. Since

1

1990, I have been retained in over 600 separate matters involving insurance disputes and have testified on 223 occasions −170 by deposition and 53 at trial or hearing. In addition, I have testified in several arbitrations and mediations.

During my career as an insurance agent and consultant, I have sold, designed, and provided consultation regarding hundreds of "loss sensitive" programs such as the one at issue in this case. Those programs regularly incorporated dividends as a part of the mechanism of the plan. In addition, since the mid-1980s, I have regularly counseled with both insureds and insurance professionals regarding various issues surrounding financially distressed or insolvent insurers, including the issue of dividends.

## Compensation

Robert Hughes Associates, Inc. will bill for my time expended in this case at the rate of $500 per hour plus expenses.

## Background

I have been asked by the Plaintiff in this case to review the materials listed in Exhibit "C" and render my professional opinion regarding the following topics as they pertain to this case:

1. An explanation of and general description of "loss sensitive" mechanisms that are regularly used for the funding of worker's compensation loss and expense costs;

2. An analysis and explanation of the specific plan provided to E. I. duPont de Nemours and Company, Inc. ("DuPont") by Lumbermens Mutual Casualty Company ("Kemper") for the period from January 1, 2002 to January 1, 2003 ("The Insurance Program".)

3. An assessment of the appropriateness, in the context of the custom and practice of insurance, of Kemper's position in this case regarding payments due to or due from DuPont under the terms of The Insurance Program.

2

## Discussion

### 1.  An explanation of and general description of "loss sensitive" mechanisms that are regularly used for the funding of worker's compensation loss and expense costs;

Insurance is a financial device through which the "risk" of loss is transferred from one entity (the insured) to a professional bearer of risk (the insurer.)  Most experts in the field of risk view the term "risk" as being synonymous with "uncertainty."  Thus, as certainty increases, risk decreases.  Losses that are frequent are highly predictable and, therefore, more certain to happen. As that certainty increases, risk decreases and that level of loss becomes inappropriate for the use of insurance since the insured simply trades loss dollars with the insurer and, in addition, pays expenses.  This being the case, large insureds, such as duPont, elect to retain the predictable layers of risk which are, invariably, the more frequent and less severe occurrences.  Sometimes this is accomplished through the use of deductibles (in which case the insurer pays the claims and is reimbursed up to the deductible level by the insured), sometimes through the use of retained "layers" (in which cases the insured simply pays the claims itself up to a certain level), and sometimes this is accomplished through the use of certain premium calculation plans.

Insurance plans in which the policyholder pays a fixed premium for the coverage are known as "guaranteed cost" plans.  In contrast, there are various other premium calculation methods that take into consideration the actual losses and expenses paid by the insurer.  These are known as "loss sensitive" plans.  Perhaps the most common of such plans is the retrospective rating plan ("retro").  The creation of a retro begins with the calculation of the "standard premium" which is very similar to a "guaranteed cost" premium.  The basic premium is calculated only for the limits of liability that are to be included in the retrospective calculation.

3

This premium is then used as the basis for the calculation of the actual cost factors which include:

Basic Premium – the charge for insurance company administration, profit, taxes, boards and bureau fees, etc.;

Excess loss premium – applicable if there is a loss limitation;

Minimum premium – the least amount that will be charged as a retro premium;

Maximum premium – the most that will be charged as a retro premium.

At the end of the policy period, actual incurred losses (paid plus reserved) are calculated and a "loss conversion" factor is applied which provides for the cost of actual claims handling that cannot be identified as applicable to a specific claim. Those costs that can be so identified are known as Allocated Loss Adjustment Expenses ("ALAE").

A retrospective premium is first calculated on the basis of losses evaluated as of six months after the policy expiration. The premium is the sum of the basic premium, excess loss premium (if any), and converted losses multiplied by the tax factor. The formula for the calculation of a retrospective premium is, therefore, (Basic + Excess Loss Premium + (Losses x Loss Conversion Factor)) x Tax Multiplier.

The cash flow aspects of loss sensitive programs vary. Some such programs require the insured to pay the "standard premium" up front (or in installments) and adjustments are made in accordance with the retrospective rating formula after the expiration of the policy. Others only require the insured to fund the expenses and actual claims paid on a cash basis, in which case the year-end adjustment becomes more of an accounting exercise than an exchange of funds. Plans falling in the latter category are known in the insurance industry as "cash-flow plans." In such plans, the unpaid (or "outstanding") portion of the claims is secured by various means such as letters of credit, trust funds, etc.

4

## 2. An analysis and explanation of the specific plan provided to E.I. duPont de Nemours and Company ("DuPont") by Lumbermens Mutual Casualty Company ("Kemper") for the period from January 1, 2002 to January 1, 2003 ("The Insurance Program").

The best representation of The Insurance Program that I have seen is the "Insurance Proposal" which was included as "Exhibit 1" to the Verified Complaint. In the section describing the fees to be charged which appears on page 7 of the proposal Kemper's fees are described as "Front." This would have been understood in the practice of insurance to mean that Kemper was taking no risk but, instead, was "fronting" (i.e., issuing the policy and providing services but taking no risk) for DuPont's essentially self-insured program.

The device that Kemper chose to use to effect the self insured element of the program was what they call a "Large Risk Contributory Dividend Plan." The calculation of the plan cost is identical to a retrospective premium calculation with one exception. Kemper was not providing claims services. Those services were contracted separately to be provided by NATLSCO. Therefore, the Loss Conversion Factor (which, as explained in opinion number 1, is the charge for unallocated loss adjustment expenses) in the calculation of the premium was 1.00 since Kemper was not providing claims handling services. Otherwise, every aspect of the program was identical to a standard retrospective rating plan.

The documentation reflects that the Plan was originally designed to be adjusted on the basis of "incurred losses." That is to say, the amount to be paid by DuPont would be the sum of claims paid plus reserves for outstanding losses ("OSLR") and incurred but not reported ("IBNR") losses. According to a communication dated 4/20/2005 to Aldene Bennett at Marsh from Kevin O'Connor with Kemper, the Plan was changed to a "Paid Loss" basis beginning with the January 2000 policy term. This means, simply, that from that time forward DuPont was reimbursing Kemper on a weekly basis for all claims paid. As a result, the only reason from that

5

time forward for any "adjustments" was to "true up" differences in claims costs due to timing differences and to adjust expenses.

Prior to 2000, The Insurance Program required DuPont to pay premiums which had the potential to exceed the actual cost of the program which was based upon incurred losses plus expenses. It was necessary to have some method of adjusting the cost. Ordinarily this would be accomplished through the use of a Retrospective Rating Plan D. In this case, however, Kemper chose to utilize a mechanism they call the "Large Risk Contributory Dividend Endorsement" ("LRCDE".) The endorsement is almost identical to a Retrospective Rating Plan D endorsement. It uses undefined terms such as "contributory", "unabsorbed", "surplus additions", and others but it basically provides that if the premium paid by the insured exceeds losses, expenses, reserves, and "surplus additions" (whatever that means), a refund will be made of the difference between the premium and the amounts paid by the insurer, such refund to be in the form of "dividends."

After 2000, however, this endorsement seems to have no real function since DuPont has reimbursed Kemper on a weekly basis for all the claims payments. Therefore, the only adjustments that would need to be made at the end of the policy term were for timing differences and for minor expense factors. This can be seen demonstrated on a document Bates numbered Kemper 0008119 which is dated 6/28/2003 and is entitled "Reconciliation of policy terms 2000, 2001, 2002." This shows, for instance, in the section entitled "Plan and Fronting" that the incurred losses which were valued in 2002 as $831,703 ($470,868 + $360,835) had developed to equal, in 2003, $974,389 ($704,541 + $272,848). This difference required a recalculation of the various "fronting" charges.

6

### 3. An assessment of the appropriateness, in the context of the custom and practice of insurance, of Kemper's position in this case regarding payments due to or due from DuPont under the terms of The Insurance Program.

While the structure of this program is that of a typical "paid loss retrospective rating plan," the program, itself, is nothing more or less than a "fronting" program in which Kemper is issuing policies and providing a modicum of services while DuPont is paying all the claims.

The documents provided me do not reflect Kemper's motivation in the use of the term "dividend" to describe this program, and I was unable, through research, to find any writings by them on the subject. The use of the term "dividends" in this context, however, is misleading and inappropriate as there are, in fact, actually no dividends involved. Dividends are thought of in any context as a distribution of earnings.[1] They are thought of in the property/casualty insurance industry as a return of premium.[2] One well-known reference source on insurance issues, "Couch on Insurance," states:

> "...In mutual insurance companies, amounts called dividends are in reality merely a return to policyholders of the unearned, or unused portion of the premiums previously paid in."[3]

It is important to note, therefore, particularly in the context of the post-2000 plan, that definitions of "dividend" reference a distribution of profits or earnings from one party to another party. The "dividends" claimed by Kemper in this case are nothing more than premium adjustments and, because after 2000 DuPont was funding the program on a weekly basis, there

---

[1] Black's Law Dictionary at 478, "Dividend. The distribution of current or accumulated earnings to the shareholders of a corporation pro rata based on the number of shares owned.

[2] "Dictionary of Insurance Terms," Barron's Business Guide, Fourth Edition.

[3] Couch on Insurance, § 80:52, "A dividend represents a share of the surplus apportioned by the directors of an insurance company for distribution to policyholder, and is commonly considered a reduction of premium. In mutual insurance companies, amounts called dividends are in reality merely a return to policyholders of the unearned, or unused portion of the premium previously paid.

were no excess premiums to return.  The LRCDE states:

> "the Named Insured under the policy shall be entitled to receive such refunds of
> unabsorbed premium (herein called dividends) as shall be determined in the
> absolute discretion of the Board of Directors under the contributory dividend
> plan applicable to this policy.  Such contributory dividend plan is one under
> which premium earnings in excess of requirement for losses, expenses, reserves
> and surplus additions are declared by the Board of Directors to be paid to such
> insured."

The use of the term "unabsorbed" is telling.  While the term is not defined in the

endorsement, it would generally be understood in the practice of insurance to mean that portion of

a prepaid premium that has not been used to pay losses, expenses, or profits.  In this case,

however, there is no such "unabsorbed" premium.  The premium has been "absorbed" on a

weekly basis (monthly in the case of expenses) and funded, in cash, by DuPont.  In essence,

Kemper wants DuPont to "give back" monies that have never been paid in the first place.

Kemper's position seems to be that, notwithstanding the "fronting" nature of this

program and the fact that DuPont has already paid all of the losses and expenses, DuPont now

must pay the audited standard premium plus assessments.  This has the effect of turning a cash-

flow risk retention program into a guaranteed cost program which, in my opinion, no company

such as duPont would have accepted.

The fact that business logic and the custom and practice of insurance must be the

determining factor in a resolution of this matter is emphasized when one reads paragraph 4 on

page 11 of the Insurance Proposal which states:

> "At each dividend adjustment cash and security will be adjusted as follows:
>
> Cash:
>
> The sum of audited premium and assessments plus or minus any dividend
> declared, plus workers' compensation paid losses, less all cash received, equals
> the balance due DUPONT or Kemper."

Taken literally, this means that, in cases where no "dividend" has been declared, DuPont

would owe not only the audited standard premium with assessments but also all of the losses, less

8

cash received. This means that, should Kemper choose, they could simply not declare a dividend and thus achieve a windfall of having all the claims paid by DuPont plus receiving the premium plus all the assessments.

It is clear that this program was negotiated and agreed in contemplation by both parties that the so-called "dividend" would actually work like a retrospective rating plan. One telling phrase in the Insurance Proposal emphasizes that. On page 12 under the heading "Special Notes" the proposal states:

> "For the record, the Board of Directors has never failed to declare the full dividend under the terms and conditions of the Large Risk Contributory Dividend Plan."

This was clearly meant to assuage any concerns that a policyholder might have over the use of the LRCDE as opposed to an ordinary retrospective plan.

## Opinions

1. Loss sensitive plans such as The Insurance Program at issue in this case are intended by both policyholders and insurers to act as funding mechanisms for essentially self-insured programs with the insurer providing policy issuance, services and, in some case, excess insurance.

2. The Insurance Program is nothing more than a cash-flow retrospective rating plan.

3. Kemper has no basis for requiring DuPont to reimburse so-called dividends that were never paid in the first place. Moreover, the plan does not meet the definition of "dividends" as they are generally understood in the insurance business.

*****

This completes my report based upon the opinions I have been asked to render to date. It is my understanding that discovery is continuing and new facts may come to light, new defenses may be offered, or new assertions made by the defendants. I also may be asked to review

9

additional materials.  In all of the above cases it may be necessary for me to render additional

opinions in which case I will be prepared to supplement this report.  It is also my understanding

that I might be asked to testify in rebuttal of opinions offered by the defendant's witnesses.

Respectfully submitted,

Robert N. Hughes, CPCU, ARM, MAE, FACFE, DABFE

August 15, 2006

# EXHIBIT A

# ROBERT N. HUGHES, CPCU, ARM



**Home Address:**       **7732 Briaridge Road**
                        **Dallas, TX 75248**

**Office Address:**     **Robert Hughes Associates, Inc.**
                        **508 Twilight Trail, Suite 200**
                        **Richardson, TX 75080**

## EXPERIENCE

ROBERT HUGHES ASSOCIATES, INC.       (1979 to date)

Mr. Hughes founded RHA in 1979 and has served continuously since as its President and Chairman. RHA is a broadly based insurance consulting firm providing insurance consultations, litigation support, actuarial services, product design and insurance company administration.

In addition to his responsibilities as the chief operating officer of the company, Mr. Hughes acts as a consultant and expert witness. Since 1990 he has been retained to assist policyholders, insurers and their attorneys in more than 320 cases. He has testified in 137 of those cases and has testified at trial/arbitration/mediation 44 times in numerous states.

RIMCO, INC.   (1972 – 1979)

Mr. Hughes served as Executive Vice President of Rimco, Inc., a large Dallas-based insurance consulting firm. His consulting specialties included banking, energy, property management and development, contractors and transportation.

Mr. Hughes' banking clients included most of the larger banks in Texas and their holding companies. He was responsible for reviewing and negotiating all coverages including property, bankers' blanket bonds, general liability, directors' and officers' liability, workers' compensation, etc.

HUGHES INSURANCE AGENCY       (1960 – 1972)

Hughes was the owner of a local insurance agency in Pecos, Texas. The agency served a farming and oil & gas related economy and also wrote a book of personal lines coverages.

U.S. ARMY AND ARMY NATIONAL GUARD       (1960 – 1968)

Served as a cavalry officer, achieving the rank of 1st Lieutenant.

*Robert N. Hughes, page 2*

## EDUCATION

Bachelor of Business Administration . . . With Honors (*Cum Laude*)
Southern Methodist University - 1960

## PROFESSIONAL

Chartered Property & Casualty Underwriter - 1973
Associate in Risk Management - 1976
Member, Society of CPCU
Texas Licensed Risk Manager
New Jersey Producers License
Fellow, Institute of Directors, London, England
Diplomate, American Board of Forensic Examiners
Fellow, American Academy of Forensic Examiners
Member, Academy of Experts (London)
Judge for the 2001 *Business Insurance* Risk Manager of the Year and Risk Management Honor
Roll
Texas Local Recording Agent
Texas Managing General Agent
Texas Surplus Lines Agent

## OTHER BUSINESS AFFILIATIONS

Vice President and Director - British American Insurance Company (Formerly)
Director - Alexander Howden Group, U.S. (Formerly)
Director - Financial Casualty & Surety Company  (Formerly)
Director - Risk Management Assurance Corporation (Formerly)

## SPEAKING/TEACHING

Adjunct Faculty, Southern Methodist University MBA Program, "Introductory Risk Management"
Speaker, Australian Risk and Insurance Managers Association, "Quantitative Risk Management
   Techniques"
Seminar Chairman, "Scientific Risk Management," Sydney and Melbourne, Australia
Speaker, Second Annual Construction Insurance Conference, "Developing a Risk Management Philosophy
   for the Contractor"
Seminar Chairman and Speaker, "How to Profit for the London Market by Improving Coverages and
   Lowering Costs" 1978, 1979, 1980
Speaker, Fourth Annual Invitational Seminar on Engineering Geophysical and Soils Data, "Offshore Risk
   Management" 1979
Speaker, "How to Reduce Your Municipal Insurance Costs While Improving Your Coverage" 1979
Speaker, American Management Association - "The Captive Insurance Company Movement:  New
   Changes and Opportunities" 1980
Seminar Chairman and Speaker, American Management Association - "Workers' Compensation:  Costs,
   Coverages and Problems" 1980
Speaker, National Conference on Risk and Insurance Management, "Product and General Liability Cost
   and Coverage" 1981
Speaker, Society of Fellows, Calgary, Canada, "The Insurance Market Cycle" 1982
Speaker, Canadian Risk Management Conference, "Risk Retention" 1982
Speaker, International Risk Management Institute, Inc.'s, General Liability Conference II, "Special
   Hazards Coverage" 1982

## SPEAKING/TEACHING (CONTINUED)

Speaker, International Risk Management Institute, Inc., "Risk Financing Conference" 1984

Speaker, American Bus Association Annual Meeting, "The Insurance Cycle and How It Affects You" 1984

Speaker, Governmental Risk Management, Insurance and Employee Benefits Conference, "Risk Funding for Governmental Entities" 1986

Planning Committee Member, 7th Annual Petroleum Insurance Conference, 1986

Seminar Chairman and Speaker, CPCU National Briefing on The Risk Retention Act of 1986

Speaker, 8th Annual Petroleum Insurance Conference, "Post Event Loss Control" 1987

Speaker, American Petroleum Institute Risk Management Section, "The Liability Risk Retention Act of 1986" 1988

Speaker, 15th Annual Petroleum Insurance & Environmental Protection Conference, "Pollution Coverage Found Within the General Liability Policy" 1994

Seminar Chairman and Speaker, Texas Department of Insurance Continuing Education Course, "Avoiding Insurance Litigation" 1994-95

Speaker, Strategic Research Institute's Contract Risk Management Conference, "Environmental Liability: Past, Present & Future" 1996

Speaker, 17th Annual Petroleum Insurance & Environmental Protection Conference, "Environmental Liability: Past, Present & Future" 1996

Speaker, Strategic Research Institute's Environmental Litigation in the Petroleum Industry Conference, "Insurance Recoveries for Environmental Liabilities" 1996 & 1997

Speaker, 10th Annual ABA Insurance Coverage Litigation Committee Mid-Year Meeting, "Effective Use of Experts" 1998

Speaker, Dallas/Fort Worth Chapter RIMS, "Enterprise Risk Management & Convergence" 1999

Speaker, Association of Energy Service Companies' National Winter Meeting, "Surviving the Insurance Crisis" 2002

Speaker, ABA Insurance Coverage Litigation Committee Annual CLE Meeting, "The Care and Feeding of Experts" 2005

Presenter, The American College of Forensic Examiners 13th National Conference, "Preparation of a Federal Rule 26 Expert Report" 2005

## PUBLISHED ARTICLES

"Blowout: What Is Your Liability And What Can You Do About It?" *Drilling-DCW* (November 1977)

"Buyer Demands Meld Functions Of Brokers And Risk Consultants" *Business Insurance* (June 11, 1979)

"Financial Fright: Outside Audit Can Stop Potential Horror Show Of Unforeseen Problems" *Business Insurance* (February 18, 1980)

"Rig Cost Versus Value: Better Understanding Of Insurance Assures Best Deal For The Money" *Drilling-DCW* (March 1980)

"Get Prepared For A Long Insurance Siege" *The Bus Operator*

"The Polluter's Exclusion Was No 'Accident'" CPCU Journal (June 1994)

"Will The Parachute Open? — Avoiding 'Coverage Nullification Through Litigation'" *The RHA Review* (November 1994) and *Texas Dealer* (August 1997) and *Texas Lawyer* E-Alert/Insurance (January 2006)

"Holes In The Parachute: Common Insurance Company Defenses" The RHA Review (February 1995) and *Texas Lawyer* E-Alert/Insurance (February 2006)

"Landing On Your Feet In Liability Claims" Public Risk (November/December 1995)

"More Holes In The Parachute" *The RHA Review* (November 1995) and *Texas Lawyer* E-Alert/Insurance (March 2006)

"The Lowest Common Denominator Syndrome" *Public Risk* (March 1996)

"Who's Afraid Of The Big Bad Wolf?" *The RHA Review* (May 1996) and *CPCU Society E/S/SL Newsletter* (February 1998)

"Is 'Big Brother' Becoming A Reality?" *The RHA Review* (November 1996)

"Ambiguous Is As Ambiguous Does" *The RHA Review* (February 1997)

PUBLISHED ARTICLES (CONTINUED)

"1998! Where Do We Go From Here?" *The RHA Review* (February 1998) and *CPCU Society
  Agent/Broker Newsletter* and *CPCU Society Underwriting Trends Newsletter* (March 1998)
"Insurance and the Millennium Bug" *The RHA Review* (August 1998)
"What's New in Who(m) to Sue" *The RHA Review* (May 1999)
"Sophisticated Lady" *The RHA Review* (November 1999) and *Texas Lawyer* E-Alert/Insurance (July 2006)
"A Hard Day's Night" *The RHA Review* (August 2000)
"Welcome to Alice's World" *The RHA Review* (August 2001)
"Jam Today, Tomorrow or Yesterday" *The RHA Review* (November 2001)
"Top Ten Worst Excuses for Buying Lousy Insurance" *The RHA Review* (August 2003)
"Risk Transfer? Maybe, Maybe Not" *The RHA Review* (August 2004)
"Oh, Those Four Little Words!" *The RHA Review* (November 2004)
"The Starr in Their Crown" *The RHA Review* (May 2005)
"How Quickly We Forget" *The RHA Review* (November 2005) ) and *Texas Lawyer* E-Alert/Insurance
  (April 2006)

TESTIMONY EXPERIENCE

Qualified by the court as an insurance expert in the following jurisdictions:

*Arkansas*
  Circuit Court, Sebastian County, Arkansas
*California*
  Los Angeles Superior
  Superior Court of California, Alameda
  Superior Court of California, San Francisco County
  United States District Court, Central District of California
*Colorado*
  District Court, City and County of Denver, State of Colorado
*Delaware*
  Superior Court of the State of Delaware, New Castle County
*Illinois*
  17th Judicial Circuit of Winnebago County, Illinois
*Indiana*
  Hendricks Superior County #1, Danville, Indiana
*Kansas*
  US District Court, District of Kansas (Mediation)
*Louisiana*
  19th JD, East Baton Rouge, Louisiana
*Maryland*
  Circuit Court for Baltimore County
  United States District Court for the District of Maryland
*Michigan*
  Schoolcraft County Circuit Court, Michigan
*Minnesota*
  District Court of the Second Judicial Circuit, Ramsey County, Minnesota
*Missouri*
  Circuit Court of Jackson County, Missouri at Kansas City
*New Jersey*
  Superior Court of New Jersey, Middlesex County
  US District Court of New Jersey (Arbitration)
*New York*
  US District Court, Southern District of New York
  Supreme Court of the State of New York, County of New York (Arbitration)

*Robert N. Hughes, page 5*

TESTIMONY EXPERIENCE (CONTINUED)

*Oklahoma*
   US Bankruptcy for the Northern District of Oklahoma
   Oklahoma County, State of Oklahoma
*Pennsylvania*
   United States District Court for the Eastern District of Pennsylvania
*Texas*
   285th Judicial District Court – Dallas County, Texas
   District Court for the Southern District of Texas, Houston Division
   116th Judicial Court, Dallas County
   District Court, Harris County, Texas, 80th Judicial District
   398th Judicial District, Hidalgo County, Texas
   US District Court for the Northern District of Texas, Dallas Division
   District Court of Travis County, Texas, 201st Judicial District
   259th Judicial District Court, Travis County, Texas
   260th Judicial District Court of Travis County, Texas
   District Court of Travis County, Texas, 53rd Judicial District
   US District Court for Northern Texas, Dallas Division (Arbitration)
   151st Judicial District Court of Harris County, Texas (Mediation)
*Washington*
   Superior Court of the State of Washington, in and for the County of King

Has also testified at deposition or offered opinions in matters litigated in the following jurisdictions:

*Alabama*
   US District Court, Southern District of Alabama
*Alaska*
   Superior Court for the State of Alaska, 3rd Judicial District
*Arkansas*
   Circuit Court of Union County, Arkansas Second Division
*Arizona*
   US District Court for the District of Arizona (Phoenix) Division
*California*
   Southern California, Los Angeles County
   Superior Court of the State of California, County of Los Angeles
   Superior Court of the State of California for the County of San Diego
   San Joaquin Superior Court, California
   Superior Court of the State of California for the County of San Francisco
   United States District Court, Central District of California
   United States Bankruptcy Court, Central District of California, Los Angeles Division
   United Stated Bankruptcy Court for the Northern District of California, Oakland Division
*Colorado*
   US District Court of Colorado
*District of Columbia*
   Superior Court of the District of Columbia, Civil Division
*Florida*
   US District Court for the Middle District of Florida, Tampa Division
   4th Judicial Circuit, Duval County, Florida
   US Bankruptcy Court, Middle District of Florida
*Georgia*
   United States District Court for the Northern District of Georgia, Atlanta Division
*Illinois*
   118th Judicial District, DuPage County, Illinois
   Circuit Court of Cook County, Illinois, County Department, Chancery Division

*Robert N. Hughes, page 6*

TESTIMONY EXPERIENCE (CONTINUED)

*Indiana*
   Circuit Court of Porter County, Valparaiso, Indiana
   Montgomery Circuit Court, County of Montgomery, State of Indiana
   County of Marion Superior Court, State of Indiana
*Louisiana*
   19th Judicial District, E. Baton Rouge, Louisiana
   US District Court, Western District of Louisiana, Lafayette-Opelousas Division
   Middle District of Louisiana
   Div. "N", Sec. 8, Civil District Court, Parish of Orleans, State of Louisiana
   Div. "M", Sec. 7, Civil District Court, Parish of Orleans, State of Louisiana
*Massachusetts*
   US District Court, District of Massachusetts
*Michigan*
   US District Court, Eastern District of Michigan, Northern Division
   US District Court for the Eastern District of Michigan, Southern Division
   State of Michigan in the Circuit Court for the County of Wayne
   State of Michigan, The Circuit Court for the County of Washtenaw
   Eastern District of Michigan, Northern Division
*Minnesota*
   US District Court, District of Minnesota, Fifth Division
*Missouri*
   US District Court, Western District of Missouri
   US District Court, Eastern District of Missouri, Eastern Division
*Montana*
   US District Court for the District of Montana, Billings Division
*New Jersey*
   Superior Court of New Jersey, Law Division, Union County
   Superior Court of New Jersey, Law Division, Middlesex County
   Superior Court of New Jersey, Law Division, Morris County
   Superior Court of New Jersey, Somerset County
   US District Court, District of New Jersey
*Ohio*
   US District Court for the Southern District of Ohio Eastern Division
   State Court in Ohio, Monroe County
   Court of Common Pleas of Franklin County, Ohio
   Court of Common Pleas, Summit County, Ohio
*Oklahoma*
   US District Court, Western District of Oklahoma
*Pennsylvania*
   Court of Common Pleas of Chester County, Pennsylvania
*South Carolina*
   Court of Common Pleas, South Carolina, Greenville County
*Texas*
   US District Court for the Eastern District of Texas, Beaumont Division
   73rd Judicial District Court, Bexar County, Texas
   57th Judicial District Court of Bexar County, Texas
   35th Judicial District Court of Cameron County, Texas
   162nd Judicial District, Dallas County, Texas
   District Court of Dallas County, TX 298th JD
   134th Judicial District Court, Dallas
   US District Court for the Northern District of Texas, Dallas Division
   County Court at Law Number Two, El Paso County, Texas
   US District Court for the Northern District of Texas, Fort Worth Division
   10th Judicial Court, Galveston County, Texas
   District Court of Gregg County, TX 188th JD
   127th District Court, Harris County, Texas

*Robert N. Hughes, page 7*

<u>TESTIMONY EXPERIENCE (CONTINUED)</u>

*Texas (continued)*
District Court of Harris County, TX 152nd JD
District Court of Harris County, TX 189th JD
164th Judicial District Court of Harris County, Texas
215th Judicial District Court, Harris County, Texas
District Court, Harris County Civil Court at Law #2
334th Judicial District Court of Harris County, Texas
District Court of Harris County, Texas, 61st Judicial District
71st Judicial District Court of Harrison County, Texas
US District Court for the Southern District of Texas, Houston Division
District Court of Hunt County, 196th District Court
District Court of Jefferson County, Texas
District Court, Montgomery County, Texas
17th Judicial District Court, Tarrant County, Texas
236th Judicial District Court of Tarrant County, Texas
250th Judicial District Court of Travis County, Texas
201st Judicial District Court of Travis County, Texas
261st Judicial District, Travis County, Texas
*Washington*
Superior Court of the State of Washington, Spokane County
Superior Court of the State of Washington in and for the County of King
Supreme Court of the State of Washington
*West Virginia*
West Virginia Circuit Court
*Wisconsin*
Dane County, Circuit Court, Wisconsin
United States Bankruptcy Court for the Eastern District of Wisconsin

# EXHIBIT B

## ROBERT N. HUGHES, CPCU, ARM
## RULE 26 LIST
*Rev. 08/15/2006*

PSI Energy, Inc.
Vs.
The Home Insurance Company
Cause No. 32C01-9804-CP-139
Hendricks Superior Cty #1, Danville
Testified for the Plaintiff:  Koorosh Talieh of Howrey & Simon
Deposition and Trial
Environmental

In re:
Combustion, Inc.
Cause No. 94MDL4000
United States District Court, Western District of LA, LaFayette-Opelousas Division
Testified for the Plaintiff:  Mary S. Johnson of Liskow & Lewis
Deposition
Environmental

Southern Scrap Metal Company
Vs.
Travelers Continental
Cause No. 94MDL4000
United States District Court, Western District of LA, LaFayette-Opelousas Division
Testified for the Plaintiff:  Luis Leitzelar of Breazeale, Sachse & Wilson
Deposition
Environmental

AAA Disposal Systems, Inc. et al, and Browning-Ferris Industries of Illinois, Inc., et al
Vs.
Aetna Casualty and Surety Company, et al
Cause No. 93 MR 272
17th Judicial Circuit of Winnebago County, Illinois
Testified for the Plaintiff:  Nicol Fitzhugh of Lathrop & Gage
Deposition and Trial
Environmental

Browning-Ferris Industries
Vs.
Certain Underwriters at Lloyd's, London, et al
Cause No. 98-56362
District Court, Harris County, Texas, 80th Judicial District
Testified for the Plaintiff:  Jeff Golub of Beck Redden & Secrest
Deposition and Trial
Environmental

Western MacArthur Co. and MacArthur Co.
Vs.
General Accident Insurance Company of America
Sup.Ct. of Cal, Alameda
Testified for the Plaintiff:  David Halbreich of Brobeck, Flagler & Harrison
Deposition and Trial
Asbestos

RSR Corporation, et al
Vs.
AIU Insurance Company, et al
Cause No. 93-0127
71st Judicial District Court of Harrison County, Texas
Testified for the Plaintiff:  Deborah Deitsch-Perez  of Bickel & Brewer
Deposition
Products & General Liability - Environmental

Employers Reinsurance Corporation
Vs.
Newcap Insurance Company Ltd.
Cause No. 01-2276-JWL
United States District Court, District of Kansas
Testified for the Plaintiff: John S. Worden of Morgenstein & Jubilerer
Mediation
Medical Malpractice - General Liability

Matthew Benskin and Mary Bush
Vs.
Cincinnati Insurance Company
Cause No. 99 C 47
Testified for the Defendant:  Joel W. Riggs of Wallace, Saunders, Austin, Brown & Enochs
Deposition
Uninsured Motorists

AC&S, Incorporated
Vs.
AON Risk Services, Incorporated
Cause No. 01CV3277
United States District Court for the Eastern District of Pennsylvania
Testified for the Plaintiff:  Richard Milone of Gilbert, Heintz & Randolph
Deposition and Trial
Duty of Agent

Associated Indemnity Corporation and The American Insurance Company
Vs.
The Dow Chemical Company
Cause No. 2:99-CV-76397, 2:99-CV-76398 (Consolidated)
United States District Court for the Eastern District of Michigan, Southern Division
Testified for the Defendant:  Hariklia Karis of Kirkland & Ellis
Deposition
Environmental

Ford Motor Company
Vs.
Allianz Insurance Company, et al and Rouge Industries, Inc.
Cause No. 00-017730
State of Michigan in the Circuit Court for the County of Wayne
Testified for the Plaintiff:  David Barrett of Latham & Watkins
Deposition
Property

PECO Energy Company and Pennsylvania Department of Environmental Protection and United States Environmental Protection Agency
Vs.
Insurance Company of North America
Cause No. 99-07386
Court of Common Pleas of Chester County, Pennsylvania
Testified for the Plaintiff: John Sylvester of Kirkpatrick & Lockhart
Deposition
Environmental and Lost Policy

American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh
Vs.
United Space Alliance, LLC
Cause No. 01-1003
United States District Court for the Southern District of Texas, Houston Division
Testified for the Defendant: Curtis Porterfield of Howrey Simon Arnold & White
Trial
General Liability

Kern County Land Company
Vs.
California Union Insurance Company
Cause No. 991097
Superior Court of the State of California for the County of San Francisco
Testified for the Plaintiff: Michael J. Miguel of Zevnik Horton Guibord McGovern Palmer & Fognani
Deposition and Trial
Environmental and Lost Policies

In re:
Certain Mobil TX Employees Class Action Litigation
Jerry C. McClelland, et al Vs. Robert C. Gronwaldt, et al
Cause No. A-144,481
District Court of Jefferson County, Texas
Testified for the Defendant: Bob Wellenburger of AIG
Deposition
Workers' Compensation

Fuller-Austin Insulation Company
Vs.
Fireman's Fund Insurance Company, et al
Cause No. BC 116835 (Phase 1A)
LA Superior
Testified for the Plaintiff: Charles J. Malaret of Zevnik, Horton, Guibord, McGovern, Palmer & Fognani,
Deposition and Trial
Asbestos

McDonnell Douglas Corporation
Vs.
Fremont Indemnity Company
Cause No. CV 0109519
United States District Court, Central District of California
Testified for the Plaintiff: Franklin D. Cordell of Gordon Murray Tilden
Deposition and Arbitration
Worker's Compensation

Theresa Aubert Weber, et al Vs. A.P. Green Industries, et al
and
Dewey Weber, et al Vs. Avondale Industries, Inc., et al
Cause No. 2001-1734 and 2001-20356
Civil District Court for the Parish of Orleans, State of Louisiana
Testified for the Defendant:  Gregory Grimsal of Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P.
Deposition
Asbestos, Lost Policy

Martin A. Orlando, Sr.
Vs.
Delta Petroleum Company, Inc.
Cause No. 2002-8589
Div. "N", Sec. 8, Civil District Court, Parish of Orleans, State of Louisiana
Testified for the Defendant: Robert Stassi of Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux
Deposition
Asbestos

In re:
Certain Mobil TX Employees Class Action Litigation
Priscilla Haynes, et al Vs. Robert C. Gronwaldt, et al
Cause No. A-144,481
District Court of Jefferson County, Texas
Testified for the Defendant:  Bob Wellenburger of Thompson, Coe, Cousins & Irons
Deposition
Workers' Compensation

Olympic Pipeline
Vs.
Somerset Marine, et al
Cause No. 01-2-21446-2SEA
Superior Court of the State of Washington in and for the County of King
Testified for the Plaintiff:  Tim Leyh of Danielson Harrigan & Tollefson, LLP
Deposition
Liability – Additional Insured

Kelley Moore Paint Co., Inc.
Vs.
Continental Insurance Company, et al
Cause No. 325147
Superior Court of the State of California for the County of San Francisco
Testified for the Plaintiff:  Michael Greenberg of Heller, Ehrman, White & McAuliffe
Deposition
Binder

Chickasha Cotton Oil Company
Vs.
American National Fire Insurance Company, et al
Cause No. 59,483
District Court of Hunt County, 196th District Court
Testified for the Plaintiff:  Robert M. Horkovich of Anderson, Kill & Olick, P.C.
Deposition
Environmental

Shirley Contracting Corp.
Vs.
Northern Insurance Company of New York, et al
Cause No. PJM-01-CV-2786
United States District Court for the District of Maryland
Testified for the Plaintiff:  Clifton M. Mount of Bode & Grenier, LLP
Trial
Additional Insured

Howmet Corporation, et al
Vs.
Royal Insurance Company, et al
Cause No. MRS-3486-91, MRS-4138-91, MRS-L-516-91 (Consolidated)
Superior Court of New Jersey, Law Division, Morris County
Testified for the Plaintiff:  Laird Hart of Covington & Burling
Deposition
Environmental

In re:
Western Asbestos Company; Western MacArthur Company, and Mac Arthur Company,
Debtors
Cause No. 02-46284, 02-46285, 02-46286
United States Bankruptcy Court for the Northern District of California, Oakland Division
Testified for the Plaintiff:  David Halbreich of Morgan, Lewis & Bockius LLP
Deposition
Asbestos

P.R. Mallory & Company, Inc., et al
Vs.
American States Insurance Company, et al
Cause No. 54C010005 CP0156
Montgomery Circuit Court, County of Montgomery, State of Indiana
Testified for the Plaintiff:  Jeff Raskin of Morgan, Lewis & Bockius, LLP
Deposition
Environmental

Joseph Galatas and Dorsie Galatas
Vs.
Eagle, Inc., et al
Cause No. 03-9414
Civil District Court for the Parish of Orleans, State of Louisiana, Division M, Section 7
Testified for the Plaintiff:  Albert J. Campani of Roussel & Roussel
Deposition
Asbestos – Missing Policies

Varco, et al
Vs.
Lexington Insurance Company
Cause No. 2001-49363
In the 164th Judicial District Court of Harris County, Texas
Testified for the Plaintiff:  David Ylitalo of Haynes & Boone
Deposition and Trial
Advertising Liability

Cyprus Amax Minerals Company
Vs.
Lexington Insurance Company, et al
Cause No. 99 CV 6375
District Court, City and County of Denver, Colorado
Testified for the Plaintiff:  R. Kirk Mueller of Fognani, Guibord & Homsy, LLP
Deposition
CGL Property Damage

Kansas City Power & Light Company
Vs.
National Union Fire Insurance Company of Pittsburgh, PA
Cause No. 02-0680-CV-W-DW
United States District Court, Western District of Missouri
Testified for the Plaintiff:  Thomas F. Fisher of Shughart, Thomson & Kilroy
Deposition
All-Risk Property

Kern County Land Company
Vs.
California Union Insurance Company
Cause No. 991097 *(Phase 2)*
Superior Court of the State of California for the County of San Francisco
Testified for the Plaintiff:  Michael J. Miguel of Zevnik Horton Guibord McGovern Palmer & Fognani
Deposition and Trial
Environmental and Lost Policies

Kerr-McGee Corporation, et al
Vs.
Hartford Accident & Indemnity Company, et al
Cause No. SOM-L-229-01
Superior Court of Somerset County, New Jersey
Testified for the Plaintiff:  Elliott Schulder of Covington & Burling
Deposition
Lost Policies

CSR Limited and Rinker Materials Corp.
Vs.
CIGNA et al
Cause No. 95-2947
United States District Court, District of New Jersey
Testified for the Plaintiff:  Mark Rosenberg of Sullivan & Cromwell
Deposition
Bad Faith

Judiciary Plaza Limited Partnership
Vs.
Georgetown University
Cause No. 04-001620
Superior Court of the District of Columbia, Civil Division
Testified for the Plaintiff:  Gloria B. Solomon of Katten Muchin Zavis Rosenman
Deposition
Contract Compliance

Environmental Procedures, Inc. and Advanced Wirecloth, Inc.
Vs.
George E. Guidry, Dwight W. Andrus, III, and Dwight W. Andrus Insurance, Inc.
Cause No. 2003-49520
In the District Court of Harris County, Texas, 164th Judicial District
Testified for the Plaintiff: John C. Rentz of Haynes & Boone
Deposition and Trial
Duty of Agent

St. Paul Fire and Marine Insurance Company, Plaintiff,
Vs.
A.P.I., Inc., Defendant and Counterclaimant,
And
A.P.I., Inc., Third-Party Plaintiff,
Vs.
The Home Insurance Company, Fireman's Fund Insurance Company, Great American Insurance Company,
One Beacon American Insurance Company, Third-Party Defendants
Cause No. C9-02-8084
State of Minnesota District Court, County of Ramsey, Second Judicial District
Testified for A.P.I., Inc.: Craig M. Roen of Faricy & Roen
Deposition & Trial
Asbestos

RCA Holdings, Ltd.
Vs.
Arthur J. Gallagher of Texas, Inc.
Cause No. 2004-02048
District Court of Harris County, Texas, 61st Judicial District
Testified for the Plaintiff: Jennifer Rustay of Hagans, Bobb & Burdine
Deposition
Property

Plantation Pipeline Company
Vs.
Continental Casualty Company
(Phase One)
Cause No. 1-03-CV-2811 WBH
United States District Court for the Northern District of Georgia, Atlanta Division
Testified for the Plaintiff: Thomas K. Bick of Tighe, Patton, Armstrong & Teasdale
Deposition
Environmental

Daughters of Charity National Health System, Inc.
Vs.
National Union Fire Insurance Company of Pittsburgh, PA
Cause No. 4:04 CV 00754 CAS
United States District Court, Eastern District of Missouri, Eastern Division
Testified for the Plaintiff: John S. Worden of Morgenstein & Jubilerer
Deposition
Directors' and Officers'

J T Thorpe, Inc.
Vs.
Federal Insurance Company, et al
Cause No. LA02-14216-BB
United States Bankruptcy Court, Central District of California, Los Angeles Division
Testified for the Plaintiff:  Charles Malaret of Morgan Lewis & Bockius
Deposition
Asbestos


Valero Energy Corporation, et al
Vs.
National Union Insurance Company of Pittsburgh, PA, et al
Cause No. 1530-03-I
District Court, 398th Judicial District, Hidalgo County, Texas
Testified for the Plaintiff:  Henry B. Gonzalez of Davis, Cedillo & Mendoza, Inc.
Deposition and Trial
Environmental


Ashland, Inc.
Vs.
Certain Underwriters at Lloyd's, London and Certain Solvent London Market Insurance Companies
Cause No. 50 195 T 00384 04
Arbitration
Testified for the Plaintiff:  John Sylvester of Kirkpatrick & Lockhart Nicholson Graham
Deposition & Trial
Coverage in Place Agreement


Goodrich Corporation
Vs.
Commercial Union Insurance Company, et al
Cause No. CV 99 02 0410
Court of Common Pleas, Summit County, Ohio
Testified for the Plaintiff:  Thomas McMahon of Howrey, Simon, Arnold & White
Deposition
Missing Policies


In re:
FV Steel and Wire Company, et al
Cause No. 04-22421-SVK
United States Bankruptcy Court for the Eastern District of Wisconsin
Testified for the Plaintiff:  William Greaney of Covington & Burling
Deposition
Policy Buy Back


United States Fidelity and Guaranty Company
Vs.
Continental Insurance Company
Vs.
SOCO-West, et al
Cause No. CV-04-29-BU-RFC
United States District Court for the District of Montana, Billings Division
Testified for the Defendant:  Chris Yetka of Lindquist & Vennum
Deposition
Missing Policies – Environmental

Norfolk Southern Railway Company
Vs.
Gee Company, et al
Cause No. 02 CH 19768
Circuit Court of Cook County, Illinois, County Department, Chancery Division
Testified for the Plaintiff:  Jeffrey Featherstun of Plews, Shadley, Racher & Braun
Deposition
Missing Policies – Environmental

American International Specialty Lines Company
Vs.
GE Capital Franchise Finance Corporation
Cause No. 13 195 Y 00363 04
In Arbitration Under the Commercial Arbitration Rules of the American Arbitration Association
Testified for the Defendant:  Robert L. Graham of Jenner & Block
Deposition
Secured Creditor Impaired Property Policy

Plantation Pipeline Company
Vs.
Continental Casualty Company
(Phase Two)
Cause No. 1-03-CV-2811 WBH
United States District Court for the Northern District of Georgia, Atlanta Division
Testified for the Plaintiff:  Thomas K. Bick of Tighe, Patton, Armstrong & Teasdale
Deposition
Environmental

In re:
J.T. Thorpe, Inc., a California corporation
Cause No. OA02-14216-BB
United States Bankruptcy Court, Central District of California, Los Angeles Division
Testified for the Plaintiff:  Charles Malaret of Morgan Lewis & Bockius
Deposition
Asbestos

Machining Enterprises, Inc.
Vs.
Wausau Business Insurance Company, et al
Michigan Arbitration
Testifed for the Plaintiff:  Barry M. Feldman of MacAloon & Feldman
Deposition
Products Liability

American Commercial Lines, LLC et al
Vs.
National Union Fire Insurance Company, et al
Cause No. 49D010406PL1088
County of Marion Superior Court, State of Indiana
Testified for the Plaintiff:  Donald P. Bogard of Plews Shadley Racher & Braun
Deposition
Missing Policies

# EXHIBIT C

## Exhibit C

1.   Verified Complaint

2.   Defendant's Answer and Affirmative Defenses to Complaint and Counterclaims Against Plaintiff

3.   Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss Counts III, IV, V, VI, and VII of Plaintiff's Complaint

4.   Workers' Compensation and Employers' Liability Policy for 2002-03 for Delaware, Pennsylvania, South Carolina, and Tennessee

5.   Defendant's Insurance Proposal Issued to Plaintiff for the January 1, 1996 to January 1, 1997 Program Year

6.   Warranty Agreement between Plaintiff and Defendant for the January 1, 2002 to January 1, 2003 Program Year

7.   Invoice for E. I. du Pont de Nemours & Company dated September 17, 2004 from Kemper Insurance Companies to P. Martelloni (Marsh USA, Inc.)

8.   Revised Dividend Adjustment for E. I. du Pont de Nemours & Company dated May 12, 2005 from S. Birmantas (Kemper Insurance Companies) to P. Martelloni (Marsh USA, Inc.)

9.   E-mail dated June 23, 2005 from A. Bennett (Marsh USA, Inc.) to K. O'Connor (Kemper Insurance Companies) re: "Fw: EI DUPONT – Premium adjustments terms 2000 2001 2002"