

**John E. James**
Partner
Attorney at Law
jjames@potteranderson.com
302 984-6018 Direct Phone
302 658-1192 Facsimile

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

October 4, 2006

**By CM/ECF**

The Honorable Kent A. Jordan
U. S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

>   RE:   **E. I. du Pont de Nemours and Company v.
>         Lumbermens Mutual Casualty Company
>         D. Del., C.A. No. 05-699 (KAJ)**

Dear Judge Jordan:

   We are writing on behalf of Plaintiff E. I. du Pont de Nemours and Company ("DuPont") in response to Lumbermens Mutual Casualty Company's ("Kemper") September 25, 2006 letter.

   In its letter, Kemper complains that: (1) DuPont has not produced a privilege log for documents that a third-party, Marsh Inc. ("Marsh"), recently withheld at DuPont's request; and (2) DuPont has not produced all of its electronic documents. Kemper's first complaint is moot. On September 5, Marsh produced documents to Kemper. In the cover letter accompanying that production, Marsh indicated it had withheld some documents on the basis of privilege and/or work product. On September 25, a privilege log was provided to Kemper. Thus, Kemper possesses the privilege log it has requested. Conversely, even though it is now October 4, 2006, Kemper still has not produced a privilege log for the documents it withheld from production when it produced documents in May 2006.

   In order to understand the issues relating to DuPont's most recent document productions, more background information than that which Kemper has provided to the Court is required. Immediately after receiving Kemper's document requests, DuPont began to collect responsive documents. In particular, DuPont's most knowledgeable employee, Mr. Eugene Slesicki, coordinated DuPont's effort to collect responsive documents. For over 20 years, Mr. Slesicki has been DuPont's point person for its relationship with Kemper. Mr. Slesicki reviewed his files and e-mails, as well as the files of others, and he collected over 7,500 pages of responsive documents. The non-confidential documents were produced to Kemper on April 3, 2006. The

The Honorable Kent A. Jordan
Page 2
October 4, 2006

confidential documents were produced to Kemper on May 10, 2006, following Kemper's agreement to treat those documents as confidential.

Following that production, DuPont, in a good faith effort to ensure that all responsive documents had been produced, endeavored to perform computer searches of e-mail accounts maintained by various DuPont employees. Those searches yielded approximately 70,000 potentially-responsive documents that needed to be reviewed for responsiveness and privilege. DuPont hired an outside vendor that uses an off-shore review team to complete that review.

Regrettably, DuPont's vendor encountered several difficulties in reviewing and producing the documents. First, the off-shore team used by the vendor took several months to complete its review. Thereafter, DuPont's vendor encountered a series of technical difficulties in converting the electronic documents into a format that could be produced to Kemper. **DuPont informed Kemper of these difficulties and also explained that most, if not all, of the electronic documents would be of little or no relevance to this litigation because they related to the handling of underlying worker's compensation claims.** Nonetheless, DuPont started producing electronic documents to Kemper on a rolling basis on September 14, 2006. To date, DuPont has produced most of the responsive electronic documents and expects that the production will be completed by Monday, October 7.

DuPont accepts responsibility for its vendor's delays. However, any prejudice to Kemper caused by those delays has been minimal, if any. Although claims-handling documents fall within the scope of Kemper's document requests, those documents are of little or no relevance to this litigation, as Kemper's counsel has conceded. Yet, while professing to DuPont that Kemper is not really interested in claims handling documents even though they are responsive to Kemper's document requests, Kemper has now used DuPont's difficulty in producing those documents to manufacture the "urgent discovery matter" that it has now brought before the Court.

Notably, claims-handling documents already should be in the possession of Kemper or its claims-handling subsidiary because those entities handled the claims. Notwithstanding that fact, Kemper itself has not produced **any** claims-handling documents to DuPont although such documents fall within the scope of DuPont's document requests. Thus, it is disingenuous for Kemper to suggest that DuPont's delay in producing electronic claims-handling documents has prejudiced Kemper in any way.

In addition, Kemper omits from its letter other, more significant, discovery delays that have nothing to do with DuPont. For example, Kemper served a document subpoena on Marsh on April 20, yet Marsh did not complete its document production until September 5, which was three days before the original discovery deadline. **Kemper then served six deposition subpoenas on Marsh on September 14**, even though the end of discovery, which already had been extended, was approximately three weeks away, and none of the ten previously-noticed depositions by the parties

The Honorable Kent A. Jordan
Page 3
October 4, 2006

had been conducted. Indeed, DuPont had served a Rule 30(b)(6) deposition notice on Kemper on March 8, yet Kemper declined to put forward its corporate designee until September 29. DuPont also noticed five depositions of current or former Kemper employees on May 24, but Kemper has not produced any of those witnesses for deposition to date. Kemper's purported reason for delaying those depositions has not been related to DuPont's electronic documents, but rather, has been because Kemper did not want to begin depositions until Marsh's document production was complete.

Further, while criticizing DuPont for the delays in the production of electronic documents, it appears that Kemper itself has failed to perform any meaningful search for electronic documents responsive to DuPont's discovery requests (or the documents have been destroyed) and has withheld other responsive documents from its production, including documents relating to the historical development of the insurance program that is at issue in this case.

Although the parties previously have been able to work through discovery issues without burdening the Court with discovery disputes, the impending discovery deadline has left the parties with no choice but to involve the Court at this juncture. In short, to the extent the parties have suffered any prejudice by the delays described above, that prejudice can be remedied if the trial date in this matter is continued in order to give the parties the opportunity to complete their document productions, resolve any disputes with Marsh regarding the adequacy of its production, and complete the depositions that they have noticed.

For all of these reasons, DuPont respectfully requests that: (1) the trial date in this matter be continued to a future date that is convenient to the Court; and (2) the sanctions Kemper has requested as alternative relief be denied.

Respectfully,

*/s/ John E. James*

John E. James
(Del. Bar No. 996)

JEJ/cml
753930/20120-345
cc:   Dr. Peter T. Dalleo, Clerk of the Court (By CM/ECF and by Hand)
      M. Duncan Grant, Esquire (by CM/ECF)