

**Potter
Anderson
& Corroon** LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

John E. James
Partner
Attorney at Law
jjames@potteranderson.com
302 984-6018 Direct Phone
302 658-1192 Facsimile

February 2, 2007

**By CM/ECF and by Hand**

Magistrate Judge Mary Pat Thynge
U. S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

RE:  E. I. du Pont de Nemours and Company v.
Lumbermens Mutual Casualty Company
D. Del., C.A. No. 05-699-***

Dear Judge Thynge:

I write on behalf of Plaintiff E. I. du Pont de Nemours and Company ("DuPont") to bring several discovery disputes to the Court's attention pursuant to Paragraph 3(e) of the Scheduling Order of December 13, 2005. Discovery is set to close in this matter on February 27, 2007, yet a number of issues remain unresolved despite DuPont's efforts to secure Defendant Lumbermens Mutual Casualty Company's ("Kemper") voluntary compliance with its discovery obligations. Consistent with the Scheduling Order, we have scheduled a telephone conference for Tuesday, February 6, 2007, at 11:00 A.M. to discuss these issues with Your Honor; thus, this letter does not present extensive argument or authorities, but instead states the issues to be addressed during the telephone conference and summarizes DuPont's position on those issues.

DuPont's Second Rule 30(b)(6) Notice of Deposition of Kemper

On December 28, 2006, DuPont served its Second Notice of Deposition of Defendant Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("DuPont's Second 30(b)(6) Deposition Notice") and noticed the deposition for January 10, 2007. (See Exhibit A.) The topics at issue in that notice relate to the origins of the insurance program provisions upon which Kemper bases its claim that DuPont owes Kemper approximately $4.5 million. Those provisions have been in existence since the beginning of DuPont's relationship with Kemper in 1971, and the parties fundamentally disagree over their interpretation. As such, DuPont seeks to discover Kemper's intent at the time that Kemper drafted those provisions.

Kemper responded to DuPont's Second 30(b)(6) Deposition Notice on January 8, 2007, stating that it would not be producing a witness on January 10 "[d]ue to preexisting scheduling conflicts and the objections set forth herein." For a period of time, Kemper refused to designate a witness in response to DuPont's notice or to provide alternative dates for that deposition.

Magistrate Judge Mary Pat Thynge
Page 2
February 2, 2007

Finally, when threatened with a motion to compel unless Kemper produced a witness or moved for a protective order, Kemper designated Jack McGregor by letter of January 26 to testify in response to the notice. Kemper failed, however, to propose a date for that deposition and still has not done so.

Further, in Kemper's January 26 letter, Kemper states that its agreement to produce Mr. McGregor is "subject to the objections" in its January 8 letter. Kemper's objections, however, if sustained, would completely eviscerate the topics in DuPont's Second 30(b)(6) Deposition Notice. For example, Kemper objects that it "would entail undue burden and expense for Kemper to research historically [sic] and to present appropriate witnesses to testify." If Mr. McGregor testifies "subject to" that objection, as Kemper proposes, it is difficult to see what testimony, if any, Mr. McGregor would be able to give regarding the history of the language upon which Kemper bases its $4.5 million claim. Rather than wasting everyone's time by commencing what would appear to be a fruitless deposition, DuPont seeks the assistance of the Court in overruling Kemper's objections and compelling Kemper to produce an educated witness. Alternatively, if Kemper is unable to produce a witness to speak knowledgeably on behalf of Kemper, Kemper should state on the record that it is unable to do so and should be precluded from later offering any testimony relating to the topics in DuPont's Second 30(b)(6) Deposition Notice.

Financial Documents

During the deposition of Kemper's 30(b)(6) witness on September 29, 2006, Kemper testified that it books the full subject premium, without any offset for a "dividend", at the beginning of the program year. DuPont questions the accuracy of such a statement because, during the parties' thirty-year relationship, DuPont was never billed for the full subject premium and has never paid the full subject premium. Consequently, DuPont has requested that Kemper produce its accounting records from 1997 to the present showing the manner in which Kemper booked any insurance premiums or other payments made by DuPont.

In response, Kemper has produced documents relating only to the 2002 program year, and even those documents appear to have been generated after the dispute arose (i.e., long after January 1, 2002). While 2002 is the only year in dispute between the parties, prior years are relevant because they may show, for example, that in 2002 Kemper changed the manner in which it books payments from DuPont as a result of the parties' dispute. Kemper objects to producing documents relating to prior years primarily upon the grounds of overbreadth and undue burden. DuPont's request, however, is already narrowly drawn -- asking for documents only from 1997 forward instead of all the way back to the program's inception in 1971 -- and should be responded to in full.

Documents Regarding Kemper's Financial Condition

In Document Request No. 31, DuPont asked Kemper to produce documents relating to its financial condition since January 1, 2001. Kemper produced a few press releases regarding

Magistrate Judge Mary Pat Thynge
Page 3
February 2, 2007

downgrades in Kemper's financial strength ratings, but little else. Notably absent from Kemper's production were any communications between Kemper and the rating agencies that led to these downgrades. These documents are relevant to DuPont's allegation that Kemper concealed its true financial condition from DuPont (Counts IV and V of the Complaint). Despite DuPont's request, Kemper has refused to either produce the responsive documents or, if it believes it already has produced such documents, then provide the Bates numbers of the documents.

Documents Regarding Berkshire Hathaway Transaction

In Document Request No. 32, DuPont asked Kemper to produce documents relating to its decision to repurchase $125 million of Berkshire Hathaway's investment in Kemper Commercial Insurance Company. Kemper objected to this request as "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence" and has produced little more than press releases that mention the transaction. The documents requested by DuPont are relevant to Paragraphs 64-68 of DuPont's Complaint, in which DuPont explained that A.M. Best cited the Berkshire Hathaway transaction as a contributing factor in its downgrade of Kemper. Further, DuPont alleged that the Berkshire Hathaway transaction was intended to favor an equity investor over Kemper's policyholders. DuPont is entitled to take discovery regarding these allegations.

Kemper's Decision Not to Declare "Dividends"

In Document Request No. 19, DuPont asked Kemper to produce documents relating to Kemper's decision not to declare a "dividend" for DuPont's 2002-03 program. The only document that Kemper produced in response to this request was a two-page, largely-redacted, excerpt from the minutes of a meeting of Kemper's board of directors. Kemper's decision not to declare a "dividend" for DuPont's 2002-03 program was the first time in the parties' thirty-year history that a "dividend" was not declared. One would expect that Kemper's decision was not made lightly and that documents should exist relating to that decision, yet Kemper has produced none.

We look forward to discussing these matters further with Your Honor during our telephone conference on Tuesday, February 6, 2007.

Respectfully submitted,

John E. James

JEJ/cml
Enclosures
776063/20120-345
cc:   Clerk, U. S. District Court (w/ encs.) (via CM/ECF and by hand)
      M. Duncan Grant, Esquire (w/ encs.) (via CM/ECF)