# Pepper Hamilton LLP
Attorneys at Law

Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
302.777.6500
Fax 302.421.8390

M. Duncan Grant
direct dial: 302.777.6544
grantm@pepperlaw.com

February 5, 2007

**Via CM / ECF and Hand Delivery**

Honorable Mary Pat Thynge
United States District Court
District of Delaware
844 North King Street,
Wilmington, DE 19801

Re:   E.I. DuPont de Nemours and Company v.
Lumbermens Mutual Casualty Company,
Civil Action No. 05-699

Dear Judge Thynge:

This letter serves as Lumbermens Mutual Casualty Company's ("Kemper") response to DuPont's February 2, 2007 letter concerning discovery disputes. Kemper's production to date comprises over 43,000 pages of documents, which include documents responsive to the very discovery issues which DuPont has sought to raise with the Court. DuPont's claimed discovery dispute is not well-founded and the relief it seeks should be denied.

**DuPont's Second Rule 30(b)(6) Notice of Deposition.** DuPont's Second Rule 30(b)(6) Notice is objectionable for a number of reasons, including that the topics are over broad, vague, unduly burdensome, not relevant and largely duplicative of DuPont's First Rule 30(b)(6) Notice. A copy of Kemper's objections set forth in its letter dated January 8, 2007 is attached as Exhibit A and a copy of DuPont's First Rule 30(b)(6) Notice is attached as Exhibit B. Despite these objections, Kemper has agreed to produce Jack McGregor for a second 30(b)(6) deposition to testify to the extent it is possible concerning the topics addressed in DuPont's Second Rule 30(b)(6) Notice. See Kemper's letter dated January 26, 2007 attached as Exhibit C.

Mr. McGregor is expected to testify concerning why Kemper developed and used a Large Risk Contributory Dividend Plan ("LRCDP") with its policyholders (Items 1, 2, 3). To the extent that DuPont seeks more specific information as to precisely when and who at Kemper

#8301523 v2

| Philadelphia | Boston | Washington, D.C. | Detroit | New York | Pittsburgh |
| Berwyn | Harrisburg | Orange County | Princeton | | Wilmington |

www.pepperlaw.com

Pepper Hamilton LLP
Attorneys at Law

Honorable Mary Pat Thynge
February 5, 2007
Page 2

developed the LRCDP, which Kemper policyholders a LRCDP was first offered and specific facts and circumstances relating to policyholders other than DuPont, such inquiries are overbroad, unduly burdensome and irrelevant and Kemper seeks to preserve its objections.

Further, Mr. McGregor is further expected to testify concerning the meaning of various policy and plan provisions as requested to the extent such questioning is not duplicative of his original 30(b)(6) deposition wherein DuPont asked for Kemper's understanding of the meaning of most of the very same terms. Compare DuPont's First and Second 30(b)(6) Notices.

DuPont seeks to burden the Court because Kemper has not yet confirmed a date for Mr. McGregor's deposition. DuPont, however, fails to advise the Court that DuPont has not provided Kemper with a date as to when it will produce its own 30(b)(6) witness in response to Kemper's Second 30(b)(6) Notice (DuPont has not even confirmed that a witness will even be produced at all). See DuPont's letter dated February 2, 2007 objecting to Kemper's Second Rule 30(b)(6) Notice attached as Exhibit D. It should be noted that Kemper has preserved its objections to DuPont's Second Rule 30(b)(6) notice, in essentially the same manner as DuPont has done with respect to Kemper's Second Rule 30(b)(6) Notice. Compare Exhibits A and D.

**Financial/Accounting Documents.** DuPont does not dispute that Kemper has produced accounting records for the 2002 policy year–the only policy year in dispute–which evidence that Kemper booked the full estimated subject premium as revenue at the beginning of the policy year. Kemper has made this production despite the absence of any formal request by DuPont to do so. Kemper has also offered to provide a Rule 30(b)(6) witness to explain the accounting records Kemper produced showing how Kemper booked subject premium.[1]

DuPont's attempts to seek Kemper's accounting records showing how Kemper booked DuPont's premiums for years prior to 2002 is overbroad, unduly burdensome and simply not relevant to the 2002 year in dispute. To the extent that DuPont believes that Kemper changed the manner in which it booked estimated subject premium for 2002 (which it did not), such an inquiry can be made by asking this of a 30(b)(6) witness or propounding a simple interrogatory to this effect. There is no reason to burden Kemper with extensive production of detailed accounting records for policy years not at issue. Such a production would involve an enormous burden upon Kemper to trace how it booked the estimated subject premiums for approximately 35 separate DuPont insurance policies for each year during the period 1997-2001. Moreover, such a request is disingenuous given DuPont's failure to produce to Kemper copies of

---

[1] DuPont incorrectly states that it "was never billed for the full subject premium." The documentary record as well as testimony of various witnesses confirm that Kemper's invoices for years prior to 2002 reflect billing for the entire audited subject premium with a reduction of such premium from the dividends declared.

#8301523 v2

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Mary Pat Thynge
February 5, 2007
Page 3

signed insurance agreements between the parties, including drafts and related correspondence, for years prior to 2002 which provide that dividends are not guaranteed.

Further, DuPont's claims that further documentation is required to support Kemper's accounting practices is also unwarranted given Kemper's production of its quarterly financial statements for 2002 which detail how Kemper accounted for and booked such premium under its LRCDPs. See Kemper 39081 (March 31, 2002 Quarterly Statement noting that "statutory accounting rules promulgated by the [National Association of Insurance Commissioners] Manual *require the Company to only accrue for policyholder dividends when they are declared by the Company's Board of Directors (Board), rather than based upon estimated ultimate dividend payments.*")[2] (emphasis added). If dividends are not accounted for until declared, then the full subject estimated premium is booked at the inception of the policy year.

**Documents Regarding Kemper's Financial Condition.** Kemper's production of documents relating to its financial condition since January 1, 2001 was not, as DuPont suggests, limited to "a few press releases" and "little else." As noted, Kemper has produced its detailed quarterly financial statements for 2002 and has agreed to produce such quarterly financial statements for 2001. These financial statements disclose, among other things, Kemper's cash flow, liquidity and declining statutory surplus throughout 2002. Such documents respond fully to DuPont's Request No. 31. To the extent Request 31 may be viewed to include communications between Kemper and various rating agencies leading to downgrades, Kemper is unaware of any such written communications other than the documents previously produced. Kemper notes that the vast majority of its workforce from 2002, including most of its officers and directors from that period, are no longer employed by Kemper. Email files for departing employees were not archived pursuant to company policy.

**Berkshire Hathaway Transaction.** DuPont requests documents relating to Kemper's business dealings with Berkshire Hathaway, wherein a $125 million equity investment in a Kemper stock subsidiary was repurchased, pursuant to regulatory approval.[3] While DuPont

---

[2] Kemper agrees to produce its quarterly financial statements for 2001, which similarly state that under Statutory Accounting, dividends are not accounted for until declared, thus requiring Kemper to book the estimated subject premium as revenue at inception of the policy.

[3] Kemper's decision to repurchase Berkshire Hathaway's $125 million stake in a downstream Kemper subsidiary was made after certain rating downgrades on December 20, 2002 in an effort to create liquidity and make available upstream approximately $700 million in funds. This decision was publicly disclosed on December 23, 2002, prior to the referenced December 24, 2002 AM Best downgrade.

#8301523 v2

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Mary Pat Thynge
February 5, 2007
Page 4

references this transaction in the factual allegations of its Complaint, such allegations have nothing to do with the causes of action DuPont asserts Kemper which relate to Kemper's failure to declare a dividend for the 2002 policy year. (See Complaint, Counts I-VII, ¶¶ 83-118). Indeed, in DuPont's equitable fraud count wherein DuPont alleges specific instances of alleged fraud, DuPont makes no mention whatsoever of the Berkshire Hathaway transaction. (See Complaint, ¶ 99). Moreover, the Berkshire Hathaway transaction is a complete red-herring because even after the December 24, 2002 A.M. Best downgrade of Kemper which DuPont references, DuPont proceeded to renew its coverages with Kemper for the 2003 policy year under essentially the same terms as it did for the 2002 policy year.

**Decision Not to Declare Dividends.** Kemper has produced all non-privileged documents relating to its decision not to declare dividends. DuPont fails to mention that Kemper included in its privilege log numerous privileged documents relating to this decision. Kemper has further produced the Board of Director minutes reflecting the determination that dividends would not be declared, as well as its communications to its insureds and certain brokers regarding same.

We look forward to discussing these matters on Tuesday, February 6, 2007.

Respectfully,

/s/ M. Duncan Grant

M. Duncan Grant (DE Bar No. 2994)

MDG:dw
Enclosures
cc: Clerk, U.S. District Court (w/ enc.) (via CM/ECF)
   John James, Esq. (w/enc.) (via CM/ECF)

**Pepper Hamilton LLP**
Attorneys at Law

#8301523 v2