## SCHEDULE "A"

## DEFINITIONS AND INSTRUCTIONS

1. "Plaintiff" or "DuPont" shall mean E. I. du Pont de Nemours and Company, and any of its employees, representatives, and agents.

2. "Lumbermens" or "Kemper" shall mean Defendant Lumbermens Mutual Casualty Company and its employees, representatives and agents.

3. "Marsh," "You," or "Your" means Marsh & McLennan Companies, Inc., Marsh, Inc., Marsh USA, Inc., and its predecessors, employees, representatives and agents.

4. "Person" means a natural person, firm, proprietorship, association, partnership, corporation, and every other type of organization or entity.

5. The "Complaint" refers to the Verified Complaint DuPont filed in this matter against Lumbermens.

6. "Document" shall have the same meaning as set forth in Federal Rule of Civil Procedure 34 and any accompanying notes to those Rules, and shall include any writing, graphic matter or other tangible thing, whether printed, recorded, produced by any process, or written or produced by hand, including, but not limited to contracts, agreements, correspondence, checks, bank statements, ledgers, wire transfers, money orders, account statements, drawings, invoices, letters, reports, other written communications, manuals, policies, telegrams, memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, spreadsheets, work papers, photographs, tape recordings, video tapes, computer hard drives or other storage media, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of persons attending meetings or conferences, reports and/or summaries of investigations, opinions

or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any way different from the original now in your possession, custody or control, or the possession, custody or control of your counsel, consultants, agents, employees and/or other persons acting on your behalf.

7. "Insurance Program" means the insurance products Lumbermens sold DuPont, including but not limited to the Workers' Compensation Large Risk Contributory Dividend Plan as described in Paragraphs 10-23 of DuPont's Complaint from October 1, 1971 to March 1, 2003.

8. "Proposals" means the final and accepted proposal agreed to by and between Kemper and DuPont relating to workers' compensation services and coverage provided by Kemper to DuPont from October 1, 1971 to March 1, 2003.

9. As used herein, "control" means actual possession, constructive possession, beneficial ownership, power and/or ability to obtain any document.

10. The phrases "referring to," "relating to" "reflecting" or "regarding" mean having any connection, association or concern with or any relevance, relation, pertinence, or applicability to or any implication for bearing on the subject matter.

11. In construing these topics for inquiry:

    (a) the singular form of a word includes the plural form and vice versa;

    (b) "and" and "or" are to be construed either disjunctively or conjunctively as is necessary to bring within the scope of each request any matter, information, or document that might otherwise be construed as outside its scope; and

    (c) each topic for inquiry should be construed independently and not by reference to any other topic for inquiry for purposes of limitation.

## TOPICS FOR INQUIRY

1. Whether DuPont ever requested that Marsh present, or whether Marsh ever presented, DuPont with alternatives to the Kemper's Workers Compensation Large Risk Contributory Dividend Plan from October 1, 1971 to March 1, 2003.

2. Whether DuPont ever requested, or whether Marsh ever provided, comparisons to DuPont of the Kemper Insurance Program with other workers compensation insurance policies from October 1, 1971 to March 1, 2003.

3. Whether Marsh ever informed DuPont, prior to January 1, 2003, that under the Insurance Program, the declaration and/or issuance of a dividend was within the discretion of Kemper's Board of Directors.

4. Whether DuPont ever asked Marsh, or whether Marsh ever informed DuPont, prior to January 1, 2003 of the differences between insurance programs based upon discretionary dividend plans and insurance programs based on retrospective rating plans.

5. Whether DuPont ever asked Marsh, prior to January 1, 2003, whether the declaration and/or issuance of a dividend under the Insurance Program, was within the discretion of Kemper's Board of Directors.

## DOCUMENTS REQUESTED TO BE PRODUCED PRIOR TO DEPOSITION

(a) All documents referring and/or relating to alternatives presented to DuPont by Marsh, or considered by Marsh on DuPont's behalf, to the Kemper's Workers Compensation Large Risk Contributory Dividend Plan from October 1, 1971 to March 1, 2003.

(b) All documents referring and/or relating to whether Marsh ever provided comparisons to DuPont of the Kemper Insurance Program with other the insurance programs of any carrier from October 1, 1971 to March 1, 2003.

3

(c) All documents referring and/or relating to whether Marsh ever informed DuPont, prior to January 1, 2003, that under the Insurance Program, the declaration and/or issuance of a dividend was within the discretion of Kemper's Board of Directors.

(d) All documents referring and/or relating to whether Marsh ever informed DuPont, prior to January 1, 2003 of the differences between insurance programs based upon discretionary dividend plans and insurance programs based on retrospective rating plans.

(e) All documents referring and/or relating to whether DuPont ever asked Marsh about the differences between insurance programs based upon discretionary dividend plans and insurance programs based on retrospective rating plans.

(f) All documents referring and/or relating to whether DuPont ever asked Marsh, prior to January 1, 2003, whether the declaration and/or issuance of a dividend under the Insurance Program, was solely within the discretion of Kemper's Board of Directors.