# EXHIBIT E

**K&L|GATES**

Kirkpatrick & Lockhart Preston Gates Ellis LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222-2312

t 412.355.6500    www.klgates.com

March 7, 2007

Scott A. Bowan
412.355.6714
Fax: 412.355.6501
scott.bowan@klgates.com

**VIA ELECTRONIC AND U.S. MAIL**

Jeffrey M. Heftman, Esq.
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Chicago, IL 60601

Re:   DuPont v. Lumbermens Mut. Cas. Co., Case No. 05-699 (D. Del.)

Dear Jeff:

     I write to provide you with E. I. du Pont de Nemours and Company's ("DuPont") objections and responses to Lumbermens Mutual Casualty Company's ("Kemper") Supplement to Second Notice of Deposition of Plaintiff DuPont Pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Notice") which was served on February 26, 2007. As an initial matter, this letter memorializes what we informed Randy Lending during a telephone conference on March 2, 2007, namely, that we would not be producing a witness on the date you noticed, March 5.

     We also object to Kemper's attempt to tie the Notice to its previously-served Second 30(b)(6) Notice of Deposition by simply denominating it a "Supplement." There is no basis for such a maneuver under the Federal Rules of Civil Procedure. Accordingly, we will treat Kemper's most recent Notice as its own separate and distinct notice of deposition. We further object to the Notice on the grounds that it is untimely in that it seeks to schedule a new deposition after the close of discovery.

     In addition to the specific objections set forth below, please be advised that DuPont is not waiving any attorney-client privilege, work product protection, or any other applicable protection, restriction, or immunity from disclosure with respect to any topic in the Notice.

PI-1735733

K&L|GATES

Jeffrey M. Heftman, Esq.
March 7, 2007
Page 2

## OBJECTIONS AND RESPONSES TO SPECIFIC TOPICS FOR INQUIRY

### TOPIC NO. 1:

Whether DuPont ever considered or evaluated alternatives to a Large Risk Contributory Dividend Plan during the time period in which Kemper provided workers [sic] compensation insurance to DuPont from October 1, 1971 to March 1, 2003.

### RESPONSE:

DuPont objects to this Topic as duplicative of topics in Kemper's prior Notice of Deposition of Plaintiff DuPont Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Kemper's First 30(b)(6) Notice"), including Topic No. 8. DuPont also objects to this Topic on the grounds that it is vague and ambiguous, particularly in its use of the undefined term "Large Risk Contributory Dividend Plan." DuPont further objects to this Topic on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that it seeks testimony for years other than the year that is at issue in this dispute, including 2003 when Kemper ceased underwriting operations and DuPont was forced to consider alternative underwriters/claims handlers. In addition, DuPont objects to this Topic on the grounds that it seeks testimony that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. DuPont also objects to this Topic as misleading and based upon a false premise to the extent that it suggests that Kemper provided substantial risk-transfer worker's compensation insurance to DuPont from October 1, 1971 to March 1, 2003.

### TOPIC NO. 2:

Whether DuPont ever requested from Marsh, or Marsh ever presented Dupont with, alternatives to Kemper's Large Risk Contributory Dividend Plain [sic] for DuPont's workers [sic] compensation insurance needs from October 1, 1971 to March 1, 2003.

### RESPONSE:

DuPont objects to this Topic as duplicative of topics in Kemper's First 30(b)(6) Notice, including Topic No. 8. DuPont also objects to this Topic on the grounds that it is vague and ambiguous, particularly in its use of the undefined terms "Dupont," "Large Risk

K&L|GATES

Jeffrey M. Heftman, Esq.
March 7, 2007
Page 3

Contributory Dividend Plain [sic]," and "workers [sic] compensation insurance needs." DuPont further objects to this Topic on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that it seeks testimony for years other than the year that is at issue in this dispute, including 2003 when Kemper ceased underwriting operations and DuPont was forced to consider alternative underwriters/claims handlers. In addition, DuPont objects to this Topic on the grounds that it seeks testimony that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. DuPont also objects to this Topic as misleading and based upon a false premise to the extent that it suggests that Kemper provided substantial risk-transfer worker's compensation insurance to DuPont from October 1, 1971 to March 1, 2003.

TOPIC NO. 3:

**Whether Dupont ever sought to compare, or Marsh ever provided comparisons to DuPont of, the Kemper Insurance Program with programs offered by other insurance carriers from October 1, 1971 to March 1, 2003.**

RESPONSE:

DuPont objects to this Topic as duplicative of topics in Kemper's First 30(b)(6) Notice, including Topic No. 8. DuPont also objects to this Topic on the grounds that it is vague and ambiguous, particularly in its use of the undefined terms "Dupont," "comparisons," and "Kemper Insurance Program." DuPont further objects to the definition of the term "Insurance Program" on the grounds that the use of the undefined term "insurance products" renders the definition vague and ambiguous and on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that the definition purports to include every "insurance product" that Kemper sold to DuPont from October 1, 1971 to March 1, 2003. In addition, DuPont objects to this Topic on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that it seeks testimony for years other than the year that is at issue in this dispute, including 2003 when Kemper ceased underwriting operations and DuPont was forced to consider alternative underwriters/claims handlers. DuPont also objects to this Topic on the grounds that it seeks testimony that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

K&L|GATES

Jeffrey M. Heftman, Esq.
March 7, 2007
Page 4

TOPIC NO. 4:

Whether Marsh ever advised DuPont, prior to January 1, 2003, that the declaration and/or issuance of the dividend under the Large Risk Contributory Dividend Plan set forth in the Insurance Program and Proposals was discretionary?

RESPONSE:

DuPont objects to this Topic as duplicative of topics in Kemper's First 30(b)(6) Notice, including Topic Nos. 4, 9, and 13. DuPont also objects to this Topic on the grounds that it is vague and ambiguous, particularly in its use of the undefined terms "the dividend" and "Large Risk Contributory Dividend Plan." DuPont further objects to the definition of the term "Insurance Program" on the grounds that the use of the undefined term "insurance products" renders the definition vague and ambiguous and on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that the definition purports to include every "insurance product" that Kemper sold to DuPont from October 1, 1971 to March 1, 2003. In addition, DuPont objects to the definition of the term "Proposals" to the extent that it suggests that DuPont accepts Kemper's interpretation of those Proposals and on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that the definition purports to include every insurance proposal over the parties' thirty-year relationship. DuPont also objects to this Topic on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that it seeks testimony for years other than the year that is at issue in this dispute. DuPont further objects to this Topic on the grounds that it seeks testimony that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In addition, DuPont also objects to this Topic as calling for a legal conclusion.

TOPIC NO. 5:

Whether Kemper and DuPont ever had discussions, prior to January 1, 2003, regarding the discretionary nature of the dividend under the Large Risk Contributory Dividend Plan set forth in the Insurance Program and Proposals.

K&L|GATES

Jeffrey M. Heftman, Esq.
March 7, 2007
Page 5

**RESPONSE:**

DuPont objects to this Topic as duplicative of topics in Kemper's First 30(b)(6) Notice, including Topic Nos. 4, 9, and 13. DuPont also objects to this Topic on the grounds that it is vague and ambiguous, particularly in its use of the undefined terms "discretionary nature," "the dividend" and "Large Risk Contributory Dividend Plan." DuPont further objects to the definition of the term "Insurance Program" on the grounds that the use of the undefined term "insurance products" renders the definition vague and ambiguous and on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that the definition purports to include every "insurance product" that Kemper sold to DuPont from October 1, 1971 to March 1, 2003. In addition, DuPont objects to the definition of the term "Proposals" to the extent that it suggests that DuPont accepts Kemper's interpretation of those Proposals and on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that the definition purports to include every insurance proposal over the parties' thirty-year relationship. DuPont also objects to this Topic on the grounds that it is overbroad and it would be unduly burdensome to respond, particularly to the extent that it seeks testimony for years other than the year that is at issue in this dispute. DuPont further objects to this Topic on the grounds that it seeks testimony that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In addition, DuPont objects to this Topic as calling for a legal conclusion.

        Please do not hesitate to contact me if you have any questions regarding the foregoing.

                                            Very truly yours,

                                            Scott A. Bowan

cc:    Randall M. Lending, Esq. (via e-mail only)

# EXHIBIT F

# VEDDERPRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

JEFFERY M. HEFTMAN
312-609-7728
jheftman@vedderprice.com

CHICAGO • NEW YORK CITY • WASHINGTON, D.C. • ROSELAND, NJ

March 9, 2007

**VIA E-MAIL (SBOWAN@KLNG.COM)**

Scott A. Bowan
Kirkpatrick & Lockhart Nicholson Graham LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222

Re: DuPont v. Kemper

Dear Scott:

    I am writing to follow up the call you and Chris French had on March 2, 2007 with Randy Lending concerning DuPont's objections to Kemper's Second Rule 30(b)(6) Notice. During that call, DuPont advised that it is standing on its objections and refuses to produce a corporate representative in response to Kemper's Second Rule 30(b)(6) Notice. We recently received DuPont's March 7, 2007 objections to Kemper's Supplemental Second Rule 30(b)(6) Notice wherein DuPont states that it will not be producing a witness for this Notice as well.

    I write to you to attempt to see if DuPont will reconsider its decision not to produce a 30(b)(6) witness so we do not need to burden Magistrate Judge Thyne with a motion to compel. As you are well aware, Kemper is producing Mr. McGregor for a second 30(b)(6) deposition pursuant to DuPont's Second 30(b)(6) Notice.

    In the interest of attempting to reach an accommodation without the necessity of invoking assistance from the Court, we have narrowed the topics of inquiry for our requested Rule 30(b)(6) deposition as follows.

**Topics for Inquiry in Second Notice**

    No. 1: Kemper seeks a DuPont corporate witness to testify concerning DuPont's calculation of the $96,867 that DuPont claims Kemper owes it as alleged in DuPont's Reply to Defendant's Counterclaims. Contrary to DuPont's objection, this is not a topic in Kemper's First 30(b)(6) Deposition Notice (the "First Notice"). To the extent that you maintain that this topic is covered by the interrogatories (Topic 1) or Topic 15 of the First Notice, as you know, the 30(b)(6) deposition on September 27, 2006 was not completed and these areas were not covered.

CHICAGO/#1616526.2

VEDDERPRICE

Scott A. Bowan
March 9, 2007
Page 2

Further, as you may recall, at Mr. Slesicki fact witness deposition taken on January 17, 2007, Randy showed him a document (Exhibit 43) which purportedly contained a Marsh calculation of this amount. Mr. Slesicki testified that he needed a different spreadsheet that he had prepared to testify completely concerning how DuPont calculated this amount. (See Slesicki Dep Tr., pp. 126-130, a copy of which is attached for your convenience). When Randy asked if this document had been produced, Mr. Slesicki and Chris both stated that it had been produced in the approximate 400,000 pages of DuPont documents, when in fact the document had not been produced. Indeed, this spreadsheet was not produced until February 16, 2007, a month after Mr. Slesicki's fact witness deposition.

Kemper is entitled to depose a DuPont corporate representative as to the specifics of its calculations of damages as set forth on a document which was not produced until after both the September 27, 2006 corporate representative deposition and Mr. Slesicki's fact witness deposition of January 17, 2007.

No. 3: Kemper seeks the identification and authentication of the final operative Proposals for 1984-2001. We will accept Chris' suggestion that we send to you a proposed stipulation containing the set of what we understand to be the Proposals in place during these years. To the extent DuPont disagrees or believes another document is the operative Proposal for a given year, we understand that you will advise us of the document which DuPont believes to be the operative Proposal.

No. 5: Kemper seeks a DuPont corporate witness to testify regarding the reasons DuPont elected to utilize a Large Risk Contributory Dividend Plan ("LRCDP") with Kemper instead of other alternatives, such as a retrospective rating plan. Contrary to DuPont's objection, this request does not "lack foundation." Rather, both Kemper and DuPont's experts have testified that other loss sensitive insurance programs were available in the marketplace other than dividend programs. Charity Elmendorf also testified on February 23, 2007 that Marsh had presented DuPont with alternatives to Kemper's program. Further, the term "retro" is not a vague and undefined term as the experts of both Kemper and DuPont have testified concerning this type of program. Kemper is entitled to learn from a DuPont corporate representative as to why it elected to go with Kemper's program rather than other types of programs.

No. 8: Kemper seeks a DuPont corporate witness to testify concerning the accounting documents produced by Dupont on January 16, 2007 (DPT 324032-279). Contrary to DuPont's objection, this topic is not duplicative of the 30(b)(6) testimony already taken. These documents were not produced until months after the DuPont 30(b)(6) deposition. Further, as Kemper has already agreed to produce a 30(b)(6) witness later this month to explain the accounting documents it has produced, DuPont should do the same.

CHICAGO/#1616526.2

VEDDERPRICE

Scott A. Bowan
March 9, 2007
Page 3

**Topics for Inquiry in Supplemental Notice**

I am also in receipt of DuPont's objections to Kemper's Supplement to Second Notice of Rule 30(b)(6) depositions. The Rules of Civil Procedure do not prohibit the filing of a supplement to a previously filed notice of Rule 30(b)(6) deposition. Moreover, the notice was filed within the discovery timeframe.

DuPont's objections to Topics 1 through 5 of Kemper's Supplemental Notice – whether DuPont considered or evaluated alternatives to the LRCDP from October 1, 1071 to March 1, 2003, whether DuPont ever requested that Marsh present DuPont with said alternatives, whether DuPont or Marsh, on its behalf, ever sought comparisons on Kemper's LRCDP with programs offered by other insurance carriers, whether Marsh ever advised DuPont of the discretionary nature of the dividend in the LRCDP and whether Kemper and Dupont ever had discussions regarding the discretionary nature of the LRCDP – will be addressed collectively.

DuPont's objection that the Topics are overbroad as they call for testimony about policy years other than the 2002 policy year is, at best, disingenuous insofar as DuPont has previously issued requests for production and topics within Rule 30(b)(6) notices which relates to years prior to the 2002 policy year, to include the historical origin of terms present in the 2002 Insurance Proposal. Moreover, DuPont has steadfastly maintained that it is necessary to consider the 30 year history of the Kemper/DuPont insurance arrangement to understand the terms in the 2002 Proposal. Further, to the extent that DuPont has considered alternatives to the Kemper dividend program in years prior to 2002, such a determination would be relevant to DuPont's claim that it did not understand there to be a discretionary dividend component to the Kemper program in 2002.

Nor are the Topics within the Supplemental Notice duplicative of Kemper's First Rule 30(b)(6) Notice. Topic No. 8 of the First Notice concerned why DuPont elected to acquire insurance from Kemper rather than become exclusively self-insured, and is unrelated to whether DuPont considered or evaluated alternatives to a LRCDP with the insurance programs offered by "other insurance carriers" (Topics 1-3 of Supplemental Notice). Kemper certainly will not cover the same ground concerning self-insurance that it covered during its first 30(b)(6) deposition.

Similarly, DuPont's understanding of the terms of the Insurance Proposal as relates to the dividend, at Kemper's First Notice Topic No. 4, is not duplicative of whether Marsh ever advised DuPont that the declaration of dividends was discretionary or whether DuPont and Marsh ever had discussions regarding the discretionary nature of the dividend under the LRCDP (Topics 4-5 of the Supplemental Notice).

VEDDERPRICE

Scott A. Bowan
March 9, 2007
Page 4

    Nor are Topic Nos. 9 and 13 of Kemper's First Notice-the bases for DuPont's contention that the dividend is not discretionary and that it was not the intent of the program that DuPont would be obligated to pay the full audited subject premium - duplicative of Topics 4-5 of Kemper's Supplemental Notice inquiring into communications between Marsh and DuPont as to the discretionary nature of dividends under the LRCDP.

    Lastly, DuPont's relevancy objections to the Topics in the Supplemental Notice are not well founded. DuPont has asserted that its historical understanding of the terms contained in the 2002 Proposal over the 30 years of its relationship with Kemper is relevant. Thus, whether DuPont was advised by Marsh of the discretionary nature of the dividend in the LRCDP, or whether it was presented with and considered alternatives to the Kemper program which might not have contained a dividend component are directly relevant to DuPont's claim for reformation.

    We request that DuPont reconsider its refusal to produce a corporate representative as to the above topics. To the extent that we have not heard back from you by March 12, 2007, we will assume you refuse and will proceed to request the assistance of Judge Thygne. Please contact me should you wish to discuss this matter further.

Regards,

Jeffery M. Heffman

JMH/lr
Attachment
cc:   Randall M. Lending, Esq. (w/attach.

CHICAGO/#1616526.2