# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E. I. du PONT de NEMOURS and    )
COMPANY,                        )
                                )
            Plaintiff,          )
                                )
      v.                        )        C.A. No. 05-699 (KAJ)
                                )
LUMBERMENS MUTUAL CASUALTY      )
COMPANY,                        )
                                )
            Defendant.          )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Plaintiff, E. I. du Pont de Nemours and Company, hereby propounds the

following interrogatories on Defendant, Lumbermens Mutual Casualty Company.

### DEFINITIONS

1.    "COMMUNICATION" means any transmission of information, the

information transmitted, and any process by which information is transmitted, whether written or

oral.

2.    "DOCUMENT" means any kind of written, typewritten, or printed

material whatsoever, any kind of graphic material, and any computer readable media including,

but without limitation, papers, agreements, contracts, notes, memoranda, correspondence,

electronic mail messages (e-mail), studies, working papers, letters, telegrams, invoices, personal

diaries, reports, records, books, forms, indices, transcriptions and recordings, magnetic tapes,

disks and printed cards, data sheets, data processing cards, personal calendars, journals, diaries,

interoffice memoranda, minutes and records of any sorts of meetings, financial statements,

financial calculations, estimates, reports of telephone or other oral conversations, appointment

7.    State the amount of the "dividend" paid and/or credited to **DUPONT** for each year from 1985 to the present.

**RESPONSE:**

8.    State the basis for **YOUR** refusal to credit **DUPONT** with a "dividend" under the **INSURANCE PROGRAM** for the January 1, 2002-03 program year.

**RESPONSE:**

9.    **IDENTIFY** each of **YOUR** other policyholders that have disputed **YOUR** alleged right not to pay or credit "dividends" to them since 2000.

**RESPONSE:**

10.    **IDENTIFY** each individual who was involved in reaching the decision regarding **YOUR** payment, nonpayment, crediting, or noncrediting of a "dividend" to **DUPONT** under the **INSURANCE PROGRAM** for the January 1, 2002-03 program year.

**RESPONSE:**

11.    Do **YOU** need the approval of the Illinois Department of Insurance to declare or issue a "dividend" for **DUPONT** under the **INSURANCE PROGRAM** for the

*Of Counsel*:

John M. Sylvester
Christopher C. French
Scott A. Bowan
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA  15222
Telephone:  (412) 355-6500


Dated:  March 8, 2006
722798/20120-345

POTTER ANDERSON & CORROON LLP

By: _____
    John E. James (No. 996)
    Richard L. Horwitz (No. 2246)
    Hercules Plaza - 6th Floor
    1313 North Market Street
    Wilmington, DE  19801
    Telephone:  (302) 984-6000

*Attorneys for Plaintiff*
*E I  du Pont de Nemours & Company*

## CERTIFICATE OF SERVICE

I, John E. James, hereby certify that, on March 8, 2006, the foregoing

**PLAINTIFF'S FIRST SET OF INTERROGATORIES** was served, in the manner indicated,

upon the following counsel of record for Defendant Lumbermens Mutual Casualty Company:

**By Hand**

David B. Stratton
M. Duncan Grant
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 North Market Street
Wilmington, DE  19801

**By First Class Mail**

Michael M. Eidelman
Randall M. Lending
Jeffery M. Heftman
VEDDER, PRICE, KAUFMAN &
KAMMHOLZ, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003

 

John E. James (No. 996)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
Telephone:  (302) 984-6000
E-Mail:  jjames@potteranderson.com

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E.I. du PONT de NEMOURS and COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-699 (KAJ) |
| LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) | |

### KEMPER'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Lumbermens Mutual Casualty Company ("Kemper"), by and through its attorneys, and as its objections and answers to Plaintiff E.I. du Pont de Nemours ("DuPont"), states as follows:

### GENERAL OBJECTIONS

1.     Kemper objects to DuPont's First Set of Interrogatories to the extent that they request information, communications and/or documents protected against disclosure by the attorney-client privilege or work product doctrine. Any such objection which is hereinafter made in response to any specific interrogatory is made without limiting this general objection as it pertains to another specific interrogatory.

2.     Kemper objects to DuPont's First Set of Interrogatories to the extent that they call for the disclosure of information which is not relevant to any claim or defense in this litigation or which is otherwise not reasonably calculated to lead to the discovery of admissible evidence.

3     Kemper objects to DuPont's First Set of Interrogatories to the extent that they demand that Kemper state "all" persons or "each" person having knowledge in response to any

**INTERROGATORY NO. 6:** Have **YOU** ever demanded that **DUPONT** pay the full "Audited Subject premium" for any year of the **INSURANCE PROGRAM** other than for the January 1, 2002-03 program year? If so, **IDENTIFY** the program year(s). If not, explain why **YOU** have never previously demanded that **DUPONT** pay the full "Audited Subject premium."

**ANSWER:**

Subject to Kemper's General Objections, Kemper has demanded payment of the Audited Subject premium through payment in cash or through application of a dividend credit, in every year that the Insurance Program has been in effect

**INTERROGATORY NO. 7:** State the amount of the "dividend" paid and/or credited to **DUPONT** for each year from 1985 to the present.

**ANSWER:**

Kemper objects to Interrogatory No. 7 as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 8:** State the basis for **YOUR** refusal to credit **DUPONT** with a "dividend" under the **INSURANCE PROGRAM** for the January 1, 2002-03 program year.

**ANSWER:**

Subject to Kemper's General Objections, Kemper states that DuPont was not credited with a dividend under the Insurance Program for the January 1, 2002-03 Policy Year pursuant to Section 215 ILCS 5/54 of the Illinois Insurance Code and the Board of Directors' determination, in accordance with said provision and the discretionary authority reserved for the Board under the Insurance Program, that no dividend would be declared for that policy year

**INTERROGATORY NO. 9:** **IDENTIFY** each of **YOUR** other policyholders that have disputed **YOUR** alleged right not to pay or credit "dividends" to them since 2000

**ANSWER:**

Kemper objects to Interrogatory No 9 as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 10:** **IDENTIFY** each individual who was involved in reaching the decision regarding **YOUR** payment, nonpayment, crediting, or noncrediting of a

- 10 -

their retention, all current unpaid balances, and an appropriate margin to maintain adequate collateral to account for potential changes, including increases, in the obligations over time

**INTERROGATORY NO. 13:** If **YOUR** response to any request for admission contained in Plaintiff's First Set of Requests for Admission is anything other than an unqualified admission, state, as to each such request, the basis for **YOUR** denial, including the facts that allegedly support **YOUR** denial, the **IDENTITY** of all **PERSONS** who **YOU** believe have personal knowledge of those facts, and **IDENTIFY** all **DOCUMENTS** that **YOU** believe support **YOUR** denial.

**ANSWER:**

See Kemper's objections and responses to DuPont's First Set of Requests for Admission, which are incorporated herein by reference. Kemper objects to this Interrogatory on the grounds that it is overbroad and that it would be unduly burdensome to respond to it further.

| OF COUNSEL: | /s/ M. Duncan Grant |
|---|---|
| | David B. Stratton (Del. Bar No. 960) |
| Michael M. Eidelman | M. Duncan Grant (Del. Bar No. 2994) |
| Randall M. Lending | PEPPER HAMILTON LLP |
| Jeffery M. Heftman | Hercules Plaza, Suite 5100 |
| Vedder, Price, Kaufman & Kammholz, P.C. | 1313 N. Market Street |
| 222 North LaSalle Street Suite 2600 | P.O. Box 1709 |
| Chicago, IL 60601-1003 | Wilmington, DE 19899-1709 |
| | (302) 777-6500 |
| Dated: April 13, 2006 | Attorneys for Defendant |
| | Lumbermens Mutual Casualty Company |

186960

- 12 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E. I. du PONT de NEMOURS and COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 05-699 (KAJ) |
| LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

## VERIFICATION

STATE OF ILLINOIS      )
                       )      SS
COUNTY OF LAKE         )

Jack M McGregor, having been duly sworn according to law, deposes and says:

I am Associate General Counsel and an officer of Lumbermens Mutual Casualty

Company ("Kemper"). I have read Kemper's Objections and Responses to Plaintiffs First Set of

Interrogatories and the responses are true and accurate to the best of my knowledge, information,

and belief.

By: _____
        Jack M. McGregor

SWORN TO AND SUBSCRIBED before me this _11_ day of April, 2006.

_____
Notary Public

My Commission Expires: _03/03/09_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E.I. du PONT de NEMOURS and       )
COMPANY,                          )
                                  )
            Plaintiff,            )
                                  )
        v.                        )        C.A. No. 05-699 (KAJ)
                                  )
LUMBERMENS MUTUAL CASUALTY        )
COMPANY,                          )
                                  )
            Defendant.            )

## NOTICE OF SERVICE OF
## KEMPER'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

I hereby certify that on April 17, 2006, copies of the foregoing Objections and Responses

to Plaintiff's First Set of Interrogatories were served upon the following counsel, in the manner

stated for each:

| John E. James, Esq. (via hand delivery) | Christopher C. French, Esq. (via Federal Express) |
| Potter, Anderson & Corroon, LLP | Kirkpatrick & Lockhart Nicholson Graham, LLP |
| Hercules Plaza | Henry W. Oliver Building |
| 1313 N. Market Street | 535 Smithfield Street |
| Wilmington, DE  19801 | Pittsburgh, PA  15222-2312 |

/s/ M. Duncan Grant
M. Duncan Grant (Del. Bar No. 2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500


Attorneys for Defendant
Lumbermens Mutual Casualty Company

CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2006, copies of the foregoing Notice of Service of

Kemper's Objections and Responses to Plaintiff's First Set of Interrogatories were served upon

the following counsel, in the manner stated for each:

| John E. James, Esq. (via hand delivery) | Christopher C. French, Esq. (via Federal Express) |
|---|---|
| Potter, Anderson & Corroon, LLP | Kirkpatrick & Lockhart Nicholson Graham, LLP |
| Hercules Plaza | Henry W. Oliver Building |
| 1313 N. Market Street | 535 Smithfield Street |
| Wilmington, DE  19801 | Pittsburgh, PA  15222-2312 |

/s/ M. Duncan Grant
M. Duncan Grant (Del. Bar No. 2994)

**Discovery Documents**

1:05-cv-00699-KAJ E I du Pont de Nemours and Company v. Lumbermens Mutual Casualty Company

## U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Grant, M. entered on 4/17/2006 at 3:00 PM EDT and filed on 4/17/2006

**Case Name:**       E I du Pont de Nemours and Company v. Lumbermens Mutual Casualty Company
**Case Number:**     1:05-cv-699
**Filer:**           Lumbermens Mutual Casualty Company
**Document Number:** 52

**Docket Text:**
NOTICE OF SERVICE of Kemper's Objections and Responses to Plaintiff's First Set of Interrogatories by Lumbermens Mutual Casualty Company. (Attachments: # (1) Certificate of Service)(Grant, M.)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/17/2006] [FileNumber=200772-0]
[9686718dd650451f3a840a02cc297b85d72706f99bb344aa341882a54e3dfe497286
ab7237aa814db56270504fc9ea57a372ff84af1b863ccc475f9acc9389b6]]
**Document description:** Certificate of Service
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/17/2006] [FileNumber=200772-1]
[af2ed6ba561a7c4c849cfe356217ff6bee45a37a984c53c76020de464dfbbfc2b638
c0cd2ee9e89046250ac8e2cabdc2ed31232793197b1348dac9e05eb1fe4e]]

**1:05-cv-699 Notice will be electronically mailed to:**

M. Duncan Grant    grantm@pepperlaw.com, willauerd@pepperlaw.com

John E. James    jjames@potteranderson.com; clis@potteranderson.com; cyoung@potteranderson.com; srickards@potteranderson com; achin@potteranderson.com; scrawford@potteranderson.com

David B. Stratton    strattond@pepperlaw.com,

**1:05-cv-699 Notice will be delivered by other means to:**

# EXHIBIT 3

**Bowan, Scott A.**

| | |
|---|---|
| **From:** | Bowan, Scott A. |
| **Sent:** | Thursday, March 01, 2007 11:32 AM |
| **To:** | 'RANDY LENDING' |
| **Cc:** | jheftman@vedderprice.com; French, Christopher C. |
| **Subject:** | RE: DuPont v. Lumbermens |

Thanks.  I just wanted to be clear that you are still refusing to provide a substantive response.

-----Original Message-----
From: RANDY LENDING [mailto:rlending@vedderprice.com]
Sent: Thursday, March 01, 2007 11:27 AM
To: Bowan, Scott A.
Cc: jheftman@vedderprice.com
Subject: Re: DuPont v. Lumbermens


Scott.  We responded by objecting.   Randy

Randall M. Lending
Vedder Price Kaufman & Kammholz, P.C.
222 North LaSalle, Suite 2600
Chicago, Illinois  60601
(tel) (312) 609-7564
fax) (312) 609-5005
E-Mail:  rlending@vedderprice.com

>>> "Bowan, Scott A." <scott.bowan@klgates.com> 3/1/2007 10:16 AM >>>
Randy,


In my letter to you of February 15, I mentioned that Kemper had not
responded to Interrogatory No. 9 from DuPont's First Set of
Interrogatories, and I asked for a response by February 22.  We still
have not received Kemper's response.  Please let me know today when we
can expect to receive Kemper's response.


Thanks.
Scott


Scott A. Bowan
Kirkpatrick & Lockhart Preston Gates Ellis LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Tel:  412.355.6714

Fax: 412.355.6501

scott.bowan@klgates.com


This e-mail and any attachments may contain privileged and confidential
information.  If you are not a named recipient or have received this
communication in error, please notify the sender immediately and destroy
this e-mail, its attachments, and all copies without further
distributing or copying them.

1

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you have received this e-mail in error, please contact me at scott.bowan@klgates.com.


FEDERAL TAX NOTICE:
Treasury Regulations require us to inform you that any federal tax advice contained herein (including in any attachments and enclosures) is not intended or written to be used, and cannot be used by any person or entity, for the purpose of avoiding penalties that may be imposed by the Internal Revenue Service.  In addition, we do not impose upon any person or entity to whom this is addressed any limitation on the disclosure of the tax treatment or tax structure of any transaction discussed herein (including in any attachments and enclosures).

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E.I. du PONT de NEMOURS and COMPANY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| LUMBERMENS MUTUAL CASUALTY COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

C.A. No. 05-699-***

### PLAINTIFF'S SECOND SET
### OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff, E. I. du Pont de Nemours and Company, hereby propounds the following document requests on Defendant, Lumbermens Mutual Casualty Company.

### DEFINITIONS

1.     **"IREX LITIGATION"** means the litigation involving a "dividend issue" with a policyholder known as "Irex" that was referred to by Nick V. Vlahos during his deposition in this case on February 9, 2007.

2.     **"KEMPER"** means the Kemper Insurance Companies, including Lumbermens Mutual Casualty Company, American Manufacturers Mutual Insurance Company, American Motorists Insurance Company, Kemper Casualty Insurance Company, Kemper Lloyds Insurance Company, Specialty Surplus Insurance Company, and Universal Bonding Insurance Company.

### DOCUMENT REQUESTS

1.     All transcripts of depositions given by Nick V. Vlahos in the **IREX LITIGATION.**

2.    All transcripts of depositions given by current and former **KEMPER** employees, whether in the **IREX LITIGATION** or in other matters where **KEMPER'S** decision not to declare a "dividend" is or was at issue, where the deponent testified regarding any of the following terms, phrases, concepts, or endorsements contained in **KEMPER** insurance programs:

(a)    "Basic premium";

(b)    "Subject Premium"; "Audited Subject Premium"; "Estimated Subject Premium";

(c)    "loss conversion factor"; "Converted Limited Losses";

(d)    "Large Risk Contributory Dividend Plan";

(e)    "dividend", "Dividend Formula"; "Dividend Determination";

(f)    "Cash/Security Reconciliation" formula;

(g)    the "Special Notes" on page 12 of the Kemper/DuPont 2002-03 Proposal; and

(h)    "unabsorbed premium".

*Of Counsel*:

John M. Sylvester
Christopher C. French
Scott A. Bowan
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
(412) 355-6500

Dated: February 16, 2007
778223/20120-345

POTTER ANDERSON & CORROON LLP

By: _____
    John E. James (No. 996)
    Richard L. Horwitz (No. 2246)
    Hercules Plaza - 6th Floor
    1313 North Market Street
    Wilmington, DE 19801
    (302) 984-6000

*Attorneys for Plaintiff*
*E. I. du Pont de Nemours and Company*

-2-

## **CERTIFICATE OF SERVICE**

I, John E. James, hereby certify that, on February *16*, 2007, the foregoing

**PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

was served, in the manner indicated, upon the following counsel of record for Defendant

Lumbermens Mutual Casualty Company:

| **By Hand** | **By First Class Mail** |
|---|---|
| David B. Stratton | Michael M. Eidelman |
| M. Duncan Grant | Randall M. Lending |
| PEPPER HAMILTON LLP | Jeffery M. Heftman |
| Hercules Plaza, Suite 5100 | VEDDER, PRICE, KAUFMAN & |
| 1313 North Market Street | KAMMHOLZ, P.C. |
| Wilmington, DE 19899-1709 | 222 North LaSalle Street, Suite 2600 |
| | Chicago, IL  60601-1003 |

John E. James (No. 996)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Telephone:  (302) 984-6000
E-Mail:  jjames@potteranderson.com

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

E.I. du PONT de NEM OURS and
COMPANY,

        Plaintiff,

    v.

LUMBERMENS MUTUAL CASUALTY
COMPANY,

        Defendant.

C.A. No. 05-699 (KAJ)

## RESPONSE TO PLAINTIFF'S SECOND
## SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Lumbermens Mutual Casualty Company, by and through its attorneys and for its responses to Plaintiff E.I. du Pont de Nemours and Company's Second Set of Requests for Production of Documents, states as follows:

### GENERAL OBJECTIONS

1.     Kemper objects to the Requests to the extent that they seek information, communications and/or documents protected against disclosure by the attorney-client privilege or work product doctrine or any other applicable protection, restriction, or immunity from disclosure. Any such objection which is hereinafter made in response to any specific Request is made without limiting this general objection as it pertains to another specific Request.

2.     Kemper objects to DuPont's Requests to the extent that they call for the disclosure of information which is not relevant to any claim or defense in this litigation or which is otherwise not reasonably calculated to lead to the discovery of admissible evidence.

3.    Kemper objects to producing or identifying documents in response to DuPont's Requests or otherwise providing answers which contain or make reference to confidential and/or proprietary information not relevant to this litigation.

5.    Any documents identified and/or produced by Kemper in response to DuPont's Second Set of Requests for Production are produced without, in any way, waiving or intending to waive any objections that Kemper may have with respect to the subsequent use of such documents, or with respect to the identification and/or production of any documents in the future, or with respect to the identification and/or production of any documents of a similar nature. Kemper specifically reserves:

(a)    all questions as to admissibility of any and all such documents, in whole or in part, or of the subject matter thereof;

(b)    the right to object to the use of any such documents, in whole or in part, or the subject matter covered thereby, in any subsequent step or proceeding in this action, on any or all of the foregoing grounds or on any proper grounds whether or not enumerated above; and

(c)    the right to object to any and all grounds at any time to additional requests or other discovery procedures involving or related to the subject matter of documents sought by DuPont.

6.    Kemper objects to DuPont's "Definitions" to the extent that they seek to impose obligations on Kemper which are broader than, different from, or contrary to those imposed by the Federal Rules of Civil Procedure.

7.    Kemper reserves the right to supplement its answers and responses to DuPont's Requests as discovery is in its early stages and investigation continues. Kemper's answers to any such Request are without prejudice to this general objection.

- 2 -

9.    Kemper objects to the definition of "Kemper" as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it includes: American Manufacturers Mutual Insurance Company, American Motorists Insurance Company, Kemper Casualty Insurance Company, Kemper Lloyds Insurance Company, Specialty Surplus Insurance Company, and Universal Bonding Insurance Company.  It was Lumbermens Mutual Casualty Company that issued the policy at issue in this case.

10.    Kemper also objects to the definition of "Kemper" as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it encompasses all of the "Kemper" agents, predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, area or regional offices, directors, officers, employees, managing general agents, underwriting agents, claims adjusting agents, or representatives of the foregoing.

12.    Kemper objects to the Requests to the extent that they are overbroad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

## DOCUMENT REQUESTS

### REQUEST NO. 1:

All transcripts of depositions given by Nick V. Vlahos in the **IREX LITIGATION.**

### RESPONSE:

Kemper objects to Request No. 1 as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

### REQUEST NO. 2:

All transcripts of depositions given by current and former **KEMPER** employees, whether in the **IREX LITIGATION** or in other matters where **KEMPER's** decision not to declare a "dividend" is or was at issue, where the deponent testified regarding any of the following terms, phrases, concepts, or endorsements contained in **KEMPER** insurance programs:

- 3 -

(a)    "Basis premium";

(b)    "Subject Premium"; "Audited Subject Premium"; Estimated Subject Premium";

(c)    "loss conversion factor"; Converted Limited Losses";

(d)    "Large Risk Contributory Dividend Plan";

(e)    "dividend", "Dividend Formula"; Dividend Determination";

(f)    "Cash/Security Reconciliation" formula;

(g)    the "Special Notes" on page 12 of the Kemper/DuPont 2002-03 Proposal; and

(h)    "unabsorbed premium".

**RESPONSE:**

Kemper objects to Request No. 2 as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Dated:  March 19, 2007                    Respectfully submitted,

                                          LUMBERMENS MUTUAL CASUALTY
                                          COMPANY.

                                          By: _____
                                                   One of Its Attorneys

David B. Stratton
Pepper Hamilton, LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709

Michael M. Eidelman
Randall M. Lending
Jeffery M. Heftman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL  60601-1003
(312) 609-7500

- 4 -

## CERTIFICATE OF SERVICE

The undersigned certifies that true and correct copies of the foregoing **Response to**

**Plaintiff's Second Set of Requests for Production of Documents** were served on:

John E. James
Richard L. Horwitz
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
Fax: 302-658-5607

John M. Sylvester
Christopher C. French
Scott A Bowan
Kirkpatrick & Lockhart Preston
Gates Ellis LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Fax: 412-355-6501

via facsimile transmission and by depositing the same in the U.S. mail, first-class postage

prepaid, at 222 North LaSalle Street, Chicago, Illinois 60601-1003 by 5:00 p.m. on March 19,

2007.

Jeffery M. Heftman

# EXHIBIT 6



▷
Briefs and Other Related Documents
Rhone-Poulenc Rorer, Inc. v. Home Indem.
Co.E.D.Pa.,1991.
    United States District Court, E.D. Pennsylvania.
    RHONE-POULENC RORER INC., and Armour
Pharmaceutical Co.
v.
The HOME INDEMNITY COMPANY
v.
AETNA CASUALTY & SURETY CO., et al.
v.
CITY INSURANCE COMPANY, et al.
**Civ. A. No. 88-9752.**

May 7, 1991.

Jill A. Douthett, Philadelphia, Pa
Louis E. Bricklin, Illene G. Greenberg, Bennett
Bricklin & Saltzburg, Philadelphia, Pa., for John
Barrington Hume & Insco, Ltd.
Jeffrey B. Albert, Wendy Fleishman, Stephanie
Resnick, Timothy D. Mara, Philadelphia, Pa., James
W. Christie (co-counsel) Clark, Ladner, Fortenbaugh
& Young, Philadelphia, Pa., for The Home Indemnity
Company.

*MEMORANDUM & ORDER*
EDWIN E. NAYTHONS, United States Magistrate
Judge.
**\*1** Before this United States Magistrate Judge on
reserve decision is a Motion by plaintiffs ("the policy
holders") to Compel the defendants ("insurers") to
Answer certain interrogatories, and produce
documents pursuant to policyholders' motions to
compel discovery concerning "drafting history" and
"other insureds". The issues have been extensively
briefed by counsel who have also presented
informative oral argument. This Memorandum
summarizes my findings and rulings and resolves all
aspects of the policyholders' motions. An Order will
accompany this Opinion.

This is a declaratory judgment action filed pursuant
to 28 U.S.C. § 2201(a) wherein the policyholders
seek relief in the nature of a declaration of coverage
under various insurance policies issued to them by
the insurers. Under the terms of these contracts, the
policyholders have demanded that the insurers defend
and indemnify the policyholders in certain lawsuits

and proceedings that have been brought against them
in this Court. The policyholders seek to obtain a
declaration that the policies issued by the insurers
obligate them to provide defense and indemnification
for the underlying AIDS-related claims. The
policyholders filed two previous motions to compel,
the first under Local Rule 24(g), against the insurers
that failed to respond at all to the policyholders'
discovery requests which this Court granted by an
Order entered March 6, 1991; the second, seeking
more complete responses to requests for the names of
certain present and former insurer personnel and to
compel the production of promised documents. I
ruled on the latter motion on April 15, 1991 by way
of Bench Opinion requiring the insurers to designate
persons responsive to the interrogatories by way of
Rule 30(b)(6) notices of deposition and to produce
documents pursuant to subpoena.

*I.*

*DRAFTING HISTORY*

The insurers argue that the drafting history of its
policies with the policyholders is irrelevant, and that
the production of that information would be unduly
burdensome. Initially I have determined that the
policyholders must be allowed to determine whether
a claim for ambiguity in the insurance policies is
viable. Therefore, I will permit the policyholders to
explore the creation of the language in the policies
and the question of whether the intent of the drafters
is consistent with the application of that language.
The essential issues in this case concerns the
interpretation of the language of the insurance
policies provided to the policyholders by the insurers.
This Circuit has held that the meaning of a contract
may be derived from the parties' intent. *Mellon Bank
N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001
(3d Cir.1980). The drafting history of the policies,
the insurer's participation in organizations involved in
the drafting and their adoption of standard form
language promulgated by these organizations is
relevant to the insurers' intent concerning the policies
in question. Furthermore, in this Circuit, a contract
may be considered ambiguous if it is capable of being
understood in more senses than one. It must be
concluded that the language is capable of only one
interpretation before it can be said that no ambiguity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 78200 (E.D.Pa.), 20 Fed.R.Serv.3d 1479
**(Cite as: Not Reported in F.Supp.)**

exists. *Landtect Corp. v. State Mutual Life Insurance Co., etc.*, 605 F.2d 75, 79-80 (3d Cir.1979) (J. Hunter) (quoting *Gerhart v. Henry Disston & Sons*, 290 F.2d 778, 784 (3d Cir.1961). The issue of the ambiguity of the policies is for the trial court to decide. Since that issue is not before this United States Magistrate Judge, I find that the information sought by the policyholders concerning the drafting history of the policy language, the insurers' participation in insurance organizations and their adoption of particular policy language is relevant as it may lead to admissible evidence concerning the insurers' intent and their interpretation of the policies.

**\*2** The insurers argue that this discovery is irrelevant under Pennsylvania law due to the principle that the undisclosed intent of one party to a contract is immaterial to the contract. As a result I am not ruling on the ambiguity in the language of the insurance policies, extrinsic evidence, or the applicable choice of law if any, leaving those issues to be decided by the trial court at a later time. I do note however, that Pennsylvania law might apply and since that law potentially allows extrinsic evidence to be admitted in a dispute over an ambiguous contract, the drafting history is discoverable. Nevertheless, the insurers have assumed for the purposes of its argument that under the law its undisclosed intent is irrelevant. However, the insurers have failed to consider the difference between admissibility at trial and discoverability under the Federal Rules. Federal Rule of Civil Procedure 26(b). It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The insurers assert that the drafting history is also nondiscoverable, and in support of that contention cite a New Jersey State Court decision, *see, e.g., Air Products and Chemicals, Inc. v. Hartford Accident and Indemnity Co., et al.,*, No. L-17134-89 (N.J.Super.Ct. Middlesex Cty., Oct. 5, 1990). However in the District Court of New Jersey the court there determined that when the question of ambiguity in the contract has not yet been resolved, the drafting history is relevant and discoverable under the Federal Rules. *Leksi, Inc. v. Federal Insurance Co.*, 129 F.R.D. 99, 105 (D.N.J.1989). This is because that information may be lead to admissible evidence concerning the intent of the insurers, the risks assumed by the drafters, and the interpretation of policy language. *Parker-Hannifan Corp. v. American Lawyers Insurance Co.*, No. 88-5031 (D.N.J., June 28, 1990).

Because of the existence of ambiguity in the policies the admissibility of extrinsic evidence, and the applicable law are issues as yet under resolved, and because of the liberal policy of providing discovery under the Federal Rules, the drafting history of the insurers' insurance policies with the policyholders are relevant and discoverable.[FN1]

## II.

### DOCUMENTS & INFORMATION PERTAINING TO OTHER "INSUREDS" THAT HAVE HAD SIMILAR CLAIM MADE AGAINST THEM.

The policyholders also seek to obtain discovery concerning whether the insurers issued policies to four (4) other organizations that processed blood derivatives-Travenol Laboratories, American Red Cross, Alpha Therapeutics, and Cutter Biological. This question requires only a yes or no answer to interrogatory number 7 as part of the first set of interrogatories. In their second set of interrogatories and discovery requests, the policyholders pursued the question of claims against these "other insured" further. While they originally sought broader "other insured" discovery the policyholders have agreed to limit their requests to the four blood fractionators identified above, all of which process blood-derivatives and have been faced with claims from hemophiliacs with AIDS. The policyholders have agreed to limit this discovery to AIDS related and other blood-derivative claims. Notwithstanding these limitations, the insurers have refused to provide the requested information arguing that the information is irrelevant, burdensome and impinges on confidential communications between the defendant insurers and their other insureds. They argue that the plaintiffs are, "in reality, seeking to open the flood gates to the discovery of additional information on other insurance."

**\*3** Initially, I find that the information is relevant for the purposes of discovery since, 1) it may show that identical language has been afforded various interpretations by the insurer and, 2) the interpretations suggested by the insurers may not be the same as those intended by the original drafters. The insurers have directed the attention of this Court to a number of unreported state court decisions from the State of New Jersey in support of its argument that environmental claims in those cases of other insured are irrelevant. *See, e.g., Agnes Anderson, et*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                         Page 3
Not Reported in F.Supp., 1991 WL 78200 (E.D.Pa.), 20 Fed.R.Serv.3d 1479
**(Cite as: Not Reported in F.Supp.)**

*al v. Township of Lacey, et al. v. Brick Wall Corp., et al,* L-094205-86 (N.J.Super.Ct. Ocean Cty., 1990); and *Township of Lacey v. Selective Risk Insurance Co., et al.,* No. L-068049-83 (N.J.Super.Ct. Ocean Cty., 1990); *Morton Thiokol, Inc. v. General Accident Insurance Company of America,* No. C-3959-85 (N.J.Super.Ct., Bergen Cty., July 25, 1986). However, the insurers cite only two decisions supporting their contention under the discovery rules of the Federal Rules of Civil Procedure. *In re Texas Eastern Transmission Corp., PCB Contamination INS Coverage Litigation,* No. MDL 764 (E.D.Pa.1989); *Leksi, Inc. v. Federal Ins. Co.,* 129 F.R.D. 99 (D.N.J.1989). Although there may be a split of authority on this issue, the majority of courts in the District of New Jersey have permitted discovery of the ten earliest and ten most recent actions of other policyholders in environmental cases. *See Parker-Hannifan Corp. v. American Lawyers Ins. Co.,* No. 88-5031 (D.N.J. February 28, 1990); *Minnesota Mining & Mfg. Co. v. Commercial Union Ins. Co.,* No. 88-325 (D.N.J. Oct. 13, 1989); *Public Service Electric & Gas Co. v. Associated Electric & Gas Inc. Service,* No. 88-4811 (D.N.J. July 7, 1989). In two of these cases the courts held that environmental claims information relating to insurance policies held by insured other than the party seeking discovery was relevant to that party's interpretation of its own insurance contract and reasonably could lead to evidence admissible at trial. *Parker-Hannifan Corp.,* Slip Opinion at 2; *Minnesota Mining & Mfg.,* Slip Opinion at 4. Under the liberal policy of providing discovery embraced by the Federal Rules, and under case law in the District of New Jersey and other jurisdictions, the information contained in the four other insured claims files is relevant to the policyholders' claim of ambiguity in the insurance policies, and is reasonably calculated to lead to evidence admissible at trial.

The insurers argue that disclosure of the claims files of insured other than the policyholders herein would be unduly burdensome and would intrude on the confidentiality interests of nonparties to this action. I do recognize the insurers burdensome argument to be genuine and I will therefore limit any order to be entered in this matter to only the four insured named by the policyholders. Under the Federal Rules, a court may limit discovery upon a finding that "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources and the importance of the issues at stake in the litigation." Federal Rule of Civil Procedure 26(b)(1). Other courts have limited the number of claims files to be

produced. *See, Remington Arms Co. v. Liberty Mutual Ins. Co.,* No. 89-420-JLL Slip Opinion at 2 (D.Del. Sept. 11, 1990); *Minnesota Mining & Mfg.,* Slip Opinion at 1; *Public Service Electric & Gas Co.,* Slip Opinion at 1. The insurers are not satisfied with the policyholders' limitation of the four named above and argue that the information sought is irrelevant and will waste the time of the Court and the parties. However, the insurers have failed to demonstrate by detailed affidavit the burdensome nature of producing these four claims files. *See Parker-Hannifan,* Slip Opinion at 2.

**\*4** We must also address the insurers concern for the protection of its insureds' confidentiality and in order to protect that confidentiality I am directing the insurers to redact the names of the other insureds and other confidential information, such as trade secrets and business practices in the four claims files to be produced. If the insurers believe that the information sought enjoys a privilege, I will provide them with the opportunity to submit a privilege log identifying the material withheld, specifying the applicable privilege, and identifying the author, recipient and the date of the documents. After the appropriate assertion of the privilege, I will then determine the validity of such a claim.

Moreover, given the possibility of thousands upon thousands of documents implicated by the policyholders' request, I am also concluding that in the interest of judicial economy and expeditious litigation, the policyholders' discovery should be limited to documents relating to the policies that the insurers sold to non-party insured that contain AIDS related and other blood-derivative claims exclusions *and* which were written *prior* to the issuance of the policies before the Court. Such documents include the policies themselves and all claims and underwriters' files concerning these policies. Limiting discovery in this manner will afford the policyholders the benefit of the most persuasive of the evidence concerning non-party insureds while reducing the burden on the insurers, and, I trust avoiding the wasteful result where overwhelming production would be made but apparently not used by the requesting party.

As in the decisions cited in the policyholders' Memorandum of Law in Support of Their Motion, the policies that are in question in this case employed standard industry-wide definitions, terms, conditions, and exclusions. Thus, non-party insured information is pertinent to the extent that coverage has been provided or sought, under identical standardized

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 4
Not Reported in F.Supp., 1991 WL 78200 (E.D.Pa.), 20 Fed.R.Serv.3d 1479
**(Cite as: Not Reported in F.Supp.)**

policies, to other insured defending AIDS related litigation or other claims that their blood-derivatives were "contaminated". The fact that the documents reflecting how the insurers apply critical policy terms such as "occurrence" or "neither expected nor intended" happened to be located in files other than those marked *Revlon, Armour,* or *Rorer* is not reason enough that the policyholders should be denied access to this material. This is particularly true with respect to the underlying AIDS-related cases, in which one or more of the four other blood fractionators is often a named party. In each instance, the claims involve almost identical allegations. These claims are similar to the ones underlying this coverage dispute that the insurers' manner of handling them will shed light on issues in this case.

Accordingly, the Court will enter an appropriate Order

### ORDER

NOW, this 7th day of May, 1991, upon consideration of plaintiff's Motion to Compel Discovery concerning "drafting history and other insured" it is hereby ORDERED that the Insurance Company parties to this litigation shall respond to the interrogatories and requests for production of documents seeking information concerning "drafting history" and "other insureds" including document requests Nos. 1, 2, 6-10, 12, 14,-20, 32, 33, of the first set of document requests, Interrogatories 5 and 7 of the first set of interrogatories; document requests 1, 4, 5, 9, 14 and 15 of the second set of document requests and Interrogatories 1, 3, 4, 5, and 6 of the second set of interrogatories.

**\*5** IT IS FURTHER ORDERED THAT the Motion to Compel is GRANTED to the extent that the insurers shall make available for inspection by the policyholders all policies of the four named insureds issued by them which contain AIDS related and other blood-derivative exclusion and which were written *prior* to the issuance of the policies before the Court; all claims and underwriting files concerning these policies.

The insurers shall have until June 15, 1991 to search for, and locate such documents and records, and until July 10, 1991 to obtain consent *vel non* of their respective insureds on the release of such documents, or alternatively, to redact the identity of the insureds or any other information regarded as confidential,

trade or business secret information. It is understood that policyholders inspection of this material will be at the policyholders' expense and shall take place at locations designated by the insurers.

> FN1. In our own District, Senior Judge VanArtsdalen *In re Texas Eastern Transmission Corp.,* M.D.L No. 764 (ED PA, July 26, 1989), the Court stated:
> [T]he drafting history of any standard forms CGL or excess liability policy, clause, endorsement or phraseology contained in any policy issued by an insurer during the period from 1947 to the present shall be provided to Texas Eastern when properly requested. Drafting history of policies issued to Texas Eastern includes that which pre-dates the date of the date of issuance of the policy or the policies by the insurers to Texas Eastern." *Id.* Transcript at 12.

E.D.Pa.,1991.
Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.
Not Reported in F.Supp., 1991 WL 78200 (E.D.Pa.), 20 Fed.R.Serv.3d 1479

Briefs and Other Related Documents (Back to top)

• 2:88cv09752 (Docket) (Dec. 23, 1988)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 7



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1075400 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Mariner's Cove Site B Associates v. Travelers Indem. Co.S.D.N.Y.,2005.Only the Westlaw citation is currently available.

United States District Court,S.D. New York.
MARINER'S COVE SITE B ASSOCIATES, et al.,
Plaintiffs,
v.
TRAVELERS INDEMNITY COMPANY, et al.,
Defendants.
**No. 04Civ.1913(KMW)(RLE).**

May 2, 2005.

Memorandum Opinion & Order
ELLIS, Magistrate J.

### I. INTRODUCTION

**\*1** Plaintiffs are owners of an apartment complex and parking lot in Battery Park City in downtown Manhattan, near the former World Trade Center. Defendants issued commercial insurance policies to plaintiffs. These policies provided coverage for losses from property damage, loss of business income, and extra expenses. After September 11, 2001, plaintiffs filed claims for property damage and business income loss in excess of $43 million. Subsequently, plaintiffs brought an action against defendants on March 10, 2004, alleging that defendants wrongfully denied plaintiffs coverage. On June 18, 2004, plaintiffs submitted their first request for documents. Plaintiffs sought documents regarding defendants' methods used to evaluate, analyze, handle, and adjust plaintiffs' claims. Specifically, plaintiffs requested defendants' claims and underwriting manuals, request numbers 1-6, and 12-13, and documents relating to defendants' handling and evaluation of similar claims arising out of the September 11, 2001 attacks, request numbers 20-21. Defendants refused to produce these documents, asserting that they were irrelevant to plaintiffs' claims because the policy terms were not ambiguous. Defendants also asserted that the requests were overly broad, not reasonably calculated to lead to admissible evidence, and overly burdensome to produce. On February 2, 2005, plaintiffs submitted a motion under Federal Rule of Civil Procedure 37 to compel defendants to produce documents responsive to request numbers 1-6, 12-13, 20, and 21.

### II. DISCUSSION

Though defendants allude to burdensomeness, the thrust of their argument to the Court was that this was a straightforward case of applying the policy provisions. In this, they are incorrect. To properly interpret an insurance policy, it is necessary to discern how that contract has been interpreted in the past. To this end, documents regarding similar claims of other insureds, the drafting history of a policy, and claims manuals are relevant and discoverable in actions to recover insurance reimbursement. *See Charles Turi Jewelry Co., Inc. v. The Hanover Ins. Cos.,* 1990 U.S. Dist. LEXIS 8358, at \*4-6 (S.D.N.Y. July 10, 1990), *vacated in part by Charles Turi Jewelry Co., Inc. v. The Hanover Ins. Cos.,* 1990 U.S. Dist. LEXIS 8939 (S.D.N.Y. July 18, 1990); *Champion International Corp. v. Liberty Mut. Ins. Co.,* 1989 U.S. Dist. LEXIS 12929, \*2-4, *aff'd,* 128 F.R.D. 608 (S.D.N.Y.1989); *Young v. Liberty Mut. Ins. Co.,* 1999 U.S. Dist. LEXIS 6987, at \*15 (D.Conn. Feb. 16, 1999). To the extent that defendants maintain that evidence of other claims will not be admissible, that contention is premature. This is the discovery phase. A party may obtain discovery of documents and materials which are relevant, nonprivileged, and reasonably calculated to lead to admissible evidence. *See* Fed R. Civ. P. 26(b)(1). Moreover, under New York law, evidence of intent is relevant until there has been a finding that the policy is subject to only one interpretation. *Champion International Corp. v. Liberty Mut. Ins. Co.,* 129 F.R.D. 63, 67 (S.D.N.Y.1989). Here, plaintiffs seek evidence concerning the genesis of the applicable provision and its application to other insureds. They are entitled to this information during discovery.

**\*2** Accordingly, IT IS HEREBY ORDERED THAT defendants produce copies of the requested discovery materials by May 10, 2005.

SO ORDERED

S.D.N.Y.,2005.
Mariner's Cove Site B Associates v. Travelers Indem. Co.
Not Reported in F.Supp.2d, 2005 WL 1075400 (S.D.N.Y.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1075400 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

Briefs and Other Related Documents <u>(Back to top)</u>

• <u>1:04cv01913</u> (Docket) (Mar. 10, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 8



Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

---

Stonewall Ins. Co. v. National Gypsum
Co.S.D.N.Y.,1988.Only the Westlaw citation is
currently available.
United States District Court, S.D. New York.
**STONEWALL INSURANCE COMPANY,**
Plaintiff,
v.
NATIONAL **GYPSUM** COMPANY, et al.
Defendants.
NATIONAL **GYPSUM** COMPANY, et al. Third-
Party Plaintiffs,
v.
INTERNATIONAL INSURANCE COMPANY and
H.S. Weavers (Underwriting) Agencies, Ltd., Third
Party Defendants.
**No. 86 CIV. 9671 (SWK).**

Sept. 6, 1988.

MEMORANDUM OPINION AND ORDER
KRAM, District Judge.
**\*1** This case is presently before this Court on various
defendants' objections to two discovery orders of
Magistrate Bernikow issued in this Case on March
21, 1988 ("March Order") and April 8, 1988 ("April
Order") 1988.

This is a large and complicated case involving thirty
parties and an amount in controversy in excess of
$700 million. It involves a dispute as to whether
National Gypsum Company ("NGC") is entitled to
insurance coverage for claims asserted against it by
the owners of buildings in which NGC's asbestos-
containing products were purportedly installed. The
parties to this action are NGC and a host of other
insurers who provided primary and varying levels of
excess insurance policies to NGC over a broad period
of time. Plaintiff commenced this declaratory
judgment action naming as defendants NGC and
these other insurance companies. The action sought
to resolve the question of whether Stonewall and the
other insurance companies have any obligation under
their respective policies to defend and indemnify
NGC with regard to the claims brought by the owners
of the buildings.

Discovery in this case is being supervised by
Magistrate Bernikow pursuant to this Court's referral.
On March 21, 1988, in response to NGC's motion to

compel discovery the Magistrate issued a discovery
order ordering that the other defendants
("defendants") provide certain discovery requested
by NGC. After reviewing additional briefs submitted
by the parties concerning these other discovery
requests and hearing argument on these issues, the
Magistrate issued a second order on April 8, 1988.

THE OBJECTIONS

The March Order:

Defendant Continental Casualty Company
("Continental") objects to those aspects of the March
Order which ask for discovery concerning claims
relating to materials other than asbestos (i.e., lead
paint, foam insulation, pollution, toxic or hazardous
waste), insureds other than NGC, reinsurance
agreements and reserves. Defendants American
Home Assurance Company, Granite State Insurance
Company, AIU Insurance Company, National Union
Fire insurance company of Pittsburgh, P.A., United
States Fire Insurance Company, and International
Insurance company ("AIG Companies"), Commercial
Union Insurance Company ("Commercial") and
United States Fire Insurance Company ("U.S. Fire")
object specifically to paragraphs 3,4,-5 and 6 of the
Magistrate's Order which discuss claims regarding
other materials and other insureds (paragraphs 3 and
4), reinsurance (paragraph 6) and reserves (paragraph
5). The objections filed by all the defendants thus
concern the same discovery and involve essentially
the same arguments.

The April Order:

The AIG Companies, Commercial and U.S. Fire
object to paragraphs 1, 2, 3, 6, 8, 10 and 13 of the
Order insofar as they require disclosure of
information concerning other policyholders, other
types of claims and reinsurance. Continental objects
to paragraphs 1, 3, 6, 8, 10 and 13 of the Order as
well.

DISCUSSION

**\*2** Pursuant to <u>Rule 72(a) of the Federal Rules of</u>

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

Civil Procedure, this Court may only modify or set aside those portions of the Magistrate's orders which are "clearly erroneous or contrary to the law". Moreover, in this Circuit, the Magistrate is afforded broad discretion which will be overruled only if abused.  Empire Volkswagon. Inc. v. World-Wide Volkswagon, 95 F.R.D. 398, 399 (S.D.N.Y.1982); Citicorp v. Interbank Card Association, 478 F.Supp. 756, 765 (S.D.N.Y.1979).

It appears that defendants object to four areas of discovery ordered by the Magistrate.  This Court will turn to each to determine whether the Magistrate's order of discovery in the area was either "clearly erroneous or contrary to the law".

Discovery Relating to Other Policyholders:

The March Order requires defendants to produce the "ten earliest and ten most recent claims files subsequent to 1969" that deal with claims asserted regarding asbestos in buildings, leaded paint, foam insulation, and pollution and/or toxic or hazardous waste. (March Order at Para. 3).  These files will, of course, include many files of insured parties other than NGC. Continental asserts that this will require production of "anything and everything" related to at least 80 claims, "most or all of which" will be against insureds other than NGC. Continental asserts that the burden of production of such files is "extreme" and that the relevance of such material is "remote or nonexistent". (Continental Mem. at 5).    The AIG Companies argue that courts generally do not permit discovery regarding "other insureds".   NGC argues here, as it did before the Magistrate, that the requested information regarding other insureds is relevant here because the policies issued in this case employed standardized industry-wide definitions, terms, conditions and exclusions and the non-party insured information is pertinent to the extent that coverage was provided under identical standardized policies to other insureds who are defending the same or comparable "delayed manifestation" cases, i.e., those involving asbestos-in-buildings, foam insulation, or leaded paint.  NGC asserts that this is particularly true with respect to the asbestos cases "which are essentially indistinguishable one from the next". (NGC Mem. at 10).   NGC asserts that these files will provide interpretive documents reflecting the meaning of critical terms in the policies such as "occurrence", "property damage", and "pollution". Id.

Two recent decisions in this Circuit concerning the

discoverability of information regarding other insureds have reached different conclusions.    In Maryland Casualty v. W.R. Grace, No. 83 Civ. 7451, Slip Op. (S.D.N.Y., March 4, 1986), Magistrate Bernikow held that documents and answers to interrogatories pertaining to delayed manifestation claims filed against policyholders other than the defendant should be produced.    In Maryland Casualty, the Magistrate recognized that a "substantial burden of production" had been demonstrated by plaintiff and ordered that the parties present a joint plan for limited production to him, or in the alternative, that each party present its own plan for limited production.    Slip Op. at 2. In Olin Corporation v. Insurance Company of North America, No. 84 Civ. 1968, Slip Op., (S.D.N.Y., July 10, 1986), the Special Master held that discovery concerning defendant's practices with regard to insurance policies, and specifically delayed manifestation claims, of insureds other than plaintiff, need not be provided.  The Special Master found that pursuant to the Judge's prior rulings on the parties' summary judgment motions, in order to show coverage for the disputed claims, plaintiff need only show "the cause of the occurrence (accident or exposure), the result (injury, sickness or disease) and that the result occurred during the policy period". Slip Op. at 4 (citing Olin Corporation v. Insurance Company of North America, 603 F.Supp. 445, 448- 449), aff'd, No. 84-1968, Slip. Op. (S.D.N.Y., December 19, 1986).  The Special Master stated that "since the Court has already ruled that Olin must prove that an injury in fact occurred during the policy period in order to obtain coverage, there is no need for discovery as to the interpretation of the meaning of the Olin-INA Comprehensive General Liability ("CGL") Policy.    Thus to the extent that Olin is seeking discovery to show how INA or the other defendants interpreted a CGL policy issued to another insured in connection with a delayed manifestation claim, such discovery is irrelevant to the issues of this case." slip. op at 7.

**\*3** In this case, unlike in Olin, the interpretation of the various policies is at issue, and the Magistrate, in ordering discovery related to the policy of other insureds determined that such policies would or could be useful in the interpretive process, and are thus relevant and discoverable under Rule 26 of the Federal Rules of Civil Procedure, which provides that parties may obtain discovery that is relevant, not privileged, and, if the information sought will be inadmissible at trial, that is reasonably calculated to lead to the discovery of admissible evidence.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

Rule 26 also provides that discovery shall be limited by the court if the court determines that the discovery is "unduly burdensome and expensive". The Magistrate apparently recognized that the production of documents relating to other policyholders would be burdensome for the defendants and limited it accordingly. The March Order provides that only the ten earliest and ten most recent claims files since 1969 be produced, and that they only be produced with regard to the four claims enumerated above. The March Order specifically provides that the defendants conduct a "reasonable search and inquiry" in order to locate the appropriate documents.

This Court thus finds that the Magistrate's decision to order limited discovery regarding other insureds is neither "clearly erroneous" nor "contrary to the law" of this circuit or Rule 26. This aspect of the Magistrate's Orders is therefore affirmed.

### Discovery Relating to Other Claims

The March Order requires that defendants produce memoranda and the "ten earliest and ten most recent" claims files regarding lead paint "property damage" claims, foam insulation "property damage" claims, and claims based on pollution or toxic or hazardous waste [FN1], in addition to files and information regarding the asbestos-in-buildings claims. (March order at Para. 3). The March order also provides that defendants produce "directives, statements of policy, claim-handling manuals and guidelines, underwriting guidelines, and interpretive bulletins" concerning the coverage and handling of all four of these types of claims. (March Order at Para. 4). The April Order requires that defendants produce "directives, statements of policy, claim-handling manuals and guidelines, underwriting guidelines, and interpretive bulletins, guidelines and statements concerning the handling of, or coverage of underwriting issues arising with respect to delayed or protracted manifestation claims." (April Order at Para. 1)

NGC claims that this discovery is relevant and "vital" to their case because it will show the interpretation and application of standardized industry-wide terms, which are at issue here, and the assertion of the same defenses to situations which are comparable or almost identical to the one here-the presence in buildings of various products which are alleged, sometime after installation, to have caused property damage and to have created an unreasonable health hazard, thereby necessitating remedial activity. In sum, NGC claims that this discovery will reveal cases

involving the same or very similar problems of policy interpretation. The defendants object to the production of this discovery on the grounds that it is unduly burdensome and irrelevant, and that as such the Magistrate's orders requiring its production are either "clearly erroneous" or "contrary to the law".

*4 Defendants point to three cases in this Circuit in support of their position. First, defendants point to American Home Products Corp. v. Liberty Mutual Insurance, 565 F.Supp. 1485 (S.D.N.Y.1983) aff'd as modified, 748 F.2d 760 (2d Cir.1984) for the proposition that the " 'trigger of coverage' with respect to claims involving the effects of exposure to asbestos does not control in cases involving coverage for claims concerning injuries allegedly caused by exposure to DES, because such determination must be 'based upon the facts proved in each particular case' ". Mem. at 13 (citing American Home Products. supra, 565 F.Supp. at 1489). Defendants apparently cite this case in support of their claim that analogies to other claims is inappropriate and irrelevant. This case is simply inapposite. In American Home, supra, a summary judgment ruling, the parties were arguing over whether "exposure" or "manifestation" triggered coverage in DES and other similar drug cases. The Court found that analogy to asbestos cases was inappropriate because "the drugs at issue in this case differ markedly from asbestos in the manner in which they are alleged to injure humans." Id. at 1493. This case did not rule on the discoverability of information concerning asbestos cases for the purpose of a case involving drugs, although it speaks to the relevance of asbestos cases to the interpretation of contracts in DES cases. This is simply not the situation before this Court. Plaintiff seeks, and the Magistrate has ordered, discovery concerning property damage claims resulting from the installation of hazardous materials other than asbestos-specifically lead paint and foam insulation.[FN2] The potential usefulness of this information is apparent, unless defendants can somehow show that the nature of the damage sustained by the installation of these products is so radically different from asbestos as to preclude any usefulness in contract interpretation. Defendant's have not even argued this point.

The second case cited by defendants, Schering Corp. v. Home Insurance Co., 544 F.Supp. 613, 617 (E.D.N.Y.1982), rev'd on other grounds, 712 F.2d 4 (2d Cir.1983), also involved the interpretation of a policy in connection with DES claims. On summary judgment the court found cases involving asbestos inapposite because they had been decided after the

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**                                                    Page 4

presentation of medical evidence regarding asbestos' "progressive injurious process" and no such evidence had been presented regarding DES. Id. at 619. This court finds this case unpersuasive for the reasons set forth in the above discussion of American Home Products.

Finally, defendants look to Olin, supra.     As discussed above, in Olin the Special Master found that since the Court had determined that Olin must prove that an injury in fact occurred during the policy period in order to obtain coverage, there was no need for discovery as to the meaning of the policy.    It was on this basis, not present here, that the Special Master denied discovery with respect to both other insureds and other types of "delayed-manifestation" claims.

**\*5** Based on these cases, defendants have failed to demonstrate that the Magistrate rulings with respect to "other claims" discovery was either "clearly erroneous" or "contrary to the law".    This Court notes without discussion that several decisions, within this Circuit and without, have permitted such discovery. See, e.g., Maryland Casualty Co. v. W.R. Grace & Co., No. 83 Civ. 7451, Slip. Op. (S.D.N.Y. March 4, 1986).    This Court also notes that the Magistrate, perceiving the necessity for Rule 26 limitations in recognition of the burden this discovery would impose on defendants, imposed such limitations.    Defendants objections to the production of other claims discovery as provided in the Magistrate's Orders are thus denied.

### Discovery Related to Reinsurance

In response to NGC's request for "all documents" concerning reinsurance relating to any NGC insurance policy (Request No. 12), the March Order requires the insurers to produce all reinsurance documents, subject to certain limitations set forth in the Court's Order in Maryland Casualty Company v. W.R. Grace & Co., 83 Civ. 7451, dated March 4, 1986.   Under the March Order those insurers who do not assert a 'lost policy' defense need only produce reinsurance documents to the extent that such documents relate to general liability coverage issued to NGC And relate to asbestos, lead paint, foam insulation and pollution or hazardous waste claims. None of the insurers must disclose the amount of the reinsurance.

Defendants contend that reinsurance information is not relevant, and also that it is privileged because it is prepared in anticipation of litigation.     Defendant's

also argue that the production of reinsurance information is inconsistent with the directives of Federal Rule of Civil Procedure 26(b)(2) which provides in relevant part, "A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on the insurance business may be liable...."

With regard to relevance, defendants contend that an insurer's internal decision to obtain reinsurance is based principally on business considerations, and not on questions of policy interpretation;    defendants contend that the decision to cede a portion of the risk is not based on any interpretation of a policy's language, but on actuarial considerations grounded merely on the possibility, no matter how unlikely, that a claim will be asserted against the insurer. NGC argues that reinsurance information is relevant to this case.    NGC contends that these documents may reflect an insurer's understanding of the risk it underwrote and thereby rebut the defense, raised by several insurers, that NGC failed to disclose information sufficient to apprise the insurer of that risk.    NGC argues that the insurers' notices of claims to their reinsurers may evidence the insurer's understanding of the underlying claims and may contain admissions that these claims are covered.

In this circuit, discovery of reinsurance information has been allowed, and thus has presumably been found to be relevant. Maryland Casualty v. W.R. Grace & Co., No. 83-7451, slip op. (S.D.N.Y. March 4, 1985) (In case involving primary insurers only Magistrate's order requires production of reinsurance information without opinion) [FN3].    Moreover, the cases cited by defendants in support of their argument that the reinsurance information is not relevant, all of which are without this Circuit, are unpersuasive.    For example, in Independent Petroleum Corp. v. Aetna Casualty and Surety Co., 117 F.R.D. 283 (D.D.C.1986), the Magistrate denied the production of reinsurance documents without explanation.   In UNR Industries. Inc. v. Continental Insurance Co., No. 85-3532 (N.D.Ill.   Sept. 4, 1986), the court ruled, on motion in limine, that evidence of reinsurance was not admissible at trial, which is not the issue here, since information may be discoverable even if not admissible at trial.

**\*6** In addition, defendants' statement that reinsurance agreements are not discoverable under Rule 26(b)(2) is without authority either in this circuit or elsewhere, and relies only on their reading of the rationale behind the Rule and citation'to advisory committee notes.    In contrast, NGC has cited cases in which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 5
Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

discovery of reinsurance information was permitted under Rule 26(b)(2). See National Union Fire Ins. Co. v. Continental Illinois Corp., 116 F.R.D. 78, 83-84 (N.D.Ill.1987).

Finally, with regard to defendant's work privilege argument, the Magistrate's Order in no way precludes raising this objection with regard to specific information as it comes up. The Order is subject to the Order in the Maryland Casualty case, which denies discovery of "privileged communications between the carriers and their outside counsel".

For these reasons this Court finds that the Magistrate's decision regarding reinsurance was neither "clearly erroneous" nor "contrary to the law" and defendant's objections to it are denied.

Discovery Regarding Reserves

In the March Order the Magistrate partially granted NGC's request for information concerning reserves set by the insurers by allowing NGC to address the subject matter of reserves with respect to asbestos-in-building claims in any deposition taken in this case. The Order also allows NGC to seek further leave from the Court to obtain additional reserve information.

Defendants assert that the information pertaining to reserves is irrelevant. Defendants assert that reserves are simply amounts insurance carriers set aside, ordinarily pursuant to statutory requirements, in response to claims asserted against their insureds. According to defendants, reserves reflect merely the possibility, no matter how remote or unlikely, that a claim may be resolved with a payment by the insurer. Defendants assert that the setting of a reserve on a case, or the level at which a reserve may be set, is not an "admission" that the insured is liable on the claim, that the claim is covered by a policy, or that the insurer actually believes that the dollar amount of the a contingent liability will reach any particular level. In addition defendants assert that information regarding reserves is protected by the attorney-client privilege or the work-product doctrine.

NGC asserts that the reserves information may be relevant in the following ways: the existence and timing of the establishment of reserves may show notice of the underlying claims; the existence of reserves may rebut a "lost policy" defense; the existence of reserves may constitute evidence of an insurer's duty to defend; the establishment of

reserves for certain kinds of claims implies that the insurer has made a determination that such claims may be (although not necessarily are) covered and thus may have to be paid.

In this Circuit, Courts have both permitted and denied discovery regarding reserves. See Maryland Casualty Co. v. W.R. Grace & Co., No. 83-7451 (S.D.N.Y. March 4, 1986) (granting Grace's motion to compel reserves discovery in part); Wabco Trade Co. v. Great American Insurance Co., No. 82-4294, slip. op., (S.D.N.Y. Apr. 14, 1983) (court denied discovery of particular reserves documents after reviewing the documents and determining that they were privileged). Defendants have submitted, in addition, the transcript of a conference before a Special Master in Olin, supra, in which the Special master held that in that case "the possible benefit of disclosing reserves in discovery are outweighed by the burden of producing the information and the effect on the sound reserves setting practices were concluded if such discovery were granted routinely". Tr. at 27.

*7 In this case, the Magistrate has substantially denied NGC's request for reserves information. The extent to which the request was granted-allowing NGC to explore the area on deposition-is consistent with the case law in this Circuit and the dictates of Rule 26 and are neither "clear error" nor "contrary to the law". Unlike in Olin, the very limited burden imposed by the Magistrate's request does not outweigh the possibly relevant information that may be gleaned from the reserves discovery. In addition, defendants will certainly have the opportunity, upon deposition, to object to the production of certain information on the grounds of privilege.

For these reasons, defendants objections to the magistrate's Order insofar as it discusses discovery are denied.

Specific Objections to the April Order

The AIG companies and those defendants accompanying them in their memorandum object to those aspects of the April order which deal with information concerning other policyholders, other claims, and reinsurance for the same reasons set forth in their objections to this discovery in the March Order; they in fact refer only to their memorandum of objections to the March Order in support of these objections. These objections are thus denied for the reasons set forth above.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 6

Continental also objects to the April Order for the same reasons as formed the basis for its objections to the March Order and those objections are denied for the reasons stated above. Continental also objects to specific aspects of the April Order which it alleges were not present in the March Order and which it alleges are either "clearly erroneous" or "contrary to the law". Continental object specifically to para. 1 of the April Order which it claims expands the March Order by calling for the production of information pertaining to any "delayed or protracted manifestation claims". Continental notes that the Order goes beyond NGC's original request for "delayed or protracted manifestation claims" relating only to property damage. Continental asserts that the production and redaction to names of the other insureds will be redacted to protect their privacy rights-process will be enormously burdensome. Continental also asserts that documents related to the other delayed or protracted manifestation claims-such as Agent Orange, DES or DDT will have no relevance to this case.

NGC defends the relevance of these documents for essentially the same reasons it argued the relevance of lead paint, foam insulation and pollution claims, discussed above; NGC alleges that this information will relate to the application "or interpretation of critical policy terms and conditions, such as "occurrence", "accident", "property damage", "trigger of coverage". This Court finds this to be essentially the same situation as above, and in light of the significant restrictions placed on this additional discovery by the Magistrate this Court does not find that the Magistrate clearly erred or acted contrary to the law in ordering this discovery. Continental objection to this additional discovery is therefore denied.

**\*8** So Ordered.

> FN1. Only those insurers who assert the "pollution exclusion" defense are asked to produce these files.

> FN2. Those insurers who have raised the "pollution exclusion" defense are also required to produce discovery with respect to all-not just property damage, pollution and hazardous waste claims. NGC contends that the "pollution exclusion" defense has nothing to do with this case, but demands discovery on the issue since it has

been raised.

> FN3. Defendants make much of the fact that the Maryland Casualty order involved only primary insurers. This fact is at best relevant to NGC's argument the reinsurance information any evidence a "duty to defend" the "duty to defend" question can only be relevant to primary insurers, none of whom are participating in this appeal. This court notes that the "duty to defend" argument is one of only several raised by NGC in support if its relevance argument.

S.D.N.Y.,1988.
Stonewall Ins. Co. v. National Gypsum Co.
Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.