

**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

John E. James
Partner
Attorney at Law
jjames@potteranderson.com
302 984-6018 Direct Phone
302 658-1192 Facsimile

March 21, 2007

**By CM/ECF and by Hand**

Magistrate Judge Mary Pat Thynge
U. S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

RE:    **E. I. du Pont de Nemours and Company v.**
       **Lumbermens Mutual Casualty Company**
       **D. Del., C.A. No. 05-699-\*\*\***

Dear Judge Thynge:

I write on behalf of Plaintiff E. I. du Pont de Nemours and Company ("DuPont") to bring a discovery dispute to the Court's attention pursuant to Paragraph 3(e) of the Scheduling Order of December 13, 2005. Specifically, DuPont contests the assertion of attorney-client privilege over certain documents listed on the privilege log of Defendant Lumbermens Mutual Casualty Company's ("Kemper"). Consistent with the Scheduling Order, we have arranged to discuss this issue with Your Honor during the telephone conference that Kemper has already scheduled for its own motion to compel on March 23, 2007 at 10:15 a.m.[1]

**Kemper Waived the Attorney-Client Privilege for Documents Relating to Its**
**Decision Not to Declare or Pay "Dividends."**

In Document Request No. 19, DuPont asked Kemper to produce documents relating to its decision not to declare a "dividend" for DuPont's 2002-03 program. See Exhibit 1. The only document produced in response to this request was a largely-redacted two-page excerpt from the minutes of a Kemper board meeting. Kemper also produced a privilege log listing approximately ten documents relating to its decision not to declare "dividends." See Exhibit 2.

During the telephone conference with the Court on February 6, Your Honor gave Kemper two weeks to determine if there are any additional non-privileged documents relating to Kemper's decision not to declare or pay "dividends" and to produce those documents. Three weeks later, Kemper informed DuPont that it was unable to locate any such documents. See Exhibit 3. Thus, aside from the one redacted document, Kemper has asserted the attorney-client privilege over all other documents related to its decision not to declare a "dividend," which decision resulted in the filing of this lawsuit.

---

[1]    DuPont will be submitting a response to Kemper's motion under separate cover.

Magistrate Judge Mary Pat Thynge
Page 2
March 21, 2007


In short, Kemper's decision not to declare a "dividend" under DuPont's insurance program for the 2002-03 program year is at the very heart of this dispute. Indeed, it was the first time in the parties' thirty-year history that the annual claims/payment adjustment process, which Kemper refers to as the "dividend declaration," did not occur, and DuPont is entitled to discover Kemper's reasons for making this momentous decision. Kemper has stated in an interrogatory response that its decision was made "pursuant to Section 215 ILCS 5/54 of the Illinois Insurance Code <u>and the Board of Directors' determination</u>, in accordance with said provision...." <u>See</u> Exhibit 4 (emphasis added). By claiming that the decision was made at its Board of Directors' discretion and then asserting the attorney-client privilege with respect to almost all of the documents related to the Board's decision-making concerning the "dividend," Kemper has placed its decision-making process and the documents related thereto at issue in this litigation and, consequently, has waived any attorney-client privilege related to them.

Kemper cannot have it both ways. Kemper cannot claim that it has discretion whether to declare a "dividend" and then selectively disclose only portions of its decision-making process while simultaneously asserting the attorney-client privilege over other portions of its decision-making process. Indeed, this Court recognized that principle in adopting the following formulation of the doctrine of implied waiver:

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

<u>Synalloy Corp. v. Gray</u>, 142 F.R.D. 266, 269 (D. Del. 1992) (quotation citation omitted).

The "at issue" exception to the attorney-client privilege "is based on principles of waiver and fairness intended to ensure the party holding the privilege cannot use it both offensively and defensively." <u>Princeton Ins. Co. v. Vergano</u>, 883 A.2d 44, 59 (Del. Ch. 2005). In other words, "[a] party cannot use the attorney-client privilege as both a sword and shield." <u>Pfizer, Inc. v. Warner-Lambert Co.</u>, C.A. No. 17524, 1999 WL 33236240, at *1 (Del. Ch. Dec. 8, 1999) (attached as Exhibit 5). That is, "'a party cannot take a position in litigation and then erect the attorney-client privilege in order to shield itself from discovery by an adverse party who challenges that position.'" <u>Id.</u> (quotation citation omitted).

Magistrate Judge Mary Pat Thynge
Page 3
March 21, 2007

Yet that is precisely what Kemper is trying to do here. It claims that its Board relied upon an Illinois statute and its own discretion in refusing to credit a "dividend" to DuPont, but then raises the shield of privilege to bar DuPont from discovering the documents that reveal its decision-making process. Not permitting DuPont to discover documents relating to Kemper's asserted rationale for not declaring a "dividend" places DuPont at a disadvantage and hinders the truthful resolution of the issue.

If Kemper's assertion of the attorney-client privilege stands, then DuPont's ability to discover information relating to a central issue in this case -- Kemper's decision not to declare a "dividend" -- would be severely hampered. Kemper should not be permitted to use the privilege as both a sword and a shield by selectively stating its "dividend" decision was based upon its discretion, a statute, and its Board's and attorneys' analysis of the statute and other undisclosed factors, but then shield from discovery all of the documents related to the issue. See Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co., 623 A.2d 1118, 1125 (Del. Super. 1992) ("[T]he party holding the privilege cannot use it as a sword as well as a shield"); Baxter Int'l, Inc. v. Rhone-Poulenc Rorer, Inc., C.A. No. 19328, 2004 WL 2158051, at *3 (same) (attached as Exhibit 6); Medtronic Inc. v. Guidant Corp., 378 F. Supp. 2d 503, 506 n.2 (D. Del. 2005) (referring to the court's prior finding that "defendants were using the attorney-client privilege as both a sword and shield and, as such, had waived the privilege as to all relevant documents"). Consequently, Kemper should be ordered to produce all of the documents related to its decision not to declare a "dividend" or Kemper should be precluded from providing any explanation at trial regarding its decision.

In addition, Kemper's decision not to declare a "dividend" was a business decision, and communications relating to that business decision are not privileged even if lawyers, providing business advice, were involved. See SICPA Holdings S.A. v. Optical Coating Lab., Inc., Civ. A. No. 15129, 1996 WL 577143, at *2 (Del. Ch. Sept. 23, 1996) ("[T]he presence of a lawyer at a business meeting called to consider a problem that has legal implications does not itself shield the communications that occur at that meeting from discovery, even if all persons present at the meeting are bound by contract or professional ethics to keep the discussions confidential.") (attached as Exhibit 7).

We look forward to discussing this matter further with Your Honor during our telephone conference on March 23.

Respectfully submitted,

John E. James

JEJ/cml
Enclosures
784629/20120-345
cc:   Peter T. Dalleo, Clerk of Court (by CM/ECF)
      Randall M. Lending, Esquire (by e-mail)
      M. Duncan Grant, Esquire (by CM/ECF)
      Christopher C. French, Esquire (by e-mail)