# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E.I. du PONT de NEMOURS and            )
COMPANY,                               )
                                       )
      Plaintiff,                       )
                                       )
    v.                               )    C.A. No. 05-699 (KAJ)
                                       )
LUMBERMENS MUTUAL CASUALTY             )
COMPANY,                               )
                                       )
      Defendant.                       )

## PLAINTIFF'S FIRST SET OF
## REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff, E. I. du Pont de Nemours and Company, hereby propounds the following document requests on Defendant, Lumbermens Mutual Casualty Company.

## DEFINITIONS

1.    "COMMUNICATION" means any transmission of information, the information transmitted, and any process by which information is transmitted, whether written or oral.

2.    "DOCUMENT" means any kind of written, typewritten, or printed material whatsoever, any kind of graphic material, and any computer readable media including, but without limitation, papers, agreements, contracts, notes, memoranda, correspondence, electronic mail messages (e-mail), studies, working papers, letters, telegrams, invoices, personal diaries, reports, records, books, forms, indexes, transcriptions and recordings, magnetic tapes, disks and printed cards, data sheets, data processing cards, personal calendars, journals, diaries, interoffice memoranda, minutes and records of any sorts of meetings, financial statements,

18.    All **DOCUMENTS RELATING TO** any payments made by **YOU** to **DUPONT** or credits given by **YOU** to **DUPONT**, including, but not limited to, **DOCUMENTS RELATING TO** the payment or credit of "dividends" from January 1, 1984 to the present.

19.    All **DOCUMENTS RELATING TO YOUR** decision not to declare a "dividend" under the **INSURANCE PROGRAM** for the January 1, 2002-03 program year.

20.    All **DOCUMENTS RELATING TO YOUR** decision to declare or not declare "dividends" for other policyholders since January 1, 2000.

21.    All manuals, guidelines, handbooks, or policies, whether written or oral, **RELATING TO** the return of unused or excess premium or the payment and/or crediting of "dividends" to policyholders.

22.    All **DOCUMENTS RELATING TO** any collateral provided to **YOU** by **DUPONT** under the **INSURANCE PROGRAM** for the January 1, 2002-03 program year, including any letters of credit or surety bonds.

23.    All **DOCUMENTS RELATING TO** the calculation of any amount of collateral **DUPONT** allegedly is or was responsible for maintaining under the **INSURANCE PROGRAM** for the January 1, 2002-03 program year.

24.    All **DOCUMENTS RELATING TO** the "Cash/Security Reconciliation," as that term is used in the **INSURANCE PROGRAM** for the 2002-03 policy year, made pursuant to the **INSURANCE PROGRAM**.

25.    All **DOCUMENTS RELATING TO** any interest that **YOU** contend **DUPONT** owes **YOU** under the **INSURANCE PROGRAM**, including all **DOCUMENTS RELATING TO** the calculation of said interest.

*Of Counsel*:

John M. Sylvester
Christopher C. French
Scott A. Bowan
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Telephone: (412) 355-6500


Dated: March 8, 2006
722721/20120-345

POTTER ANDERSON & CORROON LLP

By: _____
    John E. James (No. 996)
    Richard L. Horwitz (No. 2246)
    Hercules Plaza - 6th Floor
    1313 North Market Street
    Wilmington, DE 19801
    Telephone: (302) 984-6000

*Attorneys for Plaintiff*
*E.I. du Pont de Nemours & Company*

## CERTIFICATE OF SERVICE

I, John E. James, hereby certify that, on March 8, 2006, the foregoing

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** was

served, in the manner indicated, upon the following counsel of record for Defendant

Lumbermens Mutual Casualty Company:

| **By Hand** | **By First Class Mail** |
|---|---|
| David B. Stratton | Michael M. Eidelman |
| M. Duncan Grant | Randall M. Lending |
| PEPPER HAMILTON LLP | Jeffery M. Heftman |
| Hercules Plaza, Suite 5100 | VEDDER, PRICE, KAUFMAN & |
| 1313 North Market Street | KAMMHOLZ, P.C. |
| Wilmington, DE 19899-1709 | 222 North LaSalle Street, Suite 2600 |
|  | Chicago, IL  60601-1003 |

John E. James (No. 996)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Telephone:  (302) 984-6000
E-Mail:  jjames@potteranderson.com

# EXHIBIT 2

**KEMPER'S PRIVILEGE LOG**

**E.I. duPont de Nemours v. Lumbermans Mutual Casualty Company (Kemper)**

**U. S. District of Delaware Court No. 05-699**

| Kemper Priv. Bates # | DATE | NO. OF PAGES | DOC. TYPE | AUTHOR(s) | RECIPIENT(s) | SUBSTANCE | TYPE OF PRIVILEGE |
|---|---|---|---|---|---|---|---|
| 1-2 | 12/12/04 | 2 | Email | McGregor, Jack, Esq. - Kemper | Coutu, Mike - Kemper; Schwartz, Bud, Esq. - Kemper cc: Conway, John - Kemper | Email discussion regarding corrective orders and collection of deferred premiums | Attorney-Client |
| 3-14 | 11/12/03 | 12 | Email w/ attachment | McGregor, Jack, Esq. – Kemper | Coutu, Mike - Kemper; cc: Chandler, Art - Kemper; McNamee, Mike – Kemper; Kist, Frederick - Kemper | Email discussion regarding draft document discussing collection of deferred premium under large risk dividend plans | Attorney-Client; Work Product Doctrine |
| 15-19 | 1/19/04 | 5 | Email w/ attachment | McGregor, Jack, Esq. - Kemper | Chandler, Art - Kemper | Email enclosing draft document examining collection of deferred premium | Attorney-Client; Work Product Doctrine |
| 20-24 | 3/18/04 | 5 | Email w/ attachment | McGregor, Jack, Esq. - Kemper | McNamee, Mike - Kemper; Mengeling, Gail - Kemper; Birmanias, Shelliy - Kemper; Mauer, Susan - Kemper | Email enclosing draft document regarding non-declaration of dividends and collection of deferred premiums | Attorney-Client; Work Product Doctrine |
| 25-30 | 2/19/04 | 6 | Email w/ attachment | McGregor, Jack, Esq. - Kemper | Clemens, R., Esq. – Sidley & Austin ; Carlson, W., Esw. – Sidley & Austin, Esq.; Cauley, T., Esq. – Sidley & Austin; cc: Conway, John – Kemper | Email discussion of amendment of corrective orders and enclosing draft document regarding corrective orders | Attorney-Client; Work Product Doctrine |
| 31-33 | 3/26/04 | 3 | Email | McGregor, Jack, Esq. - Kemper | Sullivan, Mike - Kemper; Marsh, Harold - Kemper; Schwartz, Benjamin, Esq. - Kemper | Email discussion regarding dividends | Attorney-Client |

Page 1 of 2

CHICAGO/#11579688.2 12/6/06

| 34-37 | 2/9/04 | Email | McGregor, Jack, Esq. - Kemper | Chandler, Art - Kemper; Marsh, Harold, Kemper; McNamee, Mike, Kemper; Coutu, Mike - Kemper | Email discussion regarding large risk contributory dividend plan | Attorney-Client |
| 38-45 | 3/23/04 | Email w/ attachment | McGregor, Jack, Esq. - Kemper | Coutu, Mike, Kemper; Marsh, Harold, Kemper; Conway, John, Kemper | Email discussion of Board of Director's rejection of dividends and enclosing draft document regarding billing of deferred premiums | Attorney-Client; Work Product Doctrine |
| 46-59 | 3/31/04 | Email w/ attachment | McGregor, Jack, Esq. - Kemper | Conway, John - Kemper; Schwartz, Benjamin, Esq. - Kemper; Miranti, Richard - Kemper | Email discussion of Board of Director's rejection of dividends and enclosing with draft document regarding billing of deferred premiums and Board of Director minutes | Attorney-Client; Work Product Doctrine |
| 60-63 | 5/12/04 | Email | McGregor, Jack, Esq. - Kemper | Donovan, Maria - Kemper; Schwartz, Benjamin, Esq. - Kemper; Sullivan, Mike - Kemper; McNamee, Mike- Kemper | Email discussing deferred premiums | Attorney-Client |
| 64-66 | 3/26/04 | Emails | McGregor, Jack, Esq. - Kemper | Sullivan, Mike - Kemper; Marsh, Harold - Kemper; Schwartz, Benjamin, Esq. - Kemper | Email discussing billing for deferred premiums | Attorney-Client |

CHICAGO/#1579688.2 12/6/06

# EXHIBIT 3

**Bowan, Scott A.**

| | |
|---|---|
| **From:** | JEFFERY HEFTMAN [jheftman@vedderprice.com] |
| **Sent:** | Thursday, March 01, 2007 12:35 PM |
| **To:** | Bowan, Scott A. |
| **Cc:** | RANDY LENDING |
| **Subject:** | DuPont v. Kemper |

**Attachments:**    Scanned__1.pdf



Scanned__1.pdf
(38 KB)

Scott,

Please see attached.

Jeffery M. Heftman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle St.
Chicago, IL 60601
(312) 609-7728
(312) 609-5005 fascimile

FEDERAL TAX NOTICE:
Treasury Regulations require us to inform you that any federal tax advice contained herein (including in any attachments and enclosures) is not intended or written to be used, and cannot be used by any person or entity, for the purpose of avoiding penalties that may be imposed by the Internal Revenue Service.  In addition, we do not impose upon any person or entity to whom this is addressed any limitation on the disclosure of the tax treatment or tax structure of any transaction discussed herein (including in any attachments and enclosures).

# VEDDER PRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

JEFFERY M. HEFTMAN
312-609-7728
jheftman@vedderprice.com

February 28, 2007

## VIA E-MAIL (SBOWAN@KLNG.COM)

Scott A. Bowan
Kirkpatrick & Lockhart Nicholson Graham LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222

       Re:    DuPont v. Kemper

Dear Scott:

I writing in response to your email of February 28, 2007. I believe Randy Lending's emails to Chris French addressed Issue Nos. 3 and 4 of your email concerning the 1997 accounting documentation and Kemper's identification of a 30(b)(6) witness to testify concerning the 2002 and 1997 accounting documents.

With respect to your first item, Kemper has produced documents relating to its financial condition. Its prior production included its 2002 quarterly financial statements (Kemper 39027-308) and its supplemental production enclosing Kemper's 2001 quarterly financial statements (Kemper 43263-409) was produced on February 20, 2007. Documents in Kemper's possession relating to rating's downgrades were previously produced at Kemper 43,242-59. Kemper has not been able to locate any other written communications between it and any rating agencies with respect to Kemper's financial condition.

With respect to your second item, Kemper has not been able to locate any additional documentation concerning its decision not to declare dividends.

Please contact me should you wish to discuss the foregoing.

                                         Regards,

                                         Jeffery M. Heftman

JMH/lr
cc:    Randall M. Lending, Esq.

CHICAGO/#1611875.1

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E.I. du PONT de NEMOURS and )
COMPANY, )
                              )
          Plaintiff, )
                              )
      v. )      C.A. No. 05-699 (KAJ)
                              )
LUMBERMENS MUTUAL CASUALTY )
COMPANY, )
                              )
          Defendant. )

## KEMPER'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Defendant, Lumbermens Mutual Casualty Company ("Kemper"), by and through its attorneys, and as its objections and answers to Plaintiff E.I. du Pont de Nemours ("DuPont"), states as follows:

### GENERAL OBJECTIONS

1. Kemper objects to DuPont's First Set of Interrogatories to the extent that they request information, communications and/or documents protected against disclosure by the attorney-client privilege or work product doctrine. Any such objection which is hereinafter made in response to any specific interrogatory is made without limiting this general objection as it pertains to another specific interrogatory.

2. Kemper objects to DuPont's First Set of Interrogatories to the extent that they call for the disclosure of information which is not relevant to any claim or defense in this litigation or which is otherwise not reasonably calculated to lead to the discovery of admissible evidence.

3. Kemper objects to DuPont's First Set of Interrogatories to the extent that they demand that Kemper state "all" persons or "each" person having knowledge in response to any

**INTERROGATORY NO. 6:** Have **YOU** ever demanded that **DUPONT** pay the full "Audited Subject premium" for any year of the **INSURANCE PROGRAM** other than for the January 1, 2002-03 program year? If so, **IDENTIFY** the program year(s). If not, explain why **YOU** have never previously demanded that **DUPONT** pay the full "Audited Subject premium."

**ANSWER:**

Subject to Kemper's General Objections, Kemper has demanded payment of the Audited Subject premium through payment in cash or through application of a dividend credit, in every year that the Insurance Program has been in effect.

**INTERROGATORY NO. 7:** State the amount of the "dividend" paid and/or credited to **DUPONT** for each year from 1985 to the present.

**ANSWER:**

Kemper objects to Interrogatory No. 7 as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 8:** State the basis for **YOUR** refusal to credit **DUPONT** with a "dividend" under the **INSURANCE PROGRAM** for the January 1, 2002-03 program year.

**ANSWER:**

Subject to Kemper's General Objections, Kemper states that DuPont was not credited with a dividend under the Insurance Program for the January 1, 2002-03 Policy Year pursuant to Section 215 ILCS 5/54 of the Illinois Insurance Code and the Board of Directors' determination, in accordance with said provision and the discretionary authority reserved for the Board under the Insurance Program, that no dividend would be declared for that policy year.

**INTERROGATORY NO. 9:** **IDENTIFY** each of **YOUR** other policyholders that have disputed **YOUR** alleged right not to pay or credit "dividends" to them since 2000.

**ANSWER:**

Kemper objects to Interrogatory No 9 as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 10:** **IDENTIFY** each individual who was involved in reaching the decision regarding **YOUR** payment, nonpayment, crediting, or noncrediting of a

- 10 -

their retention, all current unpaid balances, and an appropriate margin to maintain adequate collateral to account for potential changes, including increases, in the obligations over time.

**INTERROGATORY NO. 13:** If **YOUR** response to any request for admission contained in Plaintiff's First Set of Requests for Admission is anything other than an unqualified admission, state, as to each such request, the basis for **YOUR** denial, including the facts that allegedly support **YOUR** denial, the **IDENTITY** of all **PERSONS** who **YOU** believe have personal knowledge of those facts, and **IDENTIFY** all **DOCUMENTS** that **YOU** believe support **YOUR** denial.

**ANSWER:**

See Kemper's objections and responses to DuPont's First Set of Requests for Admission, which are incorporated herein by reference. Kemper objects to this Interrogatory on the grounds that it is overbroad and that it would be unduly burdensome to respond to it further.

OF COUNSEL:

Michael M. Eidelman
Randall M. Lending
Jeffery M. Heftman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street Suite 2600
Chicago, IL 60601-1003

/s/ M. Duncan Grant
David B. Stratton (Del. Bar No. 960)
M. Duncan Grant (Del. Bar No. 2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

Dated: April 13, 2006

Attorneys for Defendant
Lumbermens Mutual Casualty Company

186960

- 12 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E. I. du PONT de NEMOURS and )
COMPANY, )
)
Plaintiff, )
)        C.A. No. 05-699 (KAJ)
v. )
)
LUMBERMENS MUTUAL CASUALTY )
COMPANY, )
)
Defendant. )
)

---

## VERIFICATION

STATE OF ILLINOIS )
)    SS
COUNTY OF LAKE )

Jack M McGregor, having been duly sworn according to law, deposes and says:

I am Associate General Counsel and an officer of Lumbermens Mutual Casualty

Company ("Kemper"). I have read Kemper's Objections and Responses to Plaintiffs First Set of

Interrogatories and the responses are true and accurate to the best of my knowledge, information,

and belief.

By: _____
Jack M. McGregor

SWORN TO AND SUBSCRIBED before me this _11_ day of April, 2006.

_____
Notary Public

My Commission Expires: _03/03/09_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E.I. du PONT de NEMOURS and COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-699 (KAJ) |
| LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## NOTICE OF SERVICE OF
## KEMPER'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

I hereby certify that on April 17, 2006, copies of the foregoing Objections and Responses

to Plaintiff's First Set of Interrogatories were served upon the following counsel, in the manner

stated for each:

| John E. James, Esq. (via hand delivery) Potter, Anderson & Corroon, LLP Hercules Plaza 1313 N. Market Street Wilmington, DE 19801 | Christopher C. French, Esq. (via Federal Express) Kirkpatrick & Lockhart Nicholson Graham, LLP Henry W. Oliver Building 535 Smithfield Street Pittsburgh, PA 15222-2312 |
|---|---|

/s/ M. Duncan Grant
M. Duncan Grant (Del. Bar No. 2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Attorneys for Defendant
Lumbermens Mutual Casualty Company

CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2006, copies of the foregoing Notice of Service of

Kemper's Objections and Responses to Plaintiff's First Set of Interrogatories were served upon

the following counsel, in the manner stated for each:

| John E. James, Esq. (via hand delivery) | Christopher C. French, Esq. (via Federal Express) |
|---|---|
| Potter, Anderson & Corroon, LLP | Kirkpatrick & Lockhart Nicholson Graham, LLP |
| Hercules Plaza | Henry W. Oliver Building |
| 1313 N. Market Street | 535 Smithfield Street |
| Wilmington, DE  19801 | Pittsburgh, PA  15222-2312 |

/s/ M. Duncan Grant
M. Duncan Grant (Del. Bar No. 2994)

## Discovery Documents
1:05-cv-00699-KAJ E I du Pont de Nemours and Company v. Lumbermens Mutual Casualty Company

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Grant, M. entered on 4/17/2006 at 3:00 PM EDT and filed on 4/17/2006

**Case Name:**           E I du Pont de Nemours and Company v. Lumbermens Mutual Casualty Company
**Case Number:**         1:05-cv-699
**Filer:**               Lumbermens Mutual Casualty Company
**Document Number:** 52

**Docket Text:**
NOTICE OF SERVICE of Kemper's Objections and Responses to Plaintiff's First Set of Interrogatories by Lumbermens Mutual Casualty Company. (Attachments: # (1) Certificate of Service)(Grant, M.)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/17/2006] [FileNumber=200772-0]
[9686718dd650451f3a840a02cc297b85d72706f99bb344aa341882a54e3dfe497286
ab7237aa814db56270504fc9ea57a372ff84af1b863ccc475f9acc9389b6]]
**Document description:** Certificate of Service
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/17/2006] [FileNumber=200772-1]
[af2ed6ba561a7c4c849cfe356217ff6bee45a37a984c53c76020de464dfbbfc2b638
c0cd2ee9e89046250ac8e2cabdc2ed31232793197b1348dac9e05eb1fe4e]]

**1:05-cv-699 Notice will be electronically mailed to:**

M. Duncan Grant    grantm@pepperlaw.com, willauerd@pepperlaw.com

John E. James    jjames@potteranderson.com, clis@potteranderson.com; cyoung@potteranderson.com;
srickards@potteranderson com; achin@potteranderson.com; scrawford@potteranderson.com

David B. Stratton    strattond@pepperlaw.com,

**1:05-cv-699 Notice will be delivered by other means to:**

# EXHIBIT 5



Not Reported in A.2d                                                    Page 1
Not Reported in A.2d, 1999 WL 33236240 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Pfizer Inc. v. Warner-Lambert Co.Del.Ch.,1999.Only
the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware.
PFIZER INC.
v.
WARNER-LAMBERT CO., et al.
**No. CIV.A.17524.**

Dec. 8, 1999.

<u>R. Franklin Balotti</u>, Richards, Layton & Finger,
Wilmington.
<u>Michael D. Goldman</u>, Potter Anderson & Corroon,
Wilmington.
<u>Joseph A. Rosenthal</u>, Rosenthal, Monhait, Gross &
Goddess, Wilmington.
<u>A. Gilchrist Sparks, III</u>, Morris, Nichols, Arsht &
Tunnell, Wilmington.
<u>Pamela S. Tikellis</u>, James C. Strum, Chimicles &
Tikellis LLP, Wilmington.
<u>CHANDLER</u>, Chancellor.
*1 Dear Counsel:

Pfizer Inc. (" 'Pfizer") and the plaintiff shareholders
have asked the Court to compel production of a
variety of documents including, but not limited to,
drafts of the Merger Agreement between Warner-
Lambert Company ("Warner") and American J Iome
Products Corp. ("AHP"), documents indicating or
relating to Warner's own internal valuation, and
directors' notes taken at board meetings. After
carefully considering the arguments made during our
teleconference of December 7, 1999 and the papers
submitted to the Court, I have concluded that
plaintiffs' motion to compel production should be
granted in part and denied in part.

The scope of discovery pursuant to <u>Court of
Chancery Rule 26(b)</u> is broad and far-reaching. <u>Rule
26(b)</u> generally provides that "[p]arties may obtain
discovery regarding any matter, not privileged, which
is relevant to the subject matter involved in the
pending action, ..." Moreover, the Rule renders
discoverable any information that "appears
reasonably calculated to lead to the discovery of
admissible evidence." Consequently, absent injustice
or privilege, the Rule instructs the Court to grant

discovery liberally.

At this relatively nascent stage of the litigation,, the
plaintiffs apparently anticipate the defendants'
attempt to invoke the business judgment rule.
Consequently, the plaintiffs seek information they
allege: may demonstrate that the directors were
uninformed when they made their business
judgments. Additionally, the plaintiffs likely will ask
the Court to apply the *Unocal* standard to this case.
Accordingly, the plaintiffs covet valuation
information to determine whether Warner's actions
were reasonable in relation to a reasonably perceived
threat.

I acknowledge that the information which plaintiffs
seek to compel may uncover whether the directors
made informed decisions, or whether they reasonably
perceived a threat. Nothing in this letter, however,
should be read to imply that either the business
judgment rule or the *Unocal* standard is the
appropriate legal standard for this case. I mention
these standards merely to demonstrate explicitly the
relevance of the information plaintiffs seek.

Despite the relevance of the information, <u>Rule 26</u>
carves out certain exceptions for privileged in
formation. Where information falls within a
privilege, that information is not available for
discovery.<u>FN1</u> Warner has raised two such privileges-
the attorney-client privilege and the business
strategies privilege-to explain why Pfizer is not
entitled to certain information.

        <u>FN1</u>. Ct. Ch. R. 26(b).

Delaware Uniform <u>Rule of Evidence 502</u> defines the
breadth of the attorney-client privilege. The elements
of the privilege include a communication, that is
confidential, made for the purpose of rendering legal
services to the client and that occurs between the
client and his or her attorney.<u>FN2</u>

        FN2. *Moyer v. Moyer,* Del.Supr., 602 A.2d
        68, 72 (1392).

Pfizer questions whether Warner has waived or will
waive the privilege. A party cannot use the attorney-
client privilege as both a sword and shield. In other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1999 WL 33236240 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

words, "a party cannot take a position in litigation and then erect the attorney-client privilege in order to shield itself from discovery by an adverse party who challenges that position." [FN3] Pfizer anticipates that in order to demonstrate that its board made informed, decisions, Warner will proffer evidence of attorneys' discussions with Warner's board. Therefore, Pfizer argues, Warner would have placed the attorneys' conversations with board members at issue rendering those conversations discoverable. If Warner submits such evidence, I would indeed consider Pfizer's concerns legitimate. Warner has represented, however, that it does not plan to use its attorneys' advice to the board in this manner. Warner warrants that it will use the attorney-client privilege only as a shield, and not as a sword. Consequently, Warner has not waived this privilege.

> FN3. *Scaly Mattress Co. of New Jersey, Inc. v. Sealy, Inc., Del.* Ch., C.A. No. 8853, Jacobs, V.C. (June 19, 1987).

**\*2** The business strategies immunity entitles a target corporation to shield itself from discovery of time-sensitive information in the takeover context, including delicate financial information, defensive strategies, and potential responses to hostile bids. [FN4] The Court's authority to protect information under this immunity resides in Court of Chancery Rule 26(c), which authorizes the Court to enter protective orders as "justice requires" to shield the parties from prejudice. The Court employs a balancing process to assess immunity claims under this doctrine. The factors the Court considers include the importance of the matter sought to be discovered to the patty seeking it; the risk of non-litigation injury that might occur to the target corporation if discovery is permitted; and the stage of the company's efforts as well as the stage of the litigation. [FN5] Delaware courts considering this immunity have granted protection to companies' ongoing strategies still being contemplated, but not plans that have already been made. [FN6] Here, I conclude that the risk of non-litigation injury and the early stage of this litigation outweigh Pfizer's need for such information. Consequently, the immunity protects any in formation relating to ongoing strategies and all information regarding Warner's internal financial valuations. The immunity does not, however, protect information relating to plans that Warner has already implemented.

> FN4. *See* DONALD J. WOLFE, JR. &

MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY, § 7-3 al 292 (1938).

> FN5. *Grand Metropolitan PLC v. Pillsbury Co.,* Del. Ch., C.A. No. 10319, Allen, C. (Nov. 22, 1988).

> FN6. *Atlantic Research Corp. v. Clabir Corp.,* Del. Ch., C.A. No. 8783, Jacobs, V.C. (Feb. 10, 1987).

I also remind Warner that Pfizer's right to discover information remains quite broad under Rule 26. Therefore, I direct Warner, as a general rule, to disclose to Pfizer any and all information that falls outside either the attorney-client privilege or the business strategies privilege, I will address each specific discovery dispute below.

Pursuant to Court of Chancery Rule 37(a) defendants *Warner and AHP* are ordered to produce:
1. All drafts of the Merger Agreement and al.1 agreements related thereto, including agreements by which Warner and AHP granted each other stock options.
2. All documents relating to Warner's already completed decision to enter into the Merger Agreement.
3. All documents relating to Warner's osscrtion that Pfizer has breached or may have breached existing contracts with Warner.
4. All documents discussing, addressing, referring or relating to the relationships, connections; or ties between any member of the Warner board and any officer or executive of Warner,

Pursuant to Court of Chancery Rule 37(a), defendant *Warner* is ordered to produce:
1. All documents relating to the AHP Drug Litigation, including the Memorandum of Understanding, the Settlement Agreement and any drafts thereof or documents relating to opt-outs from the settlement.
2. Any documents relating to Warner officers', directors' and executives' rights to employment, payment, benefits or severance agreements or as a result of the Warner-AHP Merger.
3. Any documents relating to the Warner-Lambert Stock Options, the Warner-Lambert Stock Options Plans or any other stock option plans or agreements referred to in the Merger Agreement,
**\*3** 4. Notes, documents and testimony reflecting what

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 3
Not Reported in A.2d, 1999 WL 33236240 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

the Warner directors were told about the proposed
Merger Agreement including all notes taken at board
meetings by directors, persons acting as secretaries,
and attorneys. (Attorneys' notes need be produced to
the extent they constitute factual accounts but not to
the extent they constitute legal conclusions,
propositions, and advice developed in anticipation of
litigation.)

Plaintiffs Motion to Compel is granted with respect
to all interrogatories.

Plaintiffs' Motion to Compel is denied with respect to
all materials and requestsregarding Warner's internal
valuation information referenced in paragraph 23 of
Plaintiffs' Motion to Compel.

I trust this letter will resolve all of the issues
advanced in the Motion to Compel. If any issues
remain unresolved, the parties may sock further
direction from this Court.

Del.Ch.,1999.
Pfizer Inc. v. Warner-Lambert Co.
Not Reported in A.2d, 1999 WL 33236240 (Del.Ch.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6



Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2158051 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 1

▷
Baxter Intern., Inc. v. Rhone-Poulenc Rorer, Inc.Del.Ch.,2004.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
BAXTER INTERNATIONAL, INC., et al.
v.
RHÔNE-POULENC RORER, INC., et al.
No. Civ.A. 19328.

Submitted Sept. 2, 2004.
Decided Sept. 17, 2004.
LAMB, Vice Chancellor.

Dear Counsel:

*1 Baxter International Inc. and Baxter Healthcare Corporation ("Baxter") have moved for summary judgment. In addition, Baxter has moved to compel the production of certain purportedly privileged documents, and to strike an affidavit submitted in opposition to their summary judgment motion.[FN1] Rhône-Poulenc Rorer Inc. ("RPR") and Aventis Behring L.L.C. (collectively "Aventis") have cross-moved for summary judgment.[FN2] For the reasons set forth herein, the court denies both motions for summary judgment, grants the motion to strike, and directs Aventis to submit certain documents for an *in camera* inspection in connection with the motion to compel.

> FN1. Baxter filed its complaint on December 27, 2001. On May 12, 2003, Baxter moved for partial summary judgment. That motion was denied. On May 7, 2004, Baxter filed its motion to compel. On June 18, 2004, Baxter filed a renewed motion for summary judgment. On August 27, 2004, Baxter filed its motion to strike.

> FN2. Aventis filed its motion for summary judgment on June 18, 2004.

*The Contractual Dispute*

This action arises from a dispute over royalty obligations under a 1993 Settlement Agreement ending patent litigation between Baxter and RPR.

The Settlement Agreement provides that Baxter was required to make royalty payments to RPR and later to Aventis (RPR's assignee) based on Baxter's sale of two products developed for patients suffering from hemophilia.

Under Sections 9.1 [FN3] and 9.2 [FN4] of the Settlement Agreement, Baxter was to make royalty payments to Aventis based on foreign and United States sales of product until Baxter paid the then net present value of $67 million in royalties. After Baxter paid the $67 million in royalties, it was no longer required to pay royalties on product sold in the United States. Furthermore, after reaching the $67 million threshold, Baxter was only required to pay royalties on sales outside the United States ("foreign sales"), if the product was sold or "manufactured" in a country with a granted and unexpired patent.

> FN3. Section 9.1 of the Settlement Agreement states:
> When cumulative royalties and processing fees (including minimum royalties) paid under this agreement reach a net present value of 67 million dollars (measured at a discount rate of 10% per annum from the Effective Date of this Agreement), no further royalty or processing fee shall be owed or payable by BHC [Baxter] for Factor VIII Product that is sold in the United States or in any country where there is no granted unexpired Z-F patent.

> FN4. Section 9.2 of the Settlement Agreement states:
> BHC [Baxter] will continue to pay a royalty or processing fee pursuant to 7.1 beyond the amount set forth in 9.1 for Factor VIII Products that are sold for use in a country other than the United States, provided that
> (a) there is a granted unexpired Z-F Patent in the country where the Factor VIII Product is sold, or, *if the Factor VIII Product is manufactured outside the United States, there is a granted unexpired Z-F Patent in the country where Factor VIII Product is manufactured or sold,* and
> (b) the applicable Z-F Patent has a product claim of the same or broader scope as the European Product Claims or otherwise

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                              Page 2
Not Reported in A.2d, 2004 WL 2158051 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

covers said Factor VIII Product.
(emphasis added).

In 1997, Baxter reached the $67 million threshold and discontinued paying royalties on product sold in the United States. However, from late 1997 until 2000, Baxter continued to pay royalties based on sales in certain foreign countries that did not have granted and unexpired patents. The product sold in those foreign countries was produced in the United States, and then shipped to foreign countries (such as Belgium) where it was packaged and labeled, and where there existed a granted, unexpired patent for the product.

In 2001, Baxter, believing that it had mistakenly overpaid, requested the return of the royalties paid from late 1997 to 2000 on sales of such products in countries that did not have granted, unexpired patents. Discussions between Aventis and Baxter ensued and, in early October 2001, the parties agreed to an audit to confirm the precise amounts of the disputed payments during this period. PricewaterhouseCoopers L.L.C. ("PwC") was retained to conduct the audit. Following the audit, Aventis informed Baxter that Aventis was entitled to the royalty payments because it contended the phrase "manufactured outside the United States" in Section 9.2(a) of the Settlement Agreement covered packaging and labeling in foreign countries. After the parties failed to come to an accord, Baxter filed this suit in December 2001.[FN5]

> FN5. Baxter has "reimbursed" itself the alleged overpayments by offsetting continuing royalty obligations indisputably owed to Aventis, plus interest, and now seeks a declaratory judgment that, by doing so, Baxter is not in breach of the Settlement Agreement.

**\*2** The cross motions for summary judgment focus on the construction of Section 9.2 of the Settlement Agreement and, in particular, on the question whether the packaging and labeling of product in foreign countries with granted, unexpired patents constitutes "manufacturing" in that country under the Settlement Agreement.

The court's review of the factual record submitted in connection with the cross motions for summary judgment reveals the existence of material issues of fact relating to the history of the negotiation and performance of the Settlement Agreement. The court

offered to resolve these questions of fact on a paper record, but the parties have not agreed to proceed in this manner, as is their right. Thus, the court concludes that it is necessary to deny both motions for summary judgment and proceed to trial on the existing schedule.

*The Discovery Dispute*

Baxter has moved to compel the production of 13 emails that are listed in the privilege log supplied by Aventis. Baxter contends that Aventis has wrongfully withheld these emails based on the attorney-client and work-product privileges.

The disputed emails are listed in Aventis's privilege log as entries 60-72. They reflect communications among members of Aventis's management and its in-house counsel. Ten of these emails were purely internal emails, circulated only among the management at Aventis and its in-house lawyers (the "internal emails"); while three of the emails (60, 63 and 68) were also sent to PwC auditors Blaise Coleman and Jeffrey Williams (the "PwC emails").

According to Baxter, these emails should be produced because they relate to whether Aventis "always believed" that the term "manufacturing" included packaging and labeling or, instead, developed this interpretation as a litigation strategy. Furthermore, Baxter claims that the emails may give insight into who first developed the interpretation supported by Aventis, and whether this interpretation was developed by PwC after conducting their audit.

*Are The Emails Privileged?*

Under the attorney-client privilege, a party may refuse to disclose confidential communications made for the purpose of facilitating the rendition of legal services to the party.[FN6] Under the work product rule, documents and tangible things prepared in anticipation of litigation need not be produced unless the party requesting production shows a substantial need for the materials and the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.[FN7]

> FN6. Del. R. Evid. 502(b); *see also Texaco, Inc. v. Phoenix Steel Corp.,* 264 A.2d 523 (Del.Ch.1970) (noting that the attorney-client privilege has long existed in Delaware

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2158051 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 3

as part of the common law).

> FN7. Ch. Ct. R. 26(b)(3), *see also Riggs Nat'l Bank v. Zimmer,* 355 A.2d 709, 715 (Del.Ch.1976) (recognizing and applying the work-product rule).

The emails in dispute were circulated on October 16 and October 17, 2001, slightly more than two months before Baxter brought this suit. The emails contained communications among members of Aventis's management and in-house counsel relating to the royalty dispute. Furthermore, they came on the heels of the disputed PwC audit and were sent in the context of the recent royalty reimbursement imbroglio. It is clear that they were prepared in anticipation of litigation and were meant to advise the management of Aventis about the dispute. As such, these materials are privileged.

### *Do The Communications Fall Within The "Facts" Exception?*

**\*3** In *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati Inc.,*[FN8] then Vice-Chancellor Chandler held that the attorney-client privilege can be relied upon "to prevent discovery of any communications with [ ] legal counsel," but that it cannot be relied upon to block inquiry into facts.[FN9] The rationale behind the facts exception is to preclude a party from hiding discoverable information behind the wall of the attorney-client privilege by communicating it to an attorney.[FN10]

> FN8. 1995 WL 347799 at \*2 (Del.Ch. May 17, 1995).

> FN9. *See also Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("The protection of the [attorney-client] privilege extends only to communications and not to facts").

> FN10. *Id.*

Baxter argues that it seeks only the "facts" contained in the emails, and not the "communications" contained therein. Specifically, Baxter wants to know *"who* within Aventis (or PwC) first articulated the definition of 'manufactured' as including packaging and labeling and *when* that first occurred."[FN11]

> FN11. Pl. Op. Br. at 12 (emphasis in original).

Baxter had ample opportunity to discover these facts through other, non-privileged means such as depositions and interrogatories. Of the ten individuals who were party to the emails, Baxter chose to depose only two: Jennifer Evans Stacey, Aventis's then general counsel, and Leonard Puzzuoli, Aventis's Manager of Finance for the Hemophilia API Business Unit. It is therefore inaccurate for Baxter to argue, as it does, that the "only" source of these facts is the emails. Since the facts could have been discovered in another fashion, the underlying rationale of the facts exception would not be served by compelling production of the communications.

### *Do The Emails Fall Within The "At Issue" Exception?*

The "at issue" exception to the attorney-client privilege applies when the party holding the privilege waives the privilege in one of two basic ways: (1) the party injects the communications into the litigation, or (2) the party injects an issue into the litigation, the truthful resolution of which requires an examination of the confidential communications.[FN12] The "at issue" exception is based on the principles of waiver and of fairness, so that the party holding the privilege cannot use it as both a sword and a shield.[FN13] That exception has also been described as a "waiver ... where the issue was lack of good faith."[FN14]

> FN12. *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.,* 623 A.2d 1118, 1122 (Del.Super.1992).

> FN13. *Id.*

> FN14. *Ramada Inns v. Drinkhall,* 490 A.2d 593, 597 (Del.Super.1985).

Aventis has not injected the communications into the litigation. The existence of the emails was raised by Baxter, not Aventis. Aventis is not inequitably using the attorney-client privilege as a sword. Additionally, while the subject matter of the emails may be at issue (as is often the case with privileged material), the communications themselves are not. Finally, there is no alleged bad faith on the part of Aventis. Therefore, the balance of equities does not require Aventis to disclose the communications under the at issue exception.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2158051 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Page 4

*Has Aventis Waived Its Privilege Protection?*

Baxter claims that Aventis waived its privilege protection with respect to the PwC emails by sending them to Messrs. Coleman and Williams, thereby destroying the confidentiality of the communications.

*4 In order for a communication to be privileged, it must be confidential. [FN15] A communication made in furtherance of the rendition of professional legal services to the client is a confidential communication unless the client *intends* the information to be disclosed to non-confidential persons. [FN16] When the client makes a communication with the intention or expectation that it will be revealed to another person who is not necessary for the rendition of the legal services or communication, this element of confidentiality is lacking. [FN17]

FN15. *Hoechst,* 623 A.2d at 1122.

FN16. *Ramada Inns v. Dow Jones & Co.,* 523 A.2d 968, 972 (Del.Super.1986).

FN17. *Hoechst,* 623 A.2d at 1122.

As discussed, *supra,* the emails were made in furtherance of the rendition of professional legal services. Therefore, unless Aventis *intended* the information to be disclosed to non-confidential persons, the emails were confidential.

Furthermore, as a general matter, when information is communicated to an attorney in the presence of a third party, the communication is not privileged. [FN18] However, when disclosure to a third party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege. [FN19]

FN18. *Constar Int'l, Inc. v. Cont'l Pet Techs., Inc.,* 2003 WL 21132, at *1 (D.Del. Nov. 19, 2003); *see also Westinghouse Elec. Corp. v. Republic of Phil.,* 951 F.2d 1414, 1424 (3d Cir., 1991) ("[V]oluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege").

FN19. *Id.*

There is a two-part inquiry as to whether Aventis has waived the attorney-client privilege with respect to the PwC emails. First, did Aventis intend that the emails remain confidential? If so, were the communications to PwC "necessary" to provide legal service to Aventis? Aventis has waived its privilege and must produce the PwC emails if either of these questions is answered in the negative.

In order for the court to answer either of these questions, it is necessary to actually see the PwC emails. Therefore, Aventis should immediately submit the PwC emails to court for *in camera* review.

*Aventis's Honaker Defense*

Trial is scheduled to begin on October 12, 2004 and, pursuant to the Fourth Amended Scheduling Order, discovery closed on May 7, 2004. On June 18, 2004, more than a month after the close of discovery, in its opening brief in support of its motion for summary judgment, Aventis first raised an equitable estoppel defense based on the decision of the Delaware Supreme Court in *Home Ins. Co. v. Honaker.* [FN20] The defense recognized in that case is based on the equitable principle of detrimental reliance. In order to prove this defense, a defendant must show, at the very least, that it changed position in reliance on the plaintiff's actions. [FN21] In support of that defense, Aventis submitted the affidavit of James E. Fickenscher, a former Aventis employee, that lays out the extensive factual basis for Aventis's claim of detrimental reliance. Baxter moves to strike the Fickenscher Affidavit and to bar the assertion of the defense on grounds that it was not given fair notice of this purported defense or an opportunity to take discovery relating to it.

FN20. 480 A.2d 652 (Del.1984).

FN21. *Honaker,* 480 A.2d at 654.

Aventis's Fourth Affirmative Defense contains the rote and entirely uninformative assertion that: "[Baxter's] claims are barred in whole or in part by the doctrines of estoppel, waiver, and laches." During discovery, Baxter made discovery requests for the factual basis for Aventis's Fourth Affirmative Defense. In response, Aventis stated: "[t]he basis for the defense is that the plaintiffs have always had full and complete access to the information that they

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2158051 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

needed in order to determine the proper amount of each quarterly royalty payment that Baxter Healthcare has made under the Settlement Agreement." [FN22] This was the full extent of Aventis's response to Baxter's request for discovery pursuant to this defense, before the close of discovery. As a consequence, the discovery record is a total void in relation to the issue raised in the Fickenscher Affidavit. Indeed, that affidavit, which contains numerous references to detailed financial information, is itself devoid of reference to a single interrogatory answer, response to request for admission or deposition transcript.

> FN22. Resp. to Baxter's Interrog. No. 13, served on Aug. 16, 2002.

**\*5** At argument, Aventis counsel admitted that he first considered raising a defense based on *Honaker* in October of 2003, and that he worked with his client to determine if there was a factual basis for raising this affirmative defense.[FN23] Apparently, those efforts were delayed by the press of other business and, although counsel stated that the factual inquiry was complete in April 2004, Aventis never supplemented its discovery responses to reflect the information learned.

> FN23. Tr. Sept. 2, 2004, at 47-48.

In view of this history, the court concludes that Baxter's objection to the Fickenscher Affidavit and the assertion of the *Honaker* defense are well taken. It is simply not reasonable or appropriate to expect Baxter to undertake an extensive additional discovery program to explore the matters set forth in the Fickenscher Affidavit at this stage of this 2 1/2 year old case. Aventis had more than ample opportunity to develop its theories during discovery. It failed to do so, instead interjecting a new, intensely factual theory of defense after the close of discovery, in connection with the summary judgment proceedings, and only shortly before the scheduled trial.

For these reasons, the court will grant the motion to strike and will preclude Aventis from relying on *Honaker* or any of the factual matters raised in the Fickenscher Affidavit.[FN24]

> FN24. The decision to preclude this defense is unlikely to work any hardship or inequity on Aventis since the *Honaker* case is very

likely inapposite. In *Honaker,* an insurance company for another party paid a victim of a car accident (Honaker) $24,907, even though the coverage limit of the policy was $10,000. Honaker spent the money on his living and medical expense, and on the living and medical expenses of his child. 480 A.2d at 653. The insurance company sued for restitution and the Delaware Supreme Court held that the unusual equities of the situation, including Honaker's innocent belief that he was entitled to the money and his substantial change of position, supported a defense to the claim. *Id.* at 654-55.
This court must, and will, consider all relevant equities in resolving a claim for restitution. Nevertheless, it is hard to imagine a finding that considerations of equity prevent the repayment of $5-10 million dollars by one multi-billion dollar company to another. This is particularly true when, as is true in this case, there is no suggestion that the party seeking restitution has acted inequitably in making the overpayment at issue.

*Conclusion*

For all the reasons set forth in this letter opinion, the court denies both motions for summary judgment. The motion to strike is granted and Aventis is precluded from relying on *Honaker* or any of the factual matters raised in the Fickenscher Affidavit. In connection with the motion to compel, the court directs Aventis to submit the PwC emails for *in camera* review. IT IS SO ORDERED.

Del.Ch.,2004.
Baxter Intern., Inc. v. Rhone-Poulenc Rorer, Inc.
Not Reported in A.2d, 2004 WL 2158051 (Del.Ch.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 7

Westlaw.

Not Reported in A.2d                                          Page 1
Not Reported in A.2d, 1996 WL 577143 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

**H**
SICPA Holdings S.A. v. Optical Coating Laboratory,
Inc.Del.Ch.,1996.Only the Westlaw citation is
currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware.
Re **SICPA** HOLDINGS S.A.
v.
OPTICAL COATING LABORATORY, INC., et al.
**Civil Action No. 15129.**

Sept. 23, 1996.

Michael D. Goldman, Potter, Anderson & Corroon,
Wilmington.
Gregory P. Williams, Richards, Layton & Finger,
Wilmington.
Stephen E. Jenkins, Ashby & Geddes, Wilmington.
ALLEN, Chancellor.
**\*1 Dear Counsel:**

The suit is one in which a 40% shareholder
("SICPA") sues (1) a 60% shareholder ("Optical"),
(2) the corporation in which both invested ("Flex")
and (3) the directors of Flex that Optical designates,
who constitute a majority of the board of directors of
Flex. The claim, stated most globally, is that the
Flex board, acting at the behest of and for the
interests of Optical and detrimentally to SICPA, is
attempting to destroy certain SICPA option rights
that would permit SICPA to acquire all of Optical's
stock interest in Flex no sooner than 1998. The
corporate act that is said to be designed for this
purpose is a proposed sale of a small block of Flex
stock (16,000 shares out of 116,000 shares
authorized) to public investors. It is alleged that
Flex is proposing this transaction not because it has a
need for additional capital, but because Optical
believes that SICPA's option right will be terminated
by an initial public offering of Flex stock and that the
distribution of 16,000 shares as contemplated will
qualify as such an IPO. It is alleged that this
transaction is strictly a reaction to SICPA's February
1996 announcement that it intended to exercise its
option rights and, thus, constitutes a breach of duty
by the Flex directors and a breach of good faith by
Optical.

The matter is being litigated on an expedited basis.

Trial is presently set for October 15 and 16. Pending
at this time is a motion by the plaintiff pursuant to
Rule 37 to compel discovery. The matter in issue
revolves centrally around the availability of the
attorney-client privilege. Initially certain documents
in the possession of Flex were withheld on that basis,
but that issue was resolved prior to presentation to the
court. Remaining are questions relating to
production of documents and testimony of Optical
officers and their advisors that lead up to the acts that
form the nucleus of the complaint. Since the
motivation of the proposed offering of stock forms a
core aspect of the complaint, discovery relating to the
evolution of such a plan is plainly a relevant subject
of discovery. What complicates the discovery is the
unsurprising fact that at the meetings Optical
personnel (who since in some cases are Flex
directors) held to consider steps appropriate to take in
reaction to SICPA's announcement, its general
counsel and outside lawyers were present. The
specific persons identified as lawyers present at those
meetings include Mr. J. Zils, General Counsel of the
firm, and Mr. J. Erickson, an outside counsel.

The attorney-client privilege operates as an
impediment to the fact gathering process attendant to
litigation. It thus is costly. Yet the privilege to
protect qualifying information from forced disclosure
is nevertheless consistently recognized by courts
because Courts are concerned that the processes of
adjudication be, and be regarded as being, both fair
and efficient. There is no contradiction in this, but
rather a recognition that the adversarial system of
adjudication as evolved in Anglo-American law can
systematically reach fair results only if persons
subject to that law can receive the advice of informed
legal professionals. *Upjohn Co. v. United States,* 449
U.S. 383, 389 (1981); *Fischer v. United States,* 425
U.S. 391, 403 (1976). The attorney-client privilege
encourages full disclosure of relevant facts to
retained lawyers thereby assisting the effective
adjudication of disputes by courts.

**\*2** The purpose of the privilege shapes its boundaries.
Unless it is waived, the privilege protects (1)
communications (2) made between privileged
persons (3) in confidence (4) for the purpose of
obtaining or providing legal assistance for the client.
Restatement of the Law Governing Lawyers § 118
(Proposed Final Draft No. 1, 1996). *Fischer v.*
*United States,* 425 U.S. at 403. Thus, opinions or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                      Page 2
Not Reported in A.2d, 1996 WL 577143 (Del.Ch.)
(Cite as: Not Reported in A.2d)

other communications given by a lawyer to her client as part of the rendition of legal services are subject to a valid claim of privilege, just as statements from a client to his lawyer may be. Restatement of the Law Governing Lawyers § 118 cmt. c (Proposed Final Draft No. 1, 1996).

Standard scenarios in which the attorney-client privilege are invoked rarely present a problem in application. By standard scenarios I refer to situations in which (1) disclosure of present facts are made (2) to a retained lawyer (3) *for the sole or primary purpose* of getting that lawyers' legal advice or professional assistance. More complex situations, however, introduce ambiguity. Consider any of a great range of business problems that might arise in the corporate context. A change occurs: a market price moves unexpectedly, a competitor announces a new product line, or the company's stock is being accumulated, for example. The questions presented are not strictly legal ones; they are primarily business problems. A meeting is held to consider the problem. Representatives of relevant or affected aspects of the corporation are present (e.g. finance, marketing, legal and perhaps others) to contribute to a correct definition of the problem, the designing of a responsive strategy and the implementation of it. A lawyer will be expected to contribute appropriate observations at such a meeting ("we will have to look at the Robinson Patman Act in that connection, but I suppose we will be able to see a way through that thicket"). At the conclusion of the meeting a plan is adopted and then implemented. Litigation against the corporation follows in which the reasons the company pursued this plan are relevant. Suppose what was said at the meeting is relevant to the issues in the suit. How does the attorney-client privilege effect the scope of plaintiff's rights of inquiry into the contents of the meeting? From the lawyer as a fact witness? From others?

The first observation I note is that the presence of a lawyer at a business meeting called to consider a problem that has legal implications does not itself shield the communications that occur at that meeting from discovery, even if all persons present at the meeting are bound by contract or professional ethics to keep the discussions confidential. What are protected are communications *to a lawyer by or on behalf of a client for the purpose of the rendition of legal services or lawyer statements constituting legal services.* The discussions that occur at our hypothetical corporate meeting are discussions among a body of persons for the purpose of formulating an appropriate business strategy. As

such they are, in a sense, ultimately disclosures for the benefit of the responsible business decision-maker. Legal considerations may, of course, play a part in the formulation of a business policy or strategy, but unless the claimant of a privilege can specifically identify a disclosure made specifically to a lawyer for the purpose of assisting in the rendition of legal services (and not made at the meeting for purposes of business strategy), the fact that a lawyer gave incidental (or important) advice in the course of such a meeting does not protect from disclosure statements made at the meeting.

*3 Consider for example document OCL 06415. It is a memo from a senior OCLI officer to the CEO, the General Counsel and another. It is "Company Private". It outlines a number of strategic alternatives in the face of the SICPA announcement. While one of the recipients is a lawyer there appears no basis to conclude that these alternative considerations (they are in most instances not "facts" upon which legal services would be predicated) were disclosed to Mr. Zils, the attorney, *for the purposes meant to be protected by the privilege.* Moreover, the alternatives were disclosed in the memo to individuals who are not lawyers; while in these circumstances that does not operate to waive the privilege, since the individuals, being also officers of Optical, are in a confidential relationship with Zils, it does support the inference that the disclosure was not for the purpose of facilitating legal services, but for different purposes. This document shall be produced, except defendants may redact paragraph 5 on the basis that there is no legal relevance to the issues this suit presents to settlement possibilities.

I conclude similarly with respect to OCL 09847. It is quite plausible that lawyers contributed something to the discussions outlined on this document. But there is no sufficient basis to conclude that it represents facts communicated for the purpose of the rendition of legal services. An IPO, for example, as is mentioned in this May 13, 1996 document requires some legal expertise as well as other specialized skills. That does not make all aspects of IPO planning subject to a valid claim of attorney-client privilege; rather, in each instance it must be established that a disclosure was made for the sole or primary purpose of facilitating legal services. No part of this document, including paragraph 8, satisfies that test in my opinion and, therefore, its production will be required.

Finally, the documents submitted to the court OCL 06413, with the exception of paragraph 2, 7 & 8,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 577143 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

which may be redacted, must also be produced. To gain the protection of the attorney client privilege, a communication must be primarily concerned with the rendition of legal services. In his affidavit, Mr. Zils states that the OCL 06413 memorandum reflects a meeting in which "matters of importance to OCLI regarding its interest in Flex [were discussed] *and* Messrs. McCullough and Markovich requested legal advice" (emphasis added). Thus, by Mr. Zils' own admission discussions in the meeting were not only for the purpose of obtaining legal advice. Although they need not be, the burden is on the party asserting the privilege to establish that the discussions were sufficiently related to the rendering of legal advice to warrant the privilege's protection. It is entirely insufficient to sustain a claim of privilege for an attorney to state in an affidavit without more that a document reflects his "legal advice" and is therefore privileged in its entirety.

**\*4** With respect to other documents still in dispute, an *in camera* inspection of them will be necessary as well. I am today appointing Bruce Silverstein, Esquire of the Delaware Bar to act as Special Master for the purpose of resolving these and other discovery matters in this suit. The reasonable expense of the Master will be assessed as costs in this matter.

Del.Ch.,1996.
SICPA Holdings S.A. v. Optical Coating Laboratory, Inc.
Not Reported in A.2d, 1996 WL 577143 (Del.Ch.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.