# Pepper Hamilton LLP
#### Attorneys at Law

Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
302.777.6500
Fax 302.421.8390

M. Duncan Grant
302.777.6544
grantm@ppepperlaw.com

March 22, 2007

**BY CM / ECF**

Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, DE 19801

    Re:    E.I. DuPont de Nemours & Co. v. Lumbermens Mutual Casualty Co.
             Civil Action No. 05-699 \*\*\*

Dear Judge Thynge:

      I write in response to the first of DuPont's two March 21, 2007 letters, relating to its request for discovery of information about insurance programs that Kemper had with clients other than DuPont. DuPont's use of two three-page letters violates both the text and the spirit of the Scheduling Order, which calls for a single letter "outlining the issues [plural] in dispute." In addition, both of DuPont's letters appear to be in 11-point, and possibly 10-point, type, rather than in 12-point. DuPont's conduct in those respects is wholly improper. DuPont's use of two separate letters is particularly disingenuous and ironic, given its own counsel's petty complaint, at the conclusion of the February 6, 2007 discovery conference, about a Kemper letter that was 16 lines longer than three pages and which thus, in his mind, somehow eliminated a "level playing field" for the presentation of that discovery dispute to the Court (*see* Feb. 6, 2007 tr. at 60-61).

      DuPont's attempt to discovery information about other Kemper policyholder disputes is overly broad and unduly burdensome, and it ignores the fact that the policy language of the DuPont Program Agreements were subject to specific negotiation between the parties over the 30-year insurance relationship. The unambiguous policy language specific to the insurance program between Kemper and DuPont has been the subject of extensive testimony by current and former Kemper employees. Testimony about disputes between Kemper and other, unrelated policyholders that relate to dividend plans will only invite extensive supplemental discovery, including requests for production of potentially hundreds of underwriting and policyholder files.

      There are multiple problems with DuPont's Interrogatory 4, which asks Kemper to "identify each of YOUR other policyholders that have disputed YOUR alleged right not to pay or credit 'dividends' to them since 2000." For starters, the term "disputed" is not defined, and it

**Pepper Hamilton LLP**
<u>                         </u>
Attorneys at Law

Honorable Mary Pat Thynge
March 22, 2007
Page 2

is open to very broad interpretation. Kemper had hundreds of policyholders subject to a dividend program who were affected by Kemper's decision not to declare a dividend in the 2002 program year and beyond. The determination not to declare dividends resulted in discussions with most such policyholders or their brokers. Were those discussions "disputes"? At a minimum, disputes arose necessitating lengthy review and data exchanges – as was the case with DuPont before the inception of this litigation – relating to the proper calculation of the amount of premium owed during the audit process based on prior losses, audited premium calculations, and audited payroll information. Interrogatory 4 would call for the identification of virtually all of Kemper's policyholders to the extent that any dispute arose during this process, and would thus be very burdensome, particularly given the lack of relevance. In a number of instances, Kemper and other policyholders entered into business-driven novations or other settlements. The identification of such policyholders would be unduly burdensome and would not be "relevant to the claim or defense of any party" (Fed. R. Civ. P. 26(b)(1)).

Furthermore, the mere identification of policyholders who had previously disputed Kemper's decision not to declare a dividend will not advance this litigation. To the contrary, it offers principally the prospect of a dramatic expansion of the scope of discovery into the production of other policyholders' underwriting files and insurance programs, as well as subsequent "mini-trials" about third-party policyholders' understanding of their dividend-component insurance programs, which would require the production and comparison of those policies with the DuPont policies' terms. DuPont may be prepared (or even eager) to finance such a campaign, but it would be incredibly wasteful of Kemper's and of the Court's resources, and it would serve no purpose related to the merits.

The DuPont workers' compensation program existed for over 30 years, a fact that answers DuPont's carp that Kemper has not produced anyone who can testify about the "original drafting and intent" (DuPont letter at 3). It was the subject of negotiation about its terms and costs each renewal year. The Program Agreements between Kemper and DuPont unambiguously give Kemper the right, in its "absolute" or "sole" discretion, not declare dividends. Both parties have submitted corporate representative testimony as to their understanding of the unambiguous language of the insurance program agreement.

To the extent that Court determines that an ambiguity exists, testimony as to the term's meaning is drawn from Kemper's and DuPont's understanding of the terms, as well as that of Marsh, DuPont's broker, insofar as Marsh served as DuPont's agent in the procurement of the insurance program. *See Pekin Life Ins. Co. v. Schmidt Family Irrevocable Trust*, 359 Ill. App. 3d 674, 834 N.E.2d 531, 536-37 (1st Dist.), *appeal denied*, 217 Ill. 2d 568 (2005) (since broker had been acting as insured's agent, "his knowledge of [the insured's] regulations and the contents of [the insurer's] letters to him are imputed" to the insured). The testimony of third parties about their own understanding of an insurance program is neither relevant nor admissible for purposes of this Court's determination whether, as a matter of a law, the Kemper / DuPont agreement is ambiguous. *See Noran Neurological Clinic, P.A. v. Travelers Indem. Co.*, 229 F.3d 707, 710

**Pepper Hamilton LLP**
<u>                   Attorneys at Law</u>

Honorable Mary Pat Thynge
March 22, 2007
Page 3

(8th Cir. 2000) (rejecting insurer's representatives' testimony as extrinsic evidence regarding contract ambiguity).

     DuPont's request for the production of deposition transcripts from other cases arising from the non-declaration of a dividend similarly ignores the fact that the obligations and risks undertaken by each insured are distinct. Each insurance program differs in certain facets, and one policyholders' dispute with an insurer is not relevant to another's. *See Moses v. State Farm Mut. Ins. Co.*, 104 F.R.D. 55, 57 (N.D. Ga. 1984) ("[Insurer's] conduct regarding the insurance claims of others is of no consequence to this case. Plaintiff can determine the reasons for Defendant's conduct regarding her claim by deposition of Defendant's employees and other who were involved in the decision not to pay the amounts in question."); *First Fidelity Bancorp. v. National Union Fire Ins. Co.*, 1992 WL 55742, at * 3 (E.D. Pa. Mar. 13, 1992) (reversing order calling for the production of pattern and practice discovery as to insurer's claim handling, which would invite "mini-trials" as to other policyholders) (attached as Exhibit A).

     Furthermore, to the extent that Kemper employees have given testimony in other lawsuits about the meaning of terms in other policyholders' program agreements, such testimony does not bear upon the dispute that is before this Court. The testimony of Kemper personnel who had no involvement in the DuPont program or knowledge of the controlling program agreements which were negotiated between Kemper and DuPont over a 30-year period, and who therefore by definition never communicated any understanding of those terms to DuPont, will not materially advance this litigation and is relevant to DuPont's claims. At best, the granting of such discovery would only invite further requests for the program agreements and underwriting files of additional policyholders, imposing additional burden upon Kemper for no purpose other than the burden itself.

                                     Respectfully,

                                       /s/ M. Duncan Grant

                                     M. Duncan Grant (Bar No. 2994)

MDG/gl
Enclosures
cc:    Clerk of Court (w/ enc.) (via CM/ECF)
        John E. James, Esq. (w/enc.) (via CM/ECF)