**A**

Westlaw.

Not Reported in F.Supp.                                                                         Page 1

Not Reported in F.Supp., 1992 WL 55742 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
First Fidelity Bancorporation v. National Union
Fire Ins. Co. of Pittsburgh, PA.E.D.Pa.,1992.Only
the Westlaw citation is currently available.
      United States District Court, E.D. Pennsylvania.
      FIRST FIDELITY BANCORPORATION, Plaintiff,
                              v.
      NATIONAL UNION FIRE INSURANCE
      COMPANY OF PITTSBURGH, PA and Financial
      Institutions Reserve Risk Retention Group, Inc.,
                        Defendants.
                  **Civ. A. No. 90-1866.**

                      March 13, 1992.

Gary R. Battistoni, Stuart A. Law, Jr., Daniel J.
Dalton, Richard E. Ruffee, Drinker, Biddle & Reath
Philadelphia, Pa., for plaintiff.
Judy L. Leone, Michael F.R. Harris, Seymour
Kurland, Jeffrey G. Weil, Jan P. Levine, Gerald D.
Wixted, Dechert, Price & Rhoads, Philadelphia,
Pa., Mark P. Denbeaux, Westwood, N.J., Nancy J.
Gellman, William J. O'Brien, Conrad, O'Brien,
Gellman, De Stefano & Rohn, P.C., Philadelphia,
Pa., Sandra L. Spear, Washington, D.C., Joel R.
Marcus, Bruce A. Baird, Robert D. Fram, David V.
Gourevitch, Covington & Burling, Washington,
D.C., Gary R. Battistoni, Stuart A. Law, Jr.,
Drinker, Biddle & Reath, Philadelphia, Pa., for
defendants.

                    *MEMORANDUM*
ROBERT F. KELLY, District Judge.
*1 Plaintiff First Fidelity Bancorporation ("Fidelity"
) and defendant National Union Fire Insurance
Company of Pittsburgh, PA ("National") have each
filed objections to certain discovery orders entered
by Magistrate Judge Hall on January 14, 1992.
Fidelity objects to the Order granting National's
Motion to Compel the Production of Documents,
alleging that the documents are protected by the
work product doctrine and attorney-client privilege (

"Privileged Discovery"). National objects to the
Order granting Fidelity's Motion to Compel
Answers to Interrogatories and Production of
Documents Concerning Bad Faith Pattern and
Practice ("Pattern and Practice Discovery"),
claiming that compliance is unduly burdensome. I
affirm the Order granting Privileged Discovery but
on somewhat different grounds, and I reverse the
Order granting Pattern and Practice Discovery.


                  *I. BACKGROUND*

Fidelity, its directors and its officers are insureds
under a director and officer insurance policy issued
by National (the "Policy") [FN1]. Fidelity's coverage
is determined by the allocation of liability.
Specifically, National is obligated to reimburse
Fidelity only to the extent that Fidelity indemnifies
its directors and officers, up to a limit of 25 million
dollars. The Policy does not insure Fidelity for its
own liability. The Policy also contains a
cooperation clause, which provides that "[t]he
Insurer's consent [to settlements] shall not be
unreasonably withheld, but the insurer shall be
entitled to full information and all particulars it may
request in order to reach a decision as to
reasonableness." Policy at ¶ 6. National has no
duty or right to defend Fidelity.

On December 13, 1988, Fidelity issued a press
release announcing its intent to add about 300
million dollars to loan loss reserves. This
announcement spawned a one day drop in Fidelity's
aggregate share value of over 400 million dollars.
Numerous class and derivative actions followed,
naming Fidelity and its directors and officers as
defendants (the "underlying litigation"). Given the
allocation of liability issues, Fidelity wished to
position itself against National as well as against the
underlying plaintiffs. This led Fidelity to obtain its
own counsel in the underlying litigation, and it also
set the stage for the present lawsuit. While the
defendants in the underlying litigation pursued

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

settlement, National had trouble acquiring information it requested from Fidelity. When the underlying plaintiffs' eventually made a settlement offer of 45 million dollars, Fidelity notified both National and FIRG of its belief that this represented a reasonable settlement. FIRG consented to the settlement, but National did not. Fidelity accepted the settlement and indemnified its directors and officers, and then brought this action.

Fidelity alleges that National violated the Policy and its fiduciary obligations by failing to promote a reasonable settlement of the underlying litigation, and by unreasonably refusing to consent to the settlement offer. Fidelity seeks to recover 25 million dollars under the Policy, punitive damages, costs, attorneys' fees and prejudgment interest. National has filed a cross-claim, alleging that Fidelity breached its duty under the Policy's cooperation clause to share all information.

## II. *Order Granting Privileged Discovery:*

**\*2** Judge Hall's Order granted National's request for essentially all documents generated in connection with the underlying litigation by Fidelity, its attorneys and third party consultants. Fidelity objected on the grounds of work product and attorney-client privilege. Judge Hall rejected the attorney-client objection because Fidelity failed to develop an adequate privilege log, and he found that Fidelity waived the work product objection by bringing this suit and therefore putting the documents at issue. Although I agree with this result, I do not believe it should be based on the sufficiency of Fidelity's privilege log since the parties' submissions dealt exclusively with Fidelity's right to assert the privilege as a matter of law.

It is clear that Fidelity has put the Privileged Discovery at issue by bringing this suit, and it has therefore waived its right to raise both work product *and* attorney-client objections. *See* National Union's Response to Fidelity's Sur-Reply at 8-18 (cases cited therein). Fidelity disputes this, arguing that the issue is not its decision to settle, but rather whether settlement was objectively reasonable given the risks of going to trial. Consequently,

Fidelity claims that the only relevant discovery would consist of the events giving rise to the underlying litigation and any evidence which would have been adduced at trial had the case not settled. I agree that a primary focus of this suit is whether the settlement was objectively reasonable. However, to make this determination, all relevant information must be examined. This especially includes the information contained in the Privileged Discovery since it is extremely probative in assessing whether a reasonable person would have settled under the circumstances. Moreover, the reasonableness issue raised in this suit necessarily contains certain subjective aspects. The risks of going to trial and the reasonableness of settlement are immensely influenced by how vigorous a defense Fidelity mounted. The Privileged Discovery will also reveal whether Fidelity met its burden under the Policy to prepare a defense, and whether there was improper collusion among the interested parties.

Additionally, there is a sharp dispute over whether the Policy's cooperation clause requires disclosure of the Privileged Discovery. I find that as to the sophisticated parties involved in the present case, the Policy's language is clearly all encompassing and would normally include privileged documents, for otherwise an insurer could not reasonably assess the proposed settlement. This result is fully supported by the fact that the policy issued by FIRG specifically exempted privileged documents. Thus, the Privileged Discovery is also placed at issue by Fidelity's allegation of compliance with the Policy's provisions, and National's cross-claim.

Fidelity has also waived its right to object by making selective disclosures of certain protected documents. The rule of law is clear. In order to protect against self-serving disclosure, a party who discloses protected documents waives the right to assert work product or attorney-client protections for all documents dealing with the same subject matter. *See* cases cited in Briefs. Fidelity has skirted National's claim of selective disclosure by merely pointing to certain "discovery compromises" it has unilaterally agreed to. Given Fidelity's failure to address the pertinent issues, I find that Fidelity has waived its right to object to the

Not Reported in F.Supp.                                                                                    Page 3

Not Reported in F.Supp., 1992 WL 55742 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Privileged Discovery. For the reasons stated above, I affirm [FN2].

### III. *Order Granting Pattern and Practice Discovery:*

**\*3** By Order and Memorandum dated January 14, 1992, Judge Hall granted Fidelity's requests for Pattern and Practice Discovery. Balancing the extreme burden and expense required to comply with this Order with the relatively minor probative value of this discovery, I will reverse. The only relevance of the Pattern and Practice Discovery is Fidelity's hope to establish National's habit of dealing in bad faith with its insureds, and that National acted in conformity with this habit in the present case. Fed.R.Evid. 406. In this regard, National previously produced the following: (1) all pleadings since 1987 in which insureds alleged bad faith or in which bad faith was a factor; (2) approximately 75 claim files involving the same type of claims as the underlying litigation [FN3]; (3) and 200 director and officer liability policies. Further, National has already produced documents totaling over 30,000 pages in response to other discovery requests.

The Order would require the *additional* production of almost 20,000 insurance policies and almost 3,000 claim files. It would take years to implement compliance at a horrendous expense. None of these files even contain bad faith actions because, as explained above, National has already produced the pleadings of such actions. Accordingly, I find that the burden and expense of this discovery clearly outweighs its relevance. This ruling is also based on the fact that at trial, the scope of this discovery request far exceeds what would be reasonably admissible under Fed.R.Evid. 406. This is especially so considering National's understandable desire to have a "mini-trial" over each and every instance of bad faith claimed by Fidelity. Thus, it is clear that the Order is also over broad. I find that the type and quantity of production to date draws a proper balance between discovery opportunities Fidelity genuinely deserves, and the ridiculous desires of counsel. Accordingly, I reverse.

I shall therefore issue the following order.

### *ORDER*

AND NOW, this 13th day of March, 1992, upon consideration of the parties' objections and all responses thereto, it is hereby ORDERED as follows:

1. Magistrate Judge Hall's Order entered January 14, 1992 granting Fidelity's Motion to Compel is REVERSED and MODIFIED. Within 30 days of receipt of this Order, National Union shall make the 75 claim files already produced available for Fidelity's inspection and copying in complete and unredacted form. Upon compliance, National Union is deemed to have satisfied Interrogatories nos. 4, 5 and 10 and Document Requests nos. 1 and 2.

2. Magistrate Judge Hall's Order entered January 14, 1992 granting National Union's Motion to Compel is AFFIRMED although on somewhat different grounds as explained in the attached Opinion.

3. The Order directing pretrial motions in the above-captioned case to Magistrate Judge Hall is hereby VACATED, and it is FURTHER ORDERED that all future filings shall be submitted to this Court.

> FN1. Defendant Financial Institutions Reserve Risk Retention Group, Inc. ("FIRG") is an excess carrier and is not a party to the present discovery dispute.

> FN2. This ruling makes it unnecessary to settle the complicated factual issues raised by the common interest doctrine.

> FN3. These files were incomplete, and the parties' submissions in connection with FIRG's Second Motion to Compel and FIRG's Motion to Enlarge the Scope clearly show that the 75 files must be produced in complete and unredacted form

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                     Page 4

Not Reported in F.Supp., 1992 WL 55742 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**


      for Fidelity.
E.D.Pa.,1992.
First Fidelity Bancorporation v. National Union
Fire Ins. Co. of Pittsburgh, PA.
Not Reported in F.Supp., 1992 WL 55742 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:90cv01866 (Docket) (Mar. 16, 1990)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.