EXHIBIT "1"

SHEET 1

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                  IN AND FOR THE DISTRICT OF DELAWARE
 2
                                       - - -
 3    E. I. Du PONT de NEMOURS
      and COMPANY,                      :        CIVIL ACTION
 4                                      :
             Plaintiff,                 :
 5          v                           :
                                        :
 6    LUMBERMENS MUTUAL CASUALTY        :
      COMPANY,                          :
 7                                      :        NO. 05-699 (***)
             Defendant.                 :
 8                                     - - -

 9                       Wilmington, Delaware
                  Friday, March 23, 2007 at 10:15 a.m.
10                       TELEPHONE CONFERENCE

11                                     - - -

12    BEFORE:    HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE JUDGE

13                                     - - -
      APPEARANCES:
14

15                POTTER ANDERSON & CORROON
                  BY:  JOHN E. JAMES, ESQ.
16
                       and
17
                  KIRKPATRICK & LOCKHART PRESTON GATES ELLIS, LLP
18                BY:  CHRISTOPHER C. FRENCH, ESQ., and
                       SCOTT A. BOWAN, ESQ.
19                     (Pittsburgh, Pennsylvania)

20                       Counsel for Plaintiff

21
                  PEPPER HAMILTON, LLP
22                BY:  DUNCAN GRANT, ESQ., and
                       PHILLIP T. MELLET, ESQ.
23
                       and
24
                                       Brian P. Gaffigan
25                                     Registered Merit Reporter
```

United States District Court - Honorable Mary Pat Thynge

SHEET 15

54

1   privilege is what the client can raise.  The attorney work
2   product privilege is what the attorney can raise to protect
3   it.  I want to see those documents.  I'll go through them
4   and decide whether or not, under the standards that have
5   been established in this court, whether any of those or part
6   of those documents have to be produced.  I'll do an in
7   camera review.
8           MR. LENDING:  Sure.  Okay, judge.
9           MR. FRENCH:  Your Honor, this is Chris French.
10  And with the Court's indulgence, I would also request the
11  Court to ask Kemper to generate, if it has not done so
12  already, a privilege log to show what documents, whether
13  they're privileged or otherwise, prior to February of 2004
14  were generated relating to this declaration of dividend
15  issue.  Because I continue to have questions about why there
16  is nothing either produced in this case or in the privilege
17  log talking about this issue before it's decided.
18          THE COURT:  I think what you are asking, Chris,
19  is did the board just decide this issue in a vacuum or did
20  they think about it before they did it and get some
21  information.
22          MR. FRENCH:  Right.  And presuming there was
23  some -- right, exactly.  Presuming there would be documents
24  reflecting what they did beforehand, assuming they did
25  something.  And I would request that you instruct Kemper to

55

1   generate such a log if they are claiming privilege for it or
2   produce those documents.
3           THE COURT:  Were they asked for it?
4           MR. FRENCH:  Yes, and you ordered them to do
5   this.  You ordered them to produce anything they had on
6   February 6th at our last hearing as well and we didn't get
7   anything.
8           But, you know, it's only been in response to our
9   motion where it's really become crystallized in my mind that
10  there is something just on its face just doesn't seem right
11  here.  That there is nothing at all prior to when the
12  decision was made?  They didn't go out and seek counsel's
13  input or anything?
14          MR. LENDING:  Well, I think we have gone back.
15  Judge, we'll go back again and see if there is anything
16  else.
17          THE COURT:  For example, any prior board
18  discussions about the issue as Kemper's tenuous financial
19  situation was becoming more apparent.  Because my under-
20  standing is the board decision, as you pointed out to me
21  today, occurred on February 26th, 2004.  That just didn't
22  happen.  Something had to have been discussed, I would
23  imagine, by the board beforehand about what it was going to
24  potentially do with dividends and why prior to that time; or
25  maybe they didn't.  And if they didn't, they didn't.  And

56

1   that might be your answer, too, Chris.
2           MR. FRENCH:  If it is, I understand that answer
3   and can live with that answer, but it's just a shocking
4   answer if that is the right answer.
5           THE COURT:  Well, it may be the answer.
6           MR. FRENCH:  Right.  And I'm just asking if you
7   would order them to make sure that is the answer.
8           THE COURT:  Well, apparently, I thought I
9   ordered that the last time that they were supposed to go
10  back and check about certain documents and to see if there
11  is anything in that, in their records about concerns
12  expressed regarding those areas or that area, I should say.
13          MR. FRENCH:  I guess then, Your Honor, we got a
14  letter from Mr. Heftman, if I remember right, or something
15  from him basically saying they don't have anything else to
16  produce.  I guess I would like then, if that is going to be
17  their answer, I would like something in writing from their
18  client, a sworn statement from Mr. McGregor or somebody
19  else in the company -- Mr. McGregor has been the 30(b)(6)
20  witness, as you probably noted -- in writing, almost like a
21  verification that there were no documents, no discussions
22  about this issue before it was decided.  That would satisfy
23  my concern that there is something out there that just isn't
24  being produced or identified on the privilege log.
25          THE COURT:  To your knowledge, Randy, is

57

1   everything that is identified on the privilege log materials
2   that you consider, that Kemper considers privileged relating
3   to this issue about the board's decision, leading up to the
4   board's decision as to whether or not to declare a dividend?
5           MR. LENDING:  That is my understanding, judge,
6   and I will go back and talk to Mr. McGregor again and see if
7   there is any other documentation that exists out there.
8   And there may very well be other board discussions in
9   connection with other policyholders.  Kemper had hundreds
10  of policyholders subject to the dividend issue and the
11  dividend determination may have occurred with respect to
12  other policyholders at a prior time but that was in
13  connection with the other policyholders.  And that's what I
14  understand.  But I will go back and ask.
15          MR. HEFTMAN:  Your Honor, this is Jeff Heftman,
16  just to clarify.  The board minutes we attached to our
17  papers indicating the dividend will not be declared is not
18  specifically tailored towards the policy, the board
19  resolutions for each particular policy.
20          THE COURT:  I understand that.
21          MR. LENDING:  Okay.
22          MR. FRENCH:  And, Your Honor, I think you
23  understand our view on this, and that is that if there is
24  something else to produce, to produce it or put it on the
25  privilege log so you can review it in camera, or if there is

United States District Court - Honorable Mary Pat Thynge