# EXHIBIT 1

Case 1:05-cv-00699-SLR-MPT    Document 147-2    Filed 06/05/2007    Page 1 of 4

Page 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF DELAWARE

E.I. du PONT de NEMOURS
and COMPANY,

    Plaintiff,

  -vs-                  No. C.A. No. 05-699(KAJ)

LUMBERMENS MUTUAL
CASUALTY COMPANY,

    Defendant.

_____

       The deposition of JOHN McGREGOR, called by the Plaintiff for examination, pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Cynthia J. Conforti, Certified Shorthand Reporter, at One Kemper Place, Long Grove, Illinois, commencing at the hour of 9:30 a.m. on the 29th day of September, A.D., 2006.

Page 46

BY MR. FRENCH:
Q. It does need to be profits; is that correct?
A. Well, the statute doesn't use the word "profits," no.
Q. I'm talking about the way you're defining "surplus." It does not have to be profits.
A. I think I may be wrong. I think there has to be profitability for a company to earn surplus.
Q. Where can I go to figure out the way Kemper is defining this earned surplus?
A. Well, it's on our balance sheet.
Q. It explains or defines the term?
A. I don't know if our financials explain or define the term "earned surplus," I'm not sure about that.
Q. But you're basically taking Kemper's definition of "earned surplus" and then applying it to the statute that we marked as Exhibit 4.
A. Correct.
Q. Is it fair to say that because Kemper's not writing new business, it doesn't envision ever having earned surplus again?
A. I think that's a fair statement, yes.
Q. So, consequently, we can conclude there

Page 47

won't be any declaration of dividends ever again from Kemper?
MR. LENDING: Objection, calls for speculation, no foundation.
THE WITNESS: I can't say for certain, but I don't think there's an expectation on anybody's part here or elsewhere that this company will ever declare paid dividends again.
BY MR. FRENCH:
Q. Right. I mean based upon the way you interpret the statute and what "earned surplus" is, you don't see that as being something that could happen?
A. I don't, no, with the further qualification that any declaration of dividends would require board action, notwithstanding the statute, and there's an element of board discretion there as well.
Q. That's one thing that's not clear to me in this case.
Is Kemper's decision not to issue the dividend based upon the statute or is it based upon the board's decision or a combination of both?
A. I would say it's a combination of both.

Page 48

Primarily it's based on the board's decision, as is set forth in the agreement, that the dividend is discretionary with the board, and the board in this case did in fact exercise its discretion not to declare dividends with respect to DuPont and certain other accounts, but certainly underlying that decision was the statutory prohibition as well as the board's general concern about the company's financial situation.
Q. Has Kemper given any thought to whether or not it should be distinguishing among its policyholders on whether or not to declare dividends to take into account when the dividend is actually profits of the company versus simply an accounting function relating to that specific account, as we have agreed it is with DuPont?
MR. LENDING: Objection. I believe that misstates prior testimony of Mr. McGregor.
THE WITNESS: We have not made that sort of distinction. To us a dividend is a dividend. Requires board action, and we treat them the same.
BY MR. FRENCH:
Q. Regardless of whether or not the dividend is coming from profits of the company versus a simple accounting formula in the actual proposal

Page 49

with the policyholder.
A. Yeah. Again, to us a dividend is a dividend. We're not going to make that distinction, and certainly in light of the statutes, we think it would be pretty presumptuous and aggressive to say, "Well, this is a different type of dividend even though it's a dividend, so we're going to ignore the statutory prohibition."
Q. I'm trying to figure out why you call what's in the DuPont program dividends when we can agree that they're not based upon the profitability in that formula in DuPont's insurance proposal, they're not based upon the profitability of Kemper. Why are they called dividends?
A. Well, they're called dividends because that's what the contractual agreements call them, and that's how they operate, and that's how they have always operated on the DuPont program and in other accounts. Nothing has changed because of our runoff or our financial situation or the effect of the statute. They always have been dividends. That's always how we've treated them. That's always how we have explained them in the contracts.

Page 70

1  dividend. That was certainly related to Kemper's
2  financial situation.
3  BY MR. FRENCH:
4  Q. We earlier talked about the reason they did
5  not declare a dividend. As I understood it, it
6  was based upon the fact they did not have any
7  earned surplus.
8     Is there an additional part to that story
9  that I haven't heard?
10  A. Well, the fact that there's no earned
11  surplus, that there was no earned surplus at the
12  time, gives rise to the statutory prohibition
13  which I believe weighed into the board's decision,
14  but I think the board's discretion went beyond
15  that, and such that the board concluded I believe
16  that a company in our financial situation just
17  simply should not be declaring or paying
18  dividends.
19     That issue also came up with our regulators
20  who echoed that sentiment, so I believe it goes
21  beyond simply the statutory prohibition.
22  Q. I thought I understood your testimony, and
23  I still think I do, but let's make sure we're on
24  the same page.
25  A. Okay.

Page 71

1  Q. Is there any reason Kemper did not declare
2  a dividend in 2002 for DuPont other than its
3  financial problems?
4  A. I think the financial situation of Kemper
5  at the time was the primary driver to the board's
6  decision not to declare or pay dividends.
7  Q. Is there anything else?
8  A. Not that I'm aware of.
9        (Whereupon Exhibits 7 and 8 were
10          marked for identification.)
11  BY MR. FRENCH:
12  Q. Sir, can you tell us what Exhibit 7 is?
13  A. It is a letter to producers and
14  policyholders from Kemper dated April 15th, 2005.
15  Q. And is this the letter in which Kemper
16  advised its policyholders that it was not
17  declaring dividends for 2002 and onward?
18  A. No, I don't think so.
19     I think there may have been another letter
20  to that effect with respect to initial dividends
21  because this letter appears to be saying that
22  early in 2003, which is two years earlier,
23  Kemper's board had ceased declaring initial
24  dividends. I recall that there may have been an
25  earlier communication with respect to that

Page 72

1  decision back in 2003.
2  Q. What's the purpose of this letter then?
3  A. Well, this letter was meant to address
4  situations in which a dividend redetermination in
5  any given year would result in additional
6  dividends payable to a policyholder, and we were
7  advising policyholders that we were looking at
8  that situation as essentially the payment of a
9  dividend, which, again, we couldn't do.
10     I don't believe that when the board first
11  ceased declaring initial dividends on expired
12  policies that it took into account the issue of
13  redeterminations of that dividend many years
14  later, perhaps yielding additional dividend to a
15  policyholder.
16  Q. For like the prior years in other words.
17  A. Yes. So this was a way of communicating to
18  policyholders upfront that that situation may come
19  to light in a particular policy, in a particular
20  adjustment, and we wanted to let policyholders
21  know that we wouldn't be able to pay those
22  dividends either.
23  Q. For the same reasons?
24  A. Same reasons.
25  Q. The financial difficulties of Kemper?

Page 73

1  A. Correct.
2  Q. And what's Exhibit 8?
3  A. Exhibit 8 is a portion of the minutes of
4  the Lumbermens board of directors meeting in
5  February 26th, '04.
6  Q. What was redacted?
7  A. Oh, these were board meeting minutes. I
8  don't recall as I sit here, but there probably was
9  a lot of confidential stuff in there not relating
10  in any way to the dividend issue.
11     MR. FRENCH: Counsel, we haven't received
12  a privilege log yet from Kemper. Is that in the
13  works?
14     MR. LENDING: I will check and get back
15  to you.
16  BY MR. FRENCH:
17  Q. So as you sit here today, sir, you're not
18  sure what was on this portion that was redacted?
19  A. I'm not. All I can tell you is that it
20  didn't relate in any way to dividends or the
21  issues in this case.
22  Q. Does this exhibit accurately reflect the
23  board's decision and reasoning behind its decision
24  not to declare dividends for the policies going
25  forward?